Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:    (310) 285-5330
E-mail: jpafiti@pomlaw.com

*- additional counsel on signature page -*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUI-YANG HONG, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>EXTREME NETWORKS, INC., CHARLES W. BERGER, KENNETH B. AROLA and JOHN T. KURTZWEIL,<br><br>                                    Defendants. | No. 15-cv-04883-BLF<br><br>**NOTICE OF MOTION AND MOTION OF MARK KASPRZAK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>DATE:  May 5, 2016<br>TIME: 9:00 am<br>JUDGE: Hon. Beth Labson Freeman<br>CTRM:  3 – 5th Floor |
| MARK KASPRZAK, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>EXTREME NETWORKS, INC., CHARLES W. BERGER, KENNETH B. AROLA and JOHN T. KURTZWEIL,<br><br>                                    Defendants. | No. 15-cv-04975-BLF |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................................ 2

II. STATEMENT OF FACTS ................................................................................................ 2

III. ARGUMENT ..................................................................................................................... 6

    A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES .......................................................................................................... 6

    B. KASPRZAK SHOULD BE APPOINTED LEAD PLAINTIFF ............................... 7

        1. Kasprzak is Willing to Serve as Class Representative..................................... 8

        2. Kasprzak has the "Largest Financial Interest"................................................ 9

        3. Kasprzak Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ................................................................................ 10

        4. Kasprzak Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Any Unique Defenses ...................................................... 12

    C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED .. 13

IV. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages(s)**

*Aronson*,
  79 F. Supp. 2d (N.D. Cal. 1999) .................................................................................... 10

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ............................................................................................... 11

*Bassin v. Decode Genetics, Inc.*,
  230 F.R.D. 313 (S.D.N.Y. 2005) ..................................................................................... 7

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) ........................................................................................... 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ..................................................................................... 6

*Danis v. USN Communs., Inc.*,
  189 F.R.D. 391 (N.D. Ill. 1999) ..................................................................................... 10

*Erikson v. Cornerstone Propane Partners LP*,
  2003 U.S. Dist. LEXIS 18009, at *8-*9 (N.D. Cal. Sept. 9, 2003) .................................. 8

*Gluck v. Cellstar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) ................................................................................ 10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...................................................................................... 10, 13

*In re Comverse Tech., Inc., Sec. Litig.*,
  2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ................................................. 9

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
  2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ................................................ 7

*In re Gemstar-TV Guide Int'l. Sec. Litig.*,
  209 F.R.D. 447 (C.D. Cal. 2002) .................................................................................... 9

*In re McKesson HBOC, Inc. Sec. Litig.*,
  97 F. Supp. 993 (N.D. Cal. 1999) ................................................................................... 9

*In re Northern Dist. Of Cal., Dalkon Shield IUD Prod. Liab. Litig.*,
  693 F.2d 847 (9th Cir. 1982) .......................................................................................... 12

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp.2d 286 (E.D.N.Y. 1998) ............................................................................. 9, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................................... 10

*In re Sterling Financial Corp.*,
   2007 WL 4570729 (E.D. Pa. Dec. 21, 2007) ................................................................. 10, 12

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................................................. 6

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ................................................................................................. 6

*Lax v. First Merchants Acceptance Corp.*,
   1997 WL 461036 (N.D. Ill. 1997) ..................................................................................... 9, 10

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ................................................................................................ 12

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993) ................................................................................................... 6

*Osher v. Guess, Inc.*,
   2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ........................................................ 8

*Riordan v. Smith Barney*,
   113 F.R.D. 60 (N.D. Ill. 1986) ............................................................................................. 12

*Squyres v. Union Texas Petroleum Holdings, Inc.*,
   1998 U.S. Dist. LEXIS 22945 (C.D. Cal. Nov. 2, 1998) ....................................................... 8

*Takeda*,
   67 F. Supp. 2d ...................................................................................................................... 12

*Wenderhold v. Cylink Corp.*,
   188 F.R.D.577, 587 (N.D. Cal. 1999) .................................................................................. 10

**<u>Statutes</u>**

15 U.S.C. § 78u 4(a)(3)(B)(v) ............................................................................................ *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... *passim*

Fed. R. Civ. P. 42(a) ............................................................................................................... 1, 6

**<u>Other Authorities</u>**

Manual for Complex Litigation (Third), § 20.123 (1995) ........................................................ 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

**TO:   ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that Mark Kasprzak ("Kasprzak"), by and through his counsel, will and does hereby move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B) (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, on May 5, 2016, at 9:00 am, for an Order filed contemporaneously with this motion: (1) consolidating the above-captioned related actions; (2) appointing Kasprzak as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired securities of Extreme Networks, Inc. ("Extreme Networks") between November 4, 2013 and April 9, 2015, inclusive (the "Class Period"); (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

In support of this motion, Kasprzak submits a Memorandum of Points and Authorities, the pleadings and other filings herein, and such other written and oral arguments as may be presented to the Court.

This motion is made on the grounds that Kasprzak is the most adequate lead plaintiff, as defined by the PSLRA, based on his losses of approximately $5,858, which were suffered as a result of defendants' wrongful conduct as alleged in the above-referenced action. Further, Kasprzak satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as his claims are typical of other Class members' claims, and he will fairly and adequately represent the Class.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Currently pending in this District are two federal securities class action lawsuits (the "Related Actions") filed on behalf of the Class, consisting of persons than Defendants, who purchased or otherwise acquired securities of Extreme Networks during the Class Period.[1]  Each raises substantially similar allegations: defendants violated federal securities laws by issuing false and misleading statements.

Pursuant to the PSLRA, the court appoints as lead plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Kasprzak, with losses of approximately $5,858 in connection with his purchases of Extreme Networks common stock, has the largest financial interest in the relief sought in this action.  Kasprzak further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as he is an adequate representative with claims typical of the other Class members.  Accordingly, Kasprzak respectfully submits that he should be appointed Lead Plaintiff.

## II. STATEMENT OF FACTS

Extreme Networks develops and sells network infrastructure equipment and offers related services contracts for extended warranty and maintenance. For the fiscal year ended June 30, 2014, the Company reported net revenue of $524.8 million, an increase of 75.3% from fiscal year 2013 net revenue of $299.3 million.[2]

---

[1] The Related Actions are *Hong v. Extreme Networks, Inc. et al.*, 5:15-cv-04883 (N.D. Cal. Oct. 23, 2015) and *Kasprzak v. Extreme Networks, Inc. et al.*, 5:15-cv-04975 (N.D. Cal. Oct. 29, 2015).

[2] Extreme Networks reports on a fiscal year that runs from July 1 to June 30. As used herein, "FY" means Extreme Networks' fiscal year. Thus, FY15 means Extreme Networks' fiscal year 2015, which ran from July 1, 2014 to June 30, 2015. Specific quarters are designated by the quarter number followed by the

The Company generates revenue primarily through the efforts of its salesforce or "field sales organization," which both supports its partners and makes direct sales to end user customers. Defendants describe the Company as "partner-driven," because Extreme Networks primarily sells its Ethernet, wireless and software analytics products through partners who combine its products with their offerings to create "bundled" or "converged" technology solutions for enduser customers, as well as through other distributors and resellers. According to the Company, about 65% to 70% of its business is done through partners and distributors, and about 25% to 30% of its business is direct. On February 5, 2014, and at other points during the Class Period, defendants claimed that going forward the two large partnerships driving revenue would be Ericsson and Lenovo.

On September 12, 2013, Extreme Networks announced in a press release that it had reached an agreement to acquire a direct competitor, Enterasys Networks, Inc. ("Enterasys"), roughly doubling the size of the Company. During the conference call held the same day to discuss the acquisition, CEO Berger and CFO John T. Kurtzweil ("Kurtzweil") stated that the acquisition would create significant value for shareholders, that the two companies would be fully integrated within 12 to 24 months, and that there would be no disruption to customers of either company:

> [Kurtzweil:] When we have fully integrated the two Teams, we plan to reduce product costs and operating expenses between $30 million to $40 million. We expect to realize these synergies over a 12 to 24-month period.
>
> \*   \*   \*
>
> [Berger:] *There will be no disruption in customers' ability to grow and operate their networks. Period. None*. . . .
>
> . . . *[The acquisition] will certainly* be transformational for our Companies, the industry, and *create significant value for the Extreme shareholders*.

---

letter "Q." Thus, 3Q15 indicates Extreme Networks' third quarter of fiscal year 2015, which ran from January 1, 2015, to March 31, 2015.

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

3

During the Class Period, defendants assured investors that three "big things" were "growth drivers" that would allow the Company to meet or exceed revenue forecasts, even after the Company reported guidance misses in certain quarters during the Class Period. Those drivers were salesforce execution, by which defendants meant successfully integrating Enterasys and, in particular, the two companies' salesforces; a new partnership or alliance with Lenovo, which acquired IBM's X86 server business and purportedly planned to bundle and sell Extreme Networks' server products with its own; and E-Rate, a federal subsidy program that helps K-12 schools acquire network and other information technology. On October 15, 2014, for example, the Company stated in a press release that "[t]he combination of strong sales leadership, nearly completed [Enterasys] integration and the finalization of the Lenovo acquisition position us well for the remainder of our fiscal year [2015, ended June 30, 2015]." Defendants also repeatedly predicted that those factors would drive double-digit revenue growth and a 10% operating margin by the second half of 2015. Berger, for example, speaking at the 3Q14 earnings call on May 6, 2014, stated:

> I want to again reemphasize our plan and our commitment to attain double digit revenue growth by the second half of 2015 as we complete the integration, realize the benefits of our key partnerships like Lenovo and Ericsson, and align our efforts between the growth opportunities in the wireless and datacenter segments.
>
> Over the same period we are committed to achieve a 10% operating margin on a non-GAAP basis

During the Class Period, defendants issued materially false and misleading statements regarding the Company's quarterly and year-end revenue and earnings outlook for FY15 (which began July 2014), in particular claiming that the Enterasys integration and the Lenovo acquisition of IBM's server business were complete or nearly so and would drive double-digit revenue growth by FY15. Indeed, as late as October 28, 2014, Berger claimed that salesforce execution and the partnership with Lenovo could each deliver double-digit revenue impact on their own.

As a result of these misrepresentations and omissions, Extreme Networks' stock traded at artificially inflated prices during the Class Period, reaching a high of $8.14 per share in intraday trading on January 23, 2014.

Defendants' statements during the Class Period alleged herein concerning Extreme Networks' current financial condition and outlook for FY15 were each false and misleading, because defendants knew or deliberately disregarded and failed to disclose the following facts:

    (a)    the Company's revenue growth depended on successfully integrating Enterasys and especially the Enterasys salesforce, but the Company was not integrating and had not successfully or substantially integrated Enterasys;

    (b)    failure to integrate the salesforces materially impaired the Company's ability to address persisting problems with "slipping" *(i.e.,* delayed and cancelled) sales, steep discounting, and costs related to inefficiently processed orders; and

    (c)    Extreme Networks did not have visibility into Lenovo's server business plans, and/or defendants knew that Lenovo was unprepared or unwilling to begin selling Extreme Networks' products during the timeframe or in the amounts necessary to support the Company's quarterly and FY15 financial forecasts.

Then, on April 9, 2015, after the markets closed, Extreme Networks preannounced that it would miss guidance for 3Q15, reporting revenue of $118-$120 million and earnings per share ("EPS") of ($0.09)-($0.07), significantly below prior guidance of $130-$140 million and ($0.03)-$0.02, respectively. The Company also announced that trading in its shares had been halted and that Jeff White, the Company's Chief Revenue Officer ("CRO"), who had been hired only six months earlier to manage the integration of the Extreme Networks and Enterasys salesforces, was "no longer with the Company."

On these disclosures, the Company's stock price fell almost 25%, from $3.24 per share to $2.50 per share, on 10.1 million shares traded (versus 356,300 traded the day before).

Less than two weeks later, on April 21, 2015, the Company announced that Berger had resigned, effective April 19, 2015, and would be replaced by Ed Meyercord, Chairman of the Board.

On May 6, 2015, the Company announced 3Q15 results and Meyercord hosted his first earnings call as CEO. During the call, Meyercord admitted, among other things, that the integration of Enterasys and its salesforce had not been successful, which was impacting revenue, that problems with sales "slipping" into the next quarter were far more extensive than previously reported, and that Extreme Networks had no visibility into Lenovo and did not know if or when that relationship would contribute to revenue.

As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**III. ARGUMENT**

    **A.**    **THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.
> Fed. R. Civ. P. 42(a).  *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA*

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

6

*Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact.  Each action is brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that defendants issued materially false and misleading statements and omissions that artificially inflated the price of Extreme Networks securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE,* 2009 U.S. Dist. LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.     KASPRZAK SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint a lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Kasprzak satisfies all three of these criteria, and is thus entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class. *See Erikson v. Cornerstone Propane Partners LP*, 2003 U.S. Dist. LEXIS 18009, at *8-*9 (N.D. Cal. Sept. 9, 2003); *Squyres v. Union Texas Petroleum Holdings, Inc.*, 1998 U.S. Dist. LEXIS 22945, at *5 (C.D. Cal. Nov. 2, 1998); *Osher v. Guess, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *11 (C.D. Cal. Apr. 26, 2001).

**1. Kasprzak is Willing to Serve as Class Representative**

On October 23, 2015, counsel for plaintiff in the first filed above-captioned action caused a notice (the "Notice") to be published over *PR Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of Extreme Networks securities that they had until December 22, 2015 to file a motion to be appointed as Lead Plaintiff. *See* Declaration of Jennifer Pafiti in Support of the Motion by Mark Kasprzak for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Pafiti Decl."), Ex. A.

Kasprzak has filed the instant motion pursuant to the Notice, and has attached a Certification attesting that he is willing to serve as class representative for the Class and provide testimony at deposition and trial, if necessary. *See* Pafiti Decl., Ex. B. Accordingly, Kasprzak satisfies the first requirement to serve as Lead Plaintiff for the Class.

### 2. Kasprzak has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Gemstar-TV Guide Int'l. Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002).

As of the time of the filing of this motion, Kasprzak believes that he has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered) (the "Lax-Olsten" factors).[3]

During the Class Period, Kasprzak (1) purchased 3,260 shares of Extreme Networks stock; (2) expended $14,426 on his purchases of Extreme Networks stock; (3) retained all of his Extreme Networks shares; and (4) as a result of the revelations of the fraud, suffered a loss of $5,858. *See* Pafiti Decl., Ex. C. Because Kasprzak possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); S*ee also In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 993 (N.D. Cal. 1999); *In re Olsten Corp. Sec. Litig.*, 3 F.

---

[3] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007).

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

9

Supp.2d 286, 296 (E.D.N.Y. 1998); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).

### 3. Kasprzak Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001), cert. denied, 535 U.S. 929 (2002). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a prima facie showing that the movant satisfies the requirements of Rule 23 is sufficient. *Aronson*, 79 F. Supp. 2d at 1158 (N.D. Cal. 1999) (citing *Wenderhold v. Cylink Corp.*, 188 F.R.D.577, 587 (N.D. Cal. 1999). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Olsten*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). *See In re Sterling Financial Corp.*, 2007

WL 4570729, at *4 (E.D. Pa. Dec. 21, 2007) (noting that the "typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the injuries as the absent class members, and their claims are based on the same legal issues."). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of Kasprzak are typical of those of the Class. Kasprzak alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Extreme Networks, or omitted to state material facts necessary to make the statements they did make not misleading. Kasprzak, as did all members of the Class, purchased Extreme Networks securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Accordingly,

> The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.

*Takeda*, 67 F. Supp. 2d at 1137 (citing *In re Northern Dist. Of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)). *Accord Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986). *See Sterling*, 2007 WL 4570729, at *4 (highlighting that the adequacy requirement is satisfied when "both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of the other class members.").

Kasprzak will adequately represent the interests of the Class. There is no antagonism between the interests of Kasprzak and those of the Class, and his losses demonstrate that he has a sufficient interest in the outcome of this litigation. Moreover, Kasprzak has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits his choice to the Court for approval pursuant to 15 U.S.C. § 78u 4(a)(3)(B)(v).

### 4. Kasprzak Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Any Unique Defenses

The presumption in favor of appointing Kasprzak as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

    (aa)  will not fairly and adequately protect the interest of the class; or

    (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of Kasprzak to fairly and adequately represent the Class has been discussed above. Kasprzak is not aware of any unique defenses defendants could raise that would render him

inadequate to represent the Class. Accordingly, Kasprzak should be appointed Lead Plaintiff for the Class.

### C.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher*, 2001 U.S. Dist. LEXIS 6057, at *15. The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(II)(aa). *See Cendant*, 264 F.3d at 276 (emphasizing that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

Here, Kasprzak has selected Pomerantz as Lead Counsel. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Pafiti Decl., Ex. D. As a result of the firm's extensive experience in litigation involving issues similar to those raised in this action, counsel of Kasprzak have the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Kasprzak's selection of Counsel, the members of the class will receive the best legal representation available.

### IV. CONCLUSION

For the foregoing reasons, Kasprzak respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Kasprzak as Lead Plaintiff; (3) approving Pomerantz as Lead Counsel for the Class; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: December 22, 2015

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (310) 285-5330
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184

*Counsel for Movants and*
*Proposed Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/     Jennifer Pafiti*
Jennifer Pafiti