ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
KENNETH J. BLACK (291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
kennyb@rgrdlaw.com
    – and –
BRIAN O. O'MARA (229737)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
bomara@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re EXTREME NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | ) Master File No. 3:15-cv-04883-BLF<br>)<br>) <u>CLASS ACTION</u><br>)<br>) THE CITY OF LAKELAND EMPLOYEES<br>) PENSION PLAN'S NOTICE OF MOTION<br>) AND MOTION FOR APPOINTMENT AS<br>) LEAD PLAINTIFF AND APPROVAL OF<br>) SELECTION OF COUNSEL;<br>) MEMORANDUM OF POINTS AND<br>) AUTHORITIES IN SUPPORT THEREOF<br><br>DATE: May 5, 2016<br>TIME: 9:00 a.m.<br>CTRM: 3 (5th Floor)<br>JUDGE: Hon. Beth Labson Freeman |

1100880_1

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on Thursday, May 5, 2016, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 (5th Floor), 280 South 1st Street, San Jose, California 95113, before the Honorable Beth Labson Freeman, putative class member the City of Lakeland Employees Pension Plan ("Lakeland") will and hereby does move this Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), for an order: (1) appointing Lakeland lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3); and (2) approving Lakeland's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel. This Motion is made on the grounds that Lakeland is the "most adequate plaintiff" to serve as lead plaintiff as defined by the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii). In support of this Motion, Lakeland submits herewith a Memorandum of Points and Authorities and the Declaration of Brian O. O'Mara ("O'Mara Decl.").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  STATEMENT OF ISSUES TO BE DECIDED**

Presently pending in this district is a consolidated securities class action brought on behalf of purchasers of Extreme Networks, Inc. ("Extreme" or the "Company") common stock between November 4, 2013 and April 9, 2015, inclusive (the "Class Period").[1] Under the provisions of the PSRLA, the Court is to appoint as lead plaintiff the member of the purported class with the largest financial interest in the relief sought by the class that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B). Here, Lakeland should be appointed as lead plaintiff because it: (1) timely filed this motion for appointment as lead plaintiff; (2) has the largest financial interest in the outcome of this litigation of any movant of which it is aware; and (3) will adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii); *see also* O'Mara Decl., Ex. A.

---

[1]   On December 1, 2015, the Court entered an order consolidating the two related class actions: *Hong v. Extreme Networks, Inc.*, No. 15-cv-04883 (filed Oct. 23, 2015) and *Kasprzak v. Extreme Networks, Inc.*, No. 15-cv-04975 (filed Oct. 29, 2015). Dkt. No. 18.

In addition, Lakeland's selection of Robbins Geller to serve as lead counsel should be approved because the firm possesses extensive experience in the prosecution of securities class actions and will adequately represent the interests of all class members.

## II. SUMMARY OF THE ACTION

Extreme Networks develops and sells network infrastructure equipment and offers related services contracts for extended warranty and maintenance. The Company generates revenue primarily through the efforts of its salesforce or "field sales organization," which both supports its partners and makes direct sales to end-user customers. Defendants describe the Company as "partner-driven," because Extreme Networks primarily sells its Ethernet, wireless and software analytics products through partners who combine its products with their offerings to create "bundled" or "converged" technology solutions for end-user customers, as well as through other distributors and resellers. According to the Company, about 65% to 70% of its business is done through partners and distributors, and about 25% to 30% of its business is direct. On February 5, 2014, and at other points during the Class Period, defendants claimed that going forward the two large partnerships driving revenue would be Ericsson and Lenovo.

On September 12, 2013, Extreme Networks announced in a press release that it had reached an agreement to acquire a direct competitor, Enterasys Networks, Inc. ("Enterasys"), roughly doubling the size of the Company. During the conference call held the same day to discuss the acquisition, CEO Charles W. Berger and CFO John T. Kurtzweil ("Kurtzweil") stated that the acquisition would create significant value for shareholders, that the two companies would be fully integrated within 12 to 24 months, and that there would be no disruption to customers of either company:

> [Kurtzweil:] When we have fully integrated the two Teams, we plan to reduce product costs and operating expenses between $30 million to $40 million. We expect to realize these synergies over a 12 to 24-month period.
>
> \*   \*   \*
>
> [Berger:] There will be no disruption in customers' ability to grow and operate their networks. Period. None. . . .
>
> . . . [The acquisition] will certainly be transformational for our Companies, the industry, and create significant value for the Extreme shareholders.

1    During the Class Period, defendants assured investors that three "big things" were "growth drivers" that would allow the Company to meet or exceed revenue forecasts, even after the Company reported guidance misses in certain quarters during the Class Period. Those drivers were salesforce execution, by which defendants meant successfully integrating Enterasys and, in particular, the two companies' salesforces; a new partnership or alliance with Lenovo, which acquired IBM's X86 server business and purportedly planned to bundle and sell Extreme Networks' server products with its own; and E-Rate, a federal subsidy program that helps K-12 schools acquire network and other information technology. On October 15, 2014, for example, the Company stated in a press release that "'[t]he combination of strong sales leadership, nearly completed [Enterasys] integration and the finalization of the Lenovo acquisition position us well for the remainder of our fiscal year [2015, ended June 30, 2015].'" Defendants also repeatedly predicted that those factors would drive double-digit revenue growth and a 10% operating margin by the second half of 2015. Berger, for example, speaking at the 3Q14 earnings call on May 6, 2014, stated:

> I want to again reemphasize our plan and our commitment to attain double digit revenue growth by the second half of 2015 as we complete the integration, realize the benefits of our key partnerships like Lenovo and Ericsson, and align our efforts between the growth opportunities in the wireless and datacenter segments.
>
> Over the same period we are committed to achieve a 10% operating margin on a non-GAAP basis.

During the Class Period, defendants issued materially false and misleading statements regarding the Company's quarterly and year-end revenue and earnings outlook for FY15 (which began July 2014), in particular claiming that the Enterasys integration and the Lenovo acquisition of IBM's server business were complete or nearly so and would drive double-digit revenue growth by FY15. Indeed, as late as October 28, 2014, Berger claimed that salesforce execution and the partnership with Lenovo could each deliver double-digit revenue impact on their own.

Defendants' statements during the Class Period concerning Extreme Networks' current financial condition and outlook for FY15 were each false and misleading, because defendants knew or deliberately disregarded and failed to disclose the following facts:

(a) the Company's revenue growth depended on successfully integrating Enterasys and especially the Enterasys salesforce, but the Company was not integrating and had not successfully or substantially integrated Enterasys;

(b) failure to integrate the salesforces materially impaired the Company's ability to address persisting problems with "slipping" (*i.e.*, delayed and cancelled) sales, steep discounting, and costs related to inefficiently processed orders; and

(c) Extreme Networks did not have visibility into Lenovo's server business plans, and/or defendants knew that Lenovo was unprepared or unwilling to begin selling Extreme Networks' products during the timeframe or in the amounts necessary to support the Company's quarterly and FY15 financial forecasts.

Then on April 9, 2015, after the markets closed, Extreme Networks preannounced that it would miss guidance for 3Q15, reporting revenue of $118-$120 million and earnings per share of ($0.09)-($0.07), significantly below prior guidance of $130-$140 million and ($0.03)-$0.02, respectively. The Company also announced that trading in its shares had been halted and that Jeff White, the Company's Chief Revenue Officer, who had been hired only six months earlier to manage the integration of the Extreme Networks and Enterasys salesforces, was "no longer with the Company."

As a result of these misrepresentations and omissions, Extreme Networks' stock traded at artificially inflated prices during the Class Period, reaching a high of $8.14 per share in intraday trading on January 23, 2014.

On these disclosures, the Company's stock price fell almost 25%, from $3.24 per share to $2.50 per share, on 10.1 million shares traded (versus 356,300 traded the day before).

Less than two weeks later, on April 21, 2015, the Company announced that Berger had resigned, effective April 19, 2015, and would be replaced by Ed Meyercord, Chairman of the Board. Then, on May 6, 2015, the Company announced 3Q15 results and Meyercord hosted his first earnings call as CEO. During the call, Meyercord admitted, among other things, that the integration of Enterasys and its salesforce had not been successful, which was impacting revenue, that problems

1100880_1

LAKELAND'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:15-cv-04883-BLF - 4 -

with sales "slipping" into the next quarter were far more extensive than previously reported, and that Extreme Networks had no visibility into Lenovo and did not know if or when that relationship would contribute to revenue.

## III. LAKELAND SHOULD BE APPOINTED LEAD PLAINTIFF

### A. Lakeland Satisfies the PSLRA's Requirements for Appointment as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Securities Exchange Act of 1934] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). This notice shall advise members of the class of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within 60 days of publication of the notice. Here, on October 23, 2015, plaintiff in the first-filed *Hong* action caused the undersigned counsel to publish notice of the pendency of the *Hong* action on *PR Newswire*. *See* O'Mara Decl., Ex. C.

Next, the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff is the member of the class that –

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). Lakeland meets each of these requirements and should therefore be appointed Lead Plaintiff.

#### 1. Lakeland's Motion Is Timely

Lakeland has timely filed this Motion within 60 days of the October 23, 2015, notice publication, and has also duly signed and filed a sworn certification evidencing, among other things, its willingness to serve as a representative party on behalf of the class. *See* O'Mara Decl., Ex. A.

Accordingly, Lakeland has satisfied the individual requirements of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B), and is entitled to have its application for appointment as lead plaintiff considered by the Court.

### 2. Lakeland Possesses the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, Lakeland purchased 27,695 shares of Extreme common stock and suffered losses exceeding $79,439 due to defendants' conduct. *See* O'Mara Decl., Exs. A and B; *see also Cavanaugh*, 306 F.3d at 732. To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest. Therefore, Lakeland satisfies the PSLRA's prerequisite of having "the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

### 3. Lakeland Meets Rule 23's Requirements

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally requires that the claims of representative parties be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23; *Cavanaugh*, 306 F.3d at 730. As detailed below, Lakeland satisfies the typicality and adequacy requirements of Rule 23(a).

The test of typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted); *see also In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346, 349 (S.D. Cal. 1998) (typicality requirement of Rule 23(a)(3) is satisfied when representative plaintiffs' claims are based on the same legal theories and arise out of the same event or course of conduct as do the other class members' claims). The threshold typicality and commonality requirements are not high; Rule 23(a) requires only that resolution of the common questions affect all, or a substantial number of, class members. *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 657 (C.D. Cal. 2000). The adequacy requirement is met if no conflicts exist between the

representative and class interests and the representative's attorneys are qualified, experienced and generally able to conduct the litigation. *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *16 (N.D. Cal. Apr. 16, 2007) (citing Fed. R. Civ. P. 23(a)(4) and *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

Here, Lakeland meets the typicality and adequacy requirements because, like all other members of the purported class, it purchased Extreme common stock during the Class Period in reliance upon defendants' false and misleading statements and suffered damages thereby. Because Lakeland's claims are premised on the same legal and remedial theories and are based on the same types of alleged misrepresentations and omissions as the class's claims, typicality is satisfied. *See In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM(POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Jan. 5, 2004). Additionally, Lakeland is not subject to any unique defenses and there is no evidence of any conflicts between it and other members of the class. Consequently, Lakeland has demonstrated that it meets all the PSLRA's requirements of a lead plaintiff.

### B. Lakeland is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent classmembers."). As an institutional investor, Lakeland is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA.

1100880_1

LAKELAND'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:15-cv-04883-BLF - 7 -

    **C.**    **This Court Should Approve Lakeland's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Courts should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Here, Lakeland has selected Robbins Geller as lead counsel for the class. Robbins Geller attorneys have successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has been appointed as lead counsel in landmark class actions, including *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002). *See also* O'Mara Decl., Ex. D. Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller as lead counsel. Because Lakeland selected and retained counsel experienced in litigating securities fraud class actions with the resources to prosecute this action to the greatest recovery possible for the class, Lakeland's choice of Robbins Geller as lead counsel should be approved.

1100880_1

LAKELAND'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:15-cv-04883-BLF - 8 -

## IV. CONCLUSION

Based on the foregoing, Lakeland respectfully requests that the Court: (1) appoint Lakeland as Lead Plaintiff; (2) approve Lakeland's selection of Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

DATED: December 22, 2015

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN O. O'MARA

s/ Brian O. O'Mara
BRIAN O. O'MARA

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
KENNETH J. BLACK
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiff

SUGARMAN & SUSSKIND
ROBERT A. SUGARMAN
100 Miracle Mile, Suite 300
Coral Gables, FL  33134
Telephone:  305/529-2801
305/447-8115 (fax)

Additional Counsel for Plaintiff

1100880_1

LAKELAND'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3:15-cv-04883-BLF - 9 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 22, 2015.

          s/ Brian O. O'Mara
          BRIAN O. O'MARA

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:bomara@rgrdlaw.com

1100880_1

# Mailing Information for a Case 5:15-cv-04883-BLF Hong v. Extreme Networks, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com

- **Elliot Schlesinger Katz**
  elliot.katz@dlapiper.com,zhanna.sarkisova@dlapiper.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com

- **Diana Mariko Maltzer**
  diana.maltzer@dlapiper.com,christine.kunis@dlapiper.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,cdberger@pomlaw.com,abarbosa@pomlaw.com

- **David Allen Priebe**
  david.priebe@dlapiper.com,margaret.austin@dlapiper.com,carmen.manzano@dlapiper.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,kirstenb@rgrdlaw.com,e_file_sf@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`