1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re EXTREME NETWORKS INC. SECURITIES LITIGATION<br><br>This Document Relates to:  All Actions. | Master File No.  15-cv-04883-BLF<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>[Re:  ECF Nos. 27, 28, 68] |

In this putative securities class action, Arkansas Teacher Retirement System ("ATRS") and the City of Lakeland Employees Pension Plan ("Lakeland") have filed competing motions seeking appointment of lead plaintiff status.  The motions were fully briefed, and the Court heard arguments on the matter on May 5, 2015.  For the reasons that follow, the Court GRANTS the Motion to appoint ATRS as lead plaintiff, GRANTS the appointment of Labaton Sucharow LLP as lead counsel and Berman DeValerio as liaison counsel, and DENIES the Motion to appoint Lakeland as lead plaintiff.

## I.    BACKGROUND

Defendant Extreme Networks, Inc. ("Extreme Networks") develops and sells network infrastructure equipment, and offers related services contracts for extended warranty and maintenance.  *See* Complaint (ECF No. 1) ¶ 3.  On October 23, 2015, Plaintiff Jui-Yang Hong, individually and on behalf of a putative class of individuals who purchased or otherwise acquired Extreme Networks common stock between November 4, 2013, and April 9, 2015, inclusive, filed a class action Complaint in the Northern District of California against Extreme Networks and individual Defendants Charles W. Berger, Kenneth B. Arola, and John T. Kurtzweil, all of whom are officers of the company.  *See generally id.*  The Complaint alleges that Defendants

1   disseminated materially false and misleading statements, and concealed material adverse facts

2   regarding the company's financial condition and growth prospects. *Id.* ¶¶ 2, 26–72. Specifically,

3   it alleges that Defendants misrepresented the company's business prospects and engaged in a

4   scheme to deceive the market by artificially inflating the price of Extreme Networks common

5   stock. *Id.* ¶ 73. Later, when Defendants' alleged misrepresentations and fraudulent conduct

6   became apparent to the market, the price of Extreme Networks common stock fell sharply. *Id.* As

7   a result of their purchases of Extreme Networks common stock during the relevant class period,

8   the Complaint alleges that the plaintiff and class members suffered economic loss under federal

9   securities laws. *Id.*

10          On December 1, 2015, the Court consolidated this case, *Hong v. Extreme Networks, Inc. et*

11   *al.*, No. 4:15-cv-04883-BLF, with another case, *Kasprzak v. Extreme Networks, Inc. et al.*, No.

12   5:15-cv-04975-BLF, upon stipulation of the parties. *See* Order Granting Stipulation and Proposed

13   Order Consolidating Cases (ECF No. 18). In the months following, the consolidated case,

14   proceeding under the present master file number, garnered four separate motions seeking

15   appointment of lead plaintiff status. Those four motions were on behalf of (1) William Reardon,

16   an individual (ECF No. 18); (2) Mark Kasprzak, an individual (ECF No. 23); (3) Arkansas

17   Teacher Retirement System, an institutional investor (ECF No. 27); and (4) City of Lakeland

18   Employees Pension Plan, an institutional investor (ECF No. 28). Reardon and Kasprzak

19   subsequently withdrew their motions for lead plaintiff appointment, conceding that they did not

20   have the largest financial stake in the relief being sought by the class. *See* Notice of Withdrawal

21   of Motion Regarding Motion of William Reardon (ECF No. 55); Notice of Withdrawal of Motion

22   of Mark Kasprzak (ECF No. 42). This left the two competing lead plaintiff motions from

23   institutional investors, ATRS and Lakeland.

24          Lakeland filed papers in opposition to ATRS' lead plaintiff motion on January 5, 2016, *see*

25   (ECF No. 45), and ATRS filed a Reply on January 12, 2016, *see* (ECF No. 53). ATRS filed its

26   Opposition to Lakeland's lead plaintiff motion on January 5, 2016, *see* (ECF No. 44), and

27   Lakeland filed a Reply on January 12, 2016, *see* (ECF No. 51). Thereafter, pursuant to Civil

28   Local Rule 7-3(d), Lakeland filed a Statement of Recent Events, *see* (ECF No. 62), and Statement

United States District Court
Northern District of California

2

1    of Recent Decisions, *see* ("Statement of Recent Decisions," ECF No. 63), and ATRS filed a

2    Motion for Leave to File a Statement of Supplementary Materials, *see* (ECF No. 68).[1]  The Court

3    heard arguments on the Motions on May 5, 2016, and took the matter under submission.

4    **II.    LEGAL STANDARD**

5         The selection of a lead plaintiff or plaintiffs in class action litigation brought under federal

6    securities law is governed by the Private Securities Litigation Reform Act ("PSLRA")

7    amendments to the Securities Act of 1933 and the Securities Exchange Act of 1934.  *See* 15

8    U.S.C. §§ 77z–1, 78u–4.  In relevant part, the amendments provide that:

9    
10   

11   

12   
> the court shall consider any motion made by a purported class member in response to [the required notice of the filing of a class action suit], including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interests of class members.

13   15 U.S.C. § 78u–4 (a)(3)(B)(i).

14        As the Ninth Circuit in *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) described, the

15   PSLRA lays out a three-step process for identifying the lead plaintiff.  First is verification of the

16   proper posting of a "notice 'in a widely circulated national business-oriented publication or wire

17   service.'"  306 F.3d at 729 (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)).  Second is the district court's

18   consideration of "the losses allegedly suffered by the various plaintiffs before selecting as the

19   'presumptively most adequate plaintiff'—and hence the presumptive lead plaintiff—the one who

20   'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the

21   requirements of Rule 23 of the Federal Rules of Civil Procedure.'"  *Id.* at 729–30.  "In other

22   words, the district court must compare the financial stakes of the various plaintiffs and determine

23   which one has the most to gain from the lawsuit," and then determine "whether he satisfies the

24   requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Id.* at 730.  Third is

25   the opportunity for plaintiffs not found to be the presumptive lead plaintiff to rebut the

26   presumptive lead plaintiff's showing in satisfaction of the adequacy and typicality requirements

27   

28   [1] ATRS' Motion for Leave to File a Statement of Supplementary Materials pursuant to Civil Local Rule 7-3(d) is GRANTED.

United States District Court
Northern District of California

3

1  for lead plaintiff designation.  *Id.* at 730.

2  **III.    DISCUSSION**

3        **A.    Notice**

4        There is no dispute that notice pursuant to 15 U.S.C. § 78u–4(a)(3)(A)(I) was properly

5  given.  *See Cavanaugh*, 306 F.3d at 729.  The Court therefore proceeds to step two.

6        **B.    Presumptively Most Adequate Plaintiff**

7        The PSLRA sets forth a rebuttable presumption that the "most adequate plaintiff," that is,

8  the one who is to be selected as lead plaintiff, is the one who:

9
10
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

11
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

12
13
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

14        This presumption

15
16
> may be rebutted only by proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

17
> (aa) will not fairly and adequately protect the interests of the class; or

18
19
> (bb) is subject to unique defenses that render such plaintiff incapable of inadequately representing the class.

20  *Id.*

21        With respect to the candidate with the largest financial interest in the relief sought—*i.e.*,

22  the potential recovery—Lakeland does not dispute that ATRS holds that title.  *See* Opp. at 2–3

23  (explaining that it is the movant with "the next largest financial interest" after ATRS).  ATRS'

24  submitted declaration certifies that it suffered approximately $726,143 in losses on a last-in, first-

25  out basis.  *See* Declaration of Michael W. Stocker in Support of the Motion of Arkansas Teacher

26  Retirement System ("Stocker Decl.," ECF No. 30), Exh. B.  The next largest loss is Lakeland's, at

27  approximately $79,439.  *See* Declaration of Brian O. O'Mara in Support of the City of Lakeland

28  Employees Pension Plan (ECF No. 29), Exh. B.  Thus, ATRS' financial interest in the litigation is

1    on the order of magnitudes larger than that suffered by Lakeland.

2         Once the Court determines which plaintiff has the largest financial interest, "[it] must

3    appoint that plaintiff as lead, unless it finds that [that plaintiff] does not satisfy the typicality or

4    adequacy requirements" of Federal Rule of Civil Procedure 23(a).  *In re Cavanaugh*, 306 F.3d at

5    732.  Such an assessment focuses on the "typicality" and "adequacy" requirements, as *In re*

6    *Cavanaugh* explained that the other requirements in Rule 23(a) of numerosity and commonality

7    would preclude class certification by themselves.  *Id.* at 730 n.5.

8         The putative lead plaintiff satisfies the typicality requirement when it has suffered the same

9    injuries as absent class members, as a result of the same conduct by the defendants.  *Hanon v.*

10   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Here, ATRS, like all other members of

11   the putative class, purchased shares of Extreme Networks during the specified class period, when

12   the company's share prices were alleged to have been artificially inflated by Defendants'

13   misrepresentations.  ATRS, like all other members of the putative class, suffered damages when

14   those misrepresentations came to light.  ATRS, therefore, suffered the same injury as did the

15   absent class members, and it brings its claims premised on the same legal theories as the other

16   class members.  This is a sufficient showing that ATRS fulfills Rule 23(a)'s typicality

17   requirement.  *See also Welgus v. Trinet Grp., Inc.*, No. 15-CV-03625-BLF, 2015 WL 7770222, at

18   *3 (N.D. Cal. Dec. 3, 2015) (finding that a movant's claims were typical of those of the class

19   where he "purchased [the defendant company's] stocks during the Class Period . . . and . . .

20   allegedly suffered damages when [the defendants'] misrepresentations and/or omissions came to

21   light").

22        Rule 23(a)'s adequacy requirement is satisfied upon an acceptable showing that the class

23   representative and its counsel do not "have any conflicts of interest with other class members" and

24   that the class representative and its counsel will "prosecute the action vigorously on behalf of the

25   class."  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  The Court finds that ATRS has

26   made that satisfactory showing here.  ATRS, a large and sophisticated institutional investor,

27   suffered substantial losses due to Defendants' alleged fraud, and therefore has a sufficient interest

28   in the outcome of this case to ensure vigorous prosecution.  *See* Declaration of Michael W.

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1   Stocker in Further Support of Arkansas Teacher Retirement System (ECF No. 54), Exh. A ¶ 2.

2   The alignment of ATRS' interests with those of the class is magnified by its fiduciary duties as a

3   combination contributory/non-contributory retirement system fund governed by state law. *Id.*

4   Arkansas Teacher provides retirement, disability and survivor benefits to employees of Arkansas

5   public schools and other educationally-related agencies, and as of June 30, 2014, it managed more

6   than $14.8 billion in net assets on behalf of more than 124,000 beneficiaries. *Id.*

7          Furthermore, ATRS is not a newcomer to such securities class action litigations, as it has

8   an excellent record of in the past bringing and resolving other securities class actions on behalf of

9   its beneficiaries and the class members in those cases. *Id.* ¶¶ 4, 5.  Lakeland has not argued that

10  ATRS will be unable to fairly and adequately protect the interests of the absent class members, or

11  that ATRS is subject to unique defenses that render it incapable of adequately representing the

12  class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  In all, the Court finds that ATRS has the sophistication,

13  resources, and experience necessary to vigorously prosecute the action on behalf of the class.

14  ATRS has satisfied Rule 23(a)'s adequacy requirement.

15         Because ATRS has established that it is the largest financial stakeholder in the litigation,

16  and because it has set forth a sufficient showing of the Rule 23(a) requirements, ATRS is deemed

17  the presumptive lead plaintiff in this case.

18         **C.     Rebutting ATRS as Presumptive Lead Plaintiff**

19         Lakeland argues that, notwithstanding ATRS' larger financial stake in the outcome of the

20  litigation and its satisfaction of the Rule 23(a) typicality and adequacy requirements, ATRS should

21  not be deemed lead plaintiff because it has been involved as lead plaintiff in too many securities

22  class actions.  In its declarations, ATRS represented that it had been appointed lead plaintiff in

23  twelve securities class actions in the last three years, *see* (ECF No. 54-1) ¶ 4, and later explained

24  during argument on the Motions that nine of those cases were being actively litigated—*i.e.*, not in

25  settlement or pending appeal.  Transcript of Proceedings (ECF No. 71) at 4:20–6:4.  Lakeland

26  points to the "professional plaintiff" provision in the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(vi),

27  which caps the number of times a "person" may be lead plaintiff in any three-year period to five

28  times.  It argues that the bar places a rebuttable presumption against ATRS' appointment as lead

1    plaintiff in this case, and that the burden falls upon ATRS to show special circumstances for why

2    the bar should be lifted.

3          ATRS disagrees and contends that Lakeland's interpretation of the professional plaintiff

4    bar contravenes Congress' purpose in enacting the PSLRA in the first place, and applies § 78u-

5    4(a)(3)(B)(vi) in a way incongruous with the ends the Legislature had intended the professional

6    plaintiff bar to serve.  It argues that the "person" to which the bar applies does not include

7    institutional investors like itself or Lakeland, who commonly need to exceed the 5-and-3 limit

8    under § 78u-4(a)(3)(B)(vi).  This being the case, ATRS argues, the only presumption that applies

9    here is that set forth under § 78u-4(a)(3)(B)(iii)(I), which establishes the presumptive lead plaintiff

10   as the movant with the largest financial stake and who satisfies the requirements under Rule 23(a).

11   Because ATRS has done that here, it argues, the burden falls upon Lakeland to show

12   circumstances for why ATRS should not be lead plaintiff in prosecuting this case.

13          Pursuant to the PSLRA's "professional plaintiff" provision:

14          [e]xcept as the court may otherwise permit, consistent with the
             purposes of this section, a person may be a lead plaintiff, or an
15          officer, director, or fiduciary of a lead plaintiff, in no more than 5
             securities class actions brought as plaintiff class actions pursuant to
16          the Federal Rules of Civil Procedure during any 3–year period.

17   15 U.S.C. § 78u–4(a)(3)(B)(vi).  To whom the professional plaintiff bar applies has been the

18   subject of some discussion in years past.  In its opposition, Lakeland cites almost exclusively to

19   out-of-district cases that have either expressly or impliedly held that § 78u–4(a)(3)(B)(vi) applies

20   to institutional investors as well as to individual investor plaintiffs.  *See* Opp. at 6 (citing *Cunha v.*

21   *Hansen Nat. Corp.*, No. EDCV 08-01249-SGLJCX, 2009 WL 2029797, at *3–4 (C.D. Cal. July

22   13, 2009); *In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725, slip op. at 10 (W.D. Mo. Dec. 19,

23   2005); *Thompson v. Shaw Grp., Inc.*, No. 04-1685, slip op. at 11–13 (E.D. La. Dec. 14, 2004); *In*

24   *re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002); *In re Unumprovident Corp.*

25   *Sec. Litig.*, No. 03-0049 (E.D. Tenn. Nov. 6, 2003); *Chiaretti, et al. v. Orthodontic Ctrs. of Am.,*

26   *Inc.*, No. 03-1027, slip op. at 3–4 (E.D. La. Aug. 28, 2003)).  The only case within this district that

27   Lakeland cites is a 1999 case, *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156–57

28   (N.D. Cal. 1999), in which the court concluded that "the text of [§ 78u–4(a)(3)(B)(vi)] contains no

United States District Court
Northern District of California

7

1   flat exemption for institutional investors."

2          However, of the cases to have come out of this district in the decade and a half since

3   *Aronson*, all have held that § 78u–4(a)(3)(B)(vi) is not a bar to institutional investors—and with

4   good reason. *See, e.g.*, *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 409–12 (N.D. Cal.

5   2012); *In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 WL 2220601, at

6   *2–3 (N.D. Cal. May 27, 2008); *In re Impax Labs., Inc. Sec. Litig.*, No. C 04-04802 JW, 2008 WL

7   1766943, at *9 (N.D. Cal. Apr. 17, 2008); *Casden v. HPL Techs., Inc.*, No. C-02-3510 VRW,

8   2003 WL 27164914, at *9–11 (N.D. Cal. Sept. 29, 2003); *In re Network Assocs., Inc., Sec. Litig.*,

9   76 F. Supp. 2d 1017, 1027–31 (N.D. Cal. 1999).  The professional plaintiff bar expressly states

10  that, "*consistent with the purposes of this section*, a person may be a lead plaintiff, or an officer,

11  director, or fiduciary of a lead plaintiff, . . . in no more than 5 securities class actions . . . during

12  any 3–year period."  *Id.* (emphasis added).

13         As an initial matter, Lakeland argues that resort to the legislative purpose underlying the

14  professional plaintiff bar is improper because the statutory language is clear.  Opp. at 4–6.  Here,

15  the issue is whether an institutional investor is a "person," as that term is understood in § 78u–

16  4(a)(3)(B)(vi).  If so, the professional plaintiff bar applies to ATRS, and raises a rebuttable

17  presumption that ATRS is precluded from serving as lead plaintiff in this case.  If not, the

18  professional plaintiff bar would not apply to ATRS, and it is up to Lakeland to rebut the

19  presumption under § 78u-4(a)(3)(B)(iii)(I) that ATRS is the most adequate plaintiff.

20         Citing to *In re Cavanaugh*, 306 F.3d at 732, Lakeland argues that a "straightforward"

21  reading of § 78u–4(a)(3)(B)(vi) reveals that the professional plaintiff bar encompasses institutional

22  investors like ATRS.  Opp. at 4–6.  It argues that after all, "a person cannot be an officer, director

23  or fiduciary of himself, herself or another individual."  *Id.* at 5.  This argument is problematic for

24  several reasons, however.  First, *In re Cavanaugh* is distinguishable because there, the Ninth

25  Circuit dealt with the district court's failure to apply the "straightforward application" of the

26  rebuttable presumption that the movant with the largest financial stake was the most adequate

27  plaintiff.  *See* 306 F.3d at 732.  It did not deal at all with the professional plaintiff bar.  Second,

28  just because § 78u–4(a)(3)(B)(vi) contemplates that officers, directors, or fiduciaries of a lead

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    plaintiff may be subject to the 5-and-3 cap does not necessarily lead to the conclusion that the

2    professional plaintiff bar applies to institutional investors.  The term, "institutional investor," holds

3    a particular understanding within the world of securities litigation, and is distinguishable from, for

4    instance, an entity created merely for the purpose of holding securities to claim standing in

5    securities class action lawsuits.  As one district court put it:

6            [T]he Court is less concerned about a plaintiff in the business of
             security investments being lead plaintiff on numerous occasions
7            than if the court were to find some sort of shell corporation created
             for the purpose of marshaling claims to be asserted in a class action
8            securities claim.   The latter "professional plaintiff" is the one
             Congress appears to have had in mind when it created the
9            presumptive bar against repeat plaintiffs.

10   *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (declining to follow

11   *Aronson*).  In such cases, the entity—like the one envisioned in *Piven*—could clearly have

12   officers, directors and/or fiduciaries, but would not be an institutional investor like ATRS or

13   Lakeland.  In all, Lakeland's arguments that the statutory language in § 78u–4(a)(3)(B)(vi) is

14   "straightforward" and unambiguous are unconvincing.  Nowhere does the statute define "person."

15   And, on the face of the text, it is not clear that the professional plaintiff bar includes institutional

16   investors within its ambit.  Simply put, the term, "person" as used in § 78u–4(a)(3)(B)(vi), does

17   not lend itself to a clear understanding that institutional investors such as ATRS are necessarily

18   subject to the 5-and-3 cap, as Lakeland urges the Court to conclude.

19           In light of this ambiguity, the Court "look[s] to the statute's overall purpose and legislative

20   history." *In re Heller Ehrman LLP*, No. 10-CV-03134 JSW, 2011 WL 635224, at *4 (N.D. Cal.

21   Feb. 11, 2011) (citing *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1133 (9th Cir. 2009)).  The "objective in

22   interpreting a statute is to ascertain the intent of Congress." *In re Co Petro Mktg. Grp., Inc.*, 680

23   F.2d 566, 570 (9th Cir. 1982) (citing *Hughes Air Corp. v. Pub. Utils. Comm'n*, 644 F.2d 1334,

24   1337 (9th Cir. 1981)).  Indeed, § 78u–4(a)(3)(B)(vi) mandates the Court to apply the bar

25   "consistent with the purposes of this section."  Fortunately for us, the purposes of the PSLRA—

26   and specifically, the professional plaintiff bar—are clear.

27           The Ninth Circuit in *In re Silicon Graphics Securities Litigation*, 183 F.3d 970, 977 (9th

28   Cir. 1999), explained that the Congressional Conference Report for the PSLRA represents "the

9

1  most reliable evidence of congressional intent."  As is relevant here, Congress explained in its

2  Conference Report that the type of "professional plaintiff" it had in mind when drafting § 78u–

3  4(a)(3)(B)(vi) were those who had merely tenuous connections to public companies, who under

4  the old statutory scheme raced to the courthouse to file a securities complaint to collect bounty

5  payments or bonuses:

6  
> Professional plaintiffs who own a nominal number of shares in a
> wide array of public companies permit lawyers readily to file

7  
> abusive securities class action lawsuits.  Floor debate in the Senate
> highlighted that many of the "world's unluckiest investors"

8  
> repeatedly appear as lead plaintiffs in securities class action
> lawsuits.  These lead plaintiffs often receive compensation in the

9  
> form of bounty payments or bonuses.

10  
> The Conference Committee believes these practices have
> encouraged the filing of abusive cases.  Lead plaintiffs are not

11  
> entitled to a bounty for their services.  *Individuals who are*
> *motivated by the payment of a bounty or bonus should not be*

12  
> *permitted to serve as lead plaintiffs.  These individuals do not*
> *adequately represent other shareholders*—in many cases the "lead*

13  
> plaintiff" has not even read the complaint.

14  H.R. Conf. Rep. 104–369, at 32–33 (emphasis added).  To curb the troubling proliferation of

15  lawyer-driven securities class actions and better serve the interests of the absent class members,

16  Congress sought to increase the participation of institutional investors in prosecuting securities

17  cases:

18  
> The Conference Committee believes that increasing the role of
> institutional investors in class actions will ultimately benefit

19  
> shareholders and assist courts by improving the quality of
> representation in securities class actions. . . .

20  

21  
> . . . .

22  
> . . . Institutional investors and other class members with large
> amounts at stake will represent the interests of the plaintiff class

23  
> more effectively than class members with small amounts at
> stake. . . .

24  *Id.* at 34.  Thus, it explained that the professional plaintiff bar, encapsulated in § 78u–

25  4(a)(3)(B)(vi), was not intended to apply to institutional investors:

26  
> The Conference Report seeks to restrict professional plaintiffs from
> serving as lead plaintiff by limiting a person from serving in that

27  
> capacity more than five times in three years.  *Institutional investors*
> *seeking to serve as lead plaintiff may need to exceed this limitation*

28  
> *and do not represent the type of professional plaintiff this legislation*

> *seeks to restrict.  As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years.  The Conference Committee does not intend for this provision to operate at cross purposes with the "most adequate plaintiff" provision.*

*Id.* at 35 (emphasis added).

In *In re Diamond Foods*, a case that presented facts remarkably similar to the ones here, Judge Alsup concluded that § 78u–4(a)(3)(B)(vi) did not bar the institutional investor in that case. 281 F.R.D. at 409–11.  *In re Diamond Foods* involved a putative securities class action in which the two candidates left vying for lead plaintiff were both institutional investors—Mississippi Public Employees' Retirement System ("Mississippi PERS") and New England Carpenters Guaranteed Annuity and Pension Funds ("New England Carpenters").  *Id.*  Mississippi PERS held the larger financial stake in the outcome of the case, alleging a loss of $1,819,454.  *Id.*  New England Carpenters, in contrast, alleged only $252,038.  *Id.*  In opposing Mississippi PERS' motion, New England Carpenters observed that Mississippi PERS had been appointed lead plaintiff in at least nine securities class actions in the three years leading up to the suit and was, by the time of the suit, serving as lead plaintiff in at least eleven cases total.  *Id.* at 409, 412. Mississippi PERS, they argued, should be presumptively barred from lead plaintiff status under the professional plaintiff bar.  *Id.*  In contrast, New England Carpenters did not exceed the 5-and-3 threshold under § 78u–4(a)(3)(B)(vi), and therefore argued that it should be appointed lead plaintiff.  *Id.* at 409.

In holding that Mississippi PERS was not barred from lead plaintiff appointment under § 78u–4(a)(3)(B)(vi), the court declined to follow *Aronson*, and noted that "[t]he majority of judges in our district who have considered the issue and a judge in a neighboring district have concluded that the 'professional plaintiff' provision of the PSLRA was not intended to apply to institutional investors."  *Id.* at 410 (citing *In re Impax Labs.*, 2008 WL 1766943, at *9; *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 WL 8071391, at *4–6 (N.D. Cal. Dec. 20, 2006); *Casden*, 2003 WL 27164914, at *9–11; *In re Gemstar–TV Guide Intern., Inc. Sec. Litig.*, 209 F.R.D. 447, 454–55 (C.D. Cal. 2002)).  Instead, *In re Diamond Foods* explained that the Conference Report evidenced an express intention on the part of the drafters that the

1   professional plaintiff bar was *not* to apply to institutional investors.  *Id.* at 410–11.

2        Here, like in *In re Diamond Foods*, we have two institutional investors, and the

3   institutional investor who is presumed to be the most adequate plaintiff under § 78u-

4   4(a)(3)(B)(iii)(I) has exceeded the statutory limit under § 78u–4(a)(3)(B)(vi).  Lakeland has not

5   argued, for example, that ATRS or its named counsel is conflicted from lead plaintiff appointment,

6   is only tangentially or nominally related to the action, has improperly consolidated shares to

7   inflate its financial stake, has perpetrated a fraud to garner lead plaintiff status, or is otherwise

8   unfit to serve as lead plaintiff in this case.  Instead, Lakeland rests its argument on the observation

9   that ATRS has exceeded the statutory 5-and-3 bar.  The Court finds Judge Alsup's reasoning in *In

10  re Diamond Foods* persuasive, and declines to accept Lakeland's argument, which relies almost

11  entirely on out-of-district authority and *Aronson*, which has been distinguished in subsequent case

12  law from this District.  Because § 78u–4(a)(3)(B)(vi) is to be applied "consistent with the purposes

13  of this section," any interpretation that the 5-and-3 cap applies to institutional investors would

14  contravene the very purpose for which the professional plaintiff bar was enacted.  Congress said so

15  as much, when it explained that "increasing the role of institutional investors in class actions will

16  ultimately benefit shareholders and assist courts by improving the quality of representation in

17  securities class actions."  H.R. Conf. Rep. 104–369, at 34.  To serve that end, it explained that,

18  under the professional plaintiff bar, "[i]nstitutional investors seeking to serve as lead plaintiff . . .

19  do not represent the type of professional plaintiff this legislation seeks to restrict," and that courts

20  should avoid the "unintended consequence of disqualifying institutional investors from serving

21  more than five times in three years."  *Id.* at 35.  In so holding, the Court agrees with *In re

22  Diamond Foods* and the growing and uniform body of case law in this District holding that "the

23  presumption in favor of finding the lead plaintiff candidate with the largest financial interest to be

24  the most adequate plaintiff has not been rebutted on the theory that [ATRS] is precluded from

25  serving as lead plaintiff due to the professional plaintiff bar."  *In re Diamond Foods*, 281 F.R.D. at

26  411.

27        The fact that ATRS has been appointed lead plaintiff in twelve securities class actions

28  within the last three years is not out of bounds from other similar lead plaintiff decisions.  In fact,

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1   just earlier this year in March, Judge Gonzales Rogers appointed ATRS as lead plaintiff in a case

2   when, even though it was already lead plaintiff in "at least twenty cases" within the prior three

3   years, had twelve of those cases actively litigated, and had four other lead plaintiff motions

4   pending.  *See* Statement of Recent Decisions, Exh. B at 6:16–21; *see also In re Nimble Storage,*

5   *Inc. Securities Litigation*, No. 15-5803 (N.D. Cal. Mar. 28, 2016).  Similarly in *Iron Workers*

6   *Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp.

7   2d 461, 466 (S.D.N.Y. 2009), the court held that § 78u–4(a)(3)(B)(vi) was not a bar to lead

8   plaintiff appointment in spite of the fact that it was involved in fifteen securities fraud actions.

9   Finally in *Naiditch v. Applied Micro Circuits Corp.*, No. 01-CV-0649-K-AJB, 2001 WL 1659115,

10  at *3 (S.D. Cal. Nov. 5, 2001), the court there remarked that "[f]or such a large institutional

11  investor, 11 appointments as lead plaintiff is quite understandable, and in fact could evince a

12  laudatory zeal to fulfill its fiduciary duties."  Here, ATRS' lead plaintiff appointment in twelve

13  other securities cases is not so out of line as to compel a different result, as Lakeland urges.

14      In all, ATRS has established that it is the most adequate plaintiff because it has by far the

15  largest financial stake in the outcome of this litigation, and has satisfied the requirements under

16  Rule 23(a).  The competing movant for lead plaintiff status, Lakeland, has not rebutted this

17  presumption, either on the basis that ATRS is unfit to serve as lead plaintiff, or that it is precluded

18  from serving as lead plaintiff due to the professional plaintiff bar.

19      **D.      Discretion Under § 78u–4(a)(3)(B)(vi)**

20      Even if the Court were to hold that the professional plaintiff bar applied to institutional

21  investors like ATRS, § 78u–4(a)(3)(B)(vi) provides the Court with the discretion to lift the bar in

22  appropriate cases.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(vi) (restricting professional plaintiffs "[e]xcept

23  as the court may otherwise permit"); *see also In re Diamond Foods*, 281 F.R.D. at 411 ("[T]he

24  text of the statute clearly provides courts with the authority to lift the bar, even for those who may

25  be considered 'professional plaintiffs,' if they choose to do so in an exercise of discretion.");

26  *Casden*, 2003 WL 27164914, at *10 (observing that, in the alternative, some courts have

27  "exercised their discretion under § 78u–4(a)(3)(B)(vi) to lift the presumptive bar with respect to

28  institutional plaintiffs").  The Court finds it appropriate here for three reasons.

United States District Court
Northern District of California

1    First, should the Court decline to lift the bar here, it would lead to a result that is precisely

2    "at cross purposes with the 'most adequate plaintiff' provision," contrary to congressional intent.

3    ATRS has set forth the requisite showing under § 78u-4(a)(3)(B)(iii)(I) by offering proof that it

4    has the largest financial stake in the outcome of this case, and that it also satisfies the typicality

5    and adequacy requirements under Rule 23(a).  No other movant has attempted to rebut the

6    presumption here that ATRS is the most adequate plaintiff to prosecute this action.

7    Second, appointing ATRS as the lead plaintiff in this action would be "consistent with" the

8    purposes of the PSLRA.  The Conference Report explained that one of the end goals of the

9    statutory reforms was "to increase the likelihood that institutional investors will serve as lead

10    plaintiffs," because "increasing the role of institutional investors in class actions will ultimately

11    benefit shareholders and assist courts by improving the quality of representation in securities class

12    actions." H.R. Conf. Rep. No. 104–369, at 34; *see also Casden*, 2003 WL 27164914, at \*10 ("The

13    PSLRA ensures that 'large institutional plaintiffs with expertise in the securities market would

14    control the litigation, rather than lawyers.'" (citation omitted)).

15    And third, there is no evidence here that ATRS would be unable to efficiently function as

16    lead plaintiff.  As discussed above, ATRS has shown that it has the sophistication, resources, and

17    experience necessary to vigorously prosecute the action on behalf of the class.  The fact that it has

18    been appointed lead plaintiff in more cases than the statutory limit is "understandable," *Naiditch*,

19    2001 WL 1659115, at \*3, given than it manages $14.8 billion on behalf of over 124,000

20    beneficiaries.  *See In re Gemstar*, 209 F.R.D. at 454 (finding "unremarkable" that state pension

21    fund in charge of $10 billion in assets had been appointed lead plaintiff in seven cases).

22    For these reasons, even if the professional plaintiff bar were to apply to institutional

23    investors like ATRS, the Court would find it appropriate in this case to exercise its discretion

24    under the statute and lift the 5-and-3 bar to appoint ATRS the lead plaintiff.

25    **E.    Appointment of Lead Counsel**

26    Under the PLSRA, the lead plaintiff is given the right, subject to court approval, to "select

27    and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v).  "[T]he district court

28    should not reject a lead plaintiff's proposed counsel merely because it would have chosen

14

United States District Court
Northern District of California

1    differently." *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f

2    the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer

3    to that choice." *Id.* at 712 (citations omitted).

4          No parties have objected to ATRS' selection of Labaton Sucharow LLP ("Labaton

5    Sucharow") as lead counsel and Berman DeValerio as liaison counsel.  Labaton Sucharow

6    provided proofs attesting to its expertise in prosecuting securities class actions, and has

7    successfully litigated major securities class actions in the past. *See* Stocker Decl. Exh. 4.

8    Likewise, ATRS represents that Berman DeValerio has had significant experience prosecuting

9    securities cases and has been involved in more than 100 federal securities class actions.  As such,

10   and given the two firms' substantial experience in the area of securities fraud class action lawsuits,

11   the Court defers to ATRS' choice of counsel.

## IV.   ORDER

13         For the foregoing reasons, IT IS HEREBY ORDERED that:

14         1.   the Motion to appoint the Arkansas Teacher Retirement System as lead plaintiff is

15              GRANTED, without prejudice to Defendants' right to challenge the adequacy of

16              the lead plaintiff as class representative at the time of class certification; and

17         2.   the Motion to appoint Labaton Sucharow LLP as lead counsel and Berman

18              DeValerio as liaison counsel is GRANTED; and

19         3.   the Motion to appoint the City of Lakeland Employees Pension Fund as lead

20              plaintiff is DENIED.

21

22   **IT IS SO ORDERED.**

23

24   Dated:  June 28, 2016

25                                                        _____

26                                                        BETH LABSON FREEMAN
                                                          United States District Judge

27

28

15