```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION


 4
        HONG,                        )   CV-15-4833-BLF
 5                                   )
                      PLAINTIFF,     )   SAN JOSE, CALIFORNIA
 6                                   )
                   VS.               )   FEBRUARY 9, 2017
 7                                   )
        EXTREME NETWORKS, INC., ET AL, )  PAGES 1-66
 8                                   )
                      DEFENDANT.     )
 9                                   )
                                     )
10      _____      )

11                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE BETH LABSON FREEMAN
12                UNITED STATES DISTRICT JUDGE

13


14       A P P E A R A N C E S:

15         FOR THE PLAINTIFF:  BY:  THOMAS A. DUBBS
                                    IRINA VASILCHENKO
16                             LABATON SUCHAROW LLP
                               140 BROADWAY
17                             NEW YORK, NY 10005

18         FOR THE DEFENDANT:  BY:  SHIRLI FABBRI WEISS
                                    DAVID  PRIEBE
19                                  DIANA MALTZER
                               DLA PIPER LLP (US)
20                             2000 UNIVERSITY AVENUE
                               EAST PALO ALTO, CA 94303-2248
21

22             APPEARANCES CONTINUED ON THE NEXT PAGE

23        OFFICIAL COURT REPORTER:  SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        SAN JOSE, CALIFORNIA              FEBRUARY 9, 2017

 2                      P R O C E E D I N G S

 3        (COURT CONVENED AT 9:25 A.M.)

09:25:58   4            THE CLERK:  CALLING CASE 15-4883.  HONG VERSUS

09:26:03   5   EXTREME NETWORKS, ET AL.

09:26:04   6        COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

09:26:41   7            THE COURT:  ALL RIGHT.  LET ME GET APPEARANCES.

09:26:43   8            MR. DUBBS:  GOOD MORNING, YOUR HONOR.

09:26:45   9        MAY IT PLEASE THE COURT.  MY NAME IS THOMAS DUBBS FROM THE

09:26:50  10   LABATON FIRM.  AND WITH MY PARTNER, IRINA VASILCHENKO, WE

09:26:53  11   REPRESENT THE LEAD PLAINTIFF, ARKANSAS TEACHERS.

09:26:56  12            THE COURT:  GOOD MORNING.

09:26:57  13            MR. DUBBS:  GOOD MORNING.

09:26:57  14            MS. WEISS:  GOOD MORNING, YOUR HONOR.

09:27:03  15        SHIRLI WEISS, DLA PIPER.  AND MY PARTNER DAVID PRIEBE, AND

09:27:08  16   MY ASSOCIATE, DIANA MALTZER IS HERE, ALL REPRESENTING EXTREME

09:27:12  17   NETWORKS, JOHN KURTZWEIL, CHARLES BERGER, AND KENNETH AROLA.

09:27:17  18        AND MAY IT PLEASE THE COURT, I WOULD LIKE TO INTRODUCE THE

09:27:20  19   EXECUTIVE VICE PRESIDENT AND GENERAL COUNSEL OF MY CLIENT,

09:27:25  20   ED MEYERCORD.

09:27:25  21            THE COURT:  GOOD MORNING AND WELCOME.  THANK YOU FOR

09:27:27  22   BEING HERE.

09:27:28  23            MS. WEISS:  AS WELL AS THE ASSOCIATE GENERAL COUNSEL,

09:27:32  24   KATE MOTIEY.

09:27:32  25            THE COURT:  ALL RIGHT.
```

09:27:36   1        WELL, MR. DUBBS, YOU HAVE PUT AN EXTRAORDINARY AMOUNT OF

09:27:41   2   WORK INTO THIS COMPLAINT.

09:27:43   3        MS. WEISS, I WILL LET YOU START, BUT LET ME MAKE SOME

09:27:46   4   INITIAL COMMENTS ON THIS.  I MEAN, I THINK THERE'S SOME

09:27:50   5   PROBLEMS WITH THE COMPLAINT, BUT MY INITIAL COMMENTS AND MY

09:27:56   6   QUESTIONS ARE, AND MS. WEISS YOU CAN HELP ME WITH THIS TO BEGIN

09:28:02   7   WITH, DO YOU -- ARE YOU SUGGESTING THAT THE COURT'S OBLIGATION

09:28:08   8   HERE IS TO FIRST FILTER ALL OF THE ALLEGEDLY FALSE STATEMENTS

09:28:16   9   INTO ACTIONABLE AND NON-ACTIONABLE, AND THEN EVALUATE WHETHER

09:28:21   10  THERE IS AN ADEQUATE CLAIM OF SCIENTER FOR THOSE THAT ARE

09:28:28   11  ACTIONABLE?

09:28:29   12        MS. WEISS:  CERTAINLY, YOUR HONOR, THAT IS AN

09:28:33   13  APPROACH THAT THE COURT CAN TAKE.

09:28:35   14        THE COURT:  THAT'S A VERY ARDUOUS TASK.

09:28:38   15        MS. WEISS:  WELL, YOUR HONOR, I THINK THE COMPLAINT

09:28:39   16  IS PROLIX AND REPETITIVE, BUT I THINK THE COMPLAINT REALLY

09:28:47   17  FAILS TO STATE A CLAIM WITH RESPECT TO THE MOST BASIC ELEMENTS

09:28:53   18  OF A SECURITIES FRAUD, FALSITY AND SCIENTER.

09:28:56   19        THE COURT:  WELL, THAT REALLY IS THE NUT OF MY

09:28:58   20  QUESTION.  BECAUSE TYPICALLY AT THIS STAGE, AND THIS IS THE

09:29:01   21  FIRST TIME I'VE REVIEWED THE COMPLAINT BECAUSE WE WENT THROUGH

09:29:06   22  A LONG PROCESS ON GETTING TO THE CONSOLIDATED COMPLAINT.

09:29:09   23        AND IT IS -- IT REFLECTS, IN MY VIEW, A TREMENDOUS AMOUNT

09:29:15   24  OF WORK.  IT'S NOT LIKE AN INITIAL COMPLAINT THAT ONE MIGHT SEE

09:29:18   25  THAT IS BOUND FROM ANY ITERATIONS.

09:29:22  1          SO, TYPICALLY, WHAT I WOULD BE DOING IS REVIEWING WHETHER

09:29:26  2     FALSITY AND SCIENTER HAVE BEEN PROPERLY SET FORTH IN THE

09:29:29  3     COMPLAINT.

09:29:29  4          MS. WEISS:  YES, YOUR HONOR.

09:29:30  5          THE COURT:  AND TYPICALLY, AN INITIAL GO-THROUGH

09:29:32  6     FINDS THAT -- I USUALLY FIND THINGS LACKING, MOST COURTS HAVE

09:29:35  7     IN THE PAST.  THERE ARE THOSE THAT GET RIGHT THROUGH BECAUSE

09:29:39  8     THEY'VE GOT IT THERE.  BUT YOU START OUT AND YOU SPEND A

09:29:42  9     SIGNIFICANT AMOUNT OF YOUR BRIEFING ON THE ISSUE OF WHAT CLAIMS

09:29:46  10    ARE ACTIONABLE AND WHAT AREN'T.  SO THAT'S REALLY WHAT I'M

09:29:50  11    ASKING YOU.

09:29:54  12         IF I FIND, AND MANY OF THE CASES DO THE SAME THING, THEY DO

09:29:57  13    THIS SORTING AND THEN SAY, BUT REGARDLESS, THERE'S NO ADEQUATE

09:30:00  14    ALLEGATION OF SCIENTER, ARE YOU SUGGESTING I CAN LOOK JUST AT

09:30:05  15    THE FALSITY SCIENTER REQUIREMENTS ON THIS GO-AROUND AND LEAVE

09:30:11  16    FOR ANOTHER DAY THE DETERMINATION OF WHAT'S ACTIONABLE AND WHAT

09:30:15  17    ISN'T?

09:30:15  18         MS. WEISS:  I THINK YOU CAN GO ABOUT IT THAT WAY,

09:30:16  19    YOUR HONOR.

09:30:17  20         CERTAINLY, I MEAN, THIS IS A CASE GLOBALLY, THERE'S NO

09:30:20  21    INSIDER SELLING, THERE'S NO DOCUMENTS SHOWN THAT CONTRADICTS

09:30:23  22    THE STATEMENTS OF THE DEFENDANTS.

09:30:27  23         THE CONFIDENTIAL WITNESSES HAVE VAGUE, GLOBAL, UNSPECIFIED

09:30:33  24    CRITICISMS THAT MOSTLY SOUND IN MISMANAGEMENT.  THEY ARE

09:30:38  25    EX-EMPLOYEES WHO CRITICIZE HOW THE COMPANY WENT ABOUT SELECTING

09:30:42  1  PEOPLE TO DO VARIOUS TASKS.

09:30:44  2      IT TALKS ABOUT A POWER STRUGGLE.  IT TALKS ABOUT CULTURE

09:30:48  3  CLASHES, BUT THERE ISN'T THAT -- THERE'S TWO SHIPS PASSING IN

09:30:53  4  THE NIGHT.  THERE'S NOT, MR. BERGER WENT TO CHINA AND VISITED

09:30:56  5  WITH LENOVO AND CAME AWAY THAT THEY WERE COMMITTED TO THIS

09:30:59  6  RELATIONSHIP, BUT I, A CONFIDENTIAL WITNESS, WAS AT THE SAME

09:31:03  7  MEETING AT THE SAME TIME AND THEY TOLD MR. BERGER THEY WERE NOT

09:31:05  8  GOING TO GIVE HIM ORDERS.

09:31:08  9      THERE'S NONE OF THAT DIRECT CONTRADICTION THAT YOU LOOK

09:31:11  10  FOR.

09:31:11  11      THERE'S NO, EVEN ATTEMPT AT A MOTIVE WITH RESPECT TO THE

09:31:15  12  FINANCIAL OFFICERS, CHIEF FINANCIAL OFFICERS.

09:31:19  13      THE COURT:  WELL, THERE IS MR. BERGER'S OWN STOCK

09:31:22  14  OPTION PLAN THAT IS ALLEGED.

09:31:23  15      MS. WEISS:  SO LET'S TALK ABOUT THAT, YOUR HONOR.

09:31:27  16      SO WITH RESPECT TO MR. BERGER, FIRST OF ALL, WHAT

09:31:29  17  PLAINTIFFS ALLEGE THAT THIS IS UNUSUAL, IS COMPLETELY

09:31:32  18  UNDERMINED BY THE RIGEL PHARMACEUTICALS CASE WHICH SAYS IT'S

09:31:39  19  CUSTOM AND COMMON PLACE FOR THE STOCK OPTIONS INCENTIVES TO BE

09:31:45  20  ALIGNED BETWEEN MANAGEMENT AND THE PROGRESS OF THE COMPANY.

09:31:47  21      THAT IS TOTALLY TRUE THROUGHOUT SILICON VALLEY.  SO HOW

09:31:51  22  PLAINTIFFS CAN MAKE THE ALLEGATION THAT THIS IS UNUSUAL IS

09:31:53  23  BEYOND ME.

09:31:53  24      THE COURT:  WELL, I THINK WHAT MR. DUBBS ALLEGES IS

09:31:55  25  THAT THIS MERE 30 DAYS OF MAINTAINING THE STOCK PRICE WAS

09:32:00   1    UNUSUAL.  I DON'T THINK HE SAYS ALL STOCK OPTIONS PLANS ARE.

09:32:03   2            MS. WEISS:  SO LET'S TALK ABOUT THAT, YOUR HONOR.

09:32:05   3        BASICALLY, IN PARAGRAPH 9 THEY ADMIT THAT ALL THE OPTIONS

09:32:08   4    ARE AWARDED TO MR. BERGER BY DECEMBER 31ST.  SO THE COURT --

09:32:12   5            THE COURT:  OF 2013.

09:32:15   6            MS. WEISS:  2013, RIGHT.

09:32:16   7            THE COURT:  OH, BEFORE.

09:32:17   8            MS. WEISS:  SO WAY BEFORE ALL THESE COMMENTS ARE

09:32:19   9    CHALLENGED.  AND OF COURSE, HE NEVER ENGAGES IN ANY INSIDER

09:32:23  10    SELLING AT ALL.

09:32:25  11        SO THIS NOTION THAT THESE STOCK OPTIONS ARE WORTH X,

09:32:29  12    THAT'S ALL BLACK SCHOLES, YOUR HONOR, THAT'S THEORETICAL, NEVER

09:32:34  13    MATERIALIZES.  SO NEITHER HE OR THE CHIEF FINANCIAL OFFICERS

09:32:38  14    EVER SELL ONE SHARE OF STOCK.

09:32:40  15        AND AS TO THE TIME PERIOD BEFORE MR. BERGER IS AWARDED THE

09:32:43  16    OPTIONS, THE COURT SHOULD FOCUS IN ON THE SEPTEMBER 12, 2013,

09:32:48  17    STATEMENTS AND NOVEMBER 4TH.

09:32:50  18        AND WHAT ARE THOSE?  I MEAN, THIS IS PRIOR TO THE ACTUAL

09:32:53  19    CLOSING OF THE MERGER, THEY ARE ALL ASPIRATIONAL.  AND

09:32:58  20    MR. BERGER IS SPECIFICALLY ASKED ON THE CONFERENCE CALL, WHAT

09:33:01  21    ARE YOUR REVENUE PROJECTIONS?  AND HE DECLINES TO GIVE A

09:33:06  22    REVENUE PROJECTION.  HE BASICALLY SAYS, WELL, IT'S TOO EARLY TO

09:33:10  23    TELL.

09:33:10  24        I MEAN, THIS IS A MAN WHO IS TRYING TO DEFRAUD THE MARKET,

09:33:12  25    HE CAN'T EVEN COME UP WITH A REVENUE PROJECTION?  NO.  YOU ARE

09:33:16  1    TALKING ABOUT A VERY CAUTIOUS MAN.  HE WORRIES ALOUD A NUMBER

09:33:20  2    OF TIMES.  HE SAYS WELL, YOU KNOW, LENOVO, THEY'VE GOT THIS BIG

09:33:24  3    INTEGRATION COMING THEMSELVES, THEY MAY OR MAY NOT DO THIS

09:33:29  4    DEAL.  PROJECTIONS ARE TWO YEARS IN THE FUTURE.

09:33:32  5         SO GLOBALLY, YOUR HONOR, IF THE COURT LOOKS AT THE

09:33:36  6    PROJECTIONS THAT ARE MADE, THEY ARE CONSERVATIVE, THEY ARE WAY

09:33:39  7    ALONG IN THE FUTURE.

09:33:40  8         AND THAT'S A VERY TELL TALE SIGN WHEN THE COMPANY IS

09:33:44  9    MAKING PROJECTIONS LONG IN THE FUTURE, YOU KNOW, MR. BERGER IS

09:33:48  10   LOOKING AT PRODUCT INTEGRATIONS TWO YEARS IN THE FUTURE.

09:33:54  11   ANYTHING -- I MEAN, LOOK WHAT'S HAPPENED IN THE PAST FOUR

09:33:58  12   MONTHS, ANYTHING CAN HAPPEN IN THAT TIME PERIOD, YOUR HONOR.

09:34:01  13        SO THIS IS NOT A STOCK THAT'S BEING HYPED, BY THE TIME

09:34:04  14   MR. BERGER'S OPTIONS ARE AWARDED, THAT TIME PERIOD, HE HAS MADE

09:34:11  15   VERY, VERY CAUTIOUS, YES, OPTIMISTIC STATEMENTS, WHO WOULDN'T

09:34:15  16   BE.  THIS IS AN INTEGRATION THAT WAS STRONGLY SUPPORTED BY THE

09:34:18  17   BOARD.  THE PLAINTIFFS GO OUT OF THEIR WAY TO ADMIT THAT.  THIS

09:34:22  18   IS NOT DRIVEN BY MR. BERGER.

09:34:24  19        SO BASICALLY, YOU HAVE A SITUATION, YOUR HONOR, WHERE

09:34:29  20   THERE'S NO EVIDENCE OF SCIENTER WHATSOEVER, REALLY NONE.  AND

09:34:34  21   THERE'S NO EVIDENCE OF FALSITY.  BASICALLY THERE ARE STATEMENTS

09:34:38  22   MADE THAT THERE WERE INTEGRATION PROBLEMS.  BUT MR. BERGER

09:34:42  23   HIMSELF ADMITS TO THOSE.

09:34:46  24        IN MAY OF 2014, THEN AGAIN IN AUGUST OF 2014, HE'S THE ONE

09:34:50  25   WHO IS SAYING, WELL, WE'VE LET CHRIS CROWELL GO, I'M GOING TO

09:34:54  1    HAVE MARKETING REPORT TO ME, I'M GOING TO HAVE SALES REPORT TO

09:34:58  2    ME, AND WE'VE GOT INTEGRATION ISSUES.

09:35:00  3         NO, HE DOESN'T GIVE A LAUNDRY LIST AND START DEFAMING

09:35:03  4    PEOPLE, OF COURSE HE DOESN'T DO THAT, NOBODY DOES THAT.  BUT HE

09:35:08  5    NOT ONLY SPECIFICALLY TALKS ABOUT THE CHALLENGES THAT ARE BEING

09:35:11  6    FACED, BUT IN ADDITION, IN THE BACKGROUND, EVERY SINGLE QUARTER

09:35:15  7    THE COMPANY IS CAREFULLY LAYING OUT THE RISK FACTORS AS TO WHY

09:35:18  8    IT MIGHT NOT ACHIEVE ITS FINANCIAL METRICS.

09:35:21  9         AND AT THE END OF THE DAY, YOUR HONOR, THAT'S ALL THE

09:35:25  10   STOCK HOLDERS ARE CONCERNED WITH, INTEGRATION, NO INTEGRATION,

09:35:28  11   ARE YOU GOING TO MAKE YOUR FINANCIAL NUMBERS, HERE'S THE

09:35:31  12   REASONS WHY WE MIGHT NOT MAKE IT, HERE'S WHY THE INTEGRATION

09:35:35  13   MAY FAIL.

09:35:36  14        THEY ADD A RISK FACTOR IN MAY, THEY SAY OUR CUSTOMERS

09:35:40  15   MIGHT NOT ACCEPT OUR PRODUCTS.  WHOA, I MEAN THIS IS A NEW RISK

09:35:45  16   FACTOR.

09:35:45  17        THE LAWYERS CAN ONLY DO THAT WITH MANAGEMENT RIGHT AT

09:35:48  18   THEIR SIDES SAYING OKAY, WHAT CAN GO WRONG, WHAT IS GOING

09:35:52  19   WRONG, WHAT CAN GO WRONG.

09:35:54  20        AND SO YOU HAVE HERE, YOUR HONOR, REALLY A QUINTESSENTIAL

09:35:58  21   EXAMPLE OF A COMPANY TRYING TO DO IT RIGHT, OF A CEO THAT IS

09:36:01  22   NOT AT ALL OVER THE TOP, AND NO EVIDENCE OF SCIENTER, NO

09:36:06  23   INSIDER SELLING, NO DOCUMENTS THAT ARE ALLEGED.

09:36:10  24        AND THE FACT THAT YOU HAVE SUCH A PROLIX COMPLAINT IS A

09:36:14  25   RED FLAG, THAT'S A RED FLAG, YOUR HONOR.  I MEAN, I'VE BEEN

09:36:17  1    DOING THIS FOR 40 YEARS, I KNOW WHEN PLAINTIFFS ARE TRYING TO

09:36:21  2    MAKE SOMETHING OUT OF NOTHING.  AND THAT'S WHAT THEY ARE TRYING

09:36:23  3    TO DO HERE, THEY ARE TRYING TO MAKE SOMETHING OUT OF NOTHING.

09:36:27  4         AND I WILL JUST FINISH WITH THIS, YOUR HONOR, I KNOW

09:36:29  5    YOUR HONOR IS AN EXPERIENCED JURIST, I'VE READ ALL OF YOUR

09:36:33  6    OPINIONS IN THIS AREA.  WE GET A LITTLE BIT, PERHAPS, JADED

09:36:36  7    ABOUT THESE CASES.  IF YOU GO BACK TO WHAT CONGRESS SAID

09:36:40  8    20 YEARS AGO, WHAT CONGRESS WAS TRYING TO DO WAS TO REALLY,

09:36:44  9    REALLY STIFFEN THE PLEADING STANDARDS HERE.  THIS IS THE

09:36:48  10   HIGHEST --

09:36:48  11             THE COURT:  AND THEY DID.

09:36:49  12             MS. WEISS:  THIS IS THE HIGHEST PLEADING STANDARD IN

09:36:52  13   THE CIVIL LAW.  AS TO THESE PROJECTIONS IT IS ACTUAL KNOWLEDGE

09:36:57  14   OF FALSITY.  YOUR PROJECTION COULD NOT HAPPEN BECAUSE THERE WAS

09:37:01  15   A DEAL KILLER IN THERE.  NONE OF THAT IS ALLEGED HERE,

09:37:04  16   YOUR HONOR.

09:37:05  17        SO IN SHORT, YOUR HONOR, THIS IS ONE OF THE WEAKEST

09:37:08  18   COMPLAINTS, DESPITE ITS PROLIXITY, THAT I'VE EVER SEEN AND

09:37:13  19   SHOULD BE DISMISSED.

09:37:14  20             THE COURT:  LET ME ASK YOU A QUESTION.  IT'S MOSTLY

09:37:17  21   FOR MR. DUBBS, BUT THIS TERM "INTEGRATION" IS NOT ONLY USED

09:37:22  22   HERE AND IS KEY TO A MAJOR PORTION OF THE ALLEGATIONS IN THIS

09:37:27  23   CASE, BUT IS AMPLY DISCUSSED IN THE CASE LAW.

09:37:31  24        AND IN TRYING TO UNDERSTAND WHAT YOU ARE DRAWING THE LINE

09:37:35  25   BETWEEN HAVING AN INTEGRATION PLAN AND WHEN IT CROSSES OVER TO

| | | |
|---|---|---|
| 09:37:39 | 1 | BEING MISMANAGEMENT OF THAT INTEGRATION, I'M ACTUALLY REALLY |
| 09:37:42 | 2 | STRUGGLING TO FIGURE OUT WHAT IS THIS BEAST CALLED |
| 09:37:46 | 3 | "INTEGRATION" AND WHAT DOES IT MEAN WHEN A CEO HONESTLY SAYS, |
| 09:37:50 | 4 | OUR INTEGRATION IS COMPLETE. |
| 09:37:52 | 5 | I DON'T ACTUALLY KNOW WHAT THAT MEANS BECAUSE IT CERTAINLY |
| 09:37:56 | 6 | SEEMS TRUE TO ME THAT A COMPLETED INTEGRATION PLAN CAN STILL |
| 09:38:00 | 7 | FAIL. |
| 09:38:01 | 8 | AND SO I DON'T KNOW WHAT INTEGRATION MEANS.  IT'S |
| 09:38:07 | 9 | SOMETHING THAT, MAYBE IT'S DIFFERENT IN EVERY CASE, BUT I DON'T |
| 09:38:10 | 10 | KNOW HOW TO EVALUATE THE STATEMENTS THAT ARE ATTRIBUTED TO YOUR |
| 09:38:14 | 11 | CLIENTS THROUGH THESE PRESS RELEASES ABOUT THE INTEGRATION IS |
| 09:38:18 | 12 | COMPLETE.  THAT'S A STATEMENT OF FACT THAT IS IN THE PRESS |
| 09:38:26 | 13 | RELEASE, BUT I DON'T KNOW WHAT THAT MEANS. |
| 09:38:29 | 14 | MS. WEISS:  YES, YOUR HONOR. |
| 09:38:31 | 15 | I THINK THAT, YOU KNOW, I GUESS THAT'S PART OF THE |
| 09:38:35 | 16 | DIFFICULTY OF THE COMPLAINT. |
| 09:38:36 | 17 | THEY HAVE TO BE VERY SPECIFIC ABOUT WHAT ASPECT OF |
| 09:38:40 | 18 | INTEGRATION ARE THEY TALKING ABOUT.  BECAUSE INTEGRATION IS A |
| 09:38:43 | 19 | VERY BROAD TERM.  IT INVOLVES FINANCIAL INTEGRATION OF NUMBERS, |
| 09:38:49 | 20 | AND THE CFO'S SPEAK TO THAT, I BELIEVE IT'S AUGUST, BUT I'M NOT |
| 09:38:53 | 21 | ABSOLUTELY SURE, WHERE ONE OF THE CFO'S SAYS, OKAY, OUR NUMBERS |
| 09:38:57 | 22 | ARE INTEGRATED.  WE ARE COMPLETELY INTEGRATED ON A |
| 09:39:01 | 23 | GOING-FORWARD BASIS, WE ARE NOT GOING TO BE BREAKING OUT COSTS. |
| 09:39:04 | 24 | AND WHAT PLAINTIFFS DO IS THEY SAY, WELL, THAT'S NOT TRUE, |
| 09:39:07 | 25 | HE LIED.  IF YOU LOOK AT IT IN CONTEXT.  HE'S THE NUMBERS GUY. |

09:39:11   1    HE'S REFERRING SPECIFICALLY TO THE FINANCIAL REPORTING

09:39:14   2    INTEGRATION.

09:39:15   3         IN ADDITION, THERE IS A MANAGEMENT, TOP MANAGEMENT

09:39:19   4    INTEGRATION, AND AS TO THAT, MR. BERGER ADDRESSES THAT VERY

09:39:23   5    EARLY ON, AS EARLY AS NOVEMBER OF 2013.  MR. BERGER SAYS, OUR

09:39:29   6    EXECUTIVE MANAGEMENT TEAM IS FULLY INTEGRATED.  HE'S TOTALLY

09:39:33   7    OPTIMISTIC.  OF COURSE THAT OBVIOUSLY GOES AWRY WHEN THEY LET

09:39:37   8    MR. CROWELL GO.  BUT FROM MR. BERGER'S PERSPECTIVE, HE'S AS

09:39:40   9    HAPPY AS A CLAM.  THEY ARE AHEAD OF THE CURVE.  THAT

09:39:42   10   INTEGRATION IS SENIOR MANAGEMENT INTEGRATION.

09:39:46   11        THE COURT:  I MEAN, IT SEEMS TO ME THAT YOU COULD

09:39:49   12   HONESTLY SAY THAT ONCE I HAVE AN ORG CHART THAT SHOWS LINES OF

09:39:54   13   AUTHORITY IN A SINGLE COMPANY FROM THESE TWO, THAT INTEGRATION

09:39:57   14   IS COMPLETE.

09:39:58   15        IT DOESN'T MEAN IT ISN'T CHAOTIC, AND IT DOESN'T MEAN

09:40:02   16   PEOPLE AREN'T REALLY UNHAPPY ABOUT WHERE THEY ENDED UP OR THAT

09:40:07   17   YOU'VE GOT TWO PEOPLE VYING FOR THE SAME JOB IN THE ORG CHART.

09:40:11   18   THAT WAS ONE OF THE PROMISES THAT THERE WOULD BE EFFICIENCIES

09:40:14   19   IN COMBINING THESE COMPANIES, SO PEOPLE WERE GOING TO LOSE

09:40:17   20   THEIR JOBS, I MEAN, THAT'S WHAT ONE EXPECTS.

09:40:19   21        MS. WEISS:  ABSOLUTELY, YOUR HONOR.

09:40:20   22        THE COURT:  AND AS I SAY, IT'S NOT REALLY A QUESTION

09:40:22   23   FOR YOU SO MUCH AS FOR ME, BECAUSE WHEN I LOOKED AT THE CW'S I

09:40:26   24   HAD -- THERE ARE, PERHAPS, SOME STATEMENTS BY CW'S THAT THERE

09:40:31   25   WAS NO INTEGRATION PLAN IN EFFECT.

09:40:33  1        AND TO ME THAT STATEMENT IS MEANINGLESS.  THERE MAY NOT

09:40:36  2    HAVE BEEN EVIDENCE OF A SUCCESSFUL INTEGRATION OR A HAPPY

09:40:39  3    INTEGRATION, BUT NO PLAN, AND YET THERE WAS.  I THINK THERE ARE

09:40:44  4    ALSO ALLEGATIONS THAT THE CW'S SUPERVISOR, HER NAME WAS BARKER,

09:40:50  5    OR I MAY BE GETTING IT WRONG, I KNOW IT STARTS WITH A B, BUT I

09:40:54  6    CAN'T REMEMBER HER NAME, SHE WAS WORKING ON INTEGRATION, IT

09:40:58  7    JUST HADN'T REACHED THE GROUND.

09:41:02  8        SO I STRUGGLE WITH THAT.

09:41:04  9            MS. WEISS:  YES, YOUR HONOR.

09:41:05 10        AND I DO THINK THAT THERE'S CERTAIN ASPECTS OF THE

09:41:08 11    INTEGRATION, ASPECTS OF THE INTEGRATION THAT WERE COMPLETED AND

09:41:11 12    THAT NO ONE DISPUTES WERE COMPLETED.

09:41:15 13        THE ENTERPRISE RESOURCE PLANNING INTEGRATION, SPECIFIC

09:41:21 14    ASPECTS, THE INTEGRATION OF EXECUTIVE MANAGEMENT, THE

09:41:23 15    INTEGRATION OF THE FINANCIAL REPORTING, ALL OF THAT REALLY,

09:41:28 16    THERE'S NO DISPUTE THAT THAT WAS DONE.

09:41:30 17            THE COURT:  YEAH.

09:41:31 18            MS. WEISS:  AND WHEN PLAINTIFFS JUST KIND OF GLOBALLY

09:41:34 19    THROW OUT WELL, THERE'S NO PLAN, THE PRODUCT ROAD MAPS ARE NOT,

09:41:38 20    THEY ARE NOT TOGETHER, WELL MR. BERGER SAID RIGHT FROM THE GET

09:41:41 21    GO THAT THE PRODUCT ROAD MAPS WERE GOING TO BE TREATED

09:41:46 22    INDEPENDENTLY UNTIL TWO YEARS HAD ELAPSED AND THEN CUSTOMERS

09:41:49 23    WOULD BE GIVEN A RANGE OF CHOICES.

09:41:52 24        SO AGAIN, THE PLAINTIFF'S BURDEN IS VERY, VERY HIGH HERE.

09:41:54 25    THEY HAVE TO SHOW SPECIFIC EVIDENCE OF FALSITY OF THE

09:41:59  1    STATEMENTS THAT WERE MADE, NOT THE STATEMENTS THAT THEY WISH

09:42:01  2    WERE MADE OR THAT THEY PARAPHRASED OR THAT THEY SMOOSHED

09:42:06  3    TOGETHER TO MEAN SOMETHING ELSE.  THE STATEMENTS THAT WERE

09:42:10  4    MADE.  AND THEY HAVE TO SHOW A COGENT AND COMPELLING, STRONG

09:42:13  5    INFERENCE OF FRAUD THAT THAT'S THEIR BURDEN.  THEY HAVEN'T MET

09:42:16  6    IT HERE AND THEY HAVEN'T EVEN APPROACHED IT.

09:42:19  7            THE COURT:  ALL RIGHT.  THANK YOU.

09:42:20  8            MS. WEISS:  THANK YOU, YOUR HONOR.

09:42:34  9            THE COURT:  MR. DUBBS, I WANT TO HEAR ALL OF YOUR

09:42:40  10   COMMENTS, BUT I'M VERY CONCERNED THAT YOUR CONFIDENTIAL

09:42:43  11   WITNESSES ARE JUST NOT GETTING AT WHAT I NEED FOR SCIENTER.

09:42:50  12   AND I THINK IN PARTICULAR, YOU'VE GOT TWO CONFIDENTIAL

09:42:56  13   WITNESSES WHO HAD CONVERSATIONS WITH MR. BERGER.  SO THAT'S

09:42:59  14   IMPORTANT.  AND YET THEY -- WHAT THEY SAY TO HIM, I THINK IS

09:43:05  15   PARALLEL TO THE ALLEGATION YOU ARE TRYING TO MAKE HERE OF

09:43:10  16   FALSITY AND SCIENTER.

09:43:13  17       AND PART OF IT IS YOUR CONFIDENTIAL WITNESSES, ONE OF

09:43:18  18   THEM, YOU DESCRIBE AS RELAYING AN OPINION ABOUT INTEGRATION.

09:43:24  19   AND OTHERS SAYING THERE'S NO INTEGRATION IN THE PLAN, THERE'S

09:43:30  20   NO INTEGRATION PLAN.  AND I'M JUST NOT SEEING THAT THAT'S

09:43:34  21   ACTUALLY SUPPORTED IN THE ALLEGATIONS IN THE COMPLAINT.

09:43:37  22            MR. DUBBS:  ALL RIGHT.  LET ME ADDRESS THAT SHORTLY,

09:43:39  23   AND THEN I HAVE A PROPOSAL FOR HOW TO PROCEED.

09:43:42  24            THE COURT:  OH, I APPRECIATE THAT.  THANK YOU.

09:43:44  25            MR. DUBBS:  THE SIMPLE ANSWER IS WE WANT TO FOCUS

09:43:49   1    TODAY, RATHER THAN ON WHAT MY COLLEAGUE SAYS IS A PROLIX

09:43:55   2    COMPLAINT, I'VE NEVER HEARD OF A COMPLAINT DESCRIBED AS

09:43:59   3    ANYTHING OTHER THAN PROLIX.

09:44:01   4          THE COURT:  ESPECIALLY BY JUDGES.

09:44:03   5          MR. DUBBS:  BUT PUTTING THAT ASIDE, I WANT TO FOCUS

09:44:05   6    ON STATEMENTS DEALING WITH THE SALES FORCE BEING INTEGRATED,

09:44:09   7    ALL RIGHT.  BECAUSE WHEN YOU HAVE TWO SALES FORCES OF TWO, MORE

09:44:14   8    OR LESS, THE SAME SIZE COMPANY, THEN I THINK THAT IS AN

09:44:19   9    INDEPENDENT ISSUE THAT ONE CAN LOOK AT, AND ONE CAN LOOK AT

09:44:24   10   INDEPENDENT STATEMENTS ON THAT ISSUE.

09:44:26   11         IF ONE TAKES THIS -- AND BY THE WAY, MERGER CASES AND

09:44:30   12   ACQUISITION CASES ARE DIFFICULT.  AND THEY ARE DIFFICULT

09:44:33   13   BECAUSE IT IS A NATURAL HUMAN REACTION WHEN THEY GO NOT AS WELL

09:44:38   14   AS PLANNED TO SAY, WELL, THAT'S JUST, YOU KNOW, BUSINESS RISKS

09:44:42   15   AND BAD PROBLEMS.

09:44:43   16         AND ONE HAS --

09:44:44   17         THE COURT:  AND A LOT OF IT IS.

09:44:45   18         MR. DUBBS:  AND OFTEN TIMES THAT'S THE CASE.  AND

09:44:47   19   THERE'S NO QUESTION THAT OFTEN TIMES THAT'S THE CASE.

09:44:51   20         BUT TWO POINTS HERE.  WHAT THE COURTS HAVE BEEN DOING IS

09:44:53   21   THEY HAVE BEEN LOOKING AND SAYING FINE, THAT MAY BE THE CASE,

09:44:56   22   BUT WE HAVE TO LOOK AT THE STATEMENTS.  AND IT'S THE STATEMENTS

09:45:01   23   DURING THE COURSE OF THE MERGER AND THE ACQUISITION AND WHAT

09:45:05   24   WAS SAID, AND DO THOSE STATEMENTS CROSS THE LINE.

09:45:10   25         AND WE HAVE TO REMEMBER, AND MY COLLEAGUE QUITE RIGHTLY

09:45:14  1   POINTS OUT THAT IN THE PRIVATE SECURITIES LITIGATION REFORM ACT

09:45:19  2   AND IQBAL AND TWOMBLY, CONGRESS AND COURTS HAVE RAISED THE

09:45:24  3   PLEADING STANDARDS NOT TO THE IMPOSSIBLE DEGREE THAT SHE WOULD

09:45:28  4   SUGGEST, BUT THEY HAVE RAISED THEM, NO QUESTION.  AND WE HAVE

09:45:31  5   TO LOOK AT THIS ALSO THROUGH THE ISSUE OF WHAT IS TRYING TO BE

09:45:34  6   ACCOMPLISHED HERE, AND WHAT'S TRYING TO BE ACCOMPLISHED IS WE

09:45:38  7   DO NOT WANT TO BURDEN BUSINESS THAT HAD A BAD DEAL FROM

09:45:43  8   DISCOVERY AND THE BURDENS OF LITIGATION.

09:45:45  9       ON THE OTHER HAND, IF WE LOOK AT THE STANDARDS UNDER THE

09:45:48  10  CASE LAW AND IN THE STATUTE, IT IS -- IS IT PLAUSIBLE, IS THERE

09:45:54  11  A STRONG INFERENCE, A STRONG INFERENCE, THE TIE GOES TO THE

09:45:58  12  PLAINTIFF.  PLAUSIBLE MEANS CAN SOMEONE REASONABLY BELIEVE THAT

09:46:04  13  IT'S PLAUSIBLE.  IT DOESN'T MEAN, YOU KNOW, THAT YOU OR I THINK

09:46:09  14  IT'S PLAUSIBLE.

09:46:10  15      AND MY COLLEAGUE'S ATTEMPT TO TURN THIS INTO A HARVARD

09:46:15  16  BUSINESS SCHOOL CASE STUDY OF A MERGER GONE BAD IS VERY NICE,

09:46:19  17  BUT THE POINT IS WE HAVE TO LOOK AT THE ALLEGATIONS MADE IN THE

09:46:22  18  COMPLAINT AND SEE WHETHER THEY CROSS THE LINE.

09:46:24  19      AND REMEMBER, WE WOULD NOT BE HERE TODAY, IF THIS IS A

09:46:28  20  MERGER THAT HAD PROBLEMS AND ALL MR. BERGER AND HIS COLLEAGUES

09:46:33  21  HAD SAID WAS, WELL, THIS QUARTER, YOU KNOW, EARNINGS ARE NOT AS

09:46:40  22  GOOD AS THEY --

09:46:42  23          THE COURT:  WELL, YOU DON'T QUESTION THE TRUTHFULNESS

09:46:44  24  OF HIS STATEMENT OF WHAT THE EARNINGS WERE, AND THEY NEVER

09:46:47  25  RESTATED THEIR EARNINGS IN LATER QUARTERS.

09:46:50  1          MR. DUBBS:  WE DON'T QUESTION WHETHER THE NUMBERS ARE

09:46:56  2     RIGHT.

09:46:57  3          WE DO QUESTION THE GENERAL PROPOSITION THAT BECAUSE THEY'RE

09:47:01  4     DISCLOSING SOME OF THIS INFORMATION AS THEY ARE REQUIRED TO DO

09:47:04  5     UNDER SEC REGULATIONS AND FILING QUARTERLY REPORTS, THAT THAT

09:47:07  6     INDEPENDENTLY SHOWS LACK OF SCIENTER OR GOOD FAITH OR SOMETHING

09:47:10  7     ELSE.

09:47:10  8          THE COURT:  OH, I UNDERSTAND.  BUT FIRST I NEED TO BE

09:47:13  9     SURE THAT I SEPARATE OUT WHAT YOU CLAIM IS FALSE AND WHAT YOU

09:47:17 10     DON'T.

09:47:18 11          MR. DUBBS:  FAIR ENOUGH.

09:47:18 12          THE COURT:  SO YES.

09:47:20 13          SO YOU DON'T CLAIM THE NUMBERS REPORTED WERE FALSE, THE

09:47:23 14     COMPANY NEVER HAD TO RESTATE ITS EARNINGS, WE GET LOTS OF THOSE

09:47:27 15     CASES.

09:47:28 16          AND SO HERE, YOU KNOW, SO THEN WE MOVE ON TO THE NEXT STEP

09:47:33 17     AND WE DEAL WITH THESE FUZZY, I THINK SOME OF IT IS KIND OF

09:47:38 18     FUZZY LANGUAGE.

09:47:39 19          AND IF AND WHEN I HAVE TO SORT OUT WHAT'S ACTIONABLE AND

09:47:43 20     WHAT ISN'T, YOU KNOW, I MEAN, YOU GET A LITTLE AND THEY GET A

09:47:46 21     LITTLE IS WHAT IT'S GOING TO COME DOWN TO.

09:47:49 22          MR. DUBBS:  LET ME HAND THIS UP AND LET ME FOCUS ON A

09:47:52 23     FEW THINGS BECAUSE I DON'T THINK IT'S THAT FUZZY.

09:47:54 24          AND WE HAVE TO REMEMBER THAT IF AT EVERY ONE OF THESE

09:47:57 25     CONFERENCE CALLS, MR. BERGER COULD HAVE GOTTEN UP AND SAID, YOU

09:48:00  1   KNOW WHAT, WE STAND ON OUR PRESS RELEASE, WE STAND ON THE

09:48:04  2   NUMBERS AND I DON'T HAVE TO TALK TO ALL YOU ANALYSTS AND ANSWER

09:48:08  3   YOUR QUESTIONS.  BUT YOU KNOW WHAT, I AM GOING TO DO THAT

09:48:10  4   BECAUSE GUESS WHAT, IF I DON'T DO THAT, YOU MAY WRITE BAD

09:48:14  5   REPORTS AND THE STOCK MAY DROP.  OKAY.  BUT THAT'S HIS CHOICE.

09:48:17  6        WARREN BUFFET DOESN'T TALK TO ANALYSTS.  LOTS OF PEOPLE

09:48:20  7   DON'T TALK TO ANALYSTS, THAT'S A VOLUNTARY THING.  AND WE

09:48:25  8   WOULDN'T BE HERE TODAY IF HE SAID, YOU KNOW WHAT, WE ARE

09:48:28  9   HOPEFUL, YOU KNOW, WE ARE HOPEFUL THIS IS GOING TO TURN AROUND,

09:48:33 10   AND SOMETHING GENERAL LIKE THAT.

09:48:35 11        BUT WHAT HE SAID --

09:48:36 12          THE COURT:  THE LAW GIVES A CEO OR A COMPANY A LITTLE

09:48:39 13   MORE LATITUDE THAN THAT, THOUGH.

09:48:42 14          MR. DUBBS:  NOT MUCH.  NOT MUCH.  THEY CANNOT CROSS

09:48:45 15   THE LINE, AND LET ME SHOW YOU WHY.

09:48:47 16          THE COURT:  WELL, THERE IS A LINE.

09:48:48 17          MR. DUBBS:  THERE IS A LINE AND WE SUBMIT IT WAS

09:48:50 18   CROSSED, OKAY.

09:48:52 19        LET ME HAND UP, AND LET ME REPRESENT TO COUNSEL THAT

09:48:54 20   THERE'S NOTHING IN THE SLIDES THAT'S NOT IN THE BRIEFS, OKAY.

09:48:58 21   AND IF THEY THINK THERE'S SOMETHING THEY CAN OBJECT AND I WILL

09:49:01 22   CORRECT THEM.

09:49:01 23          MS. WEISS:  YOUR HONOR, I OBJECT TO THIS.

09:49:02 24        I MEAN, THIS WAS NOT GIVEN TO US AHEAD OF TIME.  THIS IS

09:49:06 25   ADDITIONAL ARGUMENT I MEAN I WOULD LOVE TO BE ABLE TO HAND UP A

09:49:10   1   SLIDE SHOW.

09:49:11   2          THE COURT:  YOU KNOW, IT'S REALLY.

09:49:13   3          MS. WEISS:  THERE ARE STRICT PAGE LIMITS IN THIS

09:49:15   4   COURTROOM, YOUR HONOR.

09:49:15   5          MR. DUBBS:  IT'S ARGUMENT, AND I THINK THAT THESE ARE

09:49:18   6   DEMONSTRATES THAT WOULD HELP ARGUMENT.

09:49:21   7      AND MY COUNSEL WENT ON TO BASICALLY SAY WHAT A GREAT

09:49:27   8   GENTLEMAN MR. BERGER WAS AND SAID A BUNCH OF OTHER THINGS THAT

09:49:31   9   ARE ARGUABLY NOT IN THE RECORD AND NOT TIED TO THE COMPLAINT

09:49:34  10   EITHER.

09:49:34  11          THE COURT:  I'M NOT GOING TO HIS HOUSE FOR DINNER, SO

09:49:38  12   IT DOESN'T REALLY MATTER WHETHER HE'S A GOOD GUY OR NOT.

09:49:42  13          MR. DUBBS:  I UNDERSTAND.

09:49:43  14          THE COURT:  I PRESUME EVERYONE IS A GOOD PERSON, I

09:49:45  15   DON'T HAVE ANY REASON TO THINK LESS OF THEM.

09:49:47  16          MR. DUBBS:  WELL, WHAT I'M TRYING TO DO HERE IN

09:49:50  17   RESPOND TO MY COLLEAGUE'S CRITICISM.

09:49:54  18      WHAT WE HAVE DONE IS TRY TO NARROW THIS DOWN TO A STATEMENT

09:49:58  19   OR GROUP OF STATEMENTS THAT WE THINK WILL AID THE COURT IN

09:50:00  20   DECIDING THE CASE.

09:50:01  21          MS. WEISS:  YOUR HONOR, COUNSEL SHOULD HAVE DONE THAT

09:50:03  22   IN HIS SUMMARY ARGUMENT, AND HE CAN DO THAT ORALLY NOW.

09:50:07  23   THERE'S NO REASON FOR HIM TO BE ALLOWED TO --

09:50:10  24          THE COURT:  WELL, TYPICALLY THESE SLIDES ARE HELPFUL

09:50:13  25   TO THE COURT.  THERE'S NO REQUIREMENT THAT DEMONSTRATIVES BE

09:50:16  1    EXCHANGED IN ADVANCE OF ARGUMENT.  I GET THEM ALL THE TIME.

09:50:18  2    SOMETIMES THEY ARE HELPFUL, SOMETIMES THEY ARE NOT.

09:50:21  3        IF IT'S NEW ARGUMENT AND I HAVEN'T SEEN IT BEFORE, I'M NOT

09:50:23  4    GOING TO CONSIDER IF.

09:50:24  5            MR. DUBBS:  I WOULD ASSUME NOT.

09:50:26  6            THE COURT:  AND IN FACT, IT WOULD HAVE -- I REALLY --

09:50:31  7    WHAT I'M REALLY MISSING IN YOUR COMPLAINT IS THE

09:50:34  8    CONTEMPORANEOUS KNOWLEDGE OF THE FALSITY OR OF INFORMATION THAT

09:50:39  9    WOULD HAVE MADE THE STATEMENTS RECKLESS.

09:50:41  10           MR. DUBBS:  WELL, HOPEFULLY THESE SLIDES WILL HELP

09:50:46  11   ANSWER THAT.

09:50:48  12           THE COURT:  BECAUSE I THINK THERE'S A BIG GAP.

09:50:50  13           MR. DUBBS:  WHY DON'T WE SEE.

09:50:51  14           THE COURT:  SO DO YOU HAVE SOMETHING YOU CAN HAND UP

09:50:54  15   TO ME?

09:50:55  16           MR. DUBBS:  THANK YOU, YOUR HONOR.

09:50:55  17           THE COURT:  AND YOU'VE GIVEN A COPY TO MS. WEISS?

09:50:59  18           MR. DUBBS:  I WILL.

09:51:21  19       NOW PAGE 1 TELLS THE COURT WHAT IT ALREADY KNOWS ABOUT THE

09:51:24  20   STANDARDS FOR FALSITY.  AND THAT IT'S A PLAUSIBILITY

09:51:31  21   REQUIREMENT WHICH IS DIFFERENT THAN THE SCIENTER REQUIREMENT

09:51:34  22   WHICH WE WILL GET INTO WHICH I THINK TOUCHES ON A COMMENT THAT

09:51:37  23   THE COURT MADE BEFORE ABOUT BREAKING THESE VARIOUS ISSUES UP OR

09:51:43  24   SORT OF LUMPING THEM TOGETHER.

09:51:47  25           THE COURT:  AND TYPICALLY THE NINTH CIRCUIT IS

09:51:49  1    REALLY, I THINK, SCRUTINIZING THE SCIENTER ALLEGATIONS MUCH

09:51:51  2    MORE CLOSELY THAN THE FALSITY, TYPICALLY THE SCIENTER IS HARDER

09:51:56  3    TO PLEAD, I GUESS.

09:51:58  4              MR. DUBBS:  THERE'S NO HIDING THIS, THAT SCIENTER IS

09:52:01  5    HARDER TO PLEAD THAN FALSITY.  BUT OUR BURDEN IS ON BOTH AND

09:52:06  6    THEY PUT BOTH ON THE TABLE, SO WE'RE RESPONDING.

09:52:11  7              THE COURT:  SO I'M LOOKING AT PAGE 4.

09:52:13  8        AND YOU KNOW, YOUR VERY FIRST BULLET IS ONE THAT I'VE SPENT

09:52:17  9    A LITTLE TIME ON THIS.  "OUR INTEGRATIONS EFFORTS ARE ON

09:52:22  10   TRACK."

09:52:22  11       NOW THERE'S CERTAINLY CASE LAW WHERE COURTS HAVE LOOKED AT

09:52:26  12   WHAT THIS "ON TRACK" MEANS.  BUT I WAS REALLY LOOKING AT THE

09:52:29  13   CASES IN TRYING TO DETERMINE WHETHER OR NOT THE STATEMENT WAS

09:52:35  14   ACTIONABLE.

09:52:35  15       AND THAT'S HOW IT WAS BRIEFED AS TO WHICH SIDE RELIED ON

09:52:40  16   ACTIONABLE OR NOT.  BECAUSE I'M ONLY GOING TO CONSIDER

09:52:43  17   ALLEGATIONS THAT ARE ACTIONABLE OR STATEMENTS THAT ARE

09:52:45  18   ACTIONABLE.

09:52:46  19             MR. DUBBS:  OF COURSE.

09:52:47  20             THE COURT:  YOU ARE ARGUING THIS AS EVIDENCE OF

09:52:51  21   SCIENTER OR A FALSITY --

09:52:52  22             MR. DUBBS:  WE SAY TWO THINGS.

09:52:53  23        FIRST, IF I COULD ASK THE COURT TO FLIP OVER TO PAGE 10.

09:52:59  24             THE COURT:  SURE.

09:53:00  25             MR. DUBBS:  WHERE WE HAVE A STATEMENT BY MR. BERGER

09:53:02  1    ON AUGUST 14TH WHERE HE SAYS, "OUR SALES FORCE INTEGRATION IS

09:53:06  2    COMPLETE."  OKAY.

09:53:08  3         NOW THAT'S MORE SPECIFIC THAN THE STATEMENTS ON PAGE 4.

09:53:13  4    BUT WHEN HE SAYS "OVERALL," WHICH WE SUGGEST AND WE ALLEGE

09:53:18  5    MEANS THAT THE OVERALL PLANS FOR THE MERGER OF THE TWO

09:53:22  6    COMPANIES ARE TOGETHER.

09:53:23  7         THE REAL KEY -- IF I COULD JUST FINISH THE SENTENCE.  THE

09:53:28  8    REAL KEY HERE IS THE STATEMENTS ABOUT "ON TRACK" WHICH WE THINK

09:53:34  9    ARE CRITICAL.

09:53:36  10         "ON TRACK" IS A COMPARISON TO SOME EXTERNAL, EXTRINSIC

09:53:42  11   OBJECTIVE MEASURE.  THEY ARE ON TRACK IN COMPARISON TO WHAT?

09:53:49  12   AND THEY MAKE IT CLEAR THAT THEY ARE ON TRACK IN COMPARISON TO

09:53:52  13   OUR INTEGRATION PLANS, WHICH IS THE SECOND BULLET POINT ON

09:54:00  14   PAGE 4.

09:54:00  15         SO THE QUESTION IS, ARE THEY ON TRACK IN COMPARISON TO A

09:54:04  16   PLAN?  SO IF THERE'S A PLAN AND THERE IS A STATEMENT, WE ARE ON

09:54:09  17   PLAN, YOU CAN COMPARE THE TWO TO SEE IF THEY ARE ON TRACK.

09:54:13  18              THE COURT:  OKAY.

09:54:14  19              MR. DUBBS:  GUESS WHAT, OUR CLAIM HERE AND WHAT THE

09:54:16  20   CONFIDENTIAL WITNESSES SAY IS, THERE WERE NO PLANS, OKAY.  NOW

09:54:21  21   YOU CAN SAY THAT'S COUNTER INTUITIVE, THAT'S FINE.  BUT THE

09:54:24  22   POINT IS --

09:54:26  23              THE COURT:  RIGHT.  BUT I DON'T THINK THAT WHAT THEY

09:54:28  24   SAY ESTABLISHES, PLAUSIBLY, YOUR CONCLUSION.

09:54:34  25              MR. DUBBS:  I THINK IF WE LOOK AT --

09:54:36   1          THE COURT:  SO WHEN I LOOK HERE AT THE AUGUST 14TH

09:54:38   2    STATEMENT, THIS IS, I MEAN FIRST OF ALL, THIS STATEMENT IS

09:54:44   3    CERTAINLY ACTIONABLE.  "OUR SALES FORCE INTEGRATION IS

09:54:48   4    COMPLETE."  BUT THAT'S WHY I STARTED WITH MS. WEISS, WHAT DOES

09:54:51   5    THAT MEAN?

09:54:52   6          MR. DUBBS:  WHAT THAT MEANS IS YOU HAVE TWO SALES

09:54:54   7    FORCES AND THOSE HAVE TO BE INTEGRATED.

09:54:57   8       AND YES, SOME PEOPLE ARE GOING TO BE -- AND ONE SHOULD NOT

09:55:01   9    GET OBSESSED OVER THE FACT THAT WHEN THAT HAPPENS, THERE'S

09:55:04  10    GOING TO BE A LOT OF NOISE ABOUT, AND UNHAPPINESS AND ALL THE

09:55:07  11    REST OF IT.  THE QUESTION IS, HAVE THEY SUCCESSFULLY PUT THE

09:55:10  12    TWO SALES FORCES TOGETHER?

09:55:12  13          THE COURT:  SO THAT'S WHY I SAID IN THE SENIOR

09:55:15  14    OFFICES, PUTTING TOGETHER A NEW ORG CHART COULD BE THE

09:55:20  15    COMPLETION OF THE SALES FORCE INTEGRATION.

09:55:23  16          MR. DUBBS:  I DON'T THINK THAT THAT'S --

09:55:25  17          THE COURT:  I MEAN, THAT'S NOT ALLEGED, BUT I'M JUST

09:55:29  18    TRYING TO UNDERSTAND.

09:55:30  19       YOU SEE, YOU ARE SUGGESTING THAT AN INTEGRATION PLAN IS --

09:55:35  20    HAS A LEVEL OF DETAIL THAT YOU HAVEN'T ACTUALLY ALLEGED.  YOU

09:55:40  21    ARE FILLING THE BASKET OF WHAT AN INTEGRATION PLAN IS IN YOUR

09:55:44  22    MIND, BUT YOU ARE NOT ELUCIDATING WHAT THAT IS.

09:55:48  23       NOWHERE IN YOUR COMPLAINT DO YOU ALLEGE THAT THE

09:55:52  24    INTEGRATION PLAN MUST INCLUDE, AS A MATTER OF LAW, THE

09:55:55  25    FOLLOWING ELEMENTS OR THAT THE COMPANY REVEALED IT HAD AN

09:55:59  1   INTEGRATION PLAN THAT WOULD REQUIRE IT TO ACHIEVE CERTAIN

09:56:02  2   STEPS.  AND THEREFORE, TO CLAIM ON AUGUST 14TH THAT IT WAS

09:56:06  3   COMPLETE IS FALSE.

09:56:08  4        SO I CAN'T FILL IN THE CONTEMPORANEOUS KNOWLEDGE OF

09:56:12  5   FALSITY HERE.  THIS IS A STATEMENT MADE OF FACT.  I AGREE WITH

09:56:16  6   YOU.  THIS ONE IS A VERY GOOD EXAMPLE THAT SALES FORCE

09:56:20  7   INTEGRATION IS COMPLETE.

09:56:21  8        WHAT EVIDENCE DO YOU HAVE THAT IT WASN'T COMPLETE?

09:56:25  9   BECAUSE I DON'T EVEN KNOW WHAT IT MEANS TO BE COMPLETE.

09:56:28  10           MR. DUBBS:  WELL, WE ALLEGE WHAT IT MEANS TO BE

09:56:30  11   COMPLETE.

09:56:30  12           THE COURT:  SHOW ME.

09:56:31  13           MR. DUBBS:  WELL, WE ALLEGE THAT THERE'S -- THAT IF

09:56:33  14   YOU LOOK AT THE CONFIDENTIAL WITNESSES.

09:56:36  15           THE COURT:  SHOW ME, BECAUSE I'VE READ THIS

09:56:39  16   COMPLAINT.  YOU WROTE IT.  I'VE READ IT A NUMBER OF TIMES.  ARE

09:56:43  17   WE LOOKING AROUND THE PARAGRAPHS AROUND 218, 219 OR ARE THERE

09:56:47  18   OTHER --

09:56:48  19           MR. DUBBS:  WELL, LET'S LOOK AT PAGE 12 OF THE FLIP

09:56:51  20   CHARTS THAT, JUST TO, BECAUSE WE TRIED TO SORT OF BOIL THIS

09:56:55  21   DOWN.  MAYBE SUCCESSFULLY --

09:56:59  22           THE COURT:  I DON'T MEAN THAT YOU HAD SUCCESSFULLY

09:57:02  23   MEMORIZED 115 PAGES.

09:57:04  24           MR. DUBBS:  THAT'S WHY I WAS TRYING TO MAKE IT EASIER

09:57:07  25   FOR EVERYONE.

09:57:08  1        IF YOU ARE SAYING THAT THINGS ON THE GROUND ARE STILL

09:57:11  2   CHAOTIC, THEN I WOULD SUGGEST THAT A REASONABLE INVESTOR COULD

09:57:17  3   SAY THAT DOESN'T MEAN THAT YOUR SALES FORCES HAVE BEEN

09:57:19  4   INTEGRATED ACCORDING TO AN INTEGRATION PLAN.

09:57:22  5        THE COURT:  SO WHAT DOES "INTEGRATION" MEAN?

09:57:24  6        MR. DUBBS:  INTEGRATION MEANS THAT YOU HAVE PUT

09:57:26  7   TOGETHER TWO SALES FORCES IN THE SAME BUSINESS, AND SINCE

09:57:29  8   YOU'VE TOLD THE WORLD REPEATEDLY THAT YOU ARE GOING TO INCREASE

09:57:35  9   YOUR REVENUE YEAR OVER YEAR BY TEN PERCENT AND THAT YOU ARE

09:57:39  10  GOING TO HAVE CERTAIN TARGETS, THAT MEANS YOU ARE GOING TO HAVE

09:57:42  11  TO CUT COSTS.

09:57:43  12       THAT'S WHERE THIS ELUSIVE, NOT ONE OF MY FAVORITE WORDS,

09:57:47  13  SYNERGIES COMES FROM.  IT'S A TERRIBLE WORD.

09:57:50  14       THE COURT:  A TERRIBLE WORD.

09:57:51  15       MR. DUBBS:  AND IT'S OVERUSED.

09:57:52  16       BUT WHAT IT MEANS IN THE CONTEXT OF IT IS THAT THERE'S GOT

09:57:59  17  TO BE SOME CONSOLIDATION AND COST CUTTING.  AND FROM THAT COMES

09:58:00  18  EFFICIENCIES.

09:58:01  19       SO THERE'S NO QUESTION, AND I WOULD SUGGEST THAT THE

09:58:04  20  COMPLAINT IS MORE THAN SUFFICIENT COUPLED WITH THE WORDS OF

09:58:07  21  MANAGEMENT, THAT THEY ARE GOING TO HAVE TO DO SOMETHING EITHER

09:58:11  22  WITH HARMONIZING, CUTTING, YOU CHOOSE THE WORD, WITH THESE TWO

09:58:15  23  SALES FORCES.

09:58:16  24       AND WHEN YOU SAY THAT IS COMPLETED, THAT IS DONE, A

09:58:20  25  REASONABLE INVESTOR WOULD SAY, OKAY, THEY TOOK A COMPANY THAT

09:58:24  1    HAD A LITTLE SHY OF $300 MILLION IN GROSS REVENUES, THEY MERGED

09:58:29  2    IT WITH A COMPANY THAT HAD SLIGHTLY OVER $300 MILLION IN GROSS

09:58:37  3    REVENUES, AND THEY HAD TO HARMONIZE THOSE SALES FORCES IF THEY

09:58:41  4    ARE GOING TO DO WHAT THEY SAY THEY ARE GOING TO DO.

09:58:43  5            THE COURT:  I BELIEVE THESE ALLEGATIONS ONLY

09:58:44  6    PLAUSIBLY SPEAK OF MISMANAGEMENT.

09:58:46  7        I'M LOOKING AT PARAGRAPH 144, YOU'VE CITED 145, BUT I WAS

09:58:50  8    TAKEN BY 144.  LIKEWISE, CW 2 WAS OF THE OPINION THAT THE

09:58:56  9    INTEGRATION WAS "PROBLEMATIC RIGHT FROM THE GET GO."

09:59:02  10           MR. DUBBS:  THAT'S THAT GUY'S OPINION, THAT'S FINE.

09:59:05  11       THERE'S OTHER CONFIDENTIAL WITNESSES THAT SAY THE THING

09:59:07  12   WASN'T WORKING ON THE GROUND.  THOSE ARE FACTS.

09:59:10  13           THE COURT:  THAT TELLS ME THAT THIS CW BELIEVES THERE

09:59:14  14   WAS INTEGRATION.

09:59:15  15       YOU SAY THERE'S NO PLAN, BUT THERE WAS, IT JUST WASN'T

09:59:18  16   WORKING WELL.  AND THERE WAS A CLASH OF CULTURES FROM THE TWO

09:59:23  17   COMPANIES.  AND I DON'T BELIEVE THERE WAS EVER A PROMISE THAT

09:59:26  18   IT WAS GOING TO BE A KUMBAYA MOMENT WITH THESE COMPANIES COMING

09:59:31  19   TOGETHER.

09:59:31  20           MR. DUBBS:  THAT'S A DIFFERENT POINT, YOUR HONOR,

09:59:33  21   WITH ALL DUE RESPECT.

09:59:34  22           THE COURT:  IT'S RIGHT HERE IN YOUR COMPLAINT.

09:59:36  23           MR. DUBBS:  WELL, IT SAYS THAT AND WE ARE NOT TAKING

09:59:39  24   THAT AWAY.

09:59:40  25           THE QUESTION IS, WAS THERE A PLAN FROM THE GET GO AS TO HOW

09:59:44   1   THESE TWO SALES FORCES WOULD BE INTEGRATED.  AND WE HAVE

09:59:47   2   ALLEGED THAT THERE WASN'T.  AND WE THINK THE CONFIDENTIAL

09:59:49   3   WITNESSES, AND WE SUBMIT THE CONFIDENTIAL WITNESSES CORROBORATE

09:59:52   4   THAT.

09:59:52   5        AND YOU HAVE SOMETHING IN THIS CASE THAT YOU ARE PROBABLY

09:59:56   6   NOT GOING TO SEE AGAIN IN THE FORESEEABLE FUTURE, IF EVER,

10:00:01   7   WHICH IS YOU HAVE TWO CONFIDENTIAL WITNESSES TALKING TO THE

10:00:04   8   CEO, AND HAVE USED THE WORD "PLAN," OKAY.

10:00:09   9        IF WE COULD JUST NOT BE OVERLY LAWYERLY ABOUT IT, YOU TALK

10:00:13  10   TO THE CEO, AND THE WORD "PLAN" IS MENTIONED AND THE CEO SAYS,

10:00:19  11   YOU KNOW, THERE WAS NO PLAN, WHAT KIND OF PLAN ARE YOU TALKING

10:00:22  12   ABOUT.

10:00:22  13             THE COURT:  THAT, WE DON'T HAVE.

10:00:23  14             MR. DUBBS:  WE DON'T HAVE THAT.

10:00:24  15             THE COURT:  RIGHT.

10:00:25  16             MR. DUBBS:  BECAUSE THE POINT IS WE DO HAVE --

10:00:29  17             THE COURT:  I GUESS --

10:00:30  18             MR. DUBBS:  CAN I JUST FINISH THE SENTENCE.

10:00:32  19        WE HAVE THE WORD "PLAN" USED IN CONVERSATIONS WITH THE CEO.

10:00:37  20             THE COURT:  OKAY.

10:00:37  21        SO, BUT THIS IS WHAT I -- WHEN I WAS READING IT, I WAS

10:00:41  22   REALLY SEEING THAT WE HAVE A TRICKLE DOWN PROBLEM HERE,

10:00:45  23   PERHAPS.

10:00:45  24        AND SO IT REMINDED ME OF OUR COUNTRY'S ECONOMIC POLICY A

10:00:50  25   COUPLE OF DECADES AGO WHERE THE PLAN FOR INCREASING EMPLOYMENT

1    WAS TO GIVE TAX CUTS TO THE COMPANIES.  THAT WAS THE PLAN.

2    SOME PEOPLE THINK IT WORKED, SOME DIDN'T.  IT'S NOT FOR ME TO

3    SAY.

4         BUT AT THE TIME, AND MANY YEARS LATER, IF YOU WERE TO ASK

5    THE WORKFORCE, HOWS THAT LABOR PLAN WORKING?  THEY WOULD SAY,

6    WHAT PLAN, THERE'S NOBODY WITH MORE JOBS.  BUT IF YOU ASK THE

7    PEOPLE AT THE TOP, THEY SAID OUR PLAN IS TO GIVE TAX CUTS, AND

8    OVER TIME, IT WILL TRICKLE DOWN INTO THE LABOR FORCE.

9         WELL, YOU CAN HAVE A VIEW ON WHETHER IT WORKED AND I CAN

10   HAVE A VIEW ON WHETHER IT WORKED, THAT'S NOT THE POINT.  BUT

11   THAT'S WHAT I SEE HERE IS THAT THIS INTEGRATION PLAN BASED ON

12   YOUR ALLEGATIONS, BECAUSE TRUST ME I KNOW NOTHING ELSE THAN

13   WHAT YOU'VE SAID HERE, THIS PLAN MAY HAVE HAPPENED AT TOO HIGH

14   A LEVEL.

15        AND MAYBE THE PLAN WAS MERELY AN ORG CHART, THAT'S NOT

16   ALLEGED, BUT IT DOES APPEAR THAT THE PLAN TOOK PLACE AT A HIGH

17   LEVEL.  AND THESE CW'S CAN ONLY SAY, IT'S NOT HERE ON THE

18   GROUND.

19        THAT'S A PROBLEM.  THAT'S A FLAWED INTEGRATION PLAN.  BUT

20   IT'S NOT ONE -- YOU HAVEN'T ALLEGED FACTS THAT SHOW THAT

21   THERE'S NO INTEGRATION PLAN OR THAT IT'S NOT -- I MEAN,

22   COMPLETE, IT MAY BE THAT BERGER'S PLAN WAS FULLY COMPLETE, AND

23   IT WAS SO FLAWED THAT IT WAS GOING TO FAIL.  BUT THAT'S NOT THE

24   BASIS OF YOUR CASE.

25             MR. DUBBS:  LET ME BACK UP.

10:02:17  1    YOUR HYPOTHETICAL ABOUT THE TAX POLICY, IN THEORY, THE TAX

10:02:21  2    POLICY HAD A PLAN.  IT WAS IN THE IRS CODE AND IN THE IRS

10:02:25  3    REGULATIONS.  AND ONE COULD ARGUE WHETHER IT WORKED OR WAS A

10:02:29  4    GOOD THING OR A BAD THING.  BUT EVERYBODY COULD SAY, THERE'S

10:02:32  5    THE PLAN.  THERE'S THE PLAN.  THERE IS A PLAN.

10:02:38  6    LET'S BE CLEAR.  WE SAY THERE WAS NO PLAN.

10:02:41  7    THE COURT:  OKAY.  BUT THAT'S CONCLUSORY.

10:02:43  8    MR. DUBBS:  NO, IT'S NOT, IT'S BASED UPON WHAT THE

10:02:45  9    CONFIDENTIAL WITNESSES SAY, AND THEY SAID IT TO THE CEO.

10:02:49  10    NOW YOU CAN SAY, THERE ARE MULTIPLE PLANS.  YOU CAN SAY

10:02:55  11    THERE ARE MULTIPLE PLANS, THERE'S AN INTEGRATION PLAN AND

10:02:59  12    THERE'S SOME OTHER PLAN.  BUT THERE ARE PLANS, AND THEY KEEP

10:03:03  13    REFERRING TO THE PLANS, AND WE WILL GET BACK TO THE STATEMENTS

10:03:07  14    BECAUSE THIS IS SUPPOSED TO BE ABOUT STATEMENTS, NOT THE THEORY

10:03:10  15    OF AN ACQUISITION, THE STATEMENTS TALK ABOUT, AND TELLING THE

10:03:17  16    INVESTING PUBLIC, THAT WE HAVE A PLAN AND WE ARE ON TRACK OR

10:03:21  17    WE'VE COMPLETED CERTAIN PHASES OR EVEN THOUGH THERE'S SOME BAD

10:03:26  18    NEWS WE ARE STILL ON TRACK.  AND THAT'S WHAT KEEPS THE PRICE

10:03:29  19    UP.

10:03:30  20    SO RUNNING THROUGH THIS WHOLE THING IS THE USE OF THE WORD

10:03:36  21    "PLAN" OR A SYNONYM FOR PLAN, I USE "ROAD MAP" AS A SYNONYM FOR

10:03:41  22    PLAN.

10:03:42  23    THE COURT:  YOU TALK ABOUT IT WAS A PRODUCT ROAD MAP

10:03:45  24    WHICH IS DIFFERENT THAN --

10:03:47  25    MR. DUBBS:  I REALIZE THAT.

10:03:50  1        AND BY THE WAY, EVEN THOUGH BERGER USUALLY TALKS ABOUT ON

10:03:54  2   PLAN, EVEN IF THE ALLEGATION WERE PLAN, AND THERE ARE REALLY

10:03:59  3   THREE PLANS, THERE'S A PRODUCT INTEGRATION PLAN, AND THERE'S A

10:04:04  4   SALES FORCE INTEGRATION PLAN, WE DON'T KNOW THAT.  ALL WE KNOW

10:04:07  5   IS HE SPEAKS IN THE SINGULAR AS IF THERE'S ONE GLOBAL PLAN.

10:04:11  6        AND BY THE WAY, ANOTHER POINT BEFORE I FORGET, CW 2 WAS

10:04:17  7   HIGH UP IN THE COMPANY AND WAS IN THE EXECUTIVE OFFICES.

10:04:21  8         SO WE NOT ONLY HAVE PEOPLE IN THESE EXECUTIVE OFFICES BUT

10:04:26  9   WE HAVE PEOPLE OUT IN THE FIELD IN ADDITION TO WHAT I SUGGEST

10:04:29  10  YOU WILL NEVER SEE AGAIN, WHICH IS PEOPLE TALKING TO THE CEO

10:04:37  11  DIRECTLY.

10:04:37  12             THE COURT:  AND THAT IS IMPRESSIVE, YES.

10:04:41  13             MR. DUBBS:  AND YOU KNOW, WE ARE NOT GOING TO SEE

10:04:43  14  THAT AGAIN, AND I HAVE NOT SEEN THAT AND I'M NOT GOING TO GET

10:04:46  15  INTO A DEBATE WITH COUNSEL.

10:04:47  16             THE COURT:  BUT I DON'T SEE THAT CW 2 SUPPORTS THERE

10:04:50  17  WAS NO PLAN.  I THINK CW 2 SAYS THE PLAN, THE INTEGRATION WAS

10:04:54  18  PROBLEMATIC FROM THE START.  SO THERE ARE OTHER CW'S THOUGH.

10:04:58  19             MR. DUBBS:  THERE ARE OTHER CW'S.

10:05:00  20             THE COURT:  YOU'VE DONE A LOT OF WORK ON THAT.  I

10:05:02  21  APPRECIATE IT.

10:05:03  22             MR. DUBBS:  THERE ARE A LOT OF CW'S, AND WE HAVE

10:05:05  23  TALKED TO A LOT OF CW'S.

10:05:08  24         SO THE POINT IS THAT "ON TRACK" IS AN OBJECTIVE, FALSE

10:05:14  25  STATEMENT WE SAY WHEN IT'S RELATED TO PLAN OR PLANS, IF THAT'S

10:05:19  1      THE WAY YOU WANT TO PUT IT, WHICH I VIEW AS A FOOTNOTE POINT.

10:05:25  2         AND THERE ARE STATEMENTS THAT IT'S AHEAD OF PLAN, OUR

10:05:33  3      INTEGRATION REMAINS AHEAD OF PLAN.

10:05:40  4            THE COURT:  AND I WOULD CERTAINLY AGREE WITH YOU THAT

10:05:42  5      THE CASE LAW PROVES THOSE ARE ACTIONABLE CLAIMS.

10:05:42  6            MR. DUBBS:  DO YOU WANT ME TO TURN TO SCIENTER?

10:05:47  7            THE COURT:  THAT'S REALLY WHERE I AM, AND I KNOW

10:05:49  8      MS. WEISS IS SAYING THAT THERE'S NO ALLEGATION OF FALSITY.

10:05:52  9         SHE REALLY MAKES THREE ARGUMENTS, THOUGH.  SOME ARE NOT

10:05:55  10     ACTIONABLE.  SOME ARE NOT ALLEGED AS FALSE, THEN THERE'S NO

10:06:00  11     ALLEGATION OF ADEQUATE ON SCIENTER.  BUT I FOCUS MOST ON

10:06:03  12     SCIENTER.

10:06:04  13        SO THESE CW'S, YOU SAY PUT MR. BERGER ON NOTICE AT THE

10:06:10  14     TIME HE WAS MAKING THE STATEMENTS.

10:06:11  15           MR. DUBBS:  YES.

10:06:13  16        AND CW 2, WHO WAS IN THE EXECUTIVE OFFICES, GOES BACK TO

10:06:18  17     THE BEGINNING IN 2013.  THOUGH, I WOULD SUGGEST AT THIS POINT,

10:06:21  18     NOT ON THE TABLE IS EXACTLY WHAT SCIENTER THERE WAS, WHEN.  BUT

10:06:27  19     WE HAVE TO SHOW THERE'S SCIENTER.  AND CERTAINLY UNDER A

10:06:32  20     HOLISTIC ANALYSIS, IF YOU SHOW SCIENTER AT ONE POINT, IT

10:06:36  21     DOESN'T TAKE A LOT TO SAY WELL, THERE'S SCIENTER HERE.

10:06:39  22        AND THAT'S THE ISSUE UNDER THE PSLRA AS TO WHETHER THE CASE

10:06:44  23     CAN GO FORWARD.

10:06:45  24        NOW IN TERMS OF WHETHER THERE'S SCIENTER, WHICH IS WHAT'S

10:06:49  25     OBVIOUSLY THE COURT IS FOCUSSING ON, WE HAVE IN ADDITION, WE DO

1   HAVE, AS TO THE SALES FORCE, MR. BERGER WAS IN CHARGE OF THE

2   SALES FORCE AT A CERTAIN POINT, SO HE HAD ACTUAL KNOWLEDGE OF

3   WHAT WAS GOING ON.

4        AND I MEAN, PAGE 13 SUMMARIZES SOME OF THOSE ALLEGATIONS,

5   NAMELY THE TWO CW'S WHO DIRECTLY TALKED TO BERGER ABOUT THE

6   SALES FORCE INTEGRATION, AND THEN HE TOOK PERSONAL

7   RESPONSIBILITY IN MAY OF 2014 WHEN THERE WAS EXECUTIVE

8   TURNOVER, AND SO HE HAD ACTUAL KNOWLEDGE OF WHAT WAS GOING ON

9   IN THE SALES FORCE.

10       SO IF THE SALES FORCE INTEGRATION IS NOT GOING ACCORDINGLY

11  AND THERE ARE PROBLEMS, THEN -- YOU KNOW, HE'S -- HE CAN'T GET

12  UP AND SAY TO ANALYSTS, EVERYTHING IS GOING GREAT AND

13  EVERYTHING IS ON TRACK AND EVERYTHING IS GOING ACCORDING TO

14  PLAN.

15       NOW IF HE SAYS IT'S GOING ACCORDING TO PLAN, BUT IN OUR

16  PLAN WE ADJUSTED FOR LOTS OF PEOPLE BEING UNHAPPY AND FIRING A

17  LOT OF PEOPLE AND ALL KINDS OF STUFF, OTHER THINGS, AND THAT

18  WAS IN THE PLAN, FINE, THEN THAT'S A PARTIAL ADMISSION.

19       HE CAN SAY IT'S ON TRACK, BUT OUR PLAN INCLUDED ALL THIS

20  CHAOS THAT'S GOING ON DOWN BELOW.  THAT WOULD BE A PARTIAL

21  ADMISSION, BUT THAT'S NOT THE STATEMENT WE ARE TALKING ABOUT.

22       WE HAVE UNEQUIVOCAL STATEMENTS SAYING IT'S ON TRACK AND SO

23  ON AND SO FORTH.  AND WE HAVE THE CEO, MR. BERGER, BEING

24  REPETITIVELY ENGAGED WITH THESE ANALYSTS, USING TERMS THAT

25  COULD ONLY BE CALLED SUPER OPTIMISTIC.

10:08:48  1        AND BY THE WAY, HE COULD HAVE SAID THINGS ARE GOING GREAT.

10:08:51  2   BUT WHEN HE'S TALKING ABOUT STATEMENTS THAT ARE REFERENCED TO

10:08:55  3   OTHER DOCUMENTS OR OTHER CONCEPTS SUCH AS A PLAN OR PLANS, IF

10:09:00  4   THEY ARE PLANS IN THE PLURAL, THEN HE HAS CROSSED THE LINE.

10:09:06  5   AND HE HAS CROSSED THE LINE.

10:09:07  6        AND IF YOU REVIEW, I MEAN, THE INTERESTING THING IS

10:09:14  7   COURTS, PARTICULARLY IN CALIFORNIA, HAVE BEEN LOOKING AT THESE

10:09:16  8   SITUATIONS, AND THE COOPERMAN CASE, LEVEL 3 IT'S A 10TH CIRCUIT

10:09:24  9   CASE, I'M REFERRING TO THAT IN PAGE 11.  AND THEY DEAL WITH

10:09:28  10  BOTH FALSITY AND SCIENTER.

10:09:29  11            THE COURT:  WELL, IN LEVEL 3, DIDN'T THEY FIND THERE

10:09:32  12  WAS NOT ADEQUATE ALLEGATION OF SCIENTER?

10:09:34  13            MR. DUBBS:  THEY DID FIND THAT IN LEVEL 3, THAT'S

10:09:36  14  TRUE.  THEY ALSO DIDN'T HAVE CONVERSATIONS WITH THE CEO.

10:09:41  15    I MEAN, YOU ARE NEVER GOING TO SEE THAT AGAIN.  THERE ARE

10:09:44  16  NOT GOING TO BE CONVERSATIONS WITH THE CEO UNLESS THERE'S A

10:09:48  17  CRIMINAL INVESTIGATION AND THE GRAND JURY.

10:09:50  18            THE COURT:  SURE.

10:09:50  19            MR. DUBBS:  THAT'S JUST THE BOTTOM LINE HERE.

10:09:52  20    SO THE FACT THAT WE HAVE FOUND THESE CONFIDENTIAL

10:09:55  21  WITNESSES WHO TALK ABOUT A PLAN, OR TALK ABOUT PLANS OR CHAOS

10:10:00  22  WITH THE CEO, AND THEN HE GOES OUT REPEATEDLY AND SAYS

10:10:04  23  EVERYTHING IS FINE, THAT'S IT.

10:10:07  24        THEY SAY MOTIVE IS IRRELEVANT.  YOU KNOW WHAT, MOTIVE IS

10:10:10  25  NEVER IRRELEVANT.  IS IT THE KEY FACTOR?  NO.  IS IT PART OF A

10:10:14  1    HOLISTIC ANALYSIS?  YOU BET.

10:10:18  2         SO YOU KNOW, THE GUY HAD A MOTIVE.  HE DID HAVE THE STOCK

10:10:22  3    PLAN, WHICH AS YOUR HONOR HAS ALREADY POINTED OUT, HAS SOME

10:10:26  4    PECULIAR CHARACTERISTICS.

10:10:29  5              THE COURT:  I DIDN'T POINT THAT OUT.

10:10:30  6              MR. DUBBS:  I THOUGHT YOU POINTED OUT.

10:10:32  7              THE COURT:  IT DID.  I SAID YOU ARGUED THAT IT DID.

10:10:34  8              MR. DUBBS:  I'M SORRY.  I APOLOGIZE.  I DIDN'T MEAN

10:10:36  9    TO PUT WORDS IN YOUR MOUTH.  THE POINT CAME OUT IN THE

10:10:40  10   COLLOQUY.

10:10:40  11             THE COURT:  IT DID.

10:10:41  12             MR. DUBBS:  SO THAT'S WHAT I INTENDED TO SAY.

10:10:43  13        AND I THINK THE PLAN, ON ITS FACE, IS A LITTLE UNIQUE AND

10:10:46  14   DIFFERENT THAN YOUR BASIC --

10:10:48  15             THE COURT:  BUT IF ALL OF THE OPTIONS WERE EARNED BY

10:10:52  16   DECEMBER 31, 2013, BEFORE ANY OF THE -- BEFORE ANYTHING

10:10:57  17   HAPPENED ESSENTIALLY WITH --

10:10:59  18             MR. DUBBS:  I THINK MY COLLEAGUE IS WRONG ON THE

10:11:01  19   CHRONOLOGY.  THERE WERE STATEMENTS MADE BEFORE THEN.  BUT THE

10:11:06  20   POINT IS HE DIDN'T EXERCISE THE OPTIONS, SO THE OPTIONS PLAN

10:11:09  21   WAS STILL IN PLACE DURING SOME OF THOSE STATEMENTS.

10:11:13  22        SO IT'S NOT LIKE IT DISAPPEARED, AS WE UNDERSTAND THE

10:11:17  23   PLAN, AND WE HAVE NOT SEEN THE PLAN.

10:11:18  24             THE COURT:  RIGHT.

10:11:20  25        BUT I THINK MS. WEISS'S POINT WAS THAT HE THEN HELD THE

10:11:24    1    STOCK, AND IT'S SIMPLY NOT PLAUSIBLE TO THINK THAT HE WOULD --

10:11:27    2    AND DIDN'T SELL IT.

10:11:28    3         MR. DUBBS:  HE HELD HIS OPTIONS.

10:11:29    4         THE COURT:  HE HELD HIS OPTIONS.  BUT IF HE HAD, I

10:11:32    5    DON'T KNOW WHEN THEY VESTED, BUT IF HE HAD BUMPED UP THE VALUE,

10:11:36    6    THE PRICE OF THE STOCK, AND SOLD IT AT A HIGH LEVEL AND THEN

10:11:41    7    CAME CLEAN, THAT'S ONE THING.  BUT THAT'S NOT WHAT HAPPENED

10:11:43    8    HERE, SHE SAYS.

10:11:45    9         MR. DUBBS:  NO.

10:11:45   10         THE COURT:  AND YOU HAVE NO EVIDENCE OF SALE.

10:11:47   11         MR. DUBBS:  AND CHRONOLOGICALLY, SHE'S RIGHT.  BUT I

10:11:52   12    THINK SHE DRAWS THE WRONG CONCLUSION, WHICH IS THAT HE DIDN'T

10:11:54   13    EXERCISE HIS OPTIONS, THEN THE STOCK WENT DOWN, BUT HE DIDN'T

10:11:57   14    GIVE UP HIS OPTIONS EITHER.

10:11:58   15         SO, YOU KNOW, IF HE WAS HOPEFUL OR HE WAS MAKING

10:12:03   16    STATEMENTS THAT WOULD GET THE STOCK TO TURN AROUND, THEN HE

10:12:07   17    COULD HAVE EXERCISED THE OPTIONS THEN.  THAT'S MOTIVE, OR THAT

10:12:11   18    INCENTIVE CONTINUED THROUGHOUT THE ENTIRE PERIOD.

10:12:14   19         NOW WE DON'T SAY THAT THAT ONE FACTOID MOVES THE DIAL, BUT

10:12:20   20    IT SURE IS AN IMPORTANT FACT.  AND THAT, COUPLED WITH THE CW'S,

10:12:29   21    WE THINK PUTS US OVER THE LINE.

10:12:31   22         AND SINCE WE ARE DEALING WITH SCIENTER, THERE'S A FAMOUS

10:12:35   23    CASE THAT WE CITE THAT SAYS THE TIE GOES TO THE PLAINTIFFS.

10:12:39   24         WELL, WE'VE GOT AT LEAST A TIE HERE.  BECAUSE YOU'RE NOT

10:12:43   25    GOING TO FIND ANOTHER CASE WHERE YOU HAVE PERSON-TO-PERSON

1  INTERVIEWS WITH THE CEO.

2          THE COURT:  SO I HAVE TO GO THE NEXT STEP, THOUGH.

3      AND I THINK -- I DON'T DISAGREE WITH YOU, IT IS UNUSUAL TO

4  HAVE CW'S WHO COME FORWARD WHO HAVE SPOKEN TO THE CEO.  BUT

5  THEN I HAVE TO ANALYZE WHAT THEY SAID, AND THAT'S REALLY WHAT

6  MY JOB IS.

7          SO JUST GETTING INTO HIS OFFICE IS ONE THING.  BUT I HAVE

8  TO LOOK AT WHAT THEY REVEALED.  I DON'T DISAGREE WITH THAT AT

9  ALL.  BUT ONE HAS TO BREAK INTO TWO PARTS, I WOULD RESPECTFULLY

10  SUGGEST, WHAT THEY SAID.

11          AND WHAT THEY SAID WAS YES, A LOT OF COMPLAINING ABOUT

12  THINGS THAT WERE GOING ON ON THE GROUND, THAT IS RELEVANT TO

13  THE STATEMENTS THAT DEAL WITH THE INTEGRATION BEING COMPLETE

14  AND THE SALES FORCE BEING UNITED.

15          THE COURT:  I DON'T KNOW WHERE THE WORD "UNITED"

16  COMES FROM.

17          MR. DUBBS:  WELL, THAT'S MY WORD.

18          THE COURT:  OKAY.

19          MR. DUBBS:  INTEGRATION IS COMPLETE.

20          THE COURT:  OKAY.  SO I GET BACK INTO THIS LOOP I

21  STARTED WITH.

22          MR. DUBBS:  WELL --

23          THE COURT:  IT CAN BE COMPLETE AND A FAILURE, IS WHAT

24  I'M SAYING.  YOU DON'T SEEM TO GIVE ME ANY QUARTER ON THAT.

25          MR. DUBBS:  NO, BECAUSE IF HE'S MAKING STATEMENTS

10:13:57  1    SAYING THAT THINGS ARE ON TRACK AND THINGS ARE GOOD, THEN IT'S

10:14:01  2    A PARTIAL OMISSION.  HE'S GOT TO SAY, YOU KNOW WHAT, WE HAD A

10:14:04  3    PLAN, AND GUESS WHAT, IT DIDN'T WORK.

10:14:06  4        AND SO I'M DISCLOSING TO YOU RIGHT NOW THAT OUR SALES FORCE

10:14:10  5    IS NOT WORKING AND THEY ARE NOT INTEGRATING.

10:14:16  6            THE COURT:  SO I ACTUALLY THINK THERE ARE SOME

10:14:18  7    CAUTIONARY DISCLOSURES IN THESE PRESS RELEASES THAT GO TO THOSE

10:14:22  8    POINTS.

10:14:23  9        THEY ARE NOT AS TO FORWARD LOOKING.  WHAT THEY SAY IS THE

10:14:26  10   SALES FORCES MAY NOT WORK.  "MAY NOT WORK" IS NOT A SUFFICIENT

10:14:35  11   DISCLOSURE.  IF SOMETHING HAS ALREADY HAPPENED, YOU CAN'T COVER

10:14:39  12   YOURSELF BY SAYING "MAY."

10:14:40  13       AND HE HAD ACTUAL KNOWLEDGE, NOT ONLY BECAUSE OF WHAT THE

10:14:43  14   CW'S WERE SAYING TO HIM, BUT BECAUSE OF AT LEAST AFTER

10:14:47  15   MAY 14TH, HE, HIMSELF, PUT HIMSELF IN CHARGE OF THE SALES

10:14:52  16   FORCE, THE GROUND ACTIVITY OF THE SALES FORCE.

10:14:55  17       SO HE, HIMSELF, KNEW THAT.  SO HE HAS PERSONAL KNOWLEDGE

10:15:05  18   AT THAT POINT OF WHAT'S GOING ON.

10:15:06  19       BUT THE POINT IS THAT IF WE TAKE YOUR HONOR'S

10:15:10  20   HYPOTHETICAL, THERE COULD BE INTEGRATION, BUT THE INTEGRATION

10:15:12  21   COULDN'T WORK.  OR DIDN'T WORK.  ALL RIGHT.  THEN HE'S UNDER AN

10:15:17  22   OBLIGATION, ONCE HE OPENS HIS MOUTH TO SAY THAT.

10:15:24  23       HE CAN'T SAY, WE ARE STILL GOING TO MAKE TEN PERCENT YEAR

10:15:27  24   OVER YEAR, OUR MARGINS ARE GOING TO BE IMPROVED BY TEN PERCENT,

10:15:32  25   WE ARE STILL ON PLAN, WE ARE ON TRACK, BLAH, BLAH, BLAH, BLAH.

10:15:37  1    HE'S GOT TO SAY -- WHAT HE'S OMITTED TO SAY, THAT WE STILL

10:15:44  2    BELIEVE THAT, AND I BELIEVE IT TO THE BOTTOM OF MY HEART, BUT

10:15:48  3    AT THE SAME TIME I'VE GOT TO SAY TO YOU, THE SALES FORCE

10:15:52  4    INTEGRATION ON THE GROUND LEVEL ISN'T WORKING, AND I KNOW THAT

10:15:58  5    BECAUSE I'M IN CHARGE OF THAT.

10:16:00  6         AT LEAST AS OF MAY 14TH, AND I'VE TALKED TO THESE

10:16:03  7    CONFIDENTIAL WITNESSES WHO, EVEN IF I DISCOUNT THAT, SOME OF IT

10:16:07  8    IS JUST, IF I MAY USE THE PHRASE, BITCHING AND MOANING, THAT

10:16:11  9    THINGS ARE NOT COMPLETELY HUNKY-DORY AT THE TERRITORIAL LEVEL.

10:16:15  10        SO IT'S A -- SO YOUR HONOR'S HYPOTHETICAL LEADS ONE TO A

10:16:22  11   PARTIAL OMISSION.  THAT'S NOT THIS CASE BECAUSE WE SAY THERE IS

10:16:25  12   NO PLAN, OUR CONFIDENTIAL WITNESSES SAY, IN SUBSTANCE, THERE'S

10:16:30  13   NO PLAN.  CONFIDENTIAL WITNESS 2 WAS THERE FROM THE BEGINNING.

10:16:36  14   AND SO WHERE'S THE PLAN?

10:16:37  15        AND BY THE WAY, IF WE ARE TALKING ABOUT THE PSLRA AND THE

10:16:42  16   BURDEN ON THE DEFENDANT CORPORATION, AND I KNOW THAT THESE

10:16:46  17   THINGS CAN BE BURDENSOME, I WAS ON THE DEFENSE SIDE FOR A WHILE

10:16:50  18   TOO, THIS IS RELATIVELY SIMPLE.  WERE THERE PLANS?  WHAT DID

10:17:00  19   THESE PEOPLE KNOW?

10:17:00  20        WE ARE DEALING WITH A FINITE NUMBER OF PEOPLE, MAINLY

10:17:06  21   MR. BERGER.  THIS IS NOT GOING TO BE THE IBM ANTI-TRUST CASE.

10:17:09  22   THIS IS A PRETTY STRAIGHTFORWARD ISSUE AS TO WHAT IS THE

10:17:17  23   UNDERLYING FACTUAL PREDICATE FOR THESE STATEMENTS AND WHETHER

10:17:21  24   THESE STATEMENTS WERE MADE WITH SCIENTER.

10:17:25  25        BECAUSE IF THERE WAS NO PLAN, THEN THERE'S A REAL PROBLEM.

10:17:29  1      THE COURT:  AND -- SORRY, I'M A BROKEN RECORD.  I

10:17:34  2  JUST DON'T THINK YOU CAN PLAUSIBLY -- I DON'T THINK YOU'VE

10:17:38  3  ALLEGED SPECIFIC FACTS, YOU SAY THERE'S NO PLAN.  YOU DON'T

10:17:41  4  EVEN DEFINE WHAT A PLAN IS.

10:17:43  5      SO I'M JUST, YOU SAY TOO MUCH AND YOU PROVE TOO LITTLE

10:17:48  6  WITH IT BY SAYING THERE IS NO PLAN.  IN FACT, THE ALLEGATIONS

10:17:53  7  THAT YOU MAKE BELIE THAT ALLEGATION, BECAUSE CLEARLY THERE WAS

10:17:58  8  A PLAN.  CLEARLY THERE WAS.  THEY STARTED REPORTING FINANCIALS.

10:18:05  9      CLEARLY THERE WAS A PLAN IN THAT THE SALES FORCE, ONE OF

10:18:08  10  THE FAILURES OF IT WAS THAT, ENTERASYS EMPLOYEES WERE EXPECTED

10:18:14  11  TO GO OUT AND SELL EXTREME PRODUCTS AND DIDN'T EVEN KNOW

10:18:16  12  ANYTHING ABOUT THEM.

10:18:17  13      SO THERE WAS A PLAN, THINGS HAPPENED.  I MEAN, TO SAY

10:18:21  14  THERE'S NO PLAN MEANS YOU'VE GOT TEN OFFICES FROM ONE COMPANY

10:18:25  15  AND TEN FROM THE OTHER AND THEY JUST KEEP WORKING IN PARALLEL.

10:18:29  16      MR. DUBBS:  NO, A PLAN COULD BE THAT YOU HAVE TEN

10:18:31  17  OFFICES, TO USE YOUR HONOR'S HYPOTHETICAL, AND YOU HAVE X

10:18:36  18  NUMBER OF SALES PEOPLE FROM ONE COMPANY AND X FROM THE Y

10:18:40  19  PEOPLE, AND YOU TELL THE DIRECTOR OF SALES, YOU KNOW, SORT THIS

10:18:42  20  OUT AND WE HAVE TO CUT COSTS.

10:18:44  21      I DON'T CALL THAT A PLAN.  I CALL THAT AN ORDER TO CUT

10:18:48  22  COSTS.

10:18:48  23      THE COURT:  SO NOW WE ARE INTO SEMANTICS, SO THAT'S

10:18:51  24  EXACTLY RIGHT.

10:18:52  25      MR. DUBBS:  THAT'S NOT SEMANTICS.

10:18:53  1          THE COURT:  OKAY.  SO HELP ME OUT.  I DON'T KNOW WHAT

10:18:55  2   A PLAN IS.  I DIDN'T GO TO BUSINESS SCHOOL, I'M SORRY.  I DON'T

10:18:59  3   KNOW WHAT AN INTEGRATION PLAN IS.

10:19:00  4      I'VE NEVER SEEN ANY DEFINITION IN THE CASES, AND I DON'T

10:19:03  5   KNOW WHAT LEVEL YOU ARE HOLDING THE COMPANY TO THE -- TO A

10:19:07  6   STANDARD OF A PLAN.  AND I DON'T KNOW WHAT IT IS BECAUSE YOU

10:19:13  7   DIDN'T ALLEGE FACTS THAT TELL ME.

10:19:15  8      YOU DIDN'T TELL ME, IN ORDER TO SAY YOU HAVE A PLAN, YOU

10:19:18  9   NEED TO HAVE A PLAN THAT HAS THE FOLLOWING ELEMENTS AND THEY

10:19:20  10  DIDN'T.

10:19:21  11      YOU ARE SIMPLY SAYING THERE'S NO PLAN, AND I'M GIVING YOU

10:19:25  12  PUSH BACK ON IT BECAUSE I'M SAYING THE PLAN COULD HAVE BEEN

10:19:27  13  THAT THE BOSS SITS IN HIS OFFICE AND HE SAYS TO HIS EXECUTIVE

10:19:33  14  ASSISTANT, SEND A MEMO OUT, MAKE THIS HAPPEN.  AND THAT'S A

10:19:38  15  PLAN.

10:19:39  16          MR. DUBBS:  NO REASONABLE JUROR WOULD THINK THAT,

10:19:42  17  STANDING ALONE, IS A PLAN.

10:19:43  18          THE COURT:  SO THAT -- PROBABLY NOT.  BUT YOU DIDN'T

10:19:47  19  TELL ME ANYWHERE IN THIS COMPLAINT WHAT A PLAN IS.

10:19:50  20          MR. DUBBS:  YOU KNOW WHAT, I THINK WHAT THE COURT IS

10:19:53  21  DOING IS QUITE RIGHT IN TERMS OF PRESSING ME FOR THE POINT, BUT

10:19:57  22  HAVE YOU TO GET BACK TO THE STARTING POINT WHICH IS THAT THE

10:20:01  23  DEFENDANTS USED THE WORD "PLAN."

10:20:04  24          THE COURT:  I'M SORRY, I THOUGHT YOU TOLD ME THAT

10:20:06  25  THEY DIDN'T HAVE A PLAN.

10:20:07   1          MR. DUBBS:  NO, THEY'VE USED THE WORD --

10:20:12   2          THE COURT:  OKAY.  YOU DON'T MEAN THE ATTORNEYS IN

10:20:15   3    THEIR BRIEFING, YOU MEAN --

10:20:16   4          MR. DUBBS:  NO, NO.  I'M TALKING ABOUT THE CLIENTS.

10:20:19   5    THEY USED THE WORD "PLAN."  AND THE QUESTION WAS MR. BERGER, IN

10:20:23   6    HIS DEPOSITION, YOU SAID THAT THERE WAS A PLAN, WHAT DID YOU

10:20:26   7    MEAN BY THAT.  AND IF HE SAID, I MEANT BY THAT THAT I WROTE A

10:20:30   8    MEMO TO THE DIRECTOR OF SALES AND I SAID STRAIGHTEN THIS OUT

10:20:34   9    WE'VE GOT TO INTEGRATE THESE SALES FORCES, GOOD LUCK, REPORT

10:20:38   10   BACK.  OKAY.  AND THEN WE HAVE AN ISSUE OF, IS THAT A PLAN.

10:20:42   11   AND I WILL CONVINCE THOSE PEOPLE THAT AIN'T NO PLAN.

10:20:46   12         THE COURT:  OKAY.  SO YOU'VE ALLEGED HERE CLEARLY, IN

10:20:48   13   HIS STATEMENTS, HE USED THE WORD PLAN, THERE'S NO DOUBT ABOUT

10:20:51   14   IT.

10:20:51   15         MR. DUBBS:  YES.

10:20:52   16         THE COURT:  AND YOU SAY THERE WAS NO PLAN.

10:20:53   17         MR. DUBBS:  YES.

10:20:53   18         THE COURT:  SO I'M THEN LOOKING -- SO THEN YOU HAVE

10:20:56   19   SOME CW'S WHO SAID THERE'S NO PLAN.

10:21:02   20         MR. DUBBS:  RIGHT.

10:21:02   21         THE COURT:  SO YOU ARE LEAVING ME IN THE DARK.

10:21:04   22         MR. DUBBS:  THAT'S BECAUSE YOU ARE ASSUMING THAT OUR

10:21:08   23   FACTS ARE NOT TRUE AS ALLEGED.

10:21:10   24         THE COURT:  NO, I'M ASSUMING THAT THEY ARE TRUE, BUT

10:21:12   25   THEY HAVE TO BE FACTS.

10:21:14  1          SO I'M SAYING IT'S CONCLUSORY TO ALLEGE THERE'S NO PLAN

10:21:17  2     WHERE YOU DON'T ALLEGE FACTS TO SHOW WHAT A PLAN IS.  IT'S NOT

10:21:20  3     SOMETHING COMMONLY UNDERSTOOD.  I CLEARLY DON'T UNDERSTAND IT.

10:21:23  4          MR. DUBBS:  WELL, A PLAN IS SOMETHING MORE THAN A

10:21:25  5     MEMO FROM THE CEO.

10:21:27  6          THE COURT:  OKAY.  HOW MUCH MORE?  IS IT AN ORG

10:21:30  7     CHART?

10:21:30  8          MR. DUBBS:  PROBABLY NOT AN ORG CHART, NO.  SOMETHING

10:21:34  9     THAT SAYS, WHAT ARE WE GOING TO DO TO PUT THESE TWO COMPANIES

10:21:38  10    TOGETHER.

10:21:38  11         THE COURT:  SO I THINK YOU HAVE TO ALLEGE THAT.  I

10:21:41  12    THINK YOU ARE OBLIGATED TO ALLEGE THAT.

10:21:43  13         MR. DUBBS:  I THINK WE HAVE, IN SUBSTANCE, ALLEGED

10:21:45  14    THAT.

10:21:45  15         THE COURT:  I'VE GOT THE COMPLAINT RIGHT HERE.  I'M

10:21:47  16    GLAD FOR YOU TO POINT IT OUT TO ME.

10:21:50  17         MR. DUBBS:  I WOULD HAVE TO LOOK AT IT --

10:21:52  18         THE COURT:  BECAUSE I DON'T THINK YOU DID.

10:21:53  19         MR. DUBBS:  FINE.  WE CAN LOOK AT IT AGAIN.

10:21:55  20       BUT I DON'T THINK WE SAID -- I THINK IT'S CLEAR FROM THE

10:22:00  21    CONTEXT THAT THE PLAN IS, HOW DO WE PUT THOSE TWO COMPANIES

10:22:04  22    TOGETHER, BECAUSE THAT'S WHAT THE CASE IS ABOUT.

10:22:06  23         THE COURT:  OKAY.  RIGHT.

10:22:07  24         MR. DUBBS:  SO THAT'S THE PLAN.  HOW DO WE PUT THE

10:22:10  25    TWO COMPANIES TOGETHER AGAIN?  AND IT'S NOT JUST THE DIRECTION

10:22:13  1      TO THE CFO AND TO THE HEAD OF SALES, PUT THEM TOGETHER.

10:22:19  2              THE COURT:  SO LET'S GO ON TO THE LENOVO, BECAUSE I

10:22:22  3      THINK IT'S --

10:22:23  4              MR. DUBBS:  IT'S INTERESTING.

10:22:24  5          OKAY.  SO LENOVO DEALS WITH -- THE INTERESTING THING ABOUT

10:22:29  6      LENOVO IS WE HAVE AN AFTER THE CLASS ADMISSION BY MR. MEYERCORD

10:22:36  7      WHO, AT THE TIME, THE PRECEDING TIME, WAS THE CHAIRMAN OF THE

10:22:43  8      BOARD.  SO HE WAS PART OF THE LOOP.  HE WAS IN THE LOOP,

10:22:46  9      PRESUMABLY.  AND WE HAVE HIM SAYING, WE HAVE NO VISIBILITY INTO

10:22:54  10     THAT COMPANY, OR INTO THAT ENTITY.

10:23:00  11         SO RIGHT THERE HE'S ADMITTING THAT ANY STATEMENT THAT HE

10:23:04  12     MADE, AND WE WILL GO BACK IN A MINUTE.

10:23:07  13             THE COURT:  YOU DON'T ALLEGE HIS STATEMENTS.

10:23:09  14             MR. DUBBS:  I KNOW THAT, BUT JUST AS A HYPOTHETICAL.

10:23:13  15             THE COURT:  OKAY.

10:23:14  16             MR. DUBBS:  ANY STATEMENT HE WOULD MAKE AT THAT POINT

10:23:16  17     WOULD BE WITHOUT ANY REASONABLE BASIS BECAUSE HE JUST SAYS, I

10:23:20  18     DON'T KNOW, I DON'T HAVE ANY VISIBILITY.

10:23:23  19         THEN THE QUESTION BECOMES, IS IT REASONABLE AS A MATTER OF

10:23:25  20     PLEADING TO SAY, THE CHAIRMAN OF THE BOARD WHO IS NOW THE CEO

10:23:29  21     SAYS, I HAVE NO VISIBILITY INTO THAT COMPANY, WHETHER IF WE

10:23:32  22     REWIND THE TAPE, 6 MONTHS, 8 MONTHS, OR WHEREVER, THAT SOMEHOW

10:23:40  23     THE COMPANY, OF WHICH HE WAS THE CHAIRMAN OF THE BOARD, WOULD

10:23:43  24     HAVE MORE VISIBILITY.

10:23:46  25         IT'S ONE THING TO SAY WE DIDN'T HAVE VISIBILITY BECAUSE

10:23:48  1    THE THING JUST STARTED AND OUR VISIBILITY GREW OVER TIME.  IT'S

10:23:52  2    ANOTHER THING TO SAY WE HAD NO VISIBILITY TODAY, BUT I HAD

10:23:56  3    REALLY GOOD VISIBILITY THREE MONTHS AGO.

10:23:59  4         NOW TALK ABOUT PLAUSIBILITY, WHICH IS THE STANDARD.

10:24:01  5              THE COURT:  YEAH.  BUT I'M REALLY FOCUSED ON MY

10:24:04  6    DEFENDANTS HERE, NOT MR. MEYERCORD WHO YOU DIDN'T SUE.

10:24:07  7              MR. DUBBS:  WELL, WE DIDN'T SUE MR. MEYERCORD, THAT'S

10:24:10  8    TRUE.  THE QUESTION IS WHETHER -- WELL, FIRST OF ALL, HIS

10:24:15  9    STATEMENT IS IMPUTABLE TO THE COMPANY, JUST AS A MATTER OF

10:24:20  10   IMPUTATION OF SCIENTER, WHICH IT MAY BE JUST A FOOTNOTE POINT,

10:24:24  11   BUT I WOULD SUGGEST --

10:24:27  12              THE COURT:  BECAUSE YOU HAVE TO SHOW SCIENTER FOR

10:24:31  13   EACH OF THE NAMED DEFENDANTS.

10:24:32  14              MR. DUBBS:  ULTIMATELY, I DO, OR I CAN SHOW SCIENTER

10:24:36  15   ON BEHALF OF THE COMPANY, AND THAT SCIENTER COULD BE IMPUTED BY

10:24:40  16   NAMED DEFENDANTS OR OTHER PEOPLE AS LONG AS THEY HAVE A CERTAIN

10:24:43  17   AMOUNT OF APPARENT AUTHORITY.  I MEAN, WE CAN ARGUE ABOUT

10:24:47  18   HOW -- IT CAN BE THE JANITOR, IT DOESN'T HAVE TO BE THE CFO.

10:24:57  19        SO THE QUESTION IS YOU HAVE ADMISSION THAT THEY DIDN'T HAVE

10:25:00  20   VISIBILITY AT A CERTAIN POINT IN TIME, AND WE SAW IT'S

10:25:03  21   PLAUSIBLE TO ARGUE AND TO ALLEGE THAT IN THE COURSE OF A

10:25:12  22   BUSINESS RELATIONSHIP WHERE THEY CLAIM THEY ARE GOING TO CHINA

10:25:14  23   AND EVERYTHING IS WELL AND THEY LOVE ONE ANOTHER AND ALL THIS

10:25:17  24   STUFF, THAT THEY WOULD HAVE MORE VISIBILITY AS TIME GOES ON.

10:25:20  25   AND HERE HE ADMITS AFTER THE FACT, WELL, THERE WAS NO

1    VISIBILITY.

2         SO WE THINK THAT IS SUFFICIENT TO SAY THE PRIOR STATEMENTS

3    HAD NO BASIS BECAUSE THE COMPANY DID NOT HAVE VISIBILITY INTO

4    LENOVO, AND THAT AFTER THE CLASS PERIOD ADMISSION CARRIES BACK

5    OR IT'S PLAUSIBLE TO CARRY IT BACK FOR PLEADING PURPOSES WITH

6    RESPECT TO THE ALLEGATIONS AS TO THAT QUESTION.

7         SO IT'S A RELATIVELY SIMPLE NARROW QUESTION, FRANKLY.

8         ON THE POINT OF FLIPPING THROUGH MY CHARTS, IF WE CAN GO

9    TO PAGE 19.  IF IT WAS EVER A CASE FOR THE CORE OPERATIONS

10   DOCTRINE, I WOULD SUGGEST --

11             THE COURT:  THERE RARELY IS A CASE FOR IT.

12             MR. DUBBS:  YEAH, I MEAN THEY BOUGHT A COMPANY THAT

13   WAS EVEN BIGGER, THOUGH NOT BY MUCH.  THEY CALLED IT A MERGER

14   OF EQUALS, AND THAT'S MORE OR LESS WHAT IT WAS.

15        AND SO THAT IN AND OF ITSELF MAKES IT A CORE OPERATION.

16   AND I MEAN, THE NINTH CIRCUIT HELD IN THE REESE CASE THAT

17   PRUDHOE BAY IN TERMS OF BP, WAS A CORE OPERATION.

18        WELL, I HAPPENED TO ARGUE THAT CASE, AND I WILL SAY THAT

19   PRUDHOE BAY WAS IMPORTANT FOR THE PEOPLE AT BP IN NORTH

20   AMERICA, BUT IF YOU LOOKED AT ALL OF BP'S RESERVES THROUGHOUT

21   THE ENTIRE WORLD, YOU KNOW, YOU COULD DEBATE WHETHER IT WAS A

22   CORE OPERATION.  BUT THEY SAID ITS CORE OPERATION, EVEN FOR A

23   SLICE OF THE COMPANY, WHICH WAS THE NORTH AMERICAN SLICE.

24        SO IF IT'S A CORE OPERATION FOR THAT, THEN I WOULD SAY

25   THIS IS CLEARLY A CORE OPERATION.

10:27:23  1          THE COURT:  SO YOU'RE ARGUING CORE OPERATION IS ONE

10:27:26  2     ELEMENT OF SCIENTER, NOT THE PRONG THAT IS RARELY IMPOSED THAT

10:27:31  3     IT, ALONE, IS SUFFICIENT.

10:27:33  4          MR. DUBBS:  WELL, I'M ARGUING LIKE MOST LAWYERS, IN

10:27:35  5     THE ALTERNATIVE.

10:27:39  6          THE COURT:  THERE YOU GO, AND THAT'S FAIR.

10:27:41  7          MR. DUBBS:  WE THINK IN THIS CASE, IT IS SO PROFOUND,

10:27:43  8     GIVEN THE SIZE OF THE TWO COMPANIES THAT ARE BEING MERGED, THAT

10:27:51  9     THAT IN AND OF ITSELF CARRIES THE DAY.

10:27:54  10        BUT EVEN IF IT DOESN'T AND WE GO TO A HOLISTIC APPROACH,

10:27:59  11    IT GOES INTO THE BUCKET ALONG WITH THE MOTIVE AND A LOT OF

10:28:03  12    OTHER ISSUES.

10:28:04  13         THE COURT:  WELL, I AGREE IT GOES INTO THE BUCKET FOR

10:28:07  14    MY HOLISTIC VIEW, I DON'T HAVE ANY PROBLEM WITH THAT.

10:28:11  15         MR. DUBBS:  AND JUST SO THE RECORD IS CLEAR, WE WOULD

10:28:13  16    SAY BY VIRTUE OF THE SIZE, WE WOULD SAY IT STANDS ON ITS OWN.

10:28:17  17    THE COURT OBVIOUSLY GETS OUR POINT ON THAT.

10:28:20  18         THE COURT:  OKAY.

10:28:30  19         MR. DUBBS:  ANOTHER POINT WHICH IS A HOLISTIC BUCKET

10:28:34  20    POINT I CAN SEE, IS ON PAGE 21 WHICH IS THAT THERE ARE A NUMBER

10:28:40  21    OF CASES THAT SAY THAT, LET'S CALL IT A RED FLAG, IS WHEN YOU

10:28:47  22    HAVE SUCH EXECUTIVE, HIGH EXECUTIVE TURNOVER, THAT THAT IS AN

10:28:55  23    IMPORTANT FACT TO BE WEIGHED.  AND SO ON PAGE 21, WE TALK

10:29:02  24    ABOUT --

10:29:02  25         THE COURT:  I CERTAINLY HAVE TURNOVER THAT IN TERMS

10:29:07  1   OF PROXIMITY TO THE ALLEGED STATEMENTS, MIGHT BE IMPORTANT.

10:29:12  2        BUT AGAIN, BECAUSE THERE IS NO RESTATEMENT, USUALLY THAT'S

10:29:16  3   WHAT'S GOING ON IS I'VE GOT A CASE WHERE THE COMPANY RESTATES

10:29:19  4   ITS FINANCIALS AND FIRES THE GUYS WHO PUT OUT THE WRONG

10:29:23  5   NUMBERS, NOT ADMITTING THEY WERE FALSE, BUT THAT THEY WERE

10:29:26  6   WRONG.

10:29:27  7        I DON'T ACTUALLY HAVE THAT HERE.  I HAVE, YOU KNOW, AGAIN,

10:29:30  8   IS IT -- YES, I HAVE THE TURNOVER, I THINK TO THE EXTENT IT

10:29:35  9   ADDS TO THE HOLISTIC, IT ADDS VERY LITTLE BECAUSE IT'S ONLY A

10:29:39  10  PROXIMITY ARGUMENT AND THERE'S NO -- THERE'S NOTHING IN THESE

10:29:44  11  FACTS THAT SHOWS AN EVENT THAT CAUSED THEM TO LEAVE LIKE THE

10:29:48  12  RESTATEMENT.

10:29:50  13             MR. DUBBS:  CAN I RESPOND TO THAT?

10:29:51  14             THE COURT:  SURE.

10:29:53  15             MR. DUBBS:  WELL, FIRST OF ALL, BERGER ULTIMATELY GOT

10:29:56  16  CANNED AS TO --

10:29:58  17             THE COURT:  SURE.

10:29:58  18             MR. DUBBS:  -- SO IT'S NOT LIKE THERE WAS HEAVY

10:30:00  19  TURNOVER IN THE EXECUTIVE RANKS IN GENERAL, EVEN THOUGH EVEN IF

10:30:08  20  YOU WOULD SAY IT DOESN'T MATTER THAT SOME OF THIS TURNOVER WAS

10:30:11  21  WITH PEOPLE WHO WERE CLOSE TO THE INTEGRATION OF THE SALES

10:30:15  22  FORCE WITHOUT DEBATING EXACTLY WHAT THAT TERM MEANS.  SO YOU

10:30:20  23  HAVE THAT.

10:30:20  24        NOW AS TO RESTATEMENTS, THE RULES ON THE RESTATEMENTS HAVE

10:30:28  25  CHANGED.  OKAY.  AND YOU COULD LOOK AT ALL THE STATISTICS, AND

10:30:33  1    THE NUMBER OF RESTATEMENTS HAVE GONE DOWN DRAMATICALLY.  SO IF

10:30:38  2    THAT'S THE STANDARD, IT'S SETTING UP AN ARTIFICIAL BAR THAT IS

10:30:42  3    VERY RARELY, IF EVER, GOING TO BE MET.  NUMBER ONE.

10:30:45  4        NUMBER TWO, THE RESTATEMENTS ARE OFTEN DRIVEN BY THE

10:30:49  5    ACCOUNTANTS WHO SAY YOU'VE GOT TO RESTATE IT.  AND SO THEY ARE

10:30:53  6    IRRELEVANT TO A CASE WHERE WE SAY THAT THE STATEMENTS ARE MADE

10:30:59  7    TO ANALYSTS BY THE CEO, AND THEY ARE NOT MISSTATEMENTS ABOUT

10:31:03  8    THE NUMBERS, THE NUMBERS ARE IMPORTANT.

10:31:08  9        SO IF YOU ARE SAYING -- SO I WOULD RESPECTFULLY SUGGEST

10:31:12  10   THAT TO SAY THAT THE RESTATEMENT SITUATION IS SOME SORT OF

10:31:17  11   PARADIGM TO WHICH THIS CAN BE COMPARED IS NOT RIGHT.

10:31:21  12       IF YOU WANT TO COMPARE IT AND YOU COMPARE IT TO COOPER AND

10:31:24  13   ROSENBAUM, AND SOME OF THE OTHER CASES.

10:31:26  14        THE COURT:  ROSENBAUM, WE ARE PROBABLY NOT GOING TO

10:31:29  15   RELY ON TOO MUCH, JUDGE CONTI CERTAINLY DIDN'T.

10:31:31  16        MR. DUBBS:  WELL, WHATEVER.

10:31:32  17       SO THE POINT IS THAT THERE ARE CASES THAT TOOK SERIOUSLY

10:31:36  18   THE PROPOSITION, WHICH MY LEARNED COLLEAGUE OBVIOUSLY DISAGREES

10:31:42  19   WITH, WHICH IS THAT YOU HAVE TO DIG INTO THE STATEMENTS IN A

10:31:46  20   MERGER AND ACQUISITION CONTEXT, AND YOU JUST CAN'T SAY OH, WELL

10:31:49  21   THIS IS JUST BAD BUSINESS, AND IT'S TOO BAD AND IT CAN NEVER BE

10:31:53  22   SECURITIES FRAUD, WHEN THEY HAD AT EVERY POINT IN TIME,

10:31:57  23   MR. BERGER HAD A CHOICE.  MR. BERGER HAD A CHOICE OF HOW, WHAT

10:32:01  24   HE WOULD TELL THOSE ANALYSTS.

10:32:04  25       AND HE KNEW THAT IF HE DIDN'T SAY THINGS THAT WERE SOLID

10:32:10  1    TO THOSE ANALYSTS OR CONVEYED SOLIDITY, THAT IT COULD COME BACK

10:32:16  2    AND KNOCK THE STOCK PRICE.

10:32:17  3              THE COURT:  WELL, OKAY.  I CAN'T DISAGREE WITH YOU ON

10:32:24  4    THAT AT ALL.

10:32:25  5       THE CASE LAW ALSO GIVES THE COMPANIES LATITUDE IN

10:32:27  6    CONTINUING TO MAKE LEMONADE OUT OF LEMONS.

10:32:31  7              MR. DUBBS:  IT DOES NOT GIVE LATITUDE UNLESS THEY ARE

10:32:34  8    TELLING -- UNLESS THEY ARE DISCLOSING ALONG THE WAY, FULLY, ALL

10:32:38  9    OF THE TRUTH.

10:32:40  10             THE COURT:  WELL, FAIR ENOUGH.

10:32:41  11             MR. DUBBS:  BECAUSE ONCE THEY OPEN THEIR MOUTH,

10:32:43  12   THEY'VE GOT TO LAY IT ALL OUT.

10:32:45  13      NOW IF THEY WANT TO LAY IT ALL OUT AND THEY SAY, YOU KNOW

10:32:48  14   WHAT, WE HAD THIS PLAN, WE ARE ON TRACK IN CERTAIN RESPECTS BUT

10:32:52  15   WE ARE NOT ON TRACK IN CERTAIN OTHER RESPECTS, AND HERE ARE THE

10:32:54  16   RESPECTS THAT WE ARE NOT ON TRACK FOR.  YOU KNOW, THEN YOU HAVE

10:33:01  17   A NON-ACTIONABLE STATEMENT IN ALL LIKELIHOOD, AND THAT'S THE

10:33:06  18   EXAMPLE WHERE THE COURTS DEFER TO MANAGEMENT TO MAKE A

10:33:13  19   STATEMENT.

10:33:13  20      BUT ONCE THEY OPEN THEIR MOUTH, THEY'VE GOT TO LET IT ALL

10:33:16  21   HANG OUT.  AND MR. BERGER DIDN'T LET IT ALL HANG OUT, BY ANY

10:33:20  22   STRETCH OF THE IMAGINATION.

10:33:21  23      AND AGAIN, I GET BACK TO IT, WE CAN DEBATE WHAT A PLAN IS,

10:33:26  24   BUT IT'S THEIR WORD, IT'S NOT OUR WORD.  WHAT DOES HE MEAN BY A

10:33:30  25   PLAN?  AND A PLAN IS NOT JUST A MEMO, IT'S GOT TO BE MORE THAN

1    THAT.  AND HOW DETAILED IT'S GOING TO BE, I DON'T KNOW.

2         BUT YOU KNOW WHAT, IF WE FIND OUT THERE'S NO PLAN, THIS

3    CASE CAN GO ONE WAY.  IF HE COMES BACK WITH, WELL, WE HAD

4    MACKENZIE COME IN AND HERE'S OUR PLAN, AND WE WERE ACCORDING TO

5    THE PLAN ON THIS DATE AND ON THAT DATE, AND ON THE THIRD DATE

6    WE CAN ARGUE ABOUT IT AND QUIBBLE, THEN THE CASE IS GOING TO GO

7    ONE WAY OR THE OTHER.

8         BUT AT THIS POINT WE RESPECTFULLY SUBMIT WE ARE ENTITLED

9    TO AT LEAST THE TIE.  THE TIE ON SCIENTER.  WITH THE CORE

10   OPERATIONS DOCTRINE, THE EXECUTIVE TURNOVER, THE STOCK

11   INCENTIVE PLAN, MOTIVE FOR WHATEVER, HOWEVER ONE WEIGHTS IT IN

12   THE WHOLE CALCULUS, AND ALL THIS OTHER STUFF, AND THE SIMPLE

13   FACT THAT THE THING DIDN'T WORK.

14        SO YES, HINDSIGHT BIAS SHOULD BE AVOIDED.  BUT WE CAN'T

15   SAY THIS IS ALL A WONDERFUL SITUATION AND THAT PEOPLE DIDN'T

16   GET HURT AND STOCKHOLDERS DIDN'T GET HURT AND STOCKHOLDERS WHO

17   HAD THE OPPORTUNITY TO SAY, I WANT TO SELL EXTREME NETWORKS

18   THIS, ACQUISITION, YOU KNOW, THEY BIT OFF MORE THAN THEY CAN

19   CHEW.

20        WHO IN THEIR RIGHT MIND BUYS A COMPANY THAT'S BIGGER THAN

21   THEM?  BUT THEY SAID THEY COULD PULL IT OFF, THEY SAID THEY HAD

22   A PLAN, THEY SAID THEY WERE ON TRACK.  AND THESE ANALYSTS ASKED

23   THEM, HOW IS THIS GOING?  AND THEY SAID IT IS GREAT AND WE ARE

24   ON TRACK.  SO THAT'S WHY I BOUGHT MY STOCK OR KEPT MY STOCK.

25   THAT'S NOT ACTIONABLE, I GRANT YOU.  BUT SOME SHAREHOLDERS WERE

1   BUYING STOCK IN THE FIRST INSTANCE, RELYING ON THAT.

2       SO THIS IS JUST NOT A BROAD BRUSH CASE OF AN ACQUISITION

3   GONE BAD.  AND MR. BERGER IS A WONDERFUL GUY, AND HE DISCLOSED

4   ALL THIS STUFF, MOST OF WHICH HE WAS LEGALLY FORCED TO

5   DISCLOSE, AND SO THAT SHOWS THAT HE DOESN'T HAVE SCIENTER WHICH

6   IS THEIR ENTIRE REPLY BRIEF WHICH IS IRRELEVANT.  IT'S JUST

7   IRRELEVANT.

8       THE POINT IS, YOU LOOK AT THE INDIVIDUAL STATEMENTS.  THE

9   INDIVIDUAL STATEMENTS ARE EITHER FALSE OR NOT FALSE AND THEY

10  ARE MADE WITH SCIENTER.  AND THE FACT THAT YOU DISCLOSED OTHER

11  STUFF WHICH HAPPENED TO BE TRUE OR WAS TRUE, GOOD FOR YOU.  BUT

12  THAT DOESN'T GET YOU OFF THE HOOK FOR THE STATEMENTS YOU MADE

13  THAT WERE FALSE.  YOU ARE STILL ON THE HOOK FOR THE SECURITIES

14  LAWS FOR THOSE STATEMENTS, SO LONG AS YOU CAN PROVE SCIENTER

15  AND ALL THE REST, I GRANT YOU.

16      AND WITH THAT, I HAVE -- LET ME JUST GO THROUGH MY CHARTS

17  REAL QUICK SO THAT I DON'T FORGET SOMETHING.  YOUR HONOR HAS

18  BEEN VERY GENEROUS WITH THE COURT'S TIME.

19      ON PAGE 5 I MEANT TO MENTION THE RIHN AND MULLIGAN CASES

20  WHICH ARE CITED IN OUR BRIEF AND GONE INTO IN SOME DETAIL.  AND

21  I HAVE NO DOUBT THE COURT WILL LOOK AT THAT.  AND ROSENBAUM

22  WE'VE TALKED ABOUT.

23          THE COURT:  ROSENBAUM --

24          MR. DUBBS:  YOU ARE NOT IMPRESSED WITH ROSENBAUM.

25          THE COURT:  WELL, I HAVE TO LOOK AT IT IN LIGHT OF

10:36:54  1      JUDGE --

10:36:54  2              MR. DUBBS:  SOMEBODY LIKES ROSENBAUM.

10:36:56  3              THE COURT:  YEAH, REALLY.

10:36:58  4          SO AT THE BEGINNING OF YOUR ARGUMENT YOU SAID, AND I

10:37:00  5      INTERRUPTED YOU MANY TIMES, AND YOU WERE VERY GRACIOUS, BUT YOU

10:37:02  6      SAID YOU HAD A WAY TO DEAL WITH THIS.  AND I DIDN'T KNOW

10:37:06  7      WHETHER YOU HAVE A WAY FOR ME TO ANALYZE IT, THAT YOU HAVE BEEN

10:37:10  8      VERY CLEAR ON, BUT IF I WERE TO GRANT THIS MOTION AS THIS IS

10:37:14  9      YOUR FIRST TIME BEFORE ME ON THIS, I MEAN, I DON'T KNOW WHETHER

10:37:20  10     YOU ARE SAYING, LET ME TAKE ANOTHER SHOT AT THIS OR YOU ARE

10:37:24  11     SAYING THIS IS IT.

10:37:25  12             MR. DUBBS:  I THINK I NEED TO LOOK AT YOUR HONOR'S

10:37:27  13     OPINION AND SEE WHAT THE PROBLEM IS.

10:37:29  14         BUT I WILL TELL YOU MY PRESENT INCLINATION IF YOU SAY THAT

10:37:33  15     THOSE CW'S DON'T MAKE IT, AND EVEN THOUGH THEY TALKED TO BERGER

10:37:38  16     AND THEY USED THE WORD "PLAN," THAT THAT'S NOT GOOD ENOUGH,

10:37:42  17     THEN I'M NOT SURE I WILL AMEND, BECAUSE THAT'S JUST -- IT

10:37:46  18     DOESN'T GET BETTER THAN THAT.

10:37:48  19             THE COURT:  RIGHT.  AND I'M SURE THIS COMPLAINT HAS

10:37:50  20     BEEN THROUGH A NUMBER OF ITERATIONS, EVEN THOUGH IT'S THE

10:37:52  21     FIRST.

10:37:52  22             MR. DUBBS:  I'M AFRAID IT HAS.  PROLIX SAYS IT IS.

10:37:58  23             THE COURT:  THANK YOU.  ALL RIGHT.

10:37:59  24         MS. WEISS, LET ME HEAR YOUR RESPONSE HERE.  YOU KNOW YOUR

10:38:04  25     PAPERS YOU MAKE MUCH OF THE CURATIVE DISCLOSURES IN EACH OF THE

10:38:09  1    PRESS RELEASES.  WE DIDN'T DISCUSS THAT.

10:38:12  2         WHAT MR. DUBBS SAYS IS THAT WHEN BERGER WENT OFF ON

10:38:18  3    DISCLOSING OTHER THINGS, IT DIDN'T REALLY GET TO THE HEART OF

10:38:26  4    COUNTERING HIS OWN FACTUAL STATEMENTS SUCH AS SALES FORCE

10:38:30  5    INTEGRATION IS COMPLETE.

10:38:31  6         MS. WEISS:  SO YOUR HONOR, I GUESS FIRST OF ALL, I

10:38:35  7    WOULD SAY WE DIDN'T MAKE CURATIVE DISCLOSURES, WE MADE

10:38:39  8    REALTIME, SAFE HARBOR DISCLOSURES THAT TOLD INVESTORS VERY

10:38:46  9    EXPLICITLY THE RISKS OF AN INTEGRATION.

10:38:47 10         SO SEPARATE AND APART FROM ANYTHING, WE FALL RIGHT INTO THE

10:38:51 11    FIRST PRONG OF THE SAFE HARBOR.  WE MADE DETAILED, GOOD FAITH

10:38:56 12    DISCLOSURES, REALTIME, AND WE ADDED TO THEM.  THEY ARE NOT

10:39:00 13    BOILER PLATE.

10:39:01 14         THE COURT:  BUT THAT'S GOING TO BE LIMITED TO THE

10:39:02 15    FORWARD LOOKING STATEMENTS.

10:39:04 16         MS. WEISS:  THAT'S GOING TO BE LIMITED TO THE FORWARD

10:39:05 17    LOOKING STATEMENTS.

10:39:06 18         THE COURT:  AND SO THAT'S WHERE THE LAW AND THAT'S

10:39:09 19    WHERE LEVEL THREE WAS INTERESTING TO ME EVEN THOUGH IT'S THE

10:39:14 20    10TH CIRCUIT BECAUSE THE COURT THERE CREATED THESE TWO BASKETS,

10:39:17 21    AND SO IT GAVE ME SOME DIRECTION.

10:39:19 22         AND THEN JUDGE CONTI'S ORDER WAS OF INTEREST TO ME ON THE

10:39:22 23    SAFE HARBOR BECAUSE HIS VIEW WAS, AND YOU CAN TELL ME IF THAT'S

10:39:28 24    STILL THE LAW, AND IN THE NINTH CIRCUIT THERE IS NO DEFINITIVE

10:39:33 25    RULING ON WHETHER A STATEMENT MADE THAT HAS MIXED FUTURE

10:39:37  1    LOOKING STATEMENTS AND FACTUAL STATEMENTS CAN BE TREATED

10:39:42  2    DIFFERENTLY.

10:39:42  3          AND IT APPEARS THAT, WELL, HE CLEARLY SAID HE WENT WITH

10:39:47  4    THE OTHER DECISIONS IN OUR DISTRICT, THAT PARSE THE STATEMENT

10:39:52  5    AND DON'T GRANT SAFE HARBOR PROTECTION TO STATEMENTS THAT ARE

10:39:57  6    PAST LOOKING.

10:39:58  7          SO "ON TRACK" WAS EXACTLY WHAT HE FOCUSED ON.  AND THERE'S

10:40:02  8    A LOT OF CASE LAW ON THIS TERM "ON TRACK."  AND STATING THAT BY

10:40:08  9    SAYING YOU ARE ON TRACK, THAT MEANS AS OF NOW, WE HAVE NOW

10:40:12  10   REACHED A POINT THAT WE HAD PREDICTED WE WOULD REACH, AS

10:40:16  11   OPPOSED TO SAYING, PREDICTIONS OF THE FUTURE, WE ARE GOING TO

10:40:19  12   CONTINUE TO BE ON TRACK.

10:40:21  13         AND THE SAME THING WITH THE STATEMENT LIKE WE HAVE, OR

10:40:24  14   SALES FORCE INTEGRATION IS COMPLETE, ISN'T ENTITLED TO SAFE

10:40:29  15   HARBOR.

10:40:30  16              MS. WEISS:  CORRECT, YOUR HONOR.

10:40:30  17         AND WE ARE NOT CLAIMING SAFE HARBOR PROTECTION FOR THE "ON

10:40:34  18   TRACK" STATEMENTS.

10:40:35  19         WHAT WE ARE SAYING IS THAT PLAINTIFFS, VERY LOOSELY, KEEP

10:40:40  20   THROWING OUT THIS TERMINOLOGY "ON TRACK."  IF YOU ACTUALLY GO

10:40:43  21   TO THE DISCLOSURE ITSELF, AND THIS IS WHY WE SUPPLIED ALL OF

10:40:49  22   THE DISCLOSURES, AND MS. AUSTIN -- MS. AUSTIN IS MY

10:40:54  23   PARALEGAL -- WITH THE RECORD.

10:40:55  24         IF YOU ACTUALLY GO TO THE "ON TRACK" IN CONTEXT, THE

10:41:00  25   STATEMENT HAS TO DO WITH SOMETHING SPECIFIC, IT HAS TO DO WITH

10:41:07  1   EITHER CHOOSING EXECUTIVE MANAGEMENT OR STARTING TO REALIZE

10:41:10  2   COST SYNERGIES, MEANING SOME PEOPLE ARE BEING LET GO.

10:41:14  3              THE COURT:  CAN YOU SHOW ME ONE AS AN EXAMPLE,

10:41:17  4   BECAUSE NOWHERE DO OUR RULES ASK YOU TO HIGHLIGHT WHAT YOU ARE

10:41:19  5   TALKING ABOUT.

10:41:20  6      BUT BECAUSE YOU ARE -- IN YOUR PAPERS, YOU WOULD SEND ME

10:41:22  7   THE THREE OR FOUR EXHIBITS, AND MAKE A GENERAL STATEMENT, AND

10:41:26  8   IT WAS ACTUALLY VERY HARD FOR ME TO PULL OUT THE EXHIBIT AND

10:41:31  9   KNOW EXACTLY WHAT YOU WERE REFERRING TO.

10:41:32 10              MS. WEISS:  WELL, ONE THING I WOULD ASK PERMISSION TO

10:41:35 11   DO, YOUR HONOR, IS SINCE MY COLLEAGUE HAS SUBMITTED A DETAILED

10:41:39 12   POWERPOINT, WHAT I WOULD LIKE TO DO IS IN CHRONOLOGIC ORDER,

10:41:44 13   SUBMIT THOSE STATEMENTS AND THEN GIVE YOU THE CONTEXT RIGHT, SO

10:41:50 14   THAT YOU WILL HAVE THE "ON TRACK" STATEMENTS, THE COMMENTS THAT

10:41:53 15   THEY ARE CHALLENGING AND THE CONTEXT WHICH THEY LEAVE OUT.

10:41:56 16      THAT WOULD, YOU KNOW, THAT WOULD I THINK MAKE IT VERY CLEAR

10:41:59 17   TO THE COURT.

10:42:01 18              THE COURT:  WELL, I GUESS WHAT I WAS REALLY JUST

10:42:03 19   HOPING IS THAT YOU COULD -- YOU CERTAINLY GAVE ME ALL OF THESE

10:42:06 20   PRESS RELEASES, AND I READ THEM.

10:42:08 21      BUT IT WAS VERY HARD FOR ME, I MEAN, FRANKLY, IN YOUR REPLY

10:42:13 22   BRIEF, YOU REFERRED ME TO YOUR OPENING BRIEF, PAGE AND LINE,

10:42:18 23   THAT WAS VERY NICE.  I GOT TO PAGE AND LINE.  IT REFERRED ME TO

10:42:21 24   ANOTHER SECTION IN YOUR OPENING BRIEF.  I DUTIFULLY WENT TO

10:42:25 25   YOUR OTHER SECTION, IT WAS YOUR STATEMENT OF FACTS.  THEN I WAS

10:42:28  1    LEFT ON MY OWN TO FIGURE OUT WHICH EXHIBIT AND WHICH LINE.

10:42:31  2         AND SO YOU MAKE A VERY COGENT POINT IN ARGUMENT, AND I

10:42:35  3    HAVE TO FIND IT IN THE PAPERS.  AND I WANT TO SEE IT.  IT'S AN

10:42:39  4    ARGUMENT THAT IS WORTH ME TRACKING DOWN.  AND YOU LEFT ME IN

10:42:43  5    THE LURCH.  I JUST COULDN'T -- I JUST COULDN'T DO IT.  I DIDN'T

10:42:47  6    KNOW WHAT YOU WERE POINTING ME TO.

10:42:48  7         MS. WEISS:  WELL, I APOLOGIZE FOR THAT, YOUR HONOR.

10:42:50  8    BUT AGAIN, SINCE MY COLLEAGUE HAS SUBMITTED A SUPPLEMENT, I

10:42:53  9    WOULD REQUEST PERMISSION TO --

10:42:55  10        THE COURT:  DON'T YOU HAVE YOUR EXHIBITS RIGHT NOW TO

10:42:59  11   SHOW ME?

10:42:59  12        MR. PRIEBE:  YOUR HONOR, WE ALSO REFER TO PAGE 6 OF

10:43:02  13   THE REPLY BRIEF IN THE TOP PARAGRAPH WHERE WE PARSE, FOR

10:43:06  14   INSTANCE TO "ON TRACK," AND SAY, HERE ARE THE PARAGRAPHS WHERE

10:43:09  15   THE STATEMENT WAS USED AND WHEN IT REFERRED TO SYNERGY, COST

10:43:14  16   SYNERGIES.

10:43:14  17        THE COURT:  ALL RIGHT.  WHAT LINE ARE YOU ON?

10:43:16  18        MR. PRIEBE:  PAGE 6, LINES 1 THROUGH 6.

10:43:20  19        WHERE WE SAY, HERE ARE ALL THESE PARAGRAPHS WHERE THE WORD

10:43:23  20   "ON TRACK" IS USED.  AND WE SAY, IF YOU TAKE A LOOK AT THOSE

10:43:27  21   PARAGRAPHS WHAT THEY ARE REFERRING TO SPECIFIC COST SYNERGIES.

10:43:32  22   ON LINES 4 OR 5 OTHER REFERENCES TO "ON TRACK" WERE TO ERP OR

10:43:36  23   THE SELECTION OF SENIOR MANAGEMENT.

10:43:42  24        MS. WEISS:  AND IS A CROSS REFERENCE GIVEN TO THE

10:43:44  25   DECLARATION?

10:43:44  1          MR. PRIEBE:  THE CROSS REFERENCE IS GIVEN TO THE

10:43:46  2   PARAGRAPHS OF THE COMPLAINT.  SO THESE ARE ACTUAL -- IN THE

10:43:51  3   STATEMENTS AS ALLEGED TO THE COMPLAINT.

10:43:52  4          THE COURT:  WELL, ALL RIGHT.  AND THAT'S FINE.

10:43:54  5       AND YOU CERTAINLY DO, AND I WENT RIGHT TO THE COMPLAINT

10:43:57  6   BECAUSE I COULD THEN READ THESE PARTICULAR PARAGRAPHS OF THE

10:44:02  7   COMPLAINT.  BUT THE POINT THAT YOU ARE MAKING IS THAT I THEN,

10:44:08  8   IF I LOOK AT THE UNDERLYING DOCUMENTS, I WILL FIND THAT THE "ON

10:44:14  9   TRACK" IS NOT -- THAT THE STATEMENTS ARE NOT ACCURATELY

10:44:19  10  REPRESENTED.

10:44:20  11         MS. WEISS:  WELL, THEN IT'S TIED TO SOMETHING.

10:44:22  12      IN OTHER WORDS, THEY JUST USE THE TERM "ON TRACK" GLOBALLY

10:44:25  13  TO SAY, YOU, MR. BERGER, OR ANYBODY THEY ARE TALKING ABOUT IS

10:44:29  14  SAYING EVERYTHING WAS ON TRACK ABOUT INTEGRATION PLAN.  THEY

10:44:32  15  DON'T DEFINE "PLAN."  BUT IF YOU LOOK AT THE TERMINOLOGY, WHEN

10:44:37  16  ON TRACK IS USED OR WE'VE MADE SIGNIFICANT PROGRESS, THEN

10:44:41  17  MR. BERGER IS TALKING ABOUT SOMETHING SPECIFIC IN THE CASE OF

10:44:46  18  SIGNIFICANT PROGRESS, HE'S TALKING ABOUT PLACING MANAGEMENT,

10:44:49  19  MAKING DECISIONS ABOUT MANAGEMENT.

10:44:51  20         THE COURT:  SO I'M LOOKING AT THE COMPLAINT AT

10:44:53  21  PARAGRAPH 218 WHICH IS ONE OF THE PARAGRAPHS YOU CITED AT

10:44:56  22  PAGE 6 OF YOUR REPLY.  AND THIS IS THE AUGUST 14, 2014 PRESS

10:45:03  23  RELEASE WHICH MS. WEISS, YOU STARTED WITH.  "ON THE WHOLE, THE

10:45:06  24  INTEGRATION HAS SIGNIFICANTLY EXCEEDED MY EXPECTATIONS."

10:45:10  25      SO THAT'S A GENERAL STATEMENT ABOUT INTEGRATION, UNLESS

10:45:14  1    THAT'S OUT OF CONTEXT, WHICH YOU ARE ARGUING TO ME.

10:45:18  2         SO THEN IT GOES ON, "ORIGINALLY SCHEDULED FOR SEPTEMBER,

10:45:21  3    WE COMPLETED THE ERP INTEGRATION IN JULY, AN UNPRECEDENTED TWO

10:45:27  4    MONTHS AHEAD OF THE ORIGINAL SCHEDULE."

10:45:32  5         AND YOU ARGUE THAT THERE ARE NO ALLEGATIONS IN THE

10:45:34  6    COMPLAINT THAT THE ERP INTEGRATION WAS NOT, IN FACT, COMPLETE

10:45:37  7    BY THAT DATE; IS THAT CORRECT?

10:45:39  8         MS. WEISS:  CORRECT.  YES, YOUR HONOR.

10:45:41  9         SO THERE'S AN EXAMPLE, I THINK, OF WHAT WE ARE TALKING

10:45:43 10    ABOUT.  THEY GLOBALLY SAY, WELL, YOU SAID IT WAS ON TRACK.

10:45:46 11    YES.  HE'S SAYING, AND THIS IS AUGUST OF 2014, HE'S SAYING ERP

10:45:52 12    IS AHEAD OF SCHEDULE, IT HAS MORE THAN SURPASSED MY

10:45:56 13    EXPECTATIONS.

10:45:56 14         THERE'S NO ALLEGATION FROM A CW OR OTHERWISE, THAT ERP WAS

10:46:03 15    NOT INTEGRATED AS OF THAT DATE.  IF THAT WAS THERE, THAT WOULD

10:46:07 16    HAVE POTENTIALLY RENDERED THIS, IF THEY HAVE VERY EXPLICIT

10:46:14 17    ALLEGATIONS FROM A PERSON WHO KNOWS WHAT HE OR SHE IS TALKING

10:46:18 18    ABOUT.

10:46:18 19         SO THAT IS ONE EXAMPLE, I THINK, OF A SITUATION WHERE

10:46:25 20    AGAIN, IF YOU READ THEIR ARGUMENT, THEY GLOBALLY ATTACK THE "ON

10:46:30 21    TRACK."  BUT IF YOU TAKE A LOOK AT WHAT MR. BERGER IS SAYING

10:46:33 22    SPECIFICALLY, HE'S TALKING ABOUT SOMETHING SPECIFIC.

10:46:36 23         AND IN AUGUST, AND IN MAY, HE'S NOT ALWAYS ROSY.  I MEAN,

10:46:41 24    HE BASICALLY SAYS LOOK, WE'VE GOT INTEGRATION ISSUES, WE'VE GOT

10:46:47 25    INTEGRATION CHALLENGES.

10:46:48  1    NOW I MEAN, DOES HE GIVE A LAUNDRY LIST, NO, HE DOESN'T

10:46:52  2  HAVE TO DO THAT, HE IS CERTAINLY SIGNALLING INVESTORS, LOOK, WE

10:47:00  3  ARE WORKING ON THIS.

10:47:01  4    AND IN TERMS OF NOT HAVING THE PLAN, I THINK ALL THE

10:47:04  5  REASONS THE COURT MENTIONED, IT WAS THE PLAINTIFF'S BURDEN TO

10:47:08  6  ALLEGE WHAT PLAN WAS SUPPOSED TO BE IN PLACE AND WHAT THEY ARE

10:47:12  7  TALKING ABOUT.  THEY JUST LEAVE IT UP TO OUR IMAGINATION.

10:47:16  8    WHAT THEY ARE REALLY SAYING, IF YOU LOOK AT THE CW

10:47:19  9  STATEMENTS, EVEN BARKER, WHAT THEY ARE SAYING IS THEY DIDN'T

10:47:22  10  LIKE THE PLAN.  THE PLAN MEANT THEY WERE TO BE REPLACED AND

10:47:28  11  WHAT THEY WERE DOING.  THAT'S WHAT MS. BARKER IS SAYING, HOW

10:47:31  12  CAN YOU REPLACE ME, I KNOW SO MUCH MORE THAN THIS ENTERASYS

10:47:35  13  PERSON.

10:47:40  14    OH, THERE WAS A PLAN, YOUR HONOR, EVEN THE CW'S STATEMENTS

10:47:43  15  SHOW THERE'S A PLAN, BUT IT'S NOT INCLUDING THESE PEOPLE AND

10:47:46  16  THEY ARE REALLY MAD ABOUT THAT.

10:47:47  17    SO I THINK THAT'S REALLY THE SUBTEXT HERE.

10:47:51  18    I WILL GO ON TO JUST A COUPLE OF OTHER THINGS.  MR.

10:47:54  19  MEYERCORD.  MR. MEYERCORD COMES IN MAY OF 2015, AND HE SPEAKS

10:47:58  20  IN TERMS OF HIMSELF.  HE SAYS, I HAVE NO VISIBILITY.  AND

10:48:02  21  PLAINTIFF'S CONSTRUCT THAT AS TIME GOES ON, YOU HAVE MORE

10:48:09  22  VISIBILITY, I THINK THEY JUST MADE THAT UP.

10:48:14  23    NO, THINGS GO UP AND DOWN, YOUR HONOR.  IN AUGUST OF 2014,

10:48:18  24  MR. BERGER MAKES A PERSONAL VISIT TO CHINA.  HE OBSERVES THAT

10:48:22  25  LENOVO PEOPLE ARE BEING TRAINED ON EXTREME PRODUCTS.  HE

```
10:48:27   1      OBSERVES THAT.  AND HE SAYS IT.  AND THEY DON'T CHALLENGE IT.

10:48:31   2           AND HE SAYS THEY ARE COMMITTED TO THIS ALLIANCE.  THAT'S

10:48:33   3      HAPPY NEWS.  HE'S HAPPY ABOUT THAT.  THAT'S THE SAME TIME

10:48:38   4      PERIOD WHERE HE'S ADDRESSING LENOVO AND HE'S MAKING -- HE'S

10:48:43   5      SIGNALLING THAT THINGS ARE NOT GOING PERFECTLY WITH THE

10:48:45   6      INTEGRATION.  SO IT'S GOOD NEWS, BAD NEWS.  I WENT OUT TO

10:48:49   7      CHINA, I'M VERY HAPPY, THIS ALLIANCE IS GOING TO WORK.

10:48:52   8           SO IT'S AUGUST OF 2014.  THEN WE HAVE THIS INTEGRATION

10:48:59   9      EVENT THAT LENOVO HAS, THEY BUY IBM'S SERVER BUSINESS, AND

10:49:04  10      MR. BERGER'S IS WORRIED ALOUD TO THE ANALYSTS, WELL MAYBE

10:49:09  11      THAT'S NOT GOING TO GO OFF ON TIME, THAT'S NOT GOING TO AFFECT

10:49:12  12      US WELL.

10:49:13  13           THEN IT GOES OFF ON TIME AND IT'S FULL OF INTEGRATION

10:49:16  14      PROBLEMS, IT'S A $5 BILLION ACQUISITION.  SO MR. BERGER SAYS

10:49:21  15      THEY'VE GOT INTEGRATION PROBLEMS.

10:49:23  16           THE COURT:  LENOVO HAD THE INTEGRATION PROBLEMS.

10:49:25  17           MS. WEISS:  RIGHT.

10:49:26  18           THE COURT:  WELL, UNFORTUNATELY EVERYBODY HAS --

10:49:27  19      INTEGRATION PROBLEMS ARE COMMON.

10:49:29  20           MS. WEISS:  THEY ARE COMMON AND THEY ARE EXPECTED BY

10:49:31  21      INVESTORS.

10:49:32  22           AND SO WE HAVE A SITUATION WHERE IT'S UP, DOWN, UP, DOWN,

10:49:36  23      YOU NEVER REALLY KNOW AS A COMPANY WHAT YOUR THIRD PARTY

10:49:40  24      CUSTOMER IS REALLY THINKING UNTIL THEY PLACE THAT ORDER.

10:49:43  25           YOU CAN PROJECT, YOU CAN HOPE, IT'S ALL HAPPY NEWS.  I
```

10:49:48  1    MEAN CULTURALLY, YOU GO OVER TO ANOTHER COUNTRY, THEY WINE AND

10:49:54  2    DINE YOU AND IT'S ALL HAPPY NEWS.  YOU COME BACK AND YOU ARE

10:49:57  3    FULL OF OPTIMISM AND THEN THE ORDER DOESN'T COME.

10:50:01  4        AND MR. MEYERCORD, TO HIS CREDIT, HE STEPS INTO THE SHOES

10:50:04  5    OF THE EXECUTIVE POSITION AND HE SAYS, HEY, I'M NOT COMMITTING

10:50:07  6    TO ANYTHING, HAVE NO VISIBILITY.  OF COURSE HE DOES, TIME HAS

10:50:12  7    PASSED.

10:50:12  8        THE COURT:  SO MR. DUBBS SUGGESTS THAT MR.

10:50:16  9     MEYERCORD'S STATEMENT COULD BE ATTRIBUTED TO THE COMPANY AND

10:50:18  10   THE COMPANY'S KNOWLEDGE COULD BE ATTRIBUTED TO THE INDIVIDUAL

10:50:21  11   DEFENDANTS, AND THEREFORE THEY -- ESSENTIALLY, MR. BERGER

10:50:24  12   ADMITTED HE HAD NO VISIBILITY DURING THE CLASS PERIOD.

10:50:28  13       MS. WEISS:  NO, HE NEVER DID, YOUR HONOR.

10:50:29  14    EVEN IF HIS STATEMENTS ATTRIBUTED TO THE COMPANY, BASICALLY

10:50:32  15   WHAT HE'S SAYING IS AS OF THIS POINT IN TIME, 2015, WE DON'T

10:50:36  16   HAVE VISIBILITY.

10:50:37  17       THE COURT:  SO YOU ARE SAYING IT DOESN'T RELATE BACK,

10:50:39  18   THIS WHOLE THING OF, IF YOU DON'T HAVE ANY VISIBILITY NOW, YOU

10:50:42  19   COULD NEVER HAVE HAD ANY.

10:50:44  20       MS. WEISS:  EXACTLY.  THINGS COULD HAVE LOOKED A LOT

10:50:47  21   BETTER AND A LOT MORE OPTIMISTIC FROM MR. BERGER'S STANDPOINT

10:50:52  22   BACK IN AUGUST 2014.

10:50:53  23    AND AGAIN, I THINK IF YOU LOOK AT HIS COMMENTS, THEY ARE

10:50:55  24   BALANCED.  THERE'S GOOD NEWS, THERE'S BAD NEWS, THIS IS JUST

10:50:55  25   NOT A MAN WHO IS TRYING TO MISLEAD THE PUBLIC.

10:51:00   1        AND TO THE COURT'S POINT, IN THE STEC CASE, THE

10:51:05   2   NINTH CIRCUIT MADE VERY CLEAR THAT MANAGEMENT IS EXPECTED TO BE

10:51:08   3   OPTIMISTIC, TRY TO MAKE IT WORK, BOUNCE BACK.  I MEAN, YOU

10:51:13   4   JUST, YOU KNOW, AN EX-EMPLOYEE COMES TO YOU AND SAYS, BOY, I'M

10:51:19   5   REALLY UNHAPPY YOU REPLACED ME WITH THIS LUNATIC.  AND NOW WHAT

10:51:23   6   DO YOU DO, YOU CALL A PRESS CONFERENCE AND YOU SAY OH, YOU

10:51:27   7   KNOW, INTEGRATION IS A DISMAL FAILURE.

10:51:29   8        I MEAN, YOU KNOW, THE NINTH CIRCUIT RECOGNIZED, THAT'S

10:51:34   9   JUST NOT WHAT IS EXPECTED, IN FACT IT'S IRRESPONSIBLE.

10:51:38  10        SO MR. BERGER IS TRYING TO TAKE IT ALL IN, HE HAS MORE

10:51:42  11   PEOPLE REPORT TO HIM.  HE'S TELLING THE MARKET THAT THERE'S

10:51:45  12   CHALLENGES AND THERE'S ISSUES.  THAT'S NOT SECURITIES FRAUD,

10:51:48  13   YOUR HONOR.

10:51:48  14        THE COURT:  SO ON THE SCIENTER ISSUE, MR. DUBBS IS

10:51:53  15   CORRECT, I CERTAINLY DON'T SEE MANY INSTANCES WHERE A CW HAS

10:51:57  16   ACTUALLY LAID IT ALL OUT TO THE CEO BEFORE THEY LEFT.  THAT'S,

10:52:01  17   THAT MAKES THIS A LITTLE BIT DIFFERENT.  I DO HAVE TO LOOK AT

10:52:06  18   THE CONTENTS OF WHAT THEY SAID BUT WHAT'S YOUR VIEW ON THAT?

10:52:08  19        MS. WEISS:  SHE DOESN'T EITHER, YOUR HONOR.

10:52:10  20   TAKE A LOOK AT THAT PARAGRAPH.  THEY SAY, WELL, YOU KNOW,

10:52:12  21   TALK AND TALK AND TALK, AND THEN THEY LEAVE IT TO YOUR

10:52:14  22   IMAGINATION WHAT SHE SAID.  EXCEPT SHE SAYS, YOU REPLACED ME IN

10:52:21  23   MY JOB WITH THIS PERSON FROM ENTERASYS, HOW DARE YOU, AND YOU

10:52:25  24   REPLACED MY COLLEAGUE.

10:52:27  25        THAT'S ALL THEY SAY, IN PARTICULAR.  THAT'S ALL.

10:52:29  1    OTHERWISE, YOU KNOW, SHE'S JUST COMPLAINING AND THEY DON'T TELL

10:52:32  2    YOU WHAT THOSE COMPLAINTS ARE ALL ABOUT.

10:52:37  3                THE COURT:  OKAY.

10:52:40  4                MS. WEISS:  SO YOUR HONOR, I CAN SUBMIT THE "ON

10:52:44  5    TRACK" CHART IF THE COURT WILL LET ME.  BUT I JUST THINK THIS

10:52:52  6    COMPLAINT FALLS SHORT.  AND THEY'VE MADE A LOT OF SMOKE AND

10:52:55  7    MIRRORS WITH THESE CW'S, SOME OF WHICH ARE RELEGATED TO SMALL

10:53:00  8    TERRITORIES, AND YET THEY MAKE THESE GRAND STATEMENTS ABOUT OH,

10:53:03  9    THERE'S NO PLAN ANYWHERE.

10:53:05  10        WELL, YOU KNOW, THE COMPANY HIRED DELOITTE & TOUCHE TO

10:53:09  11   COME IN AND HELP WITH THE INTEGRATION.

10:53:11  12                THE COURT:  DO I KNOW THAT?

10:53:12  13                MS. WEISS:  IT'S DISCLOSED AND THEY DON'T CHALLENGE

10:53:14  14   IT.  IT'S IN THE SAME DISCLOSURES, I BELIEVE IN THE SEPTEMBER

10:53:19  15   OR THE NOVEMBER DISCLOSURE, THEY TALK ABOUT THE COMPANY --

10:53:23  16                MR. DUBBS:  OBJECTION.  SHE'S LIMITED TO THE

10:53:25  17   PLEADINGS.

10:53:26  18                THE COURT:  THAT'S NOT IN THE PLEADINGS.

10:53:29  19        SO A LOT OF THIS DOES GET BEYOND WHAT MIGHT BE THE

10:53:32  20   PLEADINGS AND INTO SOME OF THE MERITS HERE, AND YOU'VE INDULGED

10:53:41  21   ME AS I'VE TAKEN YOU THERE, AND I APPRECIATE THAT.

10:53:44  22        I ACTUALLY DON'T KNOW WHAT I'M GOING TO DO ON THIS ONE.

10:53:51  23   AND AS I SAY, IT'S RARE FOR ME TO SEE A COMPLAINT THAT'S THIS

10:53:55  24   THOROUGHLY DEVELOPED THE FIRST TIME THROUGH.  I OFTEN SEE THE

10:53:59  25   UGLY, ROUGH FIRST COMPLAINT, AND EVERYONE EXPECTS IT'S GOING TO

10:54:03  1    GO THROUGH SOME ITERATIONS, AND I APPRECIATE THE AMOUNT OF WORK

10:54:05  2    THAT HAS GONE INTO DEVELOPING THIS VERSION, WHETHER IT'S ENOUGH

10:54:09  3    OR NOT IS ANOTHER MATTER.

10:54:12  4         ALTHOUGH I DON'T KNOW WHAT COULD BE DONE TO AMEND, IF I

10:54:15  5    WERE TO GRANT THE MOTION, I FEEL THAT IT WOULD BE INCORRECT FOR

10:54:19  6    ME TO DENY LEAVE TO AMEND, EVEN THOUGH I CAN'T REALLY SEE WHAT

10:54:23  7    WOULD HAPPEN.

10:54:24  8         SO YOU KNOW, IT'S NOT GOING TO BE A CLEAN SWEEP IF YOU

10:54:28  9    WIN, MS. WEISS, BUT I DON'T KNOW, I'M JUST NOT SURE, AND PART

10:54:32  10   OF IT IS THAT I STRUGGLE WITH 120-PAGE COMPLAINTS.  IT'S HARD

10:54:40  11   TO GET MY HANDS AROUND, AND I'M NOT SAYING THIS CASE DIDN'T

10:54:44  12   REQUIRE THAT MUCH PLEADING, BUT IT'S JUST A LOT HERE.  THERE'S

10:54:47  13   SOME REPETITION, BUT I THINK IT'S GOING TO COME DOWN TO WHETHER

10:54:50  14   I AM SATISFIED THERE'S ENOUGH PLEADING ON SCIENTER WHEN I GIVE

10:54:54  15   A HOLISTIC REVIEW OF IT.

10:54:56  16        THERE ARE SOME ASPECTS OF THE ELEMENTS THAT I THINK ARE

10:54:59  17   NOT -- THAT DON'T ADD MUCH.  I MEAN, MOTIVE NEVER ADDS A LOT, I

10:55:07  18   THINK IT ADDS VERY LITTLE HERE.  I THINK THAT THE MEYERCORD

10:55:10  19   STATEMENTS ARE -- I DON'T REALLY ATTRIBUTE THEM AS ADMISSIONS

10:55:14  20   AS IT'S ALLEGED.  BUT I HAVE CONCERNS ABOUT THE -- THIS WAS A

10:55:20  21   FAILURE FOR THE COMPANY, AND I GUESS I'M JUST GOING TO HAVE TO

10:55:28  22   REALLY CONSIDER THE CW STATEMENTS.

10:55:31  23        YOU'VE ASKED ME WHETHER YOU COULD GIVE ME AN ADDITIONAL

10:55:34  24   SUBMISSION, AND THE ONLY PROBLEM WITH THAT IS THEN I'M GOING TO

10:55:37  25   HAVE TO LET MR. DUBBS'S SAY SOMETHING IN RESPONSE BECAUSE YOU

10:55:42  1   HAVE BEEN ABLE TO REACT TO WHAT HE PRESENTED TO ME BECAUSE YOU

10:55:45  2   ARE SITTING HERE.  AND SO I'M GOING TO JUST HAVE TO TRUST IT'S

10:55:48  3   IN YOUR PAPERS.

10:55:49  4        MS. WEISS:  WELL, YOUR HONOR, I GUESS IN CLOSING I

10:55:51  5   WOULD SAY, I WOULD ENCOURAGE THE COURT TO LOOK AT THE CW

10:55:54  6   STATEMENTS.  THEY ARE GENERALIZED, MOSTLY, IF YOU WILL EXCUSE

10:55:59  7   THE EXPRESSION, ONCE AGAIN, BITCHING AND MOANING ABOUT HAVING

10:56:02  8   BEEN REPLACED OR THE SALES PEOPLE ARE DOING THIS AND THAT.

10:56:05  9   THEY ARE NOT COMPANY-WIDE GLOBAL PERSON WHO KNOWS FOR SURE,

10:56:10  10  THEY DON'T DEFINE THEIR TERMS.

10:56:12  11       THIS IS SECURITIES FRAUD WE ARE TALKING ABOUT.  AND THEY

10:56:15  12  DON'T EVEN APPROACH THE SCIENTER STANDARD AND THEY DON'T EVEN

10:56:19  13  APPROACH FALSITY.  THEY DON'T RENDER WHAT MR. BERGER IS SAYING

10:56:23  14  FALSE.

10:56:23  15       THANK YOU, YOUR HONOR.  I APPRECIATE YOUR ATTENTION.

10:56:24  16            THE COURT:  THANK YOU.

10:56:25  17       MR. DUBBS:  YOUR HONOR, CAN I TAKE -- I HAVE THREE

10:56:28  18  FACTUAL POINTS, I PROMISE NO ARGUMENT.

10:56:30  19            THE COURT:  YES.

10:56:31  20       MR. DUBBS:  MY COLLEAGUE REMINDS ME THAT IN THE

10:56:39  21  COURT'S FAVORITE CASE, ROSENBAUM, IT ENDED UP BEING A SAFE

10:56:48  22  HARBOR CASE, NOT A FALSITY OR SCIENTER CASE, AND I'M SURE THE

10:56:53  23  COURT, IN ITS REVIEW, WILL SEE THAT.

10:56:55  24            THE COURT:  YES, THAT IS CORRECT.  THANK YOU.

10:56:56  25       MR. DUBBS:  PARAGRAPH 133 OF THE COMPLAINT QUOTES CW

10:57:01 1   1 AS SAYING THERE'S NO "CENTRALIZED INTEGRATION PLAN," FOR WHAT

10:57:06 2   THAT'S WORTH.

10:57:07 3            THE COURT:  OKAY.

10:57:07 4            MR. DUBBS:  AND THERE WAS A COLLOQUY WITH MY

10:57:12 5   COLLEAGUE ABOUT PARAGRAPH 218.  AND I WOULD ASK THE COURT TO

10:57:16 6   LOOK AT 218.

10:57:17 7        AND YES, INDEED IT TALKS ABOUT ERP WHICH THERE ARE NO

10:57:21 8   SPECIFIC ALLEGATIONS ON.  BUT THEN IT SAYS, IN THE MIDDLE OF

10:57:25 9   THAT, OVERALL, WE ARE EXACTLY WHERE WE PLAN TO BE IN THE

10:57:30 10  INTEGRATION PROCESS.  AND THE REALIZATION OF THE RELATED

10:57:33 11  FINANCIAL SYNERGIES.

10:57:35 12       SO I THINK THAT THE ALLEGATIONS IN 218 ARE BROADER THAN

10:57:39 13  ERP, BUT THAT'S FOR THE COURT TO DECIDE.

10:57:42 14       THANK YOU VERY MUCH.

10:57:42 15           THE COURT:  THANK YOU.  I APPRECIATE THAT.

10:57:44 16       ALL RIGHT.  THANK YOU ALL.  IT'S GOING TO TAKE ME A LITTLE

10:57:49 17  BIT OF TIME TO GET THROUGH THIS, AS I'M SURE IT TOOK YOU, AND

10:57:52 18  IT TOOK ME A BIT OF TIME JUST TO BE PREPARED FOR THE HEARING

10:57:56 19  TODAY.  BUT I APPRECIATE ALL YOUR EFFORTS.

10:57:58 20       ALL RIGHT.  WE ARE DONE FOR TODAY.

10:58:00 21           MR. DUBBS:  THANK YOU, YOUR HONOR.

10:58:01 22           MS. WEISS:  THANK YOU, YOUR HONOR.

10:58:02 23       (THE PROCEEDINGS WERE CONCLUDED AT 10:58 A.M.)

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 2/22/17