**LABATON SUCHAROW LLP**
Carol C. Villegas (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
          acoquin@labaton.com

*Attorneys for Lead Plaintiff and Lead Counsel
for the Class*

**BERMAN TABACCO**
Nicole Lavallee (SBN 165755)
A. Chowning Poppler (SBN 272870)
44 Montgomery Street, Ste. 650
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
          cpoppler@bermantabacco.com

*Liaison Counsel for the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re EXTREME NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | Master File No. 5:15-cv-04883-BLF-SVK<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   April 25, 2019  9:00 a.m.<br>Dept.:   Courtroom 4, 5th Floor<br>Judge:  Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. iii

NOTICE OF MOTION ........................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

PRELIMINARY STATEMENT ............................................................................................. 2

    A.    The Procedural History of the Case ............................................................. 2

    B.    Settlement Discussions ................................................................................. 4

    C.    The Proposed Settlement .............................................................................. 5

    D.    Proposed Schedule of Events ....................................................................... 6

ARGUMENT ........................................................................................................................... 8

I.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL .................................... 8

    A.    The Settlement Is the Result of Thorough and Arm's-Length Efforts by Adequate Representatives ............................................................................. 9

    B.    The Relief Provided by the Settlement Is Adequate and the Settlement Is Well Within the Range of Reasonableness ................................................. 11

    C.    Proposed Plan of Allocation for Distributing Relief to the Settlement Class Treats Settlement Class Members Equitably .............................................. 14

    D.    Anticipated Legal Fees and Expenses ....................................................... 17

II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS .......................................................................................................................... 18

    A.    Standards Applicable to Class Certification .............................................. 18

    B.    The Settlement Class Meets the Requirements of Rule 23(a) ................... 20

        1.    Rule 23(a): Numerosity ................................................................. 20

        2.    Rule 23(a)(2):  Questions of Law or Fact Are Common ............... 20

        3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ...................... 21

        4.    Rule 23(a)(4):  The Lead Plaintiff Is Adequate ............................ 22

    C.    The Settlement Class Meets the Requirements of Rule 23(b)(3) .............. 22

        1.    Common Questions of Law or Fact Predominate .......................... 22

2.      A Class Action Is a Superior Method of Adjudication ............................ 24

III.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE
PROCESS, AND THE PSLRA REQUIREMENTS ........................................ 24

CONCLUSION ......................................................................................................... 27

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Affiliated Ute Citizens of Utah v. United States*,
5
 406 U.S. 128 (1972)...................................................................................................23

6

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)...........................................................................................19, 23

7

*Arnold v. United Artists Theatre Circuit, Inc.*,
8
 158 F.R.D. 439 (N.D. Cal. 1994).............................................................................20

9

*Basic v. Levinson*,
10
 485 U.S. 224 (1988)..................................................................................................23

11

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
 No. 07-Civ-10453, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ...............................23

12

*Blackie v. Barrack*,
13
 524 F.2d 891 (9th Cir. 1975) ...................................................................................21

14

*Ching v. Siemens Indus., Inc.*,
15
 No. 11-cv-4838 MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013)...................26

16

*In re Comput. Memories Sec. Litig.*,
 111 F.R.D. 675 (N.D. Cal. 1986)............................................................................21

17

*In re Cooper Cos. Sec. Litig.*,
18
 254 F.R.D. 628 (C.D. Cal. 2009) ..............................................................19, 20, 23

19

*Desai v. Deutsche Bank Sec. Ltd*,
20
 573 F.3d 931 (9th Cir. 2009) ...................................................................................24

21

*In re Finisar Corp. Sec. Litig.*,
 No. 5:11-CV-01252-EJD, 2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ...............13

22

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
23
 No. MDL-901, 1993 WL 144861 (C.D. Cal. Feb. 26, 1993) .................................23

24

*Grant v. Capital Mgmt. Servs., L.P.*,
 No. 10-cv-2471-WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013).........8
25

26

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ..................................................................19, 20, 23

27

*Harris v. Palm Springs Alpine Estates, Inc.*,
28
 329 F.2d 909 (9th Cir. 1964) ...................................................................................20

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 5:15-cv-04883-BLF-SVK

iii

*Howell v. JBI, Inc.*,
    298 F.R.D. 649 (D. Nev. 2014)............................................................................20

*In re HP Sec. Litig.*,
    No. 12-cv-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015) ...............25

*In re Indep. Energy Holdings PLC*,
    No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...........10

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ......12

*Jaffe v. Morgan Stanley & Co.*,
    No. C 06-3903 (TEH), 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .....................19

*In re Juniper Networks, Inc. Sec. Litig.*,
    264 F.R.D. 584 (N.D. Cal. 2009)........................................................................21

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ..............................................................................25

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015)........................................................................13

*Linney v. Cellular Alaska P'ship*,
    No. 96-cv-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) *aff'd*, 151
    F.3d 1234 (9th Cir. 1998) .....................................................................................9

*Lo v. Oxnard European Motors, LLC*,
    No. 11-cv-1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) .......14

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05-cv-179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009).........12, 24

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..............................................................................22

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ................................................................................7

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)............................................................................................25

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ........................................................................23

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015).........................................................................8

*In re NVIDIA Corp. Derivative Litig.*,
    No. 06-cv-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ......11

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 5:15-cv-04883-BLF-SVK

iv

*Oklahoma Firefighters Pension & Ret. Sys. v. Finisar Corp.*,
  No. 18-80013, 2018 WL 3472714 (9th Cir. July 13, 2018)..................................................13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................................11, 12

*Orvis v. Spokane Cty*,
  281 F.R.D. 469 (E.D. Wash. 2012)..........................................................................................14

*In re Par Pharm. Sec. Litig.*,
  No. 06 Civ 3226, 2013 WL 3930091 (D.N.J. July 29, 2013) ..................................................12

*In re Portal Software, Inc. Sec. Litig.*,
  No. 03-cv-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .....................................9

*Schuler v. Med.  Co.*,
  No. 14 Civ. 1149, 2016 WL 3457218 (D.N.J. June 24, 2016) .................................................12

*In re Syncor ERISA Litig.*,
  227 F.R.D. 338 (C.D. Cal. 2005) .............................................................................................21

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...................................................................................................8

*In re THQ Inc. Sec. Litig.*,
  No. 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ..................................19

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009).............................21

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  MDL No. 551, 1988 WL 158947 (W.D. Wash. July 28, 1988) ...............................................13

*West v. Circle K Stores, Inc.*,
  No. 04-cv-438 WBS (GGH), 2006 WL 1652598 (E.D. Cal. June 13, 2006) .............................8

*Williams v. Costco Wholesale Corp.*,
  No. O2cv2003 IEG (AJB), 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ..................................22

*Young v. Polo Retail, LLC*,
  No. 02-cv-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006)......................................9

*In re Zynga Inc. Sec. Litig.*,
  No. 12-cv-04007 (JSC), 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ....................................9

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F).................................................................................................27

15 U.S.C. § 78u-4(e) .................................................................................................................15

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 5:15-cv-04883-BLF-SVK

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... 8, 19, 23, 25

Fed. R. Civ. P. 23(a) ...................................................................................... 1, 19, 20

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 20

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 20, 21

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 21

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 22

Fed. R. Civ. P. 23(b) ...................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 2, 19, 22, 24

Fed. R. Civ. P. 23(b)(3)(A)-(D) ...................................................................................... 24

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 25

Fed. R. Civ. P. 23(e) ...................................................................................... 2, 8, 19

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 8

Fed. R. Civ. P. 23(e)(3) ...................................................................................... 6

Fed. R. Civ. P. 23(e)(B) ...................................................................................... 8

Fed. R. Civ. P. 23(f) ...................................................................................... 13

Fed. R. Civ. P. 23(g)(1) ...................................................................................... 22

Lead Plaintiff's Unopposed Motion For Preliminary Approval Of Proposed Class Action Settlement
Case No. 5:15-cv-04883-BLF-SVK

vi

**NOTICE OF MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 25, 2019, at 9:00 a.m., or as soon thereafter as they may be heard, if a hearing is required by the Court, Lead Plaintiff Arkansas Teacher Retirement System ("ATRS" or "Lead Plaintiff"), on behalf of itself and all members of the Settlement Class, will move this Court for an Order, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e): (i) preliminarily approving a proposed settlement of the above-captioned class action (the "Settlement"); (ii) certifying the Settlement Class pursuant to Rules 23(a) and (b)(3), and appointing Lead Plaintiff as Class Representative and the law firm of Labaton Sucharow LLP as Class Counsel for the Settlement Class; (iii) directing that notice of the Settlement be provided to the Settlement Class; (iv) scheduling a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation for the Settlement proceeds, and Lead Counsel's application for an award of attorneys' fees and expenses; and (v) granting such other and further relief as this Court deems just and proper. Defendants do not oppose the motion.

This motion is supported by the following memorandum of points and authorities, the accompanying Declaration of Carol C. Villegas, dated November 30, 2018 ("Villegas Declaration") and the exhibits attached thereto, including the Stipulation and Agreement of Settlement, dated as of November 30, 2018 ("Stipulation"), which is annexed as Exhibit 1.[1]

A proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), with annexed exhibits, which was negotiated by the Parties, is also submitted herewith.

**STATEMENT OF ISSUES TO BE DECIDED**

(1)    Should the Court grant preliminary approval of the proposed Settlement on the terms set forth in the Stipulation?

---

[1] All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein.  All references to "Ex." herein are references to exhibits attached to the Villegas Declaration.

(2) Should the Court preliminarily certify the Settlement Class for settlement purposes only and preliminarily appoint Lead Plaintiff as Class Representative and Labaton Sucharow as Class Counsel;

(3) Should the Court approve the form and substance of the proposed Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), and the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), appended as Exhibits A-1 through A-3 to the proposed Preliminary Approval Order, as well as the manner of notifying the Settlement Class of the Settlement?

(4) Should the Court schedule a hearing to determine whether the Settlement and Plan of Allocation should be finally approved and to consider Lead Counsel's application for an award of attorneys' fees and payment of expenses ("Settlement Hearing")?

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

ATRS, through its counsel Labaton Sucharow LLP ("Lead Counsel"), submits this memorandum of points and authorities in support of its unopposed motion, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for preliminary approval of a proposed class action settlement in the amount of $7,000,000 in cash, pursuant to the terms set forth in the Stipulation, which will resolve this Action in its entirety. Lead Plaintiff, on behalf of itself and all others similarly situated, entered into the Stipulation with each of the defendants in the Action: Extreme Networks, Inc. ("Extreme" or the "Company"), and Charles W. Berger, Kenneth B. Arola, and John T. Kurtzweil (collectively, the "Individual Defendants," and, together with Extreme, the "Defendants").

Lead Plaintiff respectfully submits that the Settlement is a very good result for the Settlement Class and should be preliminarily approved by the Court. The decision to settle was informed by a comprehensive investigation, intensive motion practice, and extensive arm's-length negotiations overseen by a respected mediator. For the reasons stated herein, Lead Plaintiff respectfully requests that the Court grant this motion.

### A. The Procedural History of the Case

Beginning in October of 2015, two securities class action complaints were filed in the U.S. District Court for the Northern District of California (the "Court") on behalf of investors in

1    Extreme.[2]   On December 1, 2015, the Court issued orders consolidating the Extreme-related

2    securities actions (the "Action").   ECF No. 18.   On June 28, 2016, the Court issued an Order

3    appointing ATRS as Lead Plaintiff and appointing Labaton Sucharow LLP as Lead Counsel and

4    Berman DeValerio[3] as Liaison Counsel to represent the putative class. ECF No. 75.

5         The Consolidated Complaint in the Action was filed on September 26, 2016.   ECF No.

6    87. On November 10, 2017, Defendants filed a motion to dismiss the Consolidated Complaint,

7    which Lead Plaintiff opposed on December 23, 2016.   ECF Nos. 89, 90. On January 20, 2017,

8    Defendants filed a reply brief in further support of their motion to dismiss.   ECF No. 92. On

9    April 27, 2017, the Court issued an order granting Defendants' motion to dismiss with leave to

10   amend.   ECF No. 104.

11        The Amended Consolidated Class Action Complaint was filed on June 2, 2017 (the

12   "Amended Complaint"). ECF No. 105. The Amended Complaint alleges violations of §§ 10(b)

13   and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5

14   promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") on behalf of

15   a class of all purchasers of Extreme's common stock and/or exchange-traded options from

16   September 12, 2013, through April 9, 2015, inclusive. On July 10, 2017, Defendants filed a

17   motion to dismiss the Amended Complaint, which Lead Plaintiff opposed on August 31, 2017.

18   ECF Nos. 107, 112. On September 21, 2017, Defendants filed a reply brief in further support of

19   their motion to dismiss.   ECF No. 113. On March 21, 2018, the Court issued an Order granting

20   in part and denying in part Defendants' motion to dismiss. ECF No. 130. In particular, the Court

21   found that falsity and scienter were adequately pled with respect to only certain allegations.

22   The Court granted the motion to dismiss with respect to Defendant Kurtzweil on the Section

23   10(b) claim, finding that he was not alleged to have made any surviving statements.

24        The Amended Complaint was based upon Lead Counsel's extensive factual

25   investigation, which included, among other things, the review and analysis of: (i) documents

26

27   [2] *Hong v. Extreme Networks, Inc., et al.*, No. 5:15-cv-04883-BLF and *Kasprzak v. Extreme
     Networks, Inc., et al.*, No. 5:15-cv-04975-BLF.

28   [3] Berman DeValerio has since been renamed Berman Tabacco.

1  filed publicly by the Company with the SEC; (ii) publicly available information, including press

2  releases, news articles, and other public statements issued by or concerning the Company and

3  the Individual Defendants; (iii) research reports issued by financial analysts concerning the

4  Company; and (iv) other publicly available information and data concerning the Company.

5  Lead Counsel's investigation also included contacting 148 former employees of Extreme and

6  other persons with relevant knowledge and interviewing 24 of them (seven of whom were relied

7  on in the Amended Complaint).   Lead Counsel also consulted with an economics expert

8  regarding loss causation and damages, as well as an expert in the field of insider trading.

9         Following the denial, in part, of Defendants' motion to dismiss, the Parties negotiated a

10  case schedule that would see the case through summary judgment and commenced discovery.

11  Lead Plaintiff served eighty-seven requests for the production of documents on Defendants on

12  April 30, 2018.  Defendants served their responses and objections to Lead Plaintiff's document

13  requests on June 14, 2018.  The Parties also exchanged initial disclosures on May 21, 2018.

14  The Parties met and conferred extensively on the search terms that would be used to search for

15  documents responsive to Lead Plaintiff's requests for production, entered into an agreement for

16  the production of electronically stored information, and agreed to a protective order that would

17  govern the parties' disclosures in the Action.

18         **B.     Settlement Discussions**

19         Beginning shortly after the Court's order denying, in part, Defendants' motion to

20  dismiss, the Parties began initial discussions concerning the possibility of a negotiated

21  resolution of the case. Defendants and Lead Plaintiff engaged Robert A. Meyer, Esq. ("Mr.

22  Meyer"), a well-respected and highly experienced mediator, to assist them in exploring a

23  potential negotiated resolution of the claims in the Action. On July 18, 2018, Lead Plaintiff and

24  Defendants met with Mr. Meyer in an attempt to reach a settlement. The mediation involved an

25  extended effort to settle the claims and was preceded by the exchange of mediation statements

26  and Defendants' production of approximately 1,268 pages of documents, including Board of

27  Director minutes and presentations.

28

Following lengthy, arm's-length, and mediated negotiations under the auspices of Mr. Meyer, Defendants and Lead Plaintiff accepted a mediator's proposal concerning a settlement nearly a month later on August 17, 2018, and on September 26, 2018, the Parties entered into a settlement term sheet.

### C.     The Proposed Settlement

The Stipulation was executed by the Parties on November 30, 2018.  Pursuant to the Stipulation, within twelve (12) business days after the later of (i) entry of the Preliminary Approval Order and (ii) receipt of complete and accurate payment instructions and W-9 for the Settlement Fund from Lead Counsel, Defendants shall pay, or cause to be paid, the Settlement Amount into the Escrow Account.  *See* Stipulation ¶ 6.

In exchange for this payment, upon the Effective Date of the Settlement, Lead Plaintiff and each and every other Settlement Class Member, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Defendant Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Defendant Parties.  *See* Stipulation ¶ 4.  The definition of Released Claims and Unknown Claims has been tailored to release only claims that relate to transactions in Extreme publicly traded common stock and/or exchange-traded options on such common stock during the Class Period[4] that were raised, or could have been raised, by Class Members in the Action.  *See* Stipulation ¶¶ 1(aa) & (nn).  Although the Court granted the motion to dismiss with respect to alleged misstatements prior to  February 4, 2014, the Settlement utilizes the originally pled Class Period to avoid collateral litigation of the claims raised in the Action that would undermine the key reason for the Settlement – providing the Parties with "complete peace." Defendants will also release all

---

[4] The Class Period means the period from September 12, 2013 through April 9, 2015, inclusive. *See* Stipulation ¶ 1(e).  This is the same class period as is alleged in the Amended Complaint.

1   claims that Defendants could have asserted against any of the Released Plaintiff Parties that

2   arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the

3   Action.  *See* Stipulation ¶¶ 1(cc).

4        Pursuant to Rule 23(e)(3), the only agreements made by the Parties in connection with

5   the Settlement are the September 26, 2018 term sheet, the Stipulation, and the confidential

6   Supplemental Agreement, dated as of September 26, 2018, concerning the circumstances under

7   which Extreme may terminate the Settlement based upon the number of exclusion requests.  *See*

8   Stipulation ¶ 40.  It is standard to keep such agreements confidential so that a large investor, or

9   a group of investors, cannot intentionally try to leverage a better recovery for themselves by

10  threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided

11  to the Court *in camera* or under seal.

12       After approval of the Settlement and approval of the Plan of Allocation for the proceeds

13  of the Settlement, the proposed Claims Administrator, KCC LLC ("KCC"), will process all

14  claims received and will apply the plan of allocation approved by the Court at the Settlement

15  Hearing.  At the completion of the administration, KCC will distribute the Net Settlement Fund

16  to eligible claimants, and will continue to do so as long as it is economically feasible to make

17  distributions.  *See* Stipulation ¶ 26.  This is not a "claims-made" settlement and the entire $7

18  million Settlement Amount is for the benefit of the Settlement Class, regardless of how many

19  claims are submitted.  *Id*. ¶ 12.  When it is no longer feasible to make additional distributions,

20  because of the *de minimis* amount of funds left in the Net Settlement Fund, Lead Plaintiff

21  proposes that the unclaimed balance be donated to the non-profit, non-sectarian organization

22  Consumer Federation of America, discussed below.  *Id*. ¶ 26.  The Settlement does not contain

23  any reversion to Defendants.  *Id*. ¶ 12.

24      **D.   Proposed Schedule of Events**

25       Lead Plaintiff respectfully proposes the following schedule for the various Settlement-

26  related events, each of which is reflected in the proposed Preliminary Approval Order:

| Deadline for mailing individual Notices and Claim Forms (the "Notice Date") | ***10 business days after entry of the Preliminary Approval Order ("Notice Date")*** |
| --- | --- |

| Deadline for publication of Summary Notice in *Investor's Business Daily* and transmission over *PR Newswire* | *Within 14 calendar days of the Notice Date* |
|---|---|
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing* |
| Deadline for submission of requests for exclusion from the Settlement Class; or objections to the Settlement, Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and expenses | *No later than 21 calendar days before the Settlement Hearing* |
| Deadline for filing reply papers in support of the Settlement, the Plan of Allocation, and/or Lead Counsel's request for an award of attorneys' fees and expenses | *No later than 7 calendar days before the Settlement Hearing* |
| Deadline for submission of Claim Forms | *Postmarked or received no later than 7 calendar days before the Settlement Hearing* |
| Settlement Hearing | *At the Court's convenience, but no fewer than 100 calendar days after the date of the entry of the Preliminary Approval Order* |

The foregoing schedule is similar to those used and approved by numerous courts in securities class action settlements and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) (requiring that fee motion be made available to the class before the deadline for objecting to the fee) and the recently revised Procedural Guidance for Class Action Settlements, *see* https://www.cand.uscourts.gov/news/236.  In terms of the amount of time that Class Members will have to object or request exclusion, if the Settlement Hearing is held 100 calendar days from entry of the Preliminary Approval Order, the Notice, which contains information about the Settlement and Lead Counsel's request for fees and expenses, will be issued 86 days before the hearing.  Settlement Class Members will have 65 days to review the Notice before the objection/exclusion deadline and also 14 days to consider the filed versions of the motions in support of approval of the

1  Settlement and approval of Lead Counsel's fee and expense motion, which will be filed with the

2  Court and posted on the Settlement website and Lead Counsel's website.

3                               **ARGUMENT**

4  **I.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

5          As a matter of public policy, settlement is a strongly favored method for resolving

6  disputes, especially in complex class actions.  *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d

7  1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements,

8  particularly where complex class action litigation is concerned.") (citation omitted); *Grant v.*

9  *Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal.

10 Dec. 11, 2013) ("Voluntary conciliation and settlement are the preferred means of dispute

11 resolution in complex class action litigation.") (citation omitted).

12         Federal Rule of Civil Procedure 23 requires court approval for any settlement of a class

13 action.  Approval of class action settlements proceeds in two stages:  (i) preliminary approval,

14 followed by notice to the class; and (ii) final approval.  *See, e.g.*, *Noll v. eBay, Inc.*, 309 F.R.D.

15 593, 602 (N.D. Cal. 2015); *West v. Circle K Stores, Inc.*, No. 04-cv-438 WBS (GGH), 2006 WL

16 1652598, at *2 (E.D. Cal. June 13, 2006); Manual for Complex Litigation (Fourth) § 13.14

17 (2004).  By this motion, Lead Plaintiff requests that the Court take the first step in the approval

18 process:  preliminary approval of the Settlement.

19         Effective December 1, 2018, Rule 23(e) has been amended to, among other things,

20 specify that the crux of a court's preliminary approval evaluation is whether notice should be

21 provided to the class given the likelihood that the court will be able to finally approve the

22 settlement and certify the class.  Rule 23(e)(B).[5]  As has long been recognized, the preliminary

23 ─────────────────────

24 [5] In connection with final approval of the Settlement, the Court will be asked to review the
   following core factors identified by amended Rule 23(e)(2), whether: (a) Lead Plaintiff and
25 Lead Counsel adequately represented the class; (b) the Settlement was negotiated at arm's-
   length; (c) the relief provided to the class is adequate; and (d) the proposal treats class members
26 equitably relative to each other.  In assessing these core factors, the Court may also consider the
   Ninth Circuit's long-standing approval factors, many of which overlap with the Rule 23
27 considerations:  "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and
   likely duration of further litigation; (3) the risk of maintaining class action status throughout the
28 trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of

approval standard involves "both a procedural and a substantive component."  *Young v. Polo Retail, LLC,* No. 02-cv-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).  As the court in *Young* explained:

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing. . . .

*Id.* (citing Manual for Complex Litigation (Second) § 30.44 (1985)) (alterations in original); *see also In re Zynga Inc. Sec. Litig.,* No. 12-cv-04007 (JSC), 2015 WL 6471171, at *8-11 (N.D. Cal. Oct. 27, 2015) (granting preliminary approval after finding proposed settlement was "non-collusive," "lacks obvious deficiencies," and was "within the range of possible approval").

A court "need not conduct a full settlement fairness appraisal before granting preliminary approval."  *Grant*, 2013 WL 6499698, at *5 (citation and internal quotations omitted).  "The Court cannot fully assess all of [the] fairness factors until after the final approval hearing. . . . Instead, 'the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.'" *Zynga Inc.*, 2015 WL 6471171, at *8 (internal citations omitted).  Applying the standards set forth above, the Settlement should be preliminarily approved.

### A. The Settlement Is the Result of Thorough and Arm's-Length Efforts by Adequate Representatives

Courts have long-recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations."  *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *see also Linney v. Cellular Alaska P'ship*, No. 96-cv-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("The involvement

---

the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Zynga Inc.*, 2015 WL 6471171, at *8 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

1  of experienced class action counsel and the fact that the settlement agreement was reached in
2  arm's length negotiations . . . create a presumption that the agreement is fair.") (citation
3  omitted).  "[T]hat the Settlement was reached . . . with the assistance of a private mediator
4  experienced in complex litigation, is further proof that it is fair and reasonable." *In re Indep.*
5  *Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29,
6  2003) (citation omitted).

7         Here, the Parties have vigorously investigated the Action since its inception and the
8  Settlement was achieved only after diligent arm's-length mediated negotiations between counsel
9  with considerable knowledge and expertise in the field of federal securities law, including
10 securities fraud class actions under the Securities Exchange Act.  Before and during the
11 mediation, the strengths and weaknesses of Plaintiff's and Defendants' respective claims and
12 defenses were explored by the Parties.  Lead Counsel developed a deep understanding of the
13 facts of the case and merits of the claims through their analysis of, *inter alia*:  (i) publicly
14 available information regarding the Company and interviews of former employees and third
15 parties; (ii) briefing on Defendants' motions to dismiss; (iii) analysis of Defendants' mediation
16 statement and exhibits; (iv) documents produced by Defendants in advance of and at the
17 mediation; and (v) consultations with experts in insider trading and damages and loss causation.

18        Lead Plaintiff ATRS is an extremely sophisticated institutional investor, which provides
19 retirement, disability, and survivor benefits to employees of Arkansas public schools and
20 educationally related agencies and manages more than $14 billion in assets for those
21 beneficiaries.  *See, e.g.,* ECF No. 30.  It has been appointed lead plaintiff in numerous securities
22 class actions and purchased more than 300,000 shares of Extreme common stock during the
23 Class Period.  *See* ECF No. 30-1 & 30-2.  With an informed understanding, the Lead Plaintiff
24 agreed to the Settlement.  There has been no collusion.

25        Additionally, throughout the Action, Lead Plaintiff had the benefit of the advice of
26 knowledgeable counsel well-versed in shareholder class action litigation and securities fraud
27 cases.  Labaton Sucharow is among the most experienced and skilled firms in the securities
28 litigation field, and has a long and successful track record in such cases.  *See* Ex. 2.  Labaton

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 5:15-CV-04883-BLF-SVK

10

Sucharow has served as lead counsel in a number of high profile matters.  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re HealthSouth Corp. Sec. Litig.*,  No. 03-cv-1500 (N.D. Ala.) ($600 million recovery); and *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million recovery).

Courts give considerable weight to the opinion of experienced and informed counsel. *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. 06-cv-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."). In *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), the court held that the recommendation of counsel weighed in favor of settlement given their familiarity with the dispute and their significant experience in securities litigation.  Lead Counsel's belief in the fairness and reasonableness of the Settlement supports preliminary approval.

### B.   The Relief Provided by the Settlement Is Adequate and the Settlement Is Well Within the Range of Reasonableness

This Settlement is well within the range of reasonableness for several reasons.

First, the Settlement presents a favorable recovery when compared to the median settlement value in securities class action settlements in 2017, which was reported by Cornerstone Research to be $5 million.  *See*, Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, Securities Class Action Settlements – 2017 Review and Analysis, at 3 (Cornerstone Research 2018), attached as Ex. 3 to the Villegas Declaration.

Second, Lead Plaintiff's damages expert has estimated that if liability were established with respect to all of the remaining claims, including for the three remaining alleged corrective disclosures, the maximum aggregate damages recoverable at trial based on the non-disaggregated stock price declines on the disclosures dates would be approximately $94.5 million to $140 million, depending on whether pre-Class Period gains were considered and removed.  Using the originally pled Class Period of September 12, 2013 through April 9, 2015, which includes the February 5, 2014 disclosure dismissed by the Court, maximum non-disaggregated damages were estimated by Lead Plaintiff's consulting damages expert to have

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 5:15-CV-04883-BLF-SVK

11

been approximately $145 million to $242 million, depending on whether pre-Class Period gains were considered and removed.  Accordingly, the Settlement recovers between approximately 3% and 7% of maximum damages.  Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts have approved settlements that recovered a similar, or smaller, percentage of maximum damages.  *See, e.g., Schuler v. Medicines Co.,* No. 14 Civ. 1149, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving $4,250,000 settlement that reflected approximately 4.0% of estimated recoverable damages and noting percentage "falls squarely within the range of previous settlement approvals"); *In re Par Pharm. Sec. Litig.,* No. 06 Civ 3226, 2013 WL 3930091, at *2 (D.N.J. July 29, 2013) (approving settlement of $8.1 million, amounting to approximately 7% of class-wide damages); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believed could be recovered at trial and noting that the amount was within the median recovery in securities class actions settled in the last few years); *McPhail v. First Command Fin. Planning, Inc.*, No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

Importantly, the maximum estimates assume that Lead Plaintiff would be able to prove damages based on all alleged corrective disclosures remaining in the Action and that it would not need to disaggregate, or parse out, confounding non-fraud related information on those dates. However, had the case proceeded, Defendants would have strenuously argued for the exclusion of each of the alleged corrective disclosures on the grounds Lead Plaintiff could not sufficiently link each to Defendants' alleged fraud. Defendants would have further argued that each disclosure should be excluded because the market was already aware of the truth allegedly disclosed such that there was no price impact. And lastly, they would have argued that Extreme's stock price reacted to timely disclosed financial results unrelated to the alleged fraud

1  – financial results that, when disaggregated, significantly reduce the amount of alleged

2  damages. If these arguments prevailed at class certification, summary judgment, or trial, the

3  Settlement Class could have recovered significantly less or, indeed, nothing.

4        Third, the Settlement represents a prompt and substantial tangible recovery, without the

5  considerable risk, expense, and delay of completing extensive fact and expert discovery and

6  prevailing at class certification, summary judgment, trial, and post-trial litigation.  *See, e.g.*, *In*

7  *re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the

8  settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

9  expensive litigation with uncertain results.") (citation omitted); *In re Wash. Pub. Power Supply*

10 *Sys. Sec. Litig.*, MDL No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding

11 settlement to be in the "best interests of the class . . . before it is subjected further to the vagaries

12 of litigation").  While Lead Plaintiff believes it could have succeeded in establishing each of the

13 elements of the alleged claims, it faced considerable obstacles in continuing the Action.

14       For instance, if the case were to proceed, Lead Plaintiff would have had to brief, argue,

15 and the Court would be called to rule on, Lead Plaintiff's anticipated motion for class

16 certification.  Even once a class was certified, Defendants would have likely challenged

17 certification in a Rule 23(f) petition to the United States Court of Appeals for the Ninth Circuit.

18 At the close of discovery, Defendants would likely have sought summary judgment, focusing on

19 expert and fact evidence of a lack of price impact, and a complex attack on the presumption of

20 reliance that counsel for Defendants have successfully pioneered in this district.  *See In re*

21 *Finisar Corp. Sec. Litig.*, No. 5:11-CV-01252-EJD, 2017 WL 6026244, at *1 (N.D. Cal. Dec. 5,

22 2017), *reconsideration denied*, No. 5:11-CV-01252-EJD, 2018 WL 3472334 (N.D. Cal. Jan. 18,

23 2018), and *leave to appeal denied sub nom.*, *Oklahoma Firefighters Pension & Ret. Sys. v.*

24 *Finisar Corp.*, No. 18-80013, 2018 WL 3472714 (9th Cir. July 13, 2018).  There was no

25 guarantee that the proposed class would prevail in Defendants' continuous challenges and, even

26 if they did, how the Court's rulings would affect damages or how the case would be presented

27 to the jury.  At the very least, the prospect of appeal from any ruling was high.

28       These risks aside, discovery would have been protracted and, assuming Lead Plaintiff

1  defeated Defendants' eventual motion for summary judgment, the trial of Lead Plaintiff's

2  claims would inevitably be complex and long, and even a favorable verdict would undoubtedly

3  spur a lengthy post-trial and appellate process.

4      Accordingly, in light of the substantial risks and expense of continued litigation, and

5  compared to the certain and prompt recovery of $7,000,000, the Settlement is a good result that

6  is well within the range of reasonableness.  *See, e.g.*, *Orvis v. Spokane Cty*, 281 F.R.D. 469, 475

7  (E.D. Wash. 2012) ("the proposed benefit to class members appears to the Court to be within

8  the range of fair and reasonable compensation given the uncertain outcome of the legal

9  arguments and the risks and probable delay for Plaintiff and class members if litigation were to

10  proceed toward trial"); *Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009 JLS (MDD),

11  2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating

12  that "'[c]onsidering the potential risks and expenses associated with continued prosecution of

13  the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of

14  recovery through continued litigation,' the Court finds that, on balance, the proposed settlement

15  is fair, reasonable, and adequate") (alteration in original) (citation omitted).

16      For all the foregoing reasons, Lead Plaintiff respectfully submits that the relief provided

17  in the Settlement is more than adequate.

18      **C.**    **Proposed Plan of Allocation for Distributing Relief to the Settlement Class Treats Settlement Class Members Equitably**

19

20      At the final Settlement Hearing, the Court will be asked to approve the proposed Plan of

21  Allocation for distributing the proceeds of the Settlement to eligible claimants.  The Plan of

22  Allocation, which is reported in full in the Notice, was drafted with the assistance of Lead

23  Plaintiff's damages expert, based on the measure of damages for claims under the Exchange Act

24  and is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement

25  amongst eligible claimants.  *See* Notice, pp. 17 to 26.  It treats all Settlement Class Members,

26  including the Lead Plaintiff, equitably.

27      Here, the Plan of Allocation is designed to equitably distribute the Settlement proceeds

28  among members of the Settlement Class who were allegedly injured by Defendants' alleged

14

misrepresentations and who submit valid Claim Forms.  The Plan provides for the calculation of a "Recognized Loss" amount for each properly documented purchase or acquisition of Extreme common stock and/or exchange traded options during the Class Period.  A claimant's total Recognized Losses will depend on, among other things, when their shares and/or exchange traded options were purchased and/or sold during the Class Period in relation to the disclosure dates alleged in the Action, whether the shares were held through or sold during the statutory 90-day look-back period, see 15 U.S.C. § 78u-4(e) (providing methodology for limiting damages in securities fraud actions), and the value of the shares when they were sold or held.

The Recognized Loss formulas are tied to liability and damages.  In developing the Plan of Allocation, the Lead Plaintiff's damages expert considered the amount of artificial inflation allegedly present in Extreme's common stock and exchange traded options throughout the Class Period that was purportedly caused by the alleged fraud. Shares purchased before February 5, 2014 and held through this disclosure will be valued using 20% of the alleged artificial inflation, given the Court's dismissal of these claims and the particular challenges to being able to establish liability and damages.  An inflation table was created and is reported in the Notice as part of the Plan of Allocation.  The table will be utilized by the Claims Administrator in calculating Recognized Loss amounts for claimants.

The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms, which can be mailed to the Claims Administrator, submitted online using the settlement website, or, for large investors, with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members' transactional data and a claims process is required.  Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 5:15-CV-04883-BLF-SVK

15

1   "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.[6]

2       Once the Claims Administrator has processed all submitted claims, notified claimants of

3   deficiencies or ineligibility, processed responses, and made claim determinations, distributions

4   will be made to eligible claimants in the form of checks and wire transfers.  After an initial

5   distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement

6   Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6)

7   months from the date of initial distribution, Lead Counsel will, if feasible and economical, re-

8   distribute the balance among eligible claimants who have cashed their checks.  These re-

9   distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible

10  to distribute.  *See* Stipulation ¶ 26.  Any balance that still remains in the Net Settlement Fund

11  after re-distribution(s), which is not feasible or economical to reallocate, after payment of any

12  outstanding Notice and Administration Expenses or Taxes, will be donated to Consumer

13  Federation of America ("CFA"), which has programs that assist consumers dealing with

14  financial fraud.  *Id*.  Neither Lead Plaintiff nor Lead Counsel is affiliated with CFA.

15      Consumer Federation of America is a non-profit, consumer advocacy organization

16  established in 1968 to advance consumer interests through policy research, advocacy, and

17  education before the judiciary, Congress, the White House, federal and state regulatory

18  agencies, and state legislatures.  *See generally* www.consumerfed.org.  With respect to victims

19  of financial fraud, CFA has an Investor Protection program that works nationwide to promote

20  consumer-oriented policies that safeguard investors against fraud through: (i) the development

21  of  educational  material  for  investors;  (ii)  drafting  policies  and  legislation;

22  (iii) and providing testimony  and  comments  on  legislation  and  regulations.  See

23  www.consumerfed.org/issues/investor-protection.    CFA  has  been  approved  as  a  cy pres

24  beneficiary in several securities cases in California, including *In re Vocera Commc'ns, Inc. Sec.*

25

26

---

27  [6] Because eligible claimants will be receiving their *pro rata* share of the Net Settlement Fund
and their individual recoveries will depend on the value of all other eligible claimants'
recoveries, which will change on a daily basis as claims are processed and verified, it would not

28  be feasible to have the website provide estimates of claim amounts for each class member.

1  *Litig.*, No. 13-CV-03567-EMC (N.D. Cal.) and *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-

2  00275-MLR (C.D. Cal.).

3      **D.**    **Anticipated Legal Fees and Expenses**

4      As set forth in the Notice, Lead Counsel intends to move for attorneys' fees of no more

5  than 25% of the Settlement Fund and litigation expenses of no more than $230,000, which may

6  include a modest application for reimbursement by the Lead Plaintiff pursuant to the PSLRA.

7      A 25% fee would amount to $1,750,000, which is substantially less than the value of the

8  time that Plaintiff's Counsel have expended in this case and is the 25% "benchmark" recognized

9  within the Ninth Circuit.  The requested fee would provide a significant negative "multiplier" to

10  Plaintiff's Counsel.  The basis of Lead Counsel's fee and expense request will be detailed in

11  their upcoming motion requesting fees and expenses however, to date, Labaton Sucharow's

12  "lodestar" is approximately $3.4 million.[7]

13      Lead Counsel's maximum expense figure is based upon total-to-date expenses of

14  approximately $230,000, which include the amounts below, plus a "cushion" to cover a modest

15  PSLRA reimbursement request for the Lead Plaintiff and to cover incurred expenses that have

16  not yet been invoiced or expenses that will be incurred between now and Lead Counsel's

17  motion for fees and expenses:

| Category | Amount |
|---|---|
| Experts/Consultants | $70,000.00 |
| Mediation | $6,100.00 |
| Court Hearing/ Deposition Reporting | $1,000.00 |
| Long-Distance Telephone/ Conference Calling/Facsimile | $500.00 |
| Postage/FedEx/Messengers | $2,000.00 |
| Electronic Research | $28,000.00 |

[7] Lead Counsel is in the process of doing a final review of its time, and the final figure presented in its motion requesting fees may differ.

| Work-Related Transportation/ Meals/Hotels | $56,000.00 |
|---|---:|
| Filing & Service Fees | $3,100.00 |
| Duplicating | $15,500.00 |
| **TOTAL** | **$182,200.00** |

With respect to Notice and Administration Expenses, the Claims Administrator currently estimates that its fees and expenses in connection with the Settlement notices and claims process may be in the range of $400,000 to $600,000.[8]  This estimate assumes, among other things, that approximately 150,000 notice packets of 18 pages (consisting of a Notice and Claim Form) will be mailed and that 30,000 claims will be received.[9]  In the event that actual experience differs from these assumptions, the administrative fees and expenses incurred in connection with this Settlement will differ from this estimate.   Notice and Administration Expenses will be paid from the Settlement Fund.  *See* Stipulation ¶ 9.  Before the Settlement reaches its Effective Date, no more than $500,000 in Notice and Administration expenses may be paid.  *Id*. ¶ 21.

## II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

### A.    Standards Applicable to Class Certification

At the Settlement Hearing, the Court will be asked to grant final approval of the Settlement on behalf of the Settlement Class, which is defined as "all persons and entities that

---

[8] This estimate is commensurate with the costs of other comparable administrations that Lead Counsel has overseen.  *See* Exhibit 4.

[9] The estimated number of notice packets is based on KCC's analysis of the potential size of the class using a forecasting model that evaluates the average trading volume over the Class Period and past matters of similar size with a similar issuer. Class sizes in cases involving publicly traded securities remain rough estimates until all identified brokers and nominees have responded with completed lists of beneficial shareholder counts.

The conversion of approximately 20% of notices to claim forms is a very standard assumption in securities cases, although this does not mean that 80% of the class will not recover.  In fact, institutional investors may submit only a few hundred claims, however those claims typically represent thousands of transactions and the majority of the damages suffered by the class.

purchased or otherwise acquired the publicly traded common stock and exchange-traded call options, and/or sold put options, of Extreme during the period from September 12, 2013 through April 9, 2015, inclusive, and who were damaged thereby," excluding those expressly identified in ¶ 1(hh) of the Stipulation.[10]   For that reason, and pursuant to the upcoming amendments to Rule 23(e), it is appropriate for the Court to consider, at the preliminary approval stage, whether certification of the Settlement Class is appropriate.   *See Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 (TEH), 2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008).

Defendants have agreed to certification of the Settlement Class solely for purposes of the Settlement.   Stipulation ¶ 3.   If the case had continued to be litigated, Defendants would have contested several of the elements of certification and they reserve their rights to do so if the Settlement were to be terminated or not reach its Effective Date and the case were to continue.

Courts have acknowledged the propriety of certifying a class solely for purposes of a class action settlement.   *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Indeed, in the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing."   *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (citation and internal quotation marks omitted); *see also In re THQ Inc. Sec. Litig.*, No. 00-1783AHM(EX), 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.") (citations omitted).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b).   *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").   As

---

[10] As mentioned above, the definition of the Settlement Class is consistent with the definition of the class proposed in the Amended Complaint.

1    discussed below, the Action satisfies all the factors for certification.

2    **B.      The Settlement Class Meets the Requirements of Rule 23(a)**

3          **1.      Rule 23(a): Numerosity**

4          Rule 23(a)(1) requires that the class be so numerous that joinder of all members is

5    impracticable. "'[I]mpracticability does not mean 'impossibility,' but only the difficulty or

6    inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*,

7    329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). There is no fixed number of class

8    members which either compels or precludes the certification of a class. *Arnold v. United Artists*

9    *Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). In securities litigation, courts

10   regularly find the numerosity requirement is satisfied with respect to putative purchasers of

11   nationally traded securities on the volume of outstanding shares. *See Howell v. JBI, Inc.*, 298

12   F.R.D. 649, 654-55 (D. Nev. 2014) ("in securities cases, when millions of shares are traded

13   during the proposed class period, a court may infer that the numerosity requirement is

14   satisfied"); *Cooper Cos.*, 254 F.R.D. at 634 ("The Court certainly may infer that, when a

15   corporation has millions of shares trading on a national exchange, more than 40 individuals

16   purchased stock over the course of more than a year. It is likely that thousands of people made

17   such purchases.").

18         Here, there can be no dispute that the Settlement Class satisfies numerosity and consists

19   of (at least) thousands of investors. Throughout the Class Period, Extreme common stock traded

20   actively on the NASDAQ under the ticker symbol "EXTR." During the Class Period, there were

21   approximately 94 million to 100 million shares of Extreme common stock outstanding. *See*

22   Complaint ¶ 413. Common sense dictates that these shares were purchased by thousands of

23   investors, making joinder impracticable.

24         **2.      Rule 23(a)(2): Questions of Law or Fact Are Common**

25         Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."

26   Fed. R. Civ. P. 23(a)(2). The Ninth Circuit construes this requirement "permissively," and has

27   stated that that "[a]ll questions of fact and law need not be common to satisfy the rule."

28   *Hanlon*, 150 F.3d at 1019.

Securities fraud cases have long been found to satisfy the commonality requirement:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.  Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).").

In this case, common questions of law and fact abound.  The central questions–whether Defendants' statements during the Class Period regarding the success of Extreme's post-acquisition integration with its former competitor, Enterasys Networks, as well as developments in Extreme's key partnership with Lenovo Group, Ltd. were false and misleading and whether Defendants acted with the requisite mental state–are the same for all class members.

### 3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory.  *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986).  Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist. *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005).  Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents influencing the purchase will not render the claim atypical in most securities actions.  *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009).

Here, Lead Plaintiff's claims are typical to those of the other Members of the Settlement Class. Like all Settlement Class Members, Lead Plaintiff purchased the publicly traded common stock of Extreme during the Class Period and claims to have suffered damages when

LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 5:15-CV-04883-BLF-SVK

21

Defendants' alleged material misstatements and omissions were revealed.

### 4.   Rule 23(a)(4): The Lead Plaintiff Is Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, as mentioned above, Lead Plaintiff is a sophisticated institutional investor that has and will continue to represent the interests of the Settlement Class fairly and adequately.  There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class.  Lead Plaintiff and Members of the Settlement Class share the common objective of maximizing their recovery from Defendants when considering the totality of the relevant circumstances. Lead Counsel also has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States.[11]   Lead Counsel is well qualified and able to conduct the Action and has ably and effectively represented Lead Plaintiff and the proposed Settlement Class throughout the Action.[12]

### C.   The Settlement Class Meets the Requirements of Rule 23(b)(3)

#### 1.   Common Questions of Law or Fact Predominate

Rule 23(b)(3) sets forth two requirements, the first being that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether

---

[11] *See* Lead Counsel's Firm Resume (Ex. 2); *see also In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, No. 07-Civ-10453, 2009 WL 50132, at *10 (S.D.N.Y. Jan. 5, 2009) (Labaton Sucharow has "substantial experience in the prosecution of shareholder and securities class actions").

[12] Accordingly, Lead Counsel should also be appointed Class Counsel under Rule 23(g)(1). *See, e.g., Williams v. Costco Wholesale Corp.*, No. O2cv2003 IEG (AJB), 2010 WL 761122, at *6 (S.D. Cal. Mar. 4, 2010) (appointing as Class Counsel attorneys who, as here, have "extensive experience in class actions" and appeared "competent to represent the class").

1  proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*
2  *Prods.*, 521 U.S. at 623. "'When common questions present a significant aspect of the case and
3  they can be resolved for all members of the class in a single adjudication, there is clear
4  justification for handling the dispute on a representative rather than on an individual basis.'"
5  *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay
6  Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).  The predominance requirement is
7  "readily met" in securities class actions. *Amchem Prods.*, 521 U.S. at 625; *see also Cooper Cos.*,
8  254 F.R.D. at 632 ("[S]ecurities fraud cases fit Rule 23 'like a glove.'") (citation omitted).

9      Here, common questions of law and fact predominate over individual questions because
10  Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members
11  in the same manner (i.e., through public statements made to the market and documents publicly
12  filed with the SEC). Predominance of common questions generally will be found when, as
13  alleged here, "'many purchasers have been defrauded over time by similar misrepresentations,
14  or by a common scheme to which alleged non-disclosures related.'" *Negrete v. Allianz Life Ins.*
15  *Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (citation omitted); *see also In re First*
16  *Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL-901, 1993 WL 144861, at *6 (C.D.
17  Cal. Feb. 26, 1993) ("The Ninth Circuit has repeatedly found that common issues predominate
18  in federal securities actions where the proposed class members have all been injured by the
19  same alleged course of conduct.") (citation omitted).

20      Moreover, class-wide reliance is established in this Action through the application of
21  *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims
22  asserted against Defendants are predicated upon omissions of material fact, which there was a
23  duty to disclose, or the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485
24  U.S. 224, 241-42 (1988).  Application of *Affiliated Ute* or *Basic* dispenses with the requirement
25  that each Settlement Class Member prove individual reliance on Defendants' alleged
26  misstatements and/or omissions.  *See id.* at 241-42.   In order to be entitled the *Basic*
27  presumption of reliance, the market for the security must be "efficient." *Id.* at 248.  Here, where
28  Extreme's common stock is traded on the NASDAQ, a national securities exchange, and was

1   followed by numerous securities analysts and traded at regular substantial volumes, there is

2   sufficient evidence of market efficiency.  *See* Amended Complaint at ¶¶ 430.

3          **2.     A Class Action Is a Superior Method of Adjudication**

4          Finally, Rule 23(b)(3) also requires that the action be superior to other available methods

5   for the fair and efficient adjudication of the controversy.  The rule lists several matters pertinent

6   to this finding: (A) the class members' interests in individually controlling the prosecution or

7   defense of separate actions; (B) the extent and nature of any litigation concerning the

8   controversy already begun by or against class members; (C) the desirability or undesirability of

9   concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties

10  in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Desai v. Deutsche Bank*

11  *Sec. Ltd*, 573 F.3d 931, 937 (9th Cir. 2009). Each factor weighs in favor of superiority here.

12  *See, e.g., McPhail,* 247 F.R.D. at 615 (noting "class action is the superior method for fair and

13  efficient adjudication" because individual suits would "'clog [ ] the federal courts with

14  innumerable individual suits litigating the same issues repeatedly,'" the plaintiffs assert

15  complex claims that "would be very costly to litigate," and each claim is for a "relatively small

16  amount") (alteration in original) (citation omitted).

17         Further, without the settlement class device, Defendants could not obtain a class-wide

18  release, and therefore would have had little, if any, incentive to settle.  Certification of the

19  Settlement Class will allow the Settlement to be administered in an organized and efficient

20  manner. Accordingly, the Court should preliminarily certify the Settlement Class.

21  **III.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS,**
        **AND THE PSLRA REQUIREMENTS**
22

23         Lead Counsel proposes that notice be given to the Settlement Class in the form of the

24  mailed long-form Notice and the Summary Notice, which will both be published in a trade

25  publication and be disseminated over the internet, which are attached as Exhibits A-1 and A-3

26  to the proposed Preliminary Approval Order.  Notice to the Settlement Class in the form and in

27  the manner set forth in the proposed Preliminary Approval Order will fulfill the requirements of

28  due process and comply with the Federal Rules of Civil Procedure and the PSLRA.

1    Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best

2  notice practicable under the circumstances."   Fed. R. Civ. P. 23(c)(2)(B).   It must be

3  "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

4  of the action and afford them an opportunity to present their objections."   *Mullane v. Central*

5  *Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).   Notice must describe "'the terms of the

6  settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

7  forward and be heard.'"   *See, e.g.*, *Lane v. Facebook, Inc*., 696 F.3d 811, 826 (9th Cir. 2012)

8  (quoting *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 962 (9th Cir. 2009)).   Lead Counsel

9  proposes to provide Settlement Class Members notice by:  (i) individual first-class mailing of

10  the long-form Notice, addressed to all Class Members who can reasonably be identified and

11  located, using information provided by Extreme's transfer agent, as well as information

12  provided by third party banks, brokers, and other nominees about their customers who may have

13  eligible purchases; (ii) publication of the Summary Notice in *Investor's Business Daily*; and (iii)

14  dissemination of the Summary Notice on the internet using *PR Newswire*.   *See In re HP Sec.*

15  *Litig*., No. 12-cv-05980-CRB, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding the

16  procedures for notice, including mailing individual notice and publication notice satisfy Rule

17  23, the PSLRA, and constitute the best notice practicable).   The Notice will also be accessible

18  on the case website and Lead Counsel's website.   The Parties have conferred and while they do

19  not believe a notice under the Class Action Fairness Act is required in this Action, which is

20  governed by the Exchange Act, Defendants will be issuing a notice.

21    This proposed notice program is the "gold standard" in securities cases.   Because of the

22  availability of name and address data for potential class members from third-party banks,

23  brokers, and nominees, and the Claims Administrator's ability to reach potential class members

24  through individual mailed notice, Lead Counsel and the proposed Claims Administrator (which

25  has its own Legal Notification division that specializes in media notice via multi-channel

26  advertising) have conferred and determined that using social media or hiring an outside

27  marketing specialist would not be appropriate here.   It is also the case that Extreme's transfer

28

1   agent and the nominees are unlikely to have e-mail addresses for potential class members or, if

2   they have them, would be unwilling to provide them given privacy concerns.

3          In addition to the proposed methods of providing notice, the form and substance of the

4   notice program are also sufficient, and they were drafted to comply with the Court's Procedural

5   Guidance.    The proposed forms of notice describe the terms of the Settlement and the

6   Settlement Class' recovery; the considerations that caused Lead Plaintiff and Lead Counsel to

7   conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and

8   expenses that may be sought; the procedure for requesting exclusion from the Settlement Class;

9   the procedure for objecting to the Settlement; the procedure for participating in the Settlement;

10  the proposed Plan of Allocation; and the date and place of the Settlement Hearing.  *See Ching v.*

11  *Siemens Indus., Inc.*, No. 11-cv-4838 MEJ, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013)

12  (approving notice that "adequately describes the nature of the action, summarizes the terms of

13  the settlement, identifies the class and provides instruction on how to opt out and object, and

14  sets forth the proposed fees and expenses to be paid to Plaintiff's counsel and the settlement

15  administrator in clear, understandable language").

16         The long-form Notice also satisfies the PSLRA's separate disclosure requirements by,

17  *inter alia*, stating:   (i) the amount of the Settlement determined in the aggregate and on an

18  average per share basis;[13] (ii) that the Parties do not agree on the amount of damages that would

19  be recoverable in the event Lead Plaintiff prevailed; (iii) that Lead Counsel intends to make an

20  application for an award of attorneys' fees and expenses (including the amount of such fees and

21  expenses determined on an average per share basis), and a brief explanation of the fees and

22  expenses sought; (iv) the name, telephone number, and address of a representative of counsel

23  for the Settlement Class who will be available to answer questions concerning any matter

24

25

---

26  [13] As set forth in the Notice, the average recovery per allegedly damaged share of publicly traded common stock of Extreme would be $0.05 per share before deduction of Court-approved fees and expenses, such as attorneys' fees and expenses, and approximately $0.04 per share

27  after deduction of attorneys' fees and expenses.   These values are averages and individual investors' recoveries will differ, depending upon when they made purchase or sales, and

28  whether they held their shares.

1   contained in the Notice; and (v) the reasons why the Parties are proposing the Settlement.  *See*

2   15 U.S.C. § 78u-4(a)(7)(A)-(F).  The proposed Notice contains all of the information required

3   by the PSLRA.  The Notices will, when mailed and published as provided for in the Preliminary

4   Approval Order submitted herewith, fairly apprise Settlement Class Members of the Settlement

5   and their options with respect thereto, and fully satisfy all due process requirements.

6   Finally, Lead Plaintiff also requests that the Court appoint KCC as the Claims

7   Administrator to provide all notices approved by the Court to Settlement Class Members, to

8   process Claim Forms, and to administer the Settlement.  KCC is a recognized leader in legal

9   administration services for class action settlements and legal noticing programs and has

10  successfully administered numerous complex securities class action settlements.  *See* Exhibit 5.

11  In particular, KCC has administered over 6,500 class action settlements and handled thousands

12  of distribution engagements in other contexts. Their domestic infrastructure includes call centers

13  with over 1,200 seats, claims intake facilities that can open and scan 200,000 claims in a single

14  day, and document production capabilities that print and mail millions of documents annually.

15  Last year, their disbursement services team distributed over half a trillion dollars.  *Id*.  Lead

16  Counsel has not engaged KCC within the past two years.  Given the size of the Settlement, the

17  scope of the project, and Lead Counsel's experience with claims administration, proposals from

18  other administrators were not sought. (KCC was also retained before the revised Procedural

19  Guidance was issued.)

20  ## CONCLUSION

21  For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an

22  order substantially in the form of the proposed Preliminary Approval Order:  (a) preliminarily

23  approving the Settlement; (b) holding that the manner and forms of notice set forth in the

24  Preliminary Approval Order satisfy due process and provide the best notice practicable under

25  the circumstances, and ordering that notice be provided to the Settlement Class; (c) setting a

26  date for the Settlement Hearing; (d) appointing KCC as Claims Administrator; (e) preliminarily

27  certifying the Settlement Class; and (f) granting such other and further relief as may be required.

28

1

Dated: November 30, 2018                              **LABATON SUCHAROW LLP**

2

3
                                              By:    /s/ Carol C. Villegas
4                                                    Carol C. Villegas (pro hac vice)
                                                     Alec T. Coquin (pro hac vice)
5                                                    140 Broadway
                                                     New York, NY 10005
6                                                    Telephone: (212) 907-0700
                                                     Facsimile: (212) 818-0477
7                                                    Email: cvillegas@labaton.com
                                                            acoquin@labaton.com
8
                                                     *Attorneys for Lead Plaintiff and Lead*
9                                                    *Counsel for the Class*

10                                                   **BERMAN TABACCO**
                                                     Nicole Lavallee (SBN 165755)
11                                                   A. Chowning Poppler (SBN 272870)
                                                     44 Montgomery Street, Ste. 650
12                                                   San Francisco, CA 94111
                                                     Telephone: (415) 433-3200
13                                                   Facsimile: (415) 433-6382
                                                     Email: nlavallee@bermantabacco.com
14                                                          cpoppler@bermantabacco.com
15
                                                     *Liaison Counsel for the Class*
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 30, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I will cause the mailing of the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Service List, if any.

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on November 30, 2018

                          */s/ Carol C. Villegas*
                          Carol C. Villegas

**Mailing Information for a Case 5:15-cv-04883-BLF**

**Hong v. Extreme Networks, Inc. et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Eric J. Belfi**
  ebelfi@labaton.com,kgutierrez@labaton.com,ElectronicCaseFiling@labaton.com,
  4076904420@filings.docketbird.com
- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com
- **Alec T Coquin**
  acoquin@labaton.com,kgutierrez@labaton.com,7391740420@filings.docketbird.com,
  electroniccasefiling@labaton.com
- **Jeffrey Dubbin**
  jdubbin@labaton.com,6415738420@filings.docketbird.com,kgutierrez@labaton.com,
  mpenrhyn@labaton.com,echan-lee@labaton.com,electroniccasefiling@labaton.com
- **Thomas A. Dubbs**
  tdubbs@labaton.com,kgutierrez@labaton.com,1751297420@filings.docketbird.com,
  mpenrhyn@labaton.com,echan-lee@labaton.com,electroniccasefiling@labaton.com
- **Jonathan Gardner**
  jgardner@labaton.com,kgutierrez@labaton.com,cvillegas@labaton.com,
  4027988420@filings.docketbird.com,ryamada@labaton.com,acoquin@labaton.com,
  fmalonzo@labaton.com,acarpio@labaton.com,agreenbaum@labaton.com
- **Louis J Gottlieb**
  lgottlieb@labaton.com,kgutierrez@labaton.com,5401845420@filings.docketbird.com,
  electroniccasefiling@labaton.com
- **Elliot Schlesinger Katz**
  elliot.katz@dlapiper.com
- **Christopher J. Keller**
  ckeller@labaton.com,5497918420@filings.docketbird.com,kgutierrez@labaton.com,
  drogers@labaton.com,electroniccasefiling@labaton.com
- **Nicole Catherine Lavallee**
  nlavallee@bermantabacco.com,ysoboleva@bermantabacco.com
- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com
- **Francis P McConville**
  fmcconville@labaton.com,kgutierrez@labaton.com,drogers@labaton.com,
  9849246420@filings.docketbird.com,sjessee@labaton.com,
  electroniccasefiling@labaton.com
- **Brian O. O'Mara**
  bo'mara@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,
  abarbosa@pomlaw.com,jpalazzolo@pomlaw.com

- **Aidan Chowning Poppler**
  cpoppler@bermantabacco.com,ysoboleva@bermantabacco.com
- **David Allen Priebe**
  david.priebe@dlapiper.com,margaret.austin@dlapiper.com,carmen.
  manzano@dlapiper.com,david-priebe-3844@ecf.pacerpro.com
- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net
- **Wendy Tsang**
  wtsang@labaton.com,kgutierrez@labaton.com,1795730420@filings.docketbird.com,
  electroniccasefiling@labaton.com
- **Irina Vasilchenko**
  ivasilchenko@labaton.com,ElectronicCaseFiling@labaton.com,
  8032137420@filings.docketbird.com,KGutierrez@labaton.com
- **Carol C. Villegas**
  cvillegas@labaton.com,kgutierrez@labaton.com,5739893420@filings.docketbird.com,
  jchristie@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com,electroniccasefiling@labaton.com
- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kmccarty@rgrdlaw.com,e_file_sd@rgrdlaw.com,
  kirstenb@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

- (No manual recipients)