**LABATON SUCHAROW LLP**
Carol C. Villegas *(pro hac vice)*
Alec T. Coquin *(pro hac vice)*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
         acoquin@labaton.com

*Attorneys for Lead Plaintiff and Lead Counsel for the Class*

**BERMAN TABACCO**
Nicole Lavallee (SBN 165755)
A. Chowning Poppler (SBN 272870)
44 Montgomery Street, Ste. 650
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
         cpoppler@bermantabacco.com

*Liaison Counsel for the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re EXTREME NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | Master File No. 5:15-cv-04883-BLF-SVK<br><br>**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  June 20, 2019  1:30 p.m.<br>Dept.:  Courtroom 4, 5th Floor<br>Judge:  Hon. Beth Labson Freeman |

Master File No. 5:15-cv-04883-BLF-SVK
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .................................................................................................. 1

PRELIMINARY STATEMENT ................................................................................... 2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ............................... 3

ARGUMENT ................................................................................................................ 4

I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
     UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED ............ 4

     A.   The Standards for Final Approval of Class Action Settlements .............................. 4

     B.   Application of the Ninth Circuit's Factors Supports Final Approval of the
          Settlement ............................................................................................................. 6

          1.   The Strength of Lead Plaintiff's Case and the Risks Associated with
               Continued Litigation ....................................................................................... 6

               (a)   Risks Concerning Class Certification .................................................... 7

               (b)   Loss Causation and Damages Challenges .............................................. 9

          2.   The Complexity, Expense, and Likely Duration of Further Litigation ........ 11

          3.   The Risk of Maintaining Class-Action Status Through Trial ..................... 12

          4.   The Amount Offered in the Settlement ...................................................... 13

          5.   The Extent of Discovery Completed and the Stage of the Proceedings ....... 14

          6.   The Experience and Views of Counsel ...................................................... 16

          7.   The Presence of a Governmental Participant ............................................. 17

          8.   Reaction of the Settlement Class to Date .................................................. 17

     C.   Application of the Factors Identified in the Amendments to Rule 23
          Supports Approval of the Settlement as Fair, Reasonable, and Adequate ............. 18

          1.   Lead Plaintiff and Lead Counsel Have Adequately Represented the
               Settlement Class ........................................................................................... 18

          2.   The Settlement Is the Result of Arm's-Length Negotiations ..................... 19

          3.   The Relief Provided to the Settlement Class Is Adequate and the
               Settlement Treats Class Members Equitably Relative to Each Other .......... 19

II.  THE PLAN OF ALLOCATION IS FAIR, ADEQUATE, AND REASONABLE
     AND SHOULD BE APPROVED ................................................................................ 21

III.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE
        SETTLEMENT CLASS.................................................................................22

CONCLUSION...........................................................................................................22

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Churchill Vill. L.L.C. v. Gen. Elec.*,

5

    361 F.3d 566 (9th Cir. 2004) ...................................................................5

6

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1268 (9th Cir. 1992) ........................................................4, 6, 21

7

*Destefano v. Zynga Inc.*,

8

    No. 12-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...............12, 15, 16

9

*Dura Pharms., Inc. v. Broudo*,

10

    544 U.S. 336 (2005) ....................................................................9

11

*Eisen v. Porsche Cars N. Am., Inc.*,

    No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ...............16

12

*In re Finisar Corp. Sec. Litig.*,

13

    No. 5:11-CV-01252-EJD, 2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ...............7, 8

14

*Garner v. State Farm Mut. Auto Ins. Co.*,

15

    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...............5

16

*Glickenhaus & Co., v. Household Int'l, Inc.*,

    787 F.3d 408 (7th Cir. 2015) ...........................................................12

17

*In re Heritage Bond Litig.*,

18

    No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................21

19

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,

    No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...............14

20

*Janus Capital Grp., Inc. v. First Derivative Traders*,

21

    564 U.S. 135 (2011) ...................................................................12

22

*In re Linkedin User Privacy Litig.*,

23

    309 F.R.D. 573 (N.D. Cal. 2015) .......................................................11

24

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998) ..........................................................6

25

*McPhail v. First Command Fin. Planning, Inc.*,

26

    No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...................14

27

*In re Mego Fin. Corp. Sec. Litig.*,

28

    213 F.3d 454 (9th Cir. 2000) ................................................5, 7, 13, 14

MASTER FILE NO. 5:15-cv-04883-BLF-SVK
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

iii

*Mendoza v. Tucson Sch. Dist. No. 1*,
 623 F.2d 1338 (9th Cir. 1980) ........................................................................17

*In re Mercury Interactive Corp. Sec. Litig.*,
 618 F.3d 988 (9th Cir. 2010) ..........................................................................17

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................16

*Nguyen v. Radient Pharms. Corp.*,
 No. SACV 11-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................11

*Officers for Justice v. Civil Serv. Comm'r*,
 688 F.2d 615 (9th Cir. 1982) ........................................................................4, 5

*Oklahoma Firefighters Pension & Ret. Sys. v. Finisar Corp.*,
 No. 18-80013, 2018 WL 3472714 (9th Cir. July 13, 2018)............................7, 8

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................... *passim*

*Redwen v. Sino Clean Energy, Inc.*,
 No. 11-3936, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)..........16, 21

*Rodriguez v. W. Publ'g Corp.*
 563 F.3d 948 (9th Cir. 2009) ..........................................................................16

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993) ........................................................................5, 11

*In re TracFone Unlimited Serv. Plan Litig.*,
 112 F. Supp. 3d 993 (N.D. Cal. 2015) ...............................................................5

*Van Bronkhorst v. Safeco Corp.*,
 529 F.2d 943 (9th Cir. 1976) ............................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005)..........................................................................13, 14

*In re Warner Commc'ns Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)..................11

**Rules**

Fed. R. Civ. P. 23 ...............................................................................1, 18, 21

Fed. R. Civ. P. 23(a) .....................................................................................22

Fed. R. Civ. P. 23(b)(3)..................................................................................22

Fed. R. Civ. P. 23(c)(1)(C) .............................................................................12

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

iv

Fed. R. Civ. P. 23(e) ................................................................................2, 5

Fed. R. Civ. P. 23(e)(2) ..........................................................................6, 18

Fed. R. Civ. P. 23(e)(2)(C)(i) .......................................................................19

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................19, 22

Fed. R. Civ. P. 23(e)(2)(C)(iii) .....................................................................20

Fed. R. Civ. P. 23(e)(2)(C)(iv) .....................................................................20

Fed. R. Civ. P. 23(e)(2)(D) ..........................................................................21

Fed. R. Civ. P. 23(e)(3) ...........................................................................6, 20

Fed. R. Civ. P. 23(f) ...............................................................................8, 12

1

**NOTICE OF MOTION**

2

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

   PLEASE TAKE NOTICE that on June 20, 2019, at 1:30 p.m., or as soon thereafter as it

4

may be heard, Lead Plaintiff Arkansas Teacher Retirement System ("ATRS" or "Lead

5

Plaintiff"), on behalf of itself and all members of the proposed Settlement Class, will move this

6

Court for orders, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) granting final

7

approval of the proposed Settlement of the Action; and (ii) approving the proposed Plan of

8

Allocation for the net proceeds of the Settlement.

9

   This motion is supported by the following memorandum of points and authorities and the

10

accompanying Declaration of Carol C. Villegas in Support of Lead Plaintiff's Motion for Final

11

Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an

12

Award of Attorneys' Fees and Payment of Expenses, dated May 9, 2019 ("Villegas Declaration"

13

or "Villegas Decl."), and the exhibits attached thereto.[1]

14

   Proposed orders will be submitted with Lead Plaintiff's reply submission on June 6,

15

2019, after the May 23, 2019 deadline for requesting exclusion or objecting has passed.

16

**STATEMENT OF ISSUES TO BE DECIDED**

17

   1.   Whether the Court should grant final approval to the proposed class action

18

Settlement;

19

   2.   Whether the Court should finally certify the Settlement Class, for purposes of the

20

Settlement; and

21

   3.   Whether the Court should approve the proposed Plan of Allocation for

22

distributing the proceeds of the Settlement to eligible Settlement Class Members.

23

24

---

25

   [1]   The Villegas Declaration contains a detailed description of the allegations and claims, the
procedural history of the Action, the risks faced by the Settlement Class in pursuing litigation,
and the efforts that led to a settlement, among other matters.  Citations to "¶" in this

26

memorandum refer to paragraphs in the Villegas Declaration.

27

   All exhibits referenced herein are annexed to the Villegas Declaration.  For clarity, citations
to exhibits that themselves have attached exhibits will be referenced as "Ex. ___-___."  The first

28

numerical reference is to the designation of the entire exhibit attached to the Villegas Declaration
and the second alphabetical reference is to the exhibit designation within the exhibit itself.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff Arkansas Teacher Retirement System through its counsel Labaton Sucharow LLP ("Labaton Sucharow" or "Lead Counsel"), respectfully submits this memorandum of points and authorities in support of its motion, pursuant to Federal Rule of Civil Procedure 23(e), requesting (i) final approval of the proposed settlement of the above-captioned class action (the "Settlement"); and (ii) approval of the proposed Plan of Allocation.[2]

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Extreme Networks, Inc. ("Extreme" or the "Company"), and Charles W. Berger, Kenneth B. Arola, and John T. Kurtzweil (collectively, the "Individual Defendants," and, together with Extreme, the "Defendants") have agreed to pay $7,000,000 in cash, to secure a settlement of the claims in the Action and related claims that could have been brought ("Released Claims"). The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court. ECF No. 156-1. This recovery is a favorable and reasonable result for the Settlement Class and avoids the substantial risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount, or nothing at all.

As described below and in the accompanying Villegas Declaration, the decision to settle was well-informed by more than two and a half years of hard-fought litigation that involved a comprehensive investigation; preparation of two detailed amended complaints; two rounds of briefing on Defendant's motions to dismiss the complaints; consultations with experts regarding loss causation and damages issues as well as executive compensation; and a hard-fought settlement process with experienced defense counsel and an experienced Mediator. *See generally* Villegas Decl. §§III-V.

Lead Plaintiff's consulting damages expert has estimated that maximum aggregate damages with respect to the claims that survived the Court's order granting in part and denying

---

[2]   All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement, dated as of November 30, 2018 (the "Stipulation," ECF No. 156-1).

MASTER FILE NO. 5:15-cv-04883-BLF-SVK
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

2

1   in part Defendants' motion to dismiss the Amended Complaint ("MTD Order") would range

2   from approximately $74 million to $140 million, and could be as low as $13 million if all of

3   Defendants' disaggregation arguments were credited.  Against these benchmarks, the $7 million

4   Settlement, represents a recovery of approximately 5% to 54% of Lead Plaintiff's consulting

5   expert's estimated damages for the claims surviving the motion to dismiss—a very favorable and

6   reasonable recovery in light of the countervailing legal and factual arguments and litigation risks.

7   ¶¶5, 56-58.

8          Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the

9   Settlement.  In addition, the Plan of Allocation, which was developed with the assistance of Lead

10  Plaintiff's consulting damages expert, is a fair and reasonable method for distributing the Net

11  Settlement Fund and should also be approved by the Court.

12                    **PRELIMINARY APPROVAL AND THE NOTICE PROGRAM**

13         On March 13, 2019, the Court entered an order preliminarily approving the Settlement

14  and approving the proposed forms and methods of providing notice to the Settlement Class (the

15  "Preliminary Approval Order", ECF No. 167).  Pursuant to and in compliance with the

16  Preliminary Approval Order, through records maintained by Extreme's transfer agent and

17  information provided by brokerage firms and other nominees, beginning on March 27, 2019, the

18  Court-appointed Claims Administrator Kurtzman Carson Consultants LLC ("KCC"), caused,

19  among other things, the Notice and Claim Form (together, the "Notice Packet") to be mailed by

20  first-class mail to potential Settlement Class Members.  *See* Declaration of Lance Cavallo

21  Regarding (A) Mailing of the Notice and Claim Form; (B) Publication of Summary Notice; and

22  (C) Report on Requests for Exclusion Received to Date, dated May 8, 2019, Ex. 2 at ¶¶2-7.  A

23  total of 27,710 Notice Packets have been mailed as of May 7, 2019.  *Id*. at ¶7.  On April 8, 2019,

24  the Summary Notice was published in *Investor's Business Daily* and was disseminated over the

25  internet using *PR Newswire*.  *Id*. at ¶8 and Exhibit B attached thereto.  The Notice and Claim

26  Form were also posted, for review and easy downloading, on the website established by KCC for

27  purposes of this Settlement, as well as Labaton Sucharow's website.  *Id*. at ¶10.

28

Master File No. 5:15-cv-04883-BLF-SVK                                                    3
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

The Notice described, *inter alia*, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from the Settlement Class.  *See generally* Ex. 2-A.  The Notice also gave the deadlines for objecting, seeking exclusion, submitting claims, and advised potential Settlement Class Members of the scheduled Settlement Hearing before this Court.  *Id*.  To date, the Settlement Class's reaction to the proposed Settlement has been positive.  While the deadline (May 23, 2019) for requesting exclusion or objecting to the Settlement has not yet passed, to date there have been no requests for exclusion, no objections to the proposed Settlement, and no objections to the Plan of Allocation.[3]

For all the following reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation, and finally certify the Settlement Class for purposes of the Settlement.

## ARGUMENT

## I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED

### A. The Standards for Final Approval of Class Action Settlements

Strong judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "there is an overriding public interest in settling and quieting litigations," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976).  Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources

---

[3]   Should any objections or requests for exclusion be received, Lead Plaintiff will address them in its reply papers, which are due to be filed with the Court on June 6, 2019.  The reply papers will also include information about the claims submitted.

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

4

and achieve the speedy resolution of claims.  *See, e.g.*, *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  The standard for determining whether to grant final approval to a class action settlement is whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 998 (N.D. Cal. 2015).  In making this determination, courts in the Ninth Circuit consider and balance a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Officers for Justice*, 688 F.2d at 625 (same).  Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The determination of whether a settlement is fair, adequate, and reasonable is committed to the Court's sound discretion.  *See Mego*, 213 F.3d at 458 ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).  In applying the pertinent factors, the Court need not reach conclusions about the merits of the case, in part because the Court will be called upon to decide the merits if the action proceeds.  *See Officers for Justice*, 688 F.2d at 625 ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the

Master File No. 5:15-cv-04883-BLF-SVK
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

5

merits. . . .  [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").  The Court's discretion in assessing the fairness of the settlement is also circumscribed by "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1988) (quoting *Officers for Justice*, 688 F.2d at 626); *Class Plaintiffs*, 955 F.2d at 1276 (same).

Additionally, pursuant to the recent amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors, most of which overlap with the factors considered by the Ninth Circuit:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:

      i.    the costs, risks, and delay of trial and appeal;

      ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      iii.    the terms of any proposed ward of attorneys' fees, including timing of payment; and

      iv.    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

For the reasons discussed herein, and in Lead Counsel's Fee and Expense Application, the proposed Settlement meets the criteria set forth by the Ninth Circuit and the federal rules.

### B.    Application of the Ninth Circuit's Factors Supports Final Approval of the Settlement

#### 1.    The Strength of Lead Plaintiff's Case and the Risks Associated with Continued Litigation

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the risks of continued litigation against the benefits afforded to class

Master File No. 5:15-cv-04883-BLF-SVK
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

6

1    members and the certainty of a recovery.  *See Mego*, 213 F.3d at 458.  Although Lead Plaintiff

2    believes that the case against Defendants is strong, that confidence must be tempered by the fact

3    that the Settlement is certain and that every case involves the risk of no recovery, particularly in

4    a complex case such as the one at bar.  There is no question that to prevail here, Lead Plaintiff

5    would have confronted a number of significant legal and factual challenges—as highlighted by

6    the Court's decisions on Defendants' two motions to dismiss.  The principal risks are discussed

7    below and in the Villegas Declaration, however Defendants would have continued to challenge

8    the material falsity of each alleged misstatement and omission that survived the Court's MTD

9    Order and Defendants' alleged scienter.  As detailed below, Lead Plaintiff would have had to

10   move for and argue, and the Court would need to rule on, class certification and summary

11   judgment.  There was no guarantee that the claims would survive these challenges, and, even if

12   they did, how the Court's rulings would affect the future prosecution of the claims.

13                    **(a)     Risks Concerning Class Certification**

14           At the time the Parties agreed to settle the Action, Lead Plaintiff had not yet moved for

15   class certification.  However, the discussions between the Parties indicated that the motion would

16   lead to a difficult and contested "battle of the experts" due, in part, to the scope of the claims that

17   survived Defendants' second motion to dismiss.  ¶¶49-53.

18           The MTD Order significantly trimmed the scope of the Action, finding actionable only:

19   (i) certain general statements attributed to CEO Berger in press releases and investor conferences

20   that Enterprise Resource Planning integration and other operational milestones in the integration

21   of Enterasys were "on track" or "ahead of plan"; (ii) certain statements made by Berger about

22   integration of the Sales organization; and (iii) certain statements made by former CFO Ken Arola

23   regarding the integration of the two companies and the projected integration of the product

24   portfolio and Sales and marketing teams.  ¶50.  Based on the surviving claims, Defendants and

25   their expert(s) would likely have argued a lack of "price impact," a complex attack on the

26   presumption of reliance that counsel for Defendants have successfully pioneered in this district.

27   *See, e.g., In re Finisar Corp. Sec. Litig.*, No. 5:11-CV-01252-EJD, 2017 WL 6026244, at *1

28   (N.D. Cal. Dec. 5, 2017), *reconsideration denied*, No. 5:11-CV-01252-EJD, 2018 WL 3472334

1   (N.D. Cal. Jan. 18, 2018), and *leave to appeal denied sub nom.*, *Oklahoma Firefighters Pension*

2   *& Ret. Sys. v. Finisar Corp.*, No. 18-80013, 2018 WL 3472714 (9th Cir. July 13, 2018).  As part

3   of this attack at class certification, Defendants would have argued that when allegedly

4   misrepresenting these actionable topics, Extreme's stock price declined, and thus that there was

5   no "price impact."  ¶50.

6          For example, Extreme's stock price declined following the press release and conference

7   call of February 5, 2014.  As a result, Defendants would have argued that the allegedly false and

8   misleading statements on that day had no positive price impact, which they would argue is

9   required to invoke the presumption of reliance.  As such, Lead Plaintiff's attempt to certify a

10  class of investors between February 5, 2014 and May 5, 2014, the date of the next challenged

11  statement, may have failed, removing thousands of trades from the Class Period and millions of

12  dollars in damages.  Defendants would have attempted this "price impact" attack on each of the

13  days on which the allegedly false and misleading statements were made.  ¶51.

14         In order to rebut Defendants' anticipated price impact attack, Lead Plaintiff would have

15  had to argue either that Defendants' alleged misstatements artificially maintained the prices of

16  Extreme common stock or that certain of Defendants' statements had a positive impact on

17  Extreme's securities on July 21, 2014 and October 29, 2014, two days on which there were

18  statistically significant price increases in Extreme's stock price and on which Defendants are

19  alleged to have made false and misleading statements the Court considered actionable.  While

20  this argument would have aided Lead Plaintiff in its class certification arguments, it would also

21  have reduced damages by moving inflation from the start of the Class Period to later in the Class

22  Period, arguably reducing the amount of inflation per damaged share at different points

23  throughout the Class Period.  ¶52.

24         In light of the above, there was no guarantee that the proposed class would be certified

25  and that certification could have been retained through summary judgment and trial.  Indeed,

26  even if the class was certified, Defendants may have petitioned the Ninth Circuit pursuant to

27  Rule 23(f) for an interlocutory appeal.  Such appeals can take many months or even over a year

28  to be resolved, and there was a risk that the Ninth Circuit may have reversed the Court's decision

Master File No. 5:15-cv-04883-BLF-SVK                                                        8
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

1    on class certification.  It was also not clear how the Court's rulings in this regard would affect

2    loss causation and damages or how the case would be presented to the jury.  Ultimately, while

3    Lead Plaintiff and Lead Counsel believe they would have advanced strong arguments in support

4    of class certification and reliance, without negative price impact ramifications, they nonetheless

5    acknowledge that Defendants' arguments posed very credible threats to Lead Plaintiff's ability to

6    recover more than that offered by the Settlement.  ¶53.

7                      **(b)      Loss Causation and Damages Challenges**

8              Another principal risk in continuing the litigation is the difficulty of proving loss

9    causation and damages, even aside from the price impact arguments discussed above, which

10   would have been hotly contested by Defendants, particularly at class certification and summary

11   judgment, and would continue to be challenged in *Daubert* motions, at trial, in post-trial

12   proceedings and appeals.  To succeed at trial "a plaintiff [must] prove that the defendant's

13   misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic

14   loss."  *Dura Pharms.*, *Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

15             As set forth in the Villegas Declaration, before the MTD Order, the Amended Complaint

16   alleged a theory of causation and damages premised on three distinct categories (albeit all related

17   to the merger) of allegedly false and misleading statements starting on September 12, 2013.  ¶54.

18   In ruling on Defendants' motion to dismiss the Amended Complaint, however, the Court found

19   only one category of false and misleading statements actionable and further dismissed certain

20   sub-categories of statements relating to that category.  The first false and misleading statement

21   the Court found actionable occurred on February 5, 2014.  Assuming the viability of all

22   remaining categories of false and misleading statements, Lead Plaintiff's causation and damages

23   expert has estimated maximum aggregate damages following the MTD Order to be

24   approximately $140 million.  However, if arguments necessary to counter Defendants' likely

25   price impact arguments at class certification and trial are taken into account, and Class Period

26   gains on pre-Class Period purchases are netted from the recovery, as Defendants' would have

27   urged, maximum aggregate damages following the MTD Order decrease to approximately $74

28   million.  These "aggregate" estimates still include the impact of arguably non-fraud related

1   disclosures on the corrective disclosure dates, which Defendants would argue need to be isolated

2   and removed.  ¶56.

3       For example, on May 6, 2014, Defendants announced management changes, earnings,

4   and forward guidance.  While Lead Plaintiff believes that evidence links the management

5   changes and the consensus revenue miss to sales force integration issues, the poor forward

6   guidance was publicly linked to non-integration related issues that were "largely the result of a

7   falloff in K-12 spending."  Based on these public statements, Defendants would have strenuously

8   argued that the entire price decline was driven by the Company's poor forward guidance (and not

9   merger issues) and, thus, that Lead Plaintiff and the class suffered no recoverable damages on

10  this day.  Taking into account arguments necessary to counter Defendants' likely price impact

11  arguments at class certification and netting pre-Class Period gains, maximum aggregate damages

12  under this possible scenario are approximately $36 million.  ¶57.  Under this damages scenario,

13  the Settlement represents 19% of the maximum recoverable damages.  ¶5.

14      Further, on April 9, 2015, Extreme pre-announced lowered guidance for the March

15  quarter and announced the departure of Jeff White, the Company's Chief Revenue Officer.  As

16  with the May 6, 2014, disclosure, Defendants would have strenuously argued that the entire price

17  decline was driven by the Company's poor forward guidance and, thus, that Lead Plaintiff and

18  the class suffered no recoverable damages on this day.  Taking into account this scenario and the

19  May 6 one discussed above, arguments necessary to counter Defendants' likely price impact

20  arguments at class certification, and netting pre-Class Period gains, maximum aggregate

21  damages could decrease to just $13 million.  ¶58.  Under this damages scenario, the Settlement

22  represents 54% of the maximum recoverable damages.  ¶5.

23      As illustrated above, there was a very real risk that Lead Plaintiff would be unable to

24  counter at summary judgment, or trial, that a substantial portion of the declines on certain of the

25  alleged disclosure dates were attributable to the alleged fraud.  There was also substantial

26  uncertainty surrounding Lead Plaintiff's expert's ability to isolate the proportion of the stock

27  price declines on the corrective disclosure dates attributable specifically to the alleged fraud.

28  These challenges were further complicated by the Court's MTD Order, which found actionable

1    only certain categories of integration statements but not others.  For example, the Court found

2    inactionable statements that the integration would cause "no disruption" to customers but found

3    actionable statements that the sales force integration was "complete."  ECF No. 130 at 20.  Lead

4    Plaintiff was thus faced with the difficult task of separating out the impact of interrelated

5    statements about the integration on the corrective disclosure dates.  ¶59.

6        Because of such challenges, Lead Plaintiff's proposed damages methodology would have

7    come under sustained attack by Defendants, and issues relating to damages would likely have

8    come down, at best, to an inherently unpredictable and hotly disputed "battle of the experts"

9    where it would be impossible to predict with any certainty which arguments would find favor

10   with a jury.  *See*, *e.g.*, *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx),

11   2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where

12   "[p]roving and calculating damages required a complex analysis, requiring the jury to parse

13   divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that

14   analysis is inherently difficult to predict and risky") (citation omitted); *In re Warner Commc'ns*

15   *Sec. Litig.*, 618 F. Supp. 735, 744, 745 (S.D.N.Y. 1985) (approving settlement where "it is

16   virtually impossible to predict with any certainty which testimony would be credited, and

17   ultimately, which damages would be found to have been caused by actionable, rather than the

18   myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir.

19   1986).  The outcome could well have depended on whose testifying expert the jury believed or

20   even whether the jury was able to sufficiently parse through the complex economic theories used

21   by the experts.

22        **2.      The Complexity, Expense, and Likely Duration of Further Litigation**

23       Final approval is also supported by the complexity, expense, and likely duration of

24   continued litigation.  *See Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully

25   litigating the case all suggest that this settlement was fair").  "Generally, unless the settlement is

26   clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

27   with uncertain results."  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal.

28   2015) (citation omitted).

Master File No. 5:15-cv-04883-BLF-SVK
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

11

1    Here, the litigation raised difficult legal and factual issues that required creativity and

2    sophisticated analysis.  The complexity, expense, and duration of preparing and trying the case

3    before a jury, subsequent post-trial motion practice, and a likely appeal of the Court's rulings on

4    class certification, summary judgment, post-trial motions, and a jury verdict would be

5    significant.  Barring a settlement, there is no question that this case would be litigated for years,

6    taking a considerable amount of court time and costing millions of additional dollars, with the

7    possibility that the end result would be no better for the class, and might be worse.  *See*

8    *Destefano v. Zynga Inc.,* No. 12-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016)

9    ("continuing litigation would not only be costly – representing expenses that would take away

10   from any ultimate classwide recovery – but would also delay resolution and recovery for

11   Settlement Class Members"); *cf. Glickenhaus & Co., v. Household Int'l, Inc.,* 787 F.3d 408 (7th

12   Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on

13   loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First*

14   *Derivative Traders*, 564 U.S. 135 (2011)).

15   Importantly, there was no road-map for Lead Counsel to follow in this Action as neither

16   the SEC nor the Department of Justice brought any proceedings against Defendants.

17   The Settlement, therefore, provides sizeable and tangible relief to the Settlement Class

18   now, without subjecting Settlement Class Members to the risks, duration, and expense of

19   continuing litigation.  This factor weighs strongly in favor of final approval of the Settlement.

20   ### 3.    The Risk of Maintaining Class-Action Status Through Trial

21   While Lead Plaintiff believes its yet-to-be-filed motion for class certification would be

22   successful, it is likely that Defendants would have vigorously contested such motion, as detailed

23   above, with the outcome of such a contested motion far from certain.  Even if Lead Plaintiff

24   prevailed, it is likely that Defendants would have filed a Rule 23(f) petition for an interlocutory

25   appeal of the decision.  Even if Lead Plaintiff defeated Defendants' Rule 23(f) petition, under

26   Rule 23(c)(1)(C), a Court's prior grant of certification "may be altered or amended before final

27   judgment."  Accordingly, there was an ongoing risk that the Settlement Class could be

28   decertified or modified if the litigation were to continue.  *See In re Omnivision Techs., Inc.*, 559

1   F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (noting that even if a class is certified, "there is no

2   guarantee the certification would survive through trial, as Defendants might have sought

3   decertification or modification of the class").  Thus, the risk of failing to maintain class

4   certification through trial favors approval of the Settlement.

5           **4.     The Amount Offered in the Settlement**

6           In evaluating the fairness of a settlement, a fundamental question is how the value of the

7   settlement compares to the amount the class potentially could recover at trial, discounted for risk,

8   delay, and expense.  Thus, "[i]t is well-settled law that a cash settlement amounting to only a

9   fraction of the potential recovery does not per se render the settlement inadequate or unfair."

10  *Mego*, 213 F.3d at 459 (citation omitted).  Indeed, "[t]here is a range of reasonableness with

11  respect to a settlement – a range which recognizes the uncertainties of law and fact in any

12  particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

13  completion[.]..."  *Wal-Mart Stores*, *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

14          The proposed $7 million Settlement is well within the range of reasonableness in light of

15  the potential recovery at trial and the risks of continued litigation.  As noted above, Lead

16  Plaintiff's damages expert has estimated that if liability were to be established with respect to all

17  of the claims that survived Defendants' motion to dismiss the Amended Complaint, the

18  maximum aggregate damages recoverable at trial would be approximately between $74 million

19  and $140 million, and maybe as low as $36 million or $13 million if Defendants' disaggregation

20  arguments were credited.  ¶¶56-58.  As a percentage of these estimates, the $7 million Settlement

21  represents a recovery of approximately 5% to 54%.  ¶5.

22          Before the MTD Order, the Amended Complaint alleged a theory of causation and

23  damages premised on three distinct categories of allegedly false and misleading statements

24  starting on September 12, 2013.  Lead Plaintiff's causation and damages expert has estimated

25  maximum aggregate damages under these original theories of liability, and the longer Class

26  Period, to be between approximately $121 million to $242 million.  ¶¶54-55.  These aggregate

27  estimates, however, also include the impact of purportedly non-fraud related disclosures on the

28  corrective disclosure dates which, Defendants would of course argue, would need to be isolated

1  and removed.  *Id*.  Against these benchmarks, the Settlement recovers approximately 3% to 6%

2  of aggregated damages – however, these percentages certainly would have increased, to the

3  extent damages would need to be disaggregated.  *See* Villegas Decl. fn. 6.

4          Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"),

5  courts have approved settlements that recovered a similar, or smaller, percentage of maximum

6  damages.  *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG- JMA,

7  2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering

8  7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042

9  ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was

10  "higher than the median percentage of investor losses recovered in recent shareholder class

11  action settlements") (citation omitted); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v.*

12  *Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct.

13  19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages

14  that plaintiffs believe could be recovered at trial and noting that the amount is within the median

15  recovery in securities class actions settled in the last few years).

16          The Settlement also presents a favorable recovery considering that, over the past ten

17  years, median securities settlement values have ranged from $6 million to $13 million.  *See* S.

18  Boettrich & S. Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year*

19  *Review* (NERA Jan. 29, 2019), at 30, Ex. 7.

20          Accordingly, it is respectfully submitted that the Settlement is a favorable result that falls

21  well within the range of reasonableness.

22          **5.      The Extent of Discovery Completed and the Stage of the Proceedings**

23          The stage of the proceedings and the amount of discovery completed are also factors

24  courts consider in determining the fairness, reasonableness, and adequacy of a settlement.  *See*

25  *Mego*, 213 F.3d at 459.  This factor weighs in favor of approval of the Settlement.

26          At the time the Parties agreed to settle, Lead Plaintiff and Lead Counsel had vigorously

27  litigated the Action and had a well-founded and realistic understanding of the strengths and

28  weaknesses of the claims and defenses asserted.  The Action has been hotly contested from its

1    inception, more than two and a half years ago.  As a result, Lead Plaintiff's and Lead Counsel's

2    knowledge of the strengths and weaknesses of the claims alleged and the stage of the

3    proceedings are more than adequate to support the Settlement.  This knowledge is based on,

4    among other things, Lead Counsel's investigation before filing *two* comprehensive consolidated

5    amended complaints, including the review and analysis of witness accounts; the briefing and

6    orders on Defendants' two motions to dismiss; consultations with experts on damages and

7    executive compensation; review and analysis of approximately 1,270 pages of core documents

8    produced by Defendants in connection with the mediation; and extensive settlement negotiations,

9    including an all-day mediation session where the Parties' claims and defenses were fully vetted,

10   preceded by the exchange of detailed mediation statements.  *See* Villegas Decl. §§III-V.

11        In particular, Lead Counsel conducted an extensive review of publicly available

12   information before filing the complaints, including documents filed publicly by the Company

13   with the U.S. Securities and Exchange Commission; press releases, news articles, analyst reports,

14   and other publicly available information and data concerning the Company and the Individual

15   Defendants, as well as consultations with experts.  ¶17.  In connection with the operative

16   Amended Complaint, following the Court's order dismissing the Consolidated Complaint, Lead

17   Counsel expanded its investigation by contacting additional confidential witnesses and

18   consulting with an expert in the field of executive compensation.  ¶¶25-27.

19        Lead Plaintiff served document requests on Defendants and the Parties engaged in an

20   extensive meet and confer process on the scope of production, including search terms and

21   electronically stored information, and agreed to a protective order that would govern the Parties'

22   disclosures in the Action.  The Parties agreed to a resolution before formal document production

23   was made, however, approximately 1,270 documents were produced prior to the Mediation.

24   ¶¶33, 36.

25        In sum, Lead Plaintiff had a firm understanding of the likelihood of success and the

26   potential recovery at trial at the time the Settlement was entered into.  *Zynga*, 2016 WL 537946,

27   at *12 (noting that the extent of discovery completed and stage of proceedings supports final

28   approval of settlement where plaintiffs engaged in a pre-filing investigation, opposed defendants'

1   motions to dismiss and a motion for reconsideration, worked with consultants, propounded and

2   responded to some discovery, and prepared and participated in mediation session); *Eisen v.*

3   *Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal.

4   Jan. 30, 2014) (approving settlement where record established that "all counsel had ample

5   information and opportunity to assess the strengths and weaknesses of their claims and

6   defenses"); *Redwen v. Sino Clean Energy, Inc.*, No. 11-3936, 2013 U.S. Dist. LEXIS 100275, at

7   *22 (C.D. Cal. July 9, 2013) (settlement approved when, as here, "the parties have spent a

8   significant amount of time considering the issues and facts in this case and are in a position to

9   determine whether settlement is a viable alternative").  This factor supports final approval of the

10   Settlement.

11                    **6.       The Experience and Views of Counsel**

12          Experienced counsel, negotiating at arm's-length, have weighed the factors discussed

13   above and endorse the Settlement.  As the Ninth Circuit observed in *Rodriguez v. West*

14   *Publishing Corporation,* "[t]his circuit has long deferred to the private consensual decision of the

15   parties" and their counsel in settling an action.  563 F.3d 948, 965 (9th Cir. 2009).  The views of

16   the attorneys actively conducting the litigation and who are most closely acquainted with the

17   facts of the underlying litigation, are entitled to "great weight."  *Nat'l Rural Telecomm. Coop. v.*

18   *DirectTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also Zynga,* 2016 WL 537946, at *13

19   ("A district court is entitled to give consideration to the opinion of competent counsel that the

20   settlement is fair, reasonable, and adequate.") (internal quotation omitted).

21          Lead Counsel firmly believes that the Settlement is fair, adequate, and reasonable, and

22   particularly so in view of the risks, burdens, and expense of continued litigation.  Further, it is

23   respectfully submitted that Lead Counsel is experienced and able in this area of practice (*see* Ex.

24   3-D) and "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is

25   reasonable."  *Omnivision*, 559 F. Supp. 2d at 1043.  Accordingly, this factor strongly favors

26   approval of the Settlement.

27

28

1

**7.     The Presence of a Governmental Participant**

2       With respect to the seventh factor, there was no governmental proceeding that assisted

3 with the investigation or prosecution of the Action – no "roadmap" to be followed, or criminal

4 convictions that have aided Lead Plaintiff in proving elements of the case, like loss causation,

5 materiality, and scienter.  Accordingly, this factor supports approval of the Settlement.

6

**8.     Reaction of the Settlement Class to Date**

7       As discussed above, pursuant to this Court's Preliminary Approval Order, the Court-

8 approved Notice and Claim Form were mailed to potential Settlement Class Members who could

9 be identified with reasonable effort.  *See* Ex. 2 at ¶¶2-7.  The Summary Notice was published in

10 *Investor's Business Daily* on April 8, 2019 and transmitted over the internet using *PRNewswire*

11 on April 8, 2019.  *Id*. at ¶8.  Additionally, the Stipulation, Notice, Claim Form, and Preliminary

12 Approval Order, among other documents, were posted to the website dedicated to the Settlement

13 (*id*. at ¶10), as well as Labaton Sucharow's website.

14       The Notice advised the Settlement Class of the terms of the Settlement, the Plan of

15 Allocation, and the maximum amount of Lead Counsel's request for an award of attorneys' fees

16 and expenses, as well as the procedure and deadline for filing objections and opting out of the

17 Settlement Class.  *See generally* Ex. 2-A.  The Notice also stated that the motions in support of

18 approval of the Settlement and the request for attorneys' fees and expenses would be filed with

19 the Court no later than May 9, 2019, and be available to the public through the website, Lead

20 Counsel's website, request to the Claims Administrator, the Clerk's Office, or PACER.  Ex. 2-A

21 at ¶42.

22       The Ninth Circuit has held that notice must be "reasonably calculated, under all the

23 circumstances, to apprise interested parties of the pendency of the action and afford them an

24 opportunity to present their objections."  *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338,

25 1351 (9th Cir. 1980) (citation omitted).  The Ninth Circuit has also ruled that the objection

26 deadline should fall after motions in support of approval and attorneys' fees and expenses have

27 been filed.  *See, e.g., In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)

28 (requiring that fee motion be made available to the class before the deadline for objecting to the

1   fee).  Lead Plaintiff respectfully submits that the notice program utilized here readily meets these

2   standards.

3        To date, 27,710 Notice Packets have been mailed to potential Settlement Class Members

4   and nominees.  Ex. 2 at ¶7.  While the objection/exclusion deadline – May 23, 2019 – has not yet

5   passed, to date, no objections and no exclusion requests, have been received.  ¶45; Ex. 2 at ¶11.

6   **C.      Application of the Factors Identified in the Amendments to Rule 23 Supports**
    **          Approval of the Settlement as Fair, Reasonable, and Adequate**

7

8        The proposed Settlement also meets the criteria set forth in the recent amendments to

    Rule 23(e)(2), most of which are covered by the Ninth Circuit factors discussed above.
9

        **1.      Lead Plaintiff and Lead Counsel Have Adequately**
10       **          Represented the Settlement Class**

11       It is respectfully submitted that Lead Plaintiff and Lead Counsel have adequately

12  represented the Settlement Class.  As set forth in the previously filed motion for preliminary

13  approval, Lead Plaintiff, like all other members of the Settlement Class, acquired shares of

14  Extreme publicly-traded common stock during the Class Period, and was subject to the same

15  allegedly untrue statements and omissions as all Settlement Class Members.  Thus, the claims of

16  Lead Plaintiff and the Settlement Class would prevail or fail in unison, and the common

17  objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiff and all

18  members of the Settlement Class.  *See* ECF No. 155.

19       Lead Plaintiff has participated in the litigation, conferred with counsel, attended a court

20  hearing, and with an informed understanding of the strengths and weaknesses of the claims,

21  supports the Settlement.  *See* Ex. 1 at ¶¶4-6.

22       Additionally, throughout the Action, Lead Plaintiff had the benefit of the advice of

23  knowledgeable counsel well-versed in shareholder class action litigation and securities fraud

24  cases.  Labaton Sucharow is among the most experienced and skilled firms in the securities

25  litigation field, and has a long and successful track record in such cases.  *See* Ex. 3-D.

26       This factor clearly supports approval of the Settlement.

27

28

1

2.      **The Settlement Is the Result of Arm's-Length Negotiations**

2        As discussed above, the Settlement was reached after arm's-length negotiations between

3   counsel and overseen by an experienced mediator.  This factor clearly supports approval of the

4   Settlement.

5

3.      **The Relief Provided to the Settlement Class Is Adequate
and the Settlement Treats Class Members Equitably
Relative to Each Other**

6

7        Rule 23(e)(2)(C)(i) which requires that "the relief provided for the class is adequate,

8   taking into account the costs, risks, and delay of trial and appeal," has been discussed above.

9        Rule 23(e)(2)(C)(ii) considers whether the relief is adequate, taking into account the

10  "effectiveness of any proposed method of distributing relief to the class, including the method of

11  processing class-member claims."  As set forth below in Section II, discussing the proposed Plan

12  of Allocation, the proceeds of the Settlement will be distributed to Settlement Class Members

13  who submit valid and timely claims.  Using the formulas of the Plan of Allocation, the Claims

14  Administrator will calculate claimants' Recognized Claims using the transactional information

15  provided by claimants in their Claim Forms, which can be mailed to the Claims Administrator,

16  submitted online using the settlement website, or, for large investors, with hundreds of

17  transactions, submitted via e-mail to the Claims Administrator's electronic filing team.  Lead

18  Plaintiff's claim will be calculated the same way.  Because most securities are held in "street

19  name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead

20  Counsel, and Defendants do not have Settlement Class Members' transactional data and a claims

21  process is required.  Because the Settlement does not recover 100% of alleged damages, the

22  Claims Administrator will determine each eligible claimant's *pro rata* share of the Net

23  Settlement Fund based upon each claimant's total "Recognized Claim" compared to the

24  aggregate Recognized Claims of all eligible claimants.

25       Once the Claims Administrator has processed all submitted claims, notified claimants of

26  deficiencies or ineligibility, processed responses, and made claim determinations, distributions

27  will be made to eligible claimants using PayPal (for all payments below $10.00 and for payments

28  between $10.00 and $100.00 for those who elect this option) and checks.

1    After an initial distribution of the Net Settlement Fund, if there is any balance remaining

2  in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise),

3  after at least six (6) months from the date of initial distribution, Lead Counsel will, if feasible

4  and economical, re-distribute the balance among eligible claimants who have cashed their

5  checks.  These re-distributions will be repeated until the balance in the Net Settlement Fund is no

6  longer feasible to distribute.  *See* Stipulation ¶26.  Any balance that still remains in the Net

7  Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after

8  payment of any outstanding Notice and Administration Expenses or Taxes, if any, will be

9  contributed to the Consumer Federation of America, a non-sectarian, not for profit charitable

10  organization serving the public interest that is not affiliated with Lead Plaintiff or Lead Counsel,

11  upon authorization by the Court.[4]

12    The terms of any proposed award of attorneys' fees (Rule 23(e)(2)(C)(iii)), are discussed

13  in Lead Counsel's accompanying Fee and Expense Application.  Lead Counsel seeks an award

14  of attorneys' fees and expenses pursuant to the common fund doctrine and the request is fully

15  within the discretion of the Court, was not negotiated with Defendants, and is separate from the

16  Settlement.  Any fees and expenses that are awarded by the Court are payable upon award.

17    Finally, Rule 23(e)(2)(C)(iv) asks the Court to consider the fairness of the proposed

18  Settlement in light of any agreement required to be identified under Rule 23(e)(3).  Here, the

19  only agreements made by the Parties in connection with the Settlement are the Term Sheet, the

20  Stipulation, and the confidential Supplemental Agreement concerning the circumstances under

21

22    [4] Consumer Federation of America (CFA) is a non-profit, consumer advocacy organization

23  established in 1968 to advance consumer interests through policy research, advocacy, and
education before the judiciary, Congress, the White House, federal and state regulatory agencies,

24  and state legislatures.  *See generally* www.consumerfed.org.  With respect to victims of financial
fraud, CFA has an Investor Protection program that works nationwide to promote consumer-

25  oriented policies that safeguard investors against fraud through: (i) the development of
educational material for investors; (ii) drafting policies and legislation; (iii) and providing

26  testimony and comments on legislation and regulations.  *See*
www.consumerfed.org/issues/investor-protection.  CFA has been approved as a *cy pres*

27  beneficiary in several securities cases in California, including *In re Intuitive Surgical Sec. Litig.*,
Case No. 5:13-cv-01920-EJD (N.D. Cal.), *In re Vocera Commc'ns, Inc. Sec. Litig.*, No. 13-CV-

28  03567-EMC (N.D. Cal.) and *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR (C.D.
Cal.).

which Defendants may terminate the Settlement based upon the number of exclusion requests. *See* Stipulation ¶40.  It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class.[5]

* * *

In sum, each of the relevant factors for considering approval of a class action settlement fully supports a finding that the Settlement here is fair, reasonable, and adequate.

## II.    THE PLAN OF ALLOCATION IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED

The standard for approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate.  *Class Plaintiffs*, 955 F.2d at 1284; *Omnivision*, 559 F. Supp. 2d at 1045.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).

Here, Lead Plaintiff's consulting damages expert prepared the Plan of Allocation after careful consideration of Lead Plaintiff's theories of liability and damages under the Exchange Act.  ¶62.  The Plan of Allocation was fully described in the Notice and, to date, there has been no objection to the proposed plan.  *See* Ex. 2-A at 8-12.

"[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."  *Redwen*, No. 11-3936, 2013 U.S. Dist. LEXIS 100275, at *29 (citation and internal quotation marks omitted).  Here, the Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based

---

[5] Rule 23(e)(2)(D), whether the proposal treats class members equitably with respect to each other has been discussed and is addressed in Section II below.

Master File No. 5:15-cv-04883-BLF-SVK
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

21

on "Recognized Loss" formulas tied to liability and damages.  These formulas consider the amount of alleged artificial inflation (or deflation for put options) in the prices of Extreme publicly traded common stock and call options, as quantified by the consulting damages expert. This analysis entailed studying the price declines associated with Extreme's allegedly corrective disclosures, adjusted to eliminate the effects attributable to general market or industry conditions. In this respect, an inflation table was created as part of the Plan of Allocation and reported in the Notice.  Shares purchased before February 5, 2014 and held through this disclosure will be valued using 20% of the alleged artificial inflation, given the Court's dismissal of these claims. ¶63.

Accordingly, for all of the reasons set forth herein and in the Villegas Declaration, it is respectfully submitted that the Plan of Allocation is fair, reasonable and adequate and should be approved, and that the Settlement satisfies the proposed approval criteria set forth in Rule 23(e)(2)(C)(ii).

## III.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS

The Court previously granted preliminary certification to the Settlement Class under Rules 23(a) and (b)(3).  *See* Preliminary Approval Order at ¶3.  Because nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections have been received to date, the Court should grant final class certification.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court:  (i) grant final approval of the Settlement; (ii) finally certify the Settlement Class, for settlement purposes only; and (iii) approve the Plan of Allocation as fair, reasonable, and adequate.

Dated: May 9, 2019                                          **LABATON SUCHAROW LLP**

By:    /s/ *Carol C. Villegas*
Carol C. Villegas (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700

Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
     acoquin@labaton.com

*Attorneys for Lead Plaintiff and Lead
Counsel for the Class*

**BERMAN TABACCO**
Nicole Lavallee (SBN 165755)
A. Chowning Poppler (SBN 272870)
44 Montgomery Street, Ste. 650
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
     cpoppler@bermantabacco.com

*Liaison Counsel for the Class*

Master File No. 5:15-cv-04883-BLF-SVK
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

23

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on May 9, 2019, I authorized the electronic filing of the foregoing

3

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4

to the e-mail addresses denoted on the attached Electronic Mail Notice List.

5

I certify under penalty of perjury under the laws of the United States of America that the

6

foregoing is true and correct.

7

Executed on May 9, 2019

8

/s/ *Carol C. Villegas*
CAROL C. VILLEGAS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Electronic Mail Notice List**

2   **Mailing Information for a Case 5:15-cv-04883-BLF**

3   *Hong v. Extreme Networks, Inc.* et al.

4   **Electronic Mail Notice List**

5   The following are those who are currently on the list to receive e-mail notices for this case.

6   • **Eric J. Belfi**
7      ebelfi@labaton.com,kgutierrez@labaton.com,ElectronicCaseFiling@labaton.com,
       4076904420@filings.docketbird.com
8   • **Kenneth Joseph Black**
       KennyB@rgrdlaw.com
9   • **Alec T Coquin**
10     acoquin@labaton.com,kgutierrez@labaton.com,7391740420@filings.docketbird.com,
       electroniccasefiling@labaton.com
11  • **Jeffrey Dubbin**
       jdubbin@labaton.com,6415738420@filings.docketbird.com,kgutierrez@labaton.com,
12     mpenrhyn@labaton.com,echan-lee@labaton.com,electroniccasefiling@labaton.com
    • **Thomas A. Dubbs**
13     tdubbs@labaton.com,kgutierrez@labaton.com,1751297420@filings.docketbird.com,
       mpenrhyn@labaton.com,echan-lee@labaton.com,electroniccasefiling@labaton.com
14  • **Jonathan Gardner**
15     jgardner@labaton.com,kgutierrez@labaton.com,cvillegas@labaton.com,
       4027988420@filings.docketbird.com,ryamada@labaton.com,acoquin@labaton.com,
16     fmalonzo@labaton.com,acarpio@labaton.com,agreenbaum@labaton.com
    • **Louis J Gottlieb**
17     lgottlieb@labaton.com,kgutierrez@labaton.com,5401845420@filings.docketbird.com,
       electroniccasefiling@labaton.com
18  • **Elliot Schlesinger Katz**
19     elliot.katz@dlapiper.com
    • **Christopher J. Keller**
20     ckeller@labaton.com,5497918420@filings.docketbird.com,kgutierrez@labaton.com,
       drogers@labaton.com,electroniccasefiling@labaton.com
21  • **Nicole Catherine Lavallee**
       nlavallee@bermantabacco.com,ysoboleva@bermantabacco.com
22  • **Jeremy Alan Lieberman**
       jalieberman@pomlaw.com
23  • **Francis P McConville**
24     fmcconville@labaton.com,kgutierrez@labaton.com,drogers@labaton.com,
       9849246420@filings.docketbird.com,sjessee@labaton.com,
25     electroniccasefiling@labaton.com
26  • **Brian O. O'Mara**
       bo'mara@rgrdlaw.com,e_file_sd@rgrdlaw.com
27  • **Jennifer Pafiti**
       jpafiti@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,
28     abarbosa@pomlaw.com,jpalazzolo@pomlaw.com

- **Aidan Chowning Poppler**
  cpoppler@bermantabacco.com,ysoboleva@bermantabacco.com
- **David Allen Priebe**
  david.priebe@dlapiper.com,margaret.austin@dlapiper.com,carmen.
  manzano@dlapiper.com,david-priebe-3844@ecf.pacerpro.com
- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net
- **Wendy Tsang**
  wtsang@labaton.com,kgutierrez@labaton.com,1795730420@filings.docketbird.com,
  electroniccasefiling@labaton.com
- **Irina Vasilchenko**
  ivasilchenko@labaton.com,ElectronicCaseFiling@labaton.com,
  8032137420@filings.docketbird.com,KGutierrez@labaton.com
- **Carol C. Villegas**
  cvillegas@labaton.com,kgutierrez@labaton.com,5739893420@filings.docketbird.com,
  jchristie@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com,electroniccasefiling@labaton.com
- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kmccarty@rgrdlaw.com,e_file_sd@rgrdlaw.com,
  kirstenb@rgrdlaw.com
- **Nicole Zeiss**
  zeiss@labaton.com,cboria@labaton.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

- (No manual recipients)