**LABATON SUCHAROW LLP**
Carol C. Villegas (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
        acoquin@labaton.com

*Attorneys for Lead Plaintiff and Lead Counsel*
*for the Class*

**BERMAN TABACCO**
Nicole Lavallee (SBN 165755)
A. Chowning Poppler (SBN 272870)
44 Montgomery Street, Ste. 650
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        cpoppler@bermantabacco.com

*Liaison Counsel for the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re EXTREME NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | Master File No. 5:15-cv-04883-BLF-SVK<br><br>**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   June 20, 2019  1:30 p.m.<br>Dept.:  Courtroom 4, 5th Floor<br>Judge:  Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ......................................................................................................... 1

PRELIMINARY STATEMENT ........................................................................................... 2

ARGUMENT ......................................................................................................................... 3

I.  LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE
    COMMON FUND SHOULD BE APPROVED ...................................................... 3

    A.  Counsel Are Entitled to an Award of Attorneys' Fees from the Common
        Fund ............................................................................................................... 3

    B.  A Reasonable Percentage of the Fund Recovered Is the Appropriate Method
        for Awarding Attorneys' Fees in Common Fund Cases .................................. 4

    C.  Analysis Under the Percentage Method and the *Vizcaino* Factors Justify a
        Fee Award of 25% in this Case ...................................................................... 5

        1.  The Result Achieved ........................................................................... 6

        2.  The Risks of Litigation ....................................................................... 8

        3.  The Skill Required and the Quality of Work ....................................... 10

        4.  The Contingent Nature of the Fee and the Financial Burden Carried
            by Counsel ........................................................................................... 11

        5.  A 25% Fee Award Is the Ninth Circuit's Benchmark and Comparable
            to Awards in Similar Cases .................................................................. 13

        6.  Reaction of the Settlement Class .......................................................... 14

        7.  Lodestar Cross-Check ......................................................................... 15

    D.  The Requested Fee Is Entitled to a Presumption of Reasonableness as it Is
        Based on a Fee Agreement Entered into at the Outset of the Litigation ............... 16

II.  PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
     NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ......................................... 17

III.  LEAD PLAINTIFF'S REQUEST FOR PSLRA REIMBURSEMENT .......................... 18

CONCLUSION ...................................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
   Case No. CV 7-2536 PSG, 2016 WL 10571773 (C.D. Cal. Oct 25, 2016)..........................16

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...........................................................................................12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).........................................................................................................11

*In re Biolase, Inc. Sec. Litig.*,
   Case No. SACV 13-1300-JLS, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015).....................16

*Blum v. Stenson*,
   465 U.S. 886 (1984)...........................................................................................................4

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...........................................................................................................3

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...............................................................................................16

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*,
   *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015)............................................................14

*In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.*,
   109 F.3d 602 (9th Cir. 1997) ..............................................................................................15

*Destefano v. Zynga Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................. *passim*

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ....................................................................................10

*In re Finisar Corp. Sec. Litig.*,
   No. 5:11-CV-01252-EJD, 2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ...........................8, 9

*Fogarazzo v. Lehman Bros. Inc.*,
   No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015)..............................................................................................12

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

ii

*Harris v. Marhoefer*,
　24 F.3d 16 (9th Cir. 1994) ............................................................................................17

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983).........................................................................................................6

*In re Heritage Bond Litig.*,
　No. 02-ML-1475-DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ..................10, 14

*Hicks v. Stanley*,
　No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............................19

*In re Immune Response Sec. Litig*,
　497 F. Supp. 2d 1166 (S.D. Cal. 2007)..........................................................................17, 18

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
　No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012).......................7

*In re Marsh & McLennan Cos. Sec. Litig.*,
　No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...........................17, 19

*McPhail v. First Command Fin. Planning, Inc.*,
　No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...................................7

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
　No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)....................................7

*Missouri v. Jenkins*,
　491 U.S. 274 (1989)........................................................................................................16

*In re Nuvelo, Inc. Sec. Litig.*,
　No. C07-0405 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011).........................................13

*Oklahoma Firefighters Pension & Ret. Sys. v. Finisar Corp.*,
　No. 18-80013, 2018 WL 3472714 (9th Cir. July 13, 2018)...............................................8, 9

*In re Omnivision Techs., Inc.*,
　559 F. Supp. 2d 1036 (N.D. Cal. 2008) .....................................................................7, 9, 11

*In re Oracle Corp. Sec. Litig.*,
　No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627
　F.3d 376 (9th Cir. 2010) ................................................................................................12

*In re Pac. Enters. Sec. Litig.*,
　47 F.3d 373 (9th Cir. 1995) ..........................................................................................2, 8

*In re PAR Pharm. Sec. Litig.*,
　No. 06-3226, 2013 U.S. Dist. LEXIS 106150 (D.N.J. July 29, 2013) ..................................14

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

iii

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ........................................................................5

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)...................15

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ...............................................................5, 13

*Rieckborn v. Velti PLC*,
    No. 13-CV-03889, 2015 WL 468329 (N.D. Cal. Feb. 13, 2015) ........................13

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...................................................................12

*Rutti v. Lojack Corp. Inc.*,
    No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ..........16

*Schuler v. Medicines Co.*,
    No. 14 Civ. 1149, 2016 WL 3457218 (D.N.J. June 24, 2016) ............................7

*Steiner v. Am. Broad. Co.*,
    248 F. App'x. 780 (9th Cir. 2007) ................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................11

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..........................................................................5

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ........................................................................4

*Vincent v. Reser*,
    No. C-11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ................3, 17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................. *passim*

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1998) .......................................................................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS*),
    19 F.3d 1291 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe*
    *Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994)..........................................4, 5

*In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation*,
    364 F. Supp. 2d 980 (D. Minn. 2005).............................................................12

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

iv

**Docketed Cases**

*In re Broadcom Corp. Class Action Litig.*,
  No. CV-06-5036-R, slip op. (C.D. Cal. Dec. 4, 2012) ...........................................................18

*In re Gilead Sci. Sec. Litig.*,
  No. C-03-4999-SI, slip op. (N.D. Cal. Nov. 5, 2010)..............................................................13

*Hatamian v. Advanced Micro Devices, Inc.*,
  Case No. 14-cv-00226-YGR, slip op (N.D. Cal. Mar. 2, 2018) ...............................................18

*In re Hewlett-Packard Co. Sec. Litig.*,
  Case No. SACV 11-1404-AG, slip op. (C.D. Cal. Sept. 15, 2014) ..........................................13

*Mulligan v. Impax Labs, Inc.*,
  Case No. 13-cv-01037-EMC, slip op. (N.D. Cal. July 23, 2015)..............................................13

*Public Pension Fund Grp. v. KV Pharm. Co.*,
  No. 4:08-cv-1859 (CEJ), slip op. (E.D. Mo. Apr. 23, 2014) ...................................................14

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
  No. 09-MD-2027-BSJ, slip op. (S.D.N.Y. Sept. 13, 2011) ......................................................19

*Stanley v. Safeskin Corp.*,
  No. 99CV454 BTM (LSP), slip op. (S.D. Cal. Apr. 2, 2003) ..................................................13

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
  No. 1:03-CV-8284 (RWS), slip op. (S.D.N.Y. Dec. 6, 2006) ..................................................14

*In re Vocera Comm'cns, Inc.*,
  No. 3:13-cv-03567-EMC, slip op. (N.D. Cal. July 29, 2016)...................................................13

**Statutes**

15 U.S.C. § 78u-4(a)(6) ....................................................................................................................5

15 U.S.C. § 78u-4(a)(4) ..........................................................................................................1, 2, 18

**Other Authorities**

Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and
  the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809,
  1819-20 (2000)..........................................................................................................................5

MASTER FILE NO. 5:15-cv-04883-BLF-SVK
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

v

1

## NOTICE OF MOTION

2

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on June 20, 2019, at 1:30 p.m., or as soon thereafter as it

4

may be heard, Labaton Sucharow LLP ("Labaton Sucharow" or "Lead Counsel"), on behalf of

5

itself and Plaintiffs' Counsel, will move for an order: (i) awarding attorneys' fees of 25% of the

6

Settlement Fund; (ii) awarding payment of litigation expenses in the amount of $167,200.00; and

7

(iii) approving Lead Plaintiff's request for payment of its expenses related to its representation of

8

the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995

9

("PSLRA"), 15 U.S.C. § 78u-4(a)(4), in the amount of $2,180.80.

10

This motion is based upon the following memorandum in support; the Declaration of

11

Carol Villegas in Support of Lead Plaintiff's Motion for Final Approval of Class Action

12

Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees

13

and Payment of Expenses ("Villegas Declaration" or "Villegas Decl."), dated May 9, 2019, with

14

annexed exhibits; the Stipulation and Agreement of Settlement, dated as of November 30, 2018

15

(ECF No. 156-1) ("Stipulation"); all of the prior pleadings and papers in this Action; and such

16

additional information or argument as may be required by the Court.

17

A proposed order will be submitted with Lead Counsel's reply submission on June 6,

18

2019, after the May 23, 2019 deadline for objecting has passed.

19

## STATEMENT OF ISSUES TO BE DECIDED

20

1.     Whether the Court should approve Lead Counsel's application for an award of

21

attorneys' fees;

22

2.     Whether the Court should approve Lead Counsel's application for payment of

23

expenses; and

24

3.     Whether the Court should approve the Lead Plaintiff's request for payment of its

25

reasonable expenses related to its representation of the Settlement Class, pursuant to the PSLRA,

26

15 U.S.C. § 78u-4(a)(4).

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Counsel respectfully submits this memorandum of points and authorities in support of its application, on behalf of Plaintiffs' Counsel, for: (i) an award of attorneys' fees of 25% of the Settlement Fund; (ii) payment of litigation expenses in the amount of $167,200.00; and (iii) reimbursement in the amount of $2,180.80 to the Lead Plaintiff for its representation of the Settlement Class, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4).[1]

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Extreme Networks, Inc. ("Extreme" or the "Company") and Charles W. Berger, Kenneth B. Arola, and John T. Kurtzweil (collectively, the "Individual Defendants," and, together with Extreme, the "Defendants") have agreed to pay $7,000,000 to secure a settlement of the claims in this class action and related claims (the "Settlement"). This recovery is a favorable result for the Settlement Class and avoids the substantial risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount, or nothing at all.

Plaintiffs' Counsel have not received any compensation for their prosecution of this case, which required more than two and a half years of vigorous advocacy. Lead Counsel respectfully requests that Plaintiffs' Counsel be awarded an attorneys' fee of 25% of the Settlement Fund, which will include any accrued interest, that Plaintiffs' Counsel be paid out of the Settlement Fund for litigation expenses in the amount of $167,200.00, and that Lead Plaintiff's request for reimbursement in the amount of $2,180.80, pursuant to the PSLRA, be approved. This 25% fee request is the Ninth Circuit's "benchmark" for contingent fees and, as discussed below, would provide a significantly negative "multiplier" of Plaintiffs' Counsel's lodestar. *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases.") (citation omitted).

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as those set forth in the Stipulation.

Lead Counsel was assisted in this case by Local Counsel Berman Tabacco (collectively "Plaintiffs' Counsel"). Any attorneys' fees awarded by the Court to Lead Counsel will be allocated by Lead Counsel to itself and Berman Tabacco. No other law firms will share in the attorneys' fees awarded by the Court.

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

2

As discussed herein, as well as in the Villegas Declaration,[2] it is respectfully submitted that the requested fee is fair and reasonable when considered under the applicable standards in the Ninth Circuit and is well within the range of awards in class actions in the Ninth Circuit and courts nationwide, particularly in view of the substantial risks of pursuing the Action, the litigation efforts, and the results achieved for the Settlement Class.  The requested fee is based on a pre-settlement agreement with Lead Plaintiff and Lead Plaintiff was actively involved in the litigation and believes that the Fee and Expense Application is reasonable.  Ex. 1 at ¶7; ¶70.

Moreover, the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of the Action.  As such, the requested fees and expenses should be awarded in full.

## ARGUMENT

### I.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE COMMON FUND SHOULD BE APPROVED

#### A.    Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

It is well settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services.  The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citation omitted); *see also Vincent v. Reser*, No. C-11-03572 CRB, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478).  Indeed, the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is

---

[2] The Declaration of Carol C. Villegas is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation; among other things. Citations to "¶" in this memorandum refer to paragraphs in the Villegas Declaration.

All exhibits referenced herein are annexed to the Villegas Declaration.  For clarity, citations to exhibits that themselves have attached exhibits, will be referenced herein as "Ex.___-___."  The first numerical reference is to the designation of the entire exhibit attached to the Villegas Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

MASTER FILE NO. 5:15-cv-04883-BLF-SVK
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

3

1   entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v.*

2   *Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this rule, known as the

3   "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the

4   creation of the fund should share the wealth with the lawyers whose skill and effort helped create

5   it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*, 19 F.3d 1291, 1300 (9th Cir.

6   1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

### B.      A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

8            In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the

9   common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on

10  the class. . . ." *Id.* at 900 n.16.  In this Circuit, a district court has discretion to award fees in

11  common fund cases based on either the lodestar/multiplier method or the percentage-of-the-fund

12  method.  *WPPSS*, 19 F.3d at 1296.  In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th

13  Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in common

14  fund cases.  Moreover, supporting authority for the percentage method in other circuits is

15  overwhelming.

16           The rationale for compensating counsel in common fund cases on a percentage basis is

17  sound.  Principally, it more closely aligns the lawyers' interest in being paid a fair fee with the

18  interest of the class in achieving the maximum possible recovery in the shortest amount of time.

19  Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees,

20  Professor Charles Silver of the University of Texas School of Law, has concluded that the

21  percentage method of awarding fees is the only method of fee awards that is consistent with class

22  members' due process rights.  Professor Silver notes:

> ***The consensus that the contingent percentage approach creates a closer harmony of
> interests between class counsel and absent plaintiffs than the lodestar method is
> strikingly broad.***  It includes leading academics, researchers at the RAND Institute for
> Civil Justice, and many judges, including those who contributed to the Manual for
> Complex Litigation, the Report of the Federal Courts Study Committee, and the report of
> the Third Circuit Task Force.  Indeed, it is difficult to find anyone who contends
> otherwise.  No one writing in the field today is defending the lodestar on the ground that
> it minimizes conflicts between class counsel and absent claimants.

> ***In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.***  The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives.  The contingent percentage approach accomplishes this.

Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000) (emphasis added and footnotes omitted).  This is particularly appropriate in cases under the PSLRA where Congress recognized the propriety of the percentage method of fee awards.  *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

### C.   Analysis Under the Percentage Method and the *Vizcaino* Factors Justify a Fee Award of 25% in this Case

In *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit established 25% of a common fund as the "benchmark" award for attorneys' fees.  *See also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993) (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same); *see also Destefano v. Zynga Inc.,* No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("In common fund cases in the Ninth Circuit, the 'benchmark' percentage award is 25 percent of the recovery obtained, with 20 to 30 percent as the usual range.") (citing *Vizcaino,* 290 F.3d at 1047).

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances."  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).  In employing the percentage method, courts may perform a lodestar cross-check to confirm the reasonableness of the requested fee.  *Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and applying the lodestar method as a cross-check).  Here, as discussed in detail below, Plaintiffs' Counsel have dedicated more than 5,901.8 hours to the prosecution of the case, with a lodestar value of $3,330,856.50.  *See* Ex. 5.  Accordingly, the requested fee, if granted, would be only a portion of counsel's lodestar in the case.

Master File No. 5:15-cv-04883-BLF-SVK
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

5

1    The fee request readily satisfies the five *Vizcaino* factors that are used by courts within

2    the Ninth Circuit to evaluate the reasonableness of a requested fee:  (1) the result achieved; (2)

3    the risk of litigation; (3) the skill required and quality of the work; (4) awards made in similar

4    cases; and (5) the contingent nature of the fee and financial burden carried by counsel.  *Vizcaino*,

5    290 F.3d at 1048-50.  The Ninth Circuit has explained that these factors should not be used as a

6    rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of

7    the circumstances.  *Id.*  As set forth below, all of the *Vizcaino* factors militate in favor of

8    approving the requested fee.

9                **1.      The Result Achieved**

10   Courts have consistently recognized that the result achieved is an important factor to be

11   considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the

12   most critical factor is the degree of success obtained").  Lead Counsel submits that the $7 million

13   proposed Settlement is a favorable result for the Settlement Class, both quantitatively and when

14   considering the risk of a lesser (or no) recovery if the case proceeded through a decision on class

15   certification, summary judgment and trial.

16   As discussed in the Villegas Declaration, Lead Plaintiff's consulting damages expert has

17   estimated that maximum aggregate damages with respect to the claims that survived the Court's

18   order granting in part and denying in part Defendants' motion to dismiss the Amended

19   Complaint ("MTD Order") would range from approximately $74 million to $140 million, and

20   could be as low as approximately $13 million to $36 million, if Defendants' disaggregation

21   arguments were credited and certain disclosures were excluded as a consequence thereof.  ¶¶5,

22   56-58.  Against these benchmarks, the $7 million Settlement, therefore, represents a recovery of

23   approximately 5% to 9.5% of non-disaggregated damages and 19% to 54% if foreseeable

24   disaggregation arguments were credited—a favorable and reasonable recovery in light of the

25   countervailing legal and factual arguments and litigation risks.  *See* Lead Plaintiff's Motion for

26   Final Approval of Class Action Settlement and Plan of Allocation and Memorandum of Points

27   and Authorities in Support Thereof ("Settlement Brief"), §I.B.4.  Defendants of course disputed,

28

1   even if liability were to be proven, the amount that the Settlement Class was allegedly damaged,

2   and would have argued that damages were significantly less, if any.

3       These percentages of recovery compare well to recoveries in other securities class actions

4   within the Ninth Circuit. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042

5   (N.D. Cal. 2008) (noting $13.75 million settlement yielding 6% of potential damages was

6   "higher than the median percentage of investor losses recovered in recent shareholder class

7   action settlements") (citation omitted); *McPhail v. First Command Fin. Planning, Inc*., No.

8   05cv179-IEG- JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million

9   settlement recovering 7% of estimated damages was fair and adequate); *Int'l Bhd. of Elec.*

10  *Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC,

11  2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering

12  approximately 3.5% of the maximum damages that plaintiffs believe could be recovered at trial

13  and noting that the amount is within the median recovery in securities class actions settled in the

14  last few years). The recovery also compares favorably to recoveries achieved in cases in other

15  Circuits. *See, e.g., In re Merrill Lynch & Co., Research Reports Sec. Litig.*, No. 02 MDL 1484

16  (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The Settlement Fund is

17  approximately $40.3 million.  The settlement thus represents a recovery of approximately 6.25%

18  of estimated damages.  This is at the higher end of the range of reasonableness of recovery in

19  class actions securities litigations.") (citation omitted); *Schuler v. Medicines Co.*, No. 14 Civ.

20  1149, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving $4,250,000 securities fraud

21  settlement that reflects approximately 4.0% of the estimated recoverable damages and noting

22  percentage "falls squarely within the range of previous settlement approvals").

23      The Settlement also presents a favorable recovery considering that, over the past ten

24  years, median securities settlement values have ranged from $6 million to $13 million.  *See* S.

25  Boettrich & S. Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year*

26  *Review* (NERA, Jan. 29, 2019), at 30, Ex. 7.

27      In sum, the Settlement provides a favorable percentage of recovery for the Settlement

28  Class.

Master File No. 5:15-cv-04883-BLF-SVK                                              7
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

2.      **The Risks of Litigation**

The risk of further litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d  at 379 (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also Zynga*, 2016 WL 537946, at *17 (approving requested fee and noting that "as to the second factor . . . the risks associated with the case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation").  As set forth in detail in Section VII of the Villegas Declaration, Lead Plaintiff would have confronted a number of significant legal and factual challenges—as highlighted by the Court's decisions on Defendants' two motions to dismiss.  Defendants would have continued to challenge the material falsity of each alleged misstatement and omission that survived the Court's MTD Order and Defendants' alleged scienter.  Lead Plaintiff would have had to move for and argue, and the Court would need to rule on, class certification and summary judgment.  There was no guarantee that the claims would survive these challenges, and even if they did, how the Court's rulings would affect the future prosecution of the claims.

Principally, Lead Plaintiff and Lead Counsel understood that the upcoming class certification motion, and a future summary judgment motion and trial, would lead to a difficult and contested "battle of the experts" due, in part, to the scope of the claims that survived Defendants' second motion to dismiss.  ¶49.  Based on the surviving claims, Defendants and their expert(s) would likely have argued a lack of "price impact," a complex attack on the presumption of reliance that counsel for Defendants have successfully pioneered in this district. *See, e.g., In re Finisar Corp. Sec. Litig.*, No. 5:11-CV-01252-EJD, 2017 WL 6026244, at *1 (N.D. Cal. Dec. 5, 2017), reconsideration denied, No. 5:11-CV-01252-EJD, 2018 WL 3472334 (N.D. Cal. Jan. 18, 2018), and leave to appeal denied *sub nom.*, *Oklahoma Firefighters Pension & Ret. Sys. v. Finisar Corp.*, No. 18-80013, 2018 WL 3472714 (9th Cir. July 13, 2018).  As part of this attack, Defendants would have argued that when allegedly misrepresenting these actionable topics, Extreme's stock price declined, and thus that there was no "price impact."

Master File No. 5:15-cv-04883-BLF-SVK
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

8

1    ¶50.  Lead Plaintiff's counter arguments would have aided its reliance arguments, but arguably

2    could also have reduced damages by moving inflation from the start of the Class Period to later

3    in the Class Period, reducing the amount of inflation per damaged share at different points

4    throughout the Class Period.  ¶52.

5          Another principal risk in continuing the litigation is the difficulty of proving loss

6    causation and damages, even aside from the price impact arguments.  As set forth in the Villegas

7    Declaration, before the MTD Order, the Amended Complaint alleged a theory of causation and

8    damages premised on three distinct categories of allegedly false and misleading statements

9    starting on September 12, 2013.  ¶54.  In the MTD Order, the Court found only one category of

10   false and misleading statements actionable and further dismissed certain sub-categories of

11   statements relating to that category.  ¶56.  Defendants would have strenuously argued and

12   presented expert testimony maintaining that the impact of arguably non-fraud related information

13   on the alleged corrective disclosure dates needed to be isolated and removed.  *Id*.  There was

14   substantial uncertainty surrounding Lead Plaintiff's expert's ability to isolate the proportion of

15   the stock price declines on the corrective disclosure dates attributable specifically to the alleged

16   fraud.  *Id*.  Accordingly, there was a very real risk that Lead Plaintiff would be unable to counter

17   at summary judgment, or trial, that the declines on the alleged disclosure dates were attributable

18   to the alleged fraud.

19         Overall, Lead Plaintiff faced the significant possibility that the Court or a jury would

20   agree with Defendants' arguments and experts and, regardless of who would ultimately be

21   successful at trial, there is no doubt that both sides would have had to present complex and

22   nuanced information to a jury with no certainty as to the outcome.  *See In re Omnivision*, 559 F.

23   Supp. 2d at 1047 (noting that the risk of litigation, including the ability to prove loss causation

24   and the risk that Defendants prevail on damages, support the requested fee).

25         If not settled, the Settlement Class in this case faced the considerable risk of years of

26   additional litigation with no guarantee of a greater recovery.  Lead Counsel worked diligently to

27   achieve a significant result for the Settlement Class in the face of these very real risks.  Under

28   these circumstances, the requested fee is fully appropriate.

### 3.      The Skill Required and the Quality of Work

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted); *see also Vizcaino,* 290 F.3d at 1048. "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047).

Here, in addition to the complexities of this being a securities case, the claims centered on Defendants' alleged false and misleading statements and omissions concerning the Company's integration of Enterasys Networks, Inc.  Lead Counsel worked very hard to investigate and develop the complex claims against Defendants.  Lead Counsel conducted its own proprietary investigation without the benefit of any governmental or criminal proceeding, restatement, or Company admission to formulate its theory of the case and develop sufficient facts to defeat, in part, Defendants' second motion to dismiss.  Among other efforts, Lead Counsel researched and prepared two detailed amended complaints; briefed thorough oppositions to Defendants' motions to dismiss the Consolidated and Amended Complaints; consulted with experts; obtained and reviewed more than approximately 1,270 pages of core documents from Defendants in connection with the mediation process; and engaged in a hard-fought settlement process with experienced defense counsel and an experienced Mediator.  ¶84.

Lead Counsel has extensive and significant experience in the highly specialized field of securities class action litigation and is known as a leader in the field.  ¶91.  Lead Counsel has not only used its knowledge and skill from prior cases but also developed specific expertise in the issues presented here to overcome the obstacles presented by Defendants.  The favorable Settlement is attributable in large part to the diligence, determination, hard work, and skill of Lead Counsel, who developed, litigated, and successfully settled the Action.

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel.  *See, e.g.*, *Heritage Bond*, 2005 WL 1594389, at *12; *In re Equity

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

10

1    *Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Lead Counsel was

2    opposed in this Action by very skilled and highly respected lawyers with well-deserved

3    reputations for vigorous advocacy in the defense of complex civil cases such as this.  In the face

4    of this formidable opposition, Lead Counsel was able to develop the Lead Plaintiff's case so as

5    to persuade Defendants to settle the Action on terms favorable to the Settlement Class.

### 4.    The Contingent Nature of the Fee and the Financial Burden Carried by Counsel

7          It has long been recognized that attorneys are entitled to a larger fee when their

8    compensation is contingent in nature.  *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F.

9    Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could

10   not otherwise afford competent attorneys justifies providing those attorneys who do accept

11   matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat

12   fee."); *see also Zynga,* 2016 WL 537946, at *18 (noting that "when counsel takes on a

13   contingency fee case and the litigation is protracted, the risk of non-payment after years of

14   litigation justifies a significant fee award").

15         The Supreme Court has also emphasized that private securities actions such as this

16   provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary

17   supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299,

18   310 (1985) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319

19   (2007) (noting that the court has long recognized that meritorious private actions to enforce

20   federal antifraud securities laws are an essential supplement to criminal prosecutions and civil

21   enforcement actions).[3]

22         Indeed, there have been many class actions in which plaintiffs' counsel took on the risk

23   of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received

24

25   _____

26   [3] Additionally, vigorous private enforcement of the federal securities laws and state
     corporation laws can only occur if private plaintiffs can obtain some semblance of parity in
27   representation with that available to large corporate defendants.  If this important public policy is
     to be carried out, courts should award fees that will adequately compensate private plaintiffs'
28   counsel, taking into account the enormous risks undertaken with a clear view of the economics of
     a securities class action.

MASTER FILE NO. 5:15-CV-04883-BLF-SVK
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

11

1    no remuneration whatsoever despite their diligence and expertise.  For example, Lead Counsel

2    tried *In re JDS Uniphase Securities Litigation*, Case No. C-02-1486 CW (EDL) (N.D. Cal. Nov.

3    27, 2007), in this district through to a disappointing verdict for the defendants, receiving no

4    compensation and expending millions of dollars in time and expenses.  *See also In re Oracle*

5    *Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627

6    F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of

7    litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over

8    100,000 hours, representing a lodestar of approximately $48 million).

9           Lead Counsel is aware of many other hard-fought lawsuits where, because of the

10   discovery of facts unknown when the case was commenced, changes in the law during the

11   pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent

12   professional efforts by members of the plaintiff's bar produced no fee for counsel.  *See, e.g.*,

13   *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1998) (reversing plaintiffs' jury verdict

14   for securities fraud); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing

15   $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*,

16   77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of

17   litigation).  As the court in *In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation*,

18   364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which

19   attorneys representing a class have devoted substantial resources in terms of time and advanced

20   costs yet have lost the case despite their advocacy." *Id.* at 994 (citation omitted).  Even plaintiffs

21   who get past summary judgment and succeed at trial may find a judgment in their favor

22   overturned on appeal or on a post-trial motion.  *See, e.g., Glickenhaus & Co. v. Household Int'l,*

23   *Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13

24   years of litigation on loss causation grounds and error in jury instruction under *Janus Capital*

25   *Grp., Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011)).

26          Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainty was

27   that there would be no fee without a successful result and that such result would only be realized

28   after significant amounts of time, effort, and expense had been expended.  Unlike counsel for the

Master File No. 5:15-cv-04883-BLF-SVK
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof                                    12

1   Defendants, who were paid and reimbursed for their expenses on a current basis, Plaintiffs'

2   Counsel have received no compensation for their efforts during the course of the Action.

3   Plaintiffs' Counsel have risked non-payment of $167,200.00 in expenses and $3,330,856.50 in

4   time worked on this matter, knowing that if their efforts were not successful, no fees or expenses

5   would be paid.

###### 5.   A 25% Fee Award Is the Ninth Circuit's Benchmark and Comparable to Awards in Similar Cases

7           In requesting a 25% fee, Lead Counsel seeks the benchmark fee that has been established

8   by the Ninth Circuit.  *Eichen*, 229 F.3d at 1256 ("We have also established twenty-five percent

9   of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-

10   recovery approach.") (citation omitted); *Zynga,* 2016 WL 537946, at *18 ("As to the fifth factor

11   and awards in similar cases, several other courts—including courts in this District—have

12   concluded that a 25 percent award was appropriate in complex securities class actions.") (citation

13   omitted).

14           Fee awards of 25%, or more, have been awarded in numerous securities settlements with

15   comparable, and greater settlements, in district courts throughout the Ninth Circuit.  *See, e.g.,*

16   *Rieckborn v. Velti PLC*, No. 13-CV-03889, 2015 WL 468329, at *21-22 (N.D. Cal. Feb. 13,

17   2015) (awarding fees of 25% of $9.5 million partial settlement); *In re Vocera Comm'cns, Inc.*,

18   No. 3:13-cv-03567-EMC, slip op. (N.D. Cal. July 29, 2016) (court awarded fees of 25% of $9

19   million recovery) (Ex. 8);[4] *Mulligan v. Impax Labs, Inc.*, Case No. 13-cv-01037-EMC, slip op. at

20   7 (N.D. Cal. July 23, 2015) (awarding 29% of $8 million settlement) (Ex. 8); *In re Nuvelo, Inc.*

21   *Sec. Litig.*, No. C07-0405 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding

22   fees of 30% of $8.9 million settlement); *In re Gilead Sci. Sec. Litig.*, No. C-03-4999-SI, slip op.

23   at 1 (N.D. Cal. Nov. 5, 2010) (awarding fees of 30% of $8.25 million settlement) (Ex. 8); *cf. In*

24   *re Hewlett-Packard Co. Sec. Litig.*, Case No. SACV 11-1404-AG (RNBx), slip op. at 2-3 (C.D.

25   Cal. Sept. 15, 2014) (awarding 25% fee of $57 million settlement) (Ex. 8); *Stanley v. Safeskin*

26

27

28           [4] A compendium of unreported slip opinions is submitted as Exhibit 8 to the Villegas Declaration.

*Corp.*, No. 99CV454 BTM (LSP), slip op. at 9 (S.D. Cal. Apr. 2, 2003) (awarding 26% of $55 million settlement) (Ex. 8).

An examination of fee decisions in other federal jurisdictions in securities class actions with comparable settlements also shows that an award of 25% would be reasonable. *See, e.g., In re PAR Pharm. Sec. Litig.*, No. 06-3226, 2013 U.S. Dist. LEXIS 106150, at *30 (D.N.J. July 29, 2013) (court awarded 30% of an $8.1 million settlement to counsel noting that "Lead Counsel's fee request is comparable to fees typically awarded in analogous cases"); *Fogarazzo v. Lehman Bros. Inc.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33 1/3% of $8 million settlement) (Ex. 8); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *12-13 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund), *aff'd, Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *Public Pension Fund Grp. v. KV Pharm. Co.*, No. 4:08-cv-1859 (CEJ), slip op. at 2 (E.D. Mo. Apr. 23, 2014) (Ex. 8) (awarding 30% of $12.8 million settlement).

Moreover, a recent analysis by NERA Economic Consulting of securities class action settlements found that during 2014-2018, the median attorneys' fee award was 30% for settlements of between $5 million and $10 million. *See* Ex. 7 at 41.

Accordingly, it is respectfully submitted that the attorneys' fee requested here is well within the range of fees awarded by district courts within the Ninth Circuit and in comparable securities settlements nationwide.

### 6.      Reaction of the Settlement Class

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."). A total of 27,710 copies of the Notice and Claim Form have been sent to potential Class Members and the Court-approved Summary Notice was published in *Investor's Business Daily* and transmitted over the internet using *PR Newswire*.

1    ¶¶42-43; Ex. 2 at ¶¶2-8.  In addition, the Stipulation and Notice, among other documents, were

2    posted to a website dedicated to the Settlement.  ¶44; Ex. 2 at ¶10.  Although the objection

3    deadline will not run until May 23, 2019, to date no objections to the requested amount of

4    attorneys' fees and expenses have been received.[5]

5                         **7.        Lodestar Cross-Check**

6            Although an analysis of counsel's lodestar is not required for an award of attorneys' fees

7    in the Ninth Circuit, a cross-check of the fee request with Plaintiffs' Counsel's lodestar

8    demonstrates its reasonableness.  *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Coordinated*

9    *Pretrial Proceedings In Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)

10   (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's

11   reasonableness).

12           Plaintiffs' Counsel's combined "lodestar" is $3,330,856.50 for work through April 15,

13   2019, meaning that the requested fee, if awarded, would represent a significant negative

14   "multiplier" of 0.53 or be just 53% of Plaintiffs' Counsel's combined lodestar.  *See* Exs. 3-A, 4-

15   A, and 5.[6]  The Ninth Circuit has recognized that attorneys in common fund cases are frequently

16   awarded a ***multiple*** of their lodestar, rewarding them "for taking the risk of nonpayment by

17   paying them a premium over their normal hourly rates for winning contingency cases."

18   *Vizcaino,* 290 F.3d at 1051 (citation omitted).  For example, the district court in *Vizcaino*

19   approved a fee that reflected a multiple of 3.65 times counsel's lodestar.  *Id.*  The Ninth Circuit

20   affirmed, holding that the district court correctly considered the range of multiples applied in

21   common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently

22   awarded.  *Id.*; *see also Steiner v. Am. Broad. Co.,* 248 F. App'x. 780, 783 (9th Cir. 2007) (this

23   multiplier "falls well within the range of multipliers that courts have allowed").

24           Courts have noted that a percentage fee that falls ***below*** counsel's lodestar supports the

25   reasonableness of the award.  *See, e.g., In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138

26   _____

27       [5]  Lead Counsel will address any future objections in its reply papers, which will be filed
     with the Court by June 6, 2019.

28       [6]  Plaintiffs' Counsel's lodestar is also reported according to the category of work
     conducted.  *See* Exs. 3-B and 4-B.

Master File No. 5:15-cv-04883-BLF-SVK                                                                    15
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

1   VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("negative multiplier suggest[s] that

2   the requested percentage based fee is fair and reasonable"); *In re Amgen Inc. Sec. Litig.*, Case

3   No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *9 (C.D. Cal. Oct 25, 2016) (same); *In re*

4   *Biolase, Inc. Sec. Litig.*, Case No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318, at *8 (C.D.

5   Cal. Oct. 13, 2015) (same).  Moreover, a negative multiplier, like the negative multiplier here,

6   means that Lead Counsel is seeking to be paid "for only a portion of the hours that they

7   expended on the action."  *Amgen*, 2016 WL 10571773, at *9.

8        Plaintiffs' Counsel's lodestar represents 5,901.8 hours of work at counsel's current

9   hourly rates.[7]  Counsel's rates range from $875 to $995 per hour for partners, $615 to $675 per

10  hour for of counsels, and $425 to $625 per hour for associates.  *See* Exs. 3-A and 4-A.  Lead

11  Counsel submits that these rates are comparable or less than those used by peer defense-side law

12  firms litigating matters of similar magnitude.  Sample defense firm rates in 2018, gathered by

13  Labaton Sucharow from bankruptcy court filings nationwide, often exceeded these rates.  ¶88;

14  Ex. 6.

15       Additional work will be required of Lead Counsel on an ongoing basis, including:

16  correspondence with Class Members; preparation for, and participation in, the final approval

17  hearing; supervising the claims administration process being conducted by the Claims

18  Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class

19  Members who have submitted valid Claim Forms.  However, Lead Counsel will not seek

20  payment for this additional work.

21       **D.    The Requested Fee Is Entitled to a Presumption of Reasonableness as it
             Is Based on a Fee Agreement Entered into at the Outset of the Litigation**

22

23       The 25% request is based on a pre-settlement retainer agreement with ATRS.  ¶70.  A fee

24  agreement between a properly selected PSLRA lead plaintiff and counsel should be afforded a

25  presumption of reasonableness.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001)

26  _____

27       [7] The Supreme Court and other courts have held that the use of current rates is proper since
    such rates compensate for inflation and the loss of use of funds.  *See Missouri v. Jenkins*, 491
    U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*, No. SACV 06-350 DOC JCX, 2012 WL

28  3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to
    current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

1   (*ex ante* fee agreements in securities class actions enjoy "a presumption of reasonableness"); *In*

2   *re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *15

3   (S.D.N.Y. Dec. 23, 2009) ("Since the passage of the PSLRA, courts have found such an

4   agreement between fully informed lead plaintiffs and their counsel to be presumptively

5   reasonable").

6   **II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE**
       **NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

7

8        Plaintiffs' Counsel have incurred expenses in the aggregate amount of $167,200.00 in

9   prosecuting the Action.  Exs. 3-C, 4-C, and 5.  These expenses are outlined in Plaintiffs'

10  Counsel's individual fee and expense declarations submitted to the Court concurrently herewith.
    *Id.*

11

12       As the *Vincent* court noted, "[a]ttorneys who created a common fund are entitled to the

13  reimbursement of expenses they advanced for the benefit of the class." *Vincent,* 2013 WL

14  621865, at *5 (citation omitted).  In assessing whether counsel's expenses are compensable in a

15  common fund case, courts look to whether the particular costs are of the type typically billed by

16  attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

17  1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses

18  that 'would normally be charged to a fee paying client.'") (citation omitted).

19       Here, the expenses sought by Plaintiffs' Counsel are of the type that are charged to hourly

20  paying clients and, therefore, should be paid out of the common fund.  The main expense here

21  relates to work performed by Lead Plaintiff's consulting experts ($62,062.62 or approximately

22  37% of total expenses).  In addition to an expert related to evaluating loss causation and

23  damages, the Lead Plaintiff retained an expert to consult in areas concerning executive

24  compensation.  ¶94.  Lead Counsel received crucial advice and assistance from these experts.

25       Lead Counsel was also required to travel in connection with court appearances and the

26  mediation, and work long hours.  Work-related transportation, lodging, and meal costs totaled

27  $52,501.36 or approximately 31% of aggregate expenses.  ¶95.  Any first class airfare was

28  reduced to economy rates.  Such expenses are reimbursable. *See In re Immune Response Sec.*

1   *Litig*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("reimbursement for travel expenses . . . is

2   within the broad discretion of the Court") (citation omitted).

3       The expenses here also include the costs of factual and legal research ($21,974.96 or

4   approximately 13% of total expenses).  ¶96.  These are the costs of primarily computerized

5   factual and legal research services such as LEXIS/Nexis and Westlaw.  It is standard practice for

6   attorneys to use LEXIS/Nexis and Westlaw to assist them in researching legal and factual issues

7   and reimbursement is proper.  *See Immune Response*, 497 F. Supp. 2d at 1177.  The other

8   expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily

9   incurred in litigation and routinely charged to clients who are billed by the hour.  These expenses

10  include, among others, duplicating costs, long distance telephone and conference call charges,

11  and filing fees.

12      In sum, Plaintiffs' Counsel's expenses, in an aggregate amount of $167,200.00, were

13  reasonable and necessary to the prosecution of the Action and should be approved.

14  **III.    LEAD PLAINTIFF'S REQUEST FOR PSLRA REIMBURSEMENT**

15      The PSLRA, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an

16  amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to

17  all other members of the class," but also provides that "[n]othing in this paragraph shall be

18  construed to limit the award of reasonable costs and expenses (including lost wages) directly

19  relating to the representation of the class to any representative party serving on behalf of a class."

20  Here, as detailed in Lead Plaintiff's declaration, attached as Exhibit 1 to the Villegas

21  Declaration, the Lead Plaintiff is seeking $2,180.80 in expenses related to its active participation

22  in the Action.

23      Many cases have approved reasonable payments to compensate class representatives for

24  the time, effort, and expenses devoted by them on behalf of a class.  *See, e.g.*, *Hatamian v.*

25  *Advanced Micro Devices, Inc.*, Case No. 14-cv-00226-YGR, slip op, at 4 (N.D. Cal. Mar. 2,

26  2018) (awarding costs and expenses to two class representatives in the amount of $8,348.25 and

27  $14,875.00, respectively) (Ex. 8); *In re Broadcom Corp. Class Action Litig.*, No. CV-06-5036-R

28  (CWx) (C.D. Cal. Dec. 4, 2012), slip op. at 2 (awarding costs and expenses to class

1    representative in the amount of $21,087) (Ex. 8); *In re Marsh & McLennan Co. Inc. Sec. Litig.*,

2    No. 04-cv-08144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) (awarding $144,657 to the

3    New Jersey Attorney General's Office and $70,000 to the Ohio Funds); *In re Satyam Comput.*

4    *Servs. Ltd. Sec. Litig.*, No. 09-MD-2027-BSJ, slip op. at 3-4 (S.D.N.Y. Sept. 13, 2011) (awarding

5    $193,111 to lead plaintiffs) (Ex. 8).  As explained in one decision, courts "award such costs and

6    expenses to both reimburse named plaintiffs for expenses incurred through their involvement

7    with the action and lost wages, as well as provide an incentive for such plaintiffs to remain

8    involved in the litigation and incur such expenses in the first place."  *Hicks v. Stanley*, No. 01

9    Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

10        Lead Counsel and Lead Plaintiff  respectfully submit that the amount sought here is

11   reasonable based on Lead Plaintiff's active involvement in the Action from inception to

12   settlement.

13                                   **<u>CONCLUSION</u>**

14        For all the foregoing reasons, Lead Counsel respectfully requests that the Court award

15   attorneys' fees of 25% of the Settlement Fund, litigation expenses in the amount of $167,200.00

16   and PSLRA reimbursement to Lead Plaintiff in the amount of $2,180.80.  A proposed order will

17   be submitted with Lead Counsel's reply papers, after the May 23, 2019 objection deadline has

18   passed.

19   Dated:  May 9, 2019                        Respectfully submitted,

20

21                                              **LABATON SUCHAROW LLP**

22                                              */s/ Carol C. Villegas*
                                                Carol C. Villegas (*pro hac vice*)
23                                              Alec T. Coquin (*pro hac vice*)
                                                140 Broadway
24                                              New York, NY 10005
                                                Telephone: (212) 907-0700
25                                              Facsimile: (212) 818-0477
                                                Email: cvillegas@labaton.com
26                                              acoquin@labaton.com

27                                              *Attorneys for Lead Plaintiff and Lead Counsel for*
                                                *the Class*

28                                              **BERMAN TABACCO**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nicole Lavallee (SBN 165755)
A. Chowning Poppler (SBN 272870)
44 Montgomery Street, Ste. 650
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
         cpoppler@bermantabacco.com

*Liaison Counsel for the Class*

Master File No. 5:15-cv-04883-BLF-SVK
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

20

1

## <u>CERTIFICATE OF SERVICE</u>

2   I hereby certify that on May 9, 2019, I authorized the electronic filing of the foregoing

3 with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4 to the e-mail addresses denoted on the attached Electronic Mail Notice List.

5   I certify under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct.

7   Executed on May 9, 2019

8                    /s/ *Carol C. Villegas*
                       CAROL C. VILLEGAS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Electronic Mail Notice List**

2   **Mailing Information for a Case 5:15-cv-04883-BLF**

3   *Hong v. Extreme Networks, Inc.* et al.

4   **Electronic Mail Notice List**

5   The following are those who are currently on the list to receive e-mail notices for this case.

6   - **Eric J. Belfi**
7     ebelfi@labaton.com,kgutierrez@labaton.com,ElectronicCaseFiling@labaton.com,
      4076904420@filings.docketbird.com
8   - **Kenneth Joseph Black**
      KennyB@rgrdlaw.com
9   - **Alec T Coquin**
      acoquin@labaton.com,kgutierrez@labaton.com,7391740420@filings.docketbird.com,
10    electroniccasefiling@labaton.com
11  - **Jeffrey Dubbin**
      jdubbin@labaton.com,6415738420@filings.docketbird.com,kgutierrez@labaton.com,
12    mpenrhyn@labaton.com,echan-lee@labaton.com,electroniccasefiling@labaton.com
    - **Thomas A. Dubbs**
13    tdubbs@labaton.com,kgutierrez@labaton.com,1751297420@filings.docketbird.com,
      mpenrhyn@labaton.com,echan-lee@labaton.com,electroniccasefiling@labaton.com
14  - **Jonathan Gardner**
15    jgardner@labaton.com,kgutierrez@labaton.com,cvillegas@labaton.com,
      4027988420@filings.docketbird.com,ryamada@labaton.com,acoquin@labaton.com,
16    fmalonzo@labaton.com,acarpio@labaton.com,agreenbaum@labaton.com
    - **Louis J Gottlieb**
17    lgottlieb@labaton.com,kgutierrez@labaton.com,5401845420@filings.docketbird.com,
      electroniccasefiling@labaton.com
18  - **Elliot Schlesinger Katz**
19    elliot.katz@dlapiper.com
    - **Christopher J. Keller**
20    ckeller@labaton.com,5497918420@filings.docketbird.com,kgutierrez@labaton.com,
      drogers@labaton.com,electroniccasefiling@labaton.com
21  - **Nicole Catherine Lavallee**
      nlavallee@bermantabacco.com,ysoboleva@bermantabacco.com
22  - **Jeremy Alan Lieberman**
23    jalieberman@pomlaw.com
    - **Francis P McConville**
24    fmcconville@labaton.com,kgutierrez@labaton.com,drogers@labaton.com,
25    9849246420@filings.docketbird.com,sjessee@labaton.com,
      electroniccasefiling@labaton.com
26  - **Brian O. O'Mara**
      bo'mara@rgrdlaw.com,e_file_sd@rgrdlaw.com
27  - **Jennifer Pafiti**
      jpafiti@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,
28    abarbosa@pomlaw.com,jpalazzolo@pomlaw.com

- **Aidan Chowning Poppler**
  cpoppler@bermantabacco.com,ysoboleva@bermantabacco.com
- **David Allen Priebe**
  david.priebe@dlapiper.com,margaret.austin@dlapiper.com,carmen.
  manzano@dlapiper.com,david-priebe-3844@ecf.pacerpro.com
- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net
- **Wendy Tsang**
  wtsang@labaton.com,kgutierrez@labaton.com,1795730420@filings.docketbird.com,
  electroniccasefiling@labaton.com
- **Irina Vasilchenko**
  ivasilchenko@labaton.com,ElectronicCaseFiling@labaton.com,
  8032137420@filings.docketbird.com,KGutierrez@labaton.com
- **Carol C. Villegas**
  cvillegas@labaton.com,kgutierrez@labaton.com,5739893420@filings.docketbird.com,
  jchristie@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com,electroniccasefiling@labaton.com
- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com
- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kmccarty@rgrdlaw.com,e_file_sd@rgrdlaw.com,
  kirstenb@rgrdlaw.com
- **Nicole Zeiss**
  zeiss@labaton.com,cboria@labaton.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

- (No manual recipients)