# Exhibit 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re EXTREME NETWORKS, INC. SECURITIES LITIGATION

This Document Relates to:

All Actions.

Master File No. 3:15-cv-04883-BLF

CLASS ACTION

**DECLARATION OF LANCE CAVALLO REGARDING (A) MAILING OF THE NOTICE AND CLAIM FORM; (B) PUBLICATION OF SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE**

I, Lance Cavallo, declare and state as follows:

1. I am a Senior Project Manager of Class Actions at Kurtzman Carson Consultants LLC ("KCC"). Pursuant to the Court's March 13, 2019 Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement (the "Preliminary Approval Order"), KCC was appointed as the Claims Administrator in connection with the proposed Settlement of the above-captioned Action.[1] I have personal knowledge of the matters stated herein and, if called upon, could and would testify thereto.

**MAILING OF THE NOTICE AND CLAIM FORM**

2. Pursuant to the Preliminary Approval Order, KCC is responsible for disseminating the Notice of Pendency of Class Action, Proposed Settlement, and Motion For Attorneys' Fees and Expenses (the "Notice") and the Proof of Claim and Release (the "Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members. A copy of the Notice Packet is attached hereto as Exhibit A.

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated November 30, 2018 (the "Stipulation").

3.     In accordance with the Stipulation and Preliminary Approval Order, KCC received from Computershare, the transfer agent for Extreme Networks, Inc. ("Extreme"), a list containing the names and addresses of 245 persons or entities who purchased Extreme common stock during the period from September 12, 2013 through and including April 9, 2015 (the "Class Period"). On March 27, 2019, KCC disseminated Notice Packets by first-class mail to the 245 potential Settlement Class Members contained on this list.

4.     As in most class actions of this nature, a large majority of potential Settlement Class Members are beneficial purchasers whose securities were held in "street name" – *i.e.*, the securities were purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers. KCC maintains a proprietary database with the names and addresses of the largest and most common U.S. banks, brokerage firms, and nominees, including national and regional offices of certain nominees (the "Nominee Database"). KCC's Nominee Database is updated from time to time as new nominees are identified, and others merge or cease to exist.  At the time of the initial mailing, the Nominee Database contained 964 mailing records. On March 27, 2019, KCC caused Notice Packets to be mailed to the 964 mailing records contained in KCC's Nominee Database.

5.     The Notice directed those who purchased or otherwise acquired publicly traded common stock and exchange-traded call options, and/or sold put options of Extreme during the Class Period, for the beneficial interest of persons or organizations other than themselves, to provide KCC with the name and last known address of each person or entity for whom the Nominee executed such transactions. KCC then caused the Notice Packet to be mailed promptly to said beneficial owners. Alternatively, Nominees may request additional copies of the Notice Packet from KCC, in which case the Nominees are required to promptly mail the Notice Packet directly to the persons for whom the transactions were made.

6.     Following the initial mailing, through May 7, 2019, KCC has received an additional 13,209 unique names and addresses of potential Settlement Class Members from individuals or nominees requesting that a Notice Packet be mailed to such persons or entities. Additionally, KCC has received requests from nominees for an additional 13,292 unaddressed

DECLARATION OF LANCE CAVALLO REGARDING (A) MAILING OF THE NOTICE AND CLAIM FORM; (B) PUBLICATION OF SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE MASTER FILE NO. 3:15-CV-04883-BLF

2

Notice Packets to be forwarded by the nominees to their customers. All such requests have been honored in a timely manner, and KCC will continue to disseminate Notice Packets upon receipt of any additional requests and/or upon receipt of updated addresses.

7. As a result of the efforts described above, as of May 7, 2019, KCC has mailed a total of 27,710 Notice Packets to potential Settlement Class Members and nominees.

**PUBLICATION OF THE SUMMARY NOTICE**

8. Pursuant to the Preliminary Approval Order, on April 8, 2019, KCC caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*. Attached hereto as Exhibit B are confirmations of publication and transmittal.

**TELEPHONE HOTLINE**

9. KCC established and continues to maintain a toll-free telephone number (1-866-526-6266) for potential Settlement Class Members to call and obtain information about the Settlement, request a Notice Packet, and/or seek assistance from a live operator during regular business hours. The telephone hotline became operational on March 27, 2019.

**SETTLEMENT WEBSITE**

10. To further assist potential Settlement Class Members, KCC, in coordination with Lead Counsel, designed, implemented and currently maintains a website, www.ExtremeNetworksSecuritiesLitigation.com, dedicated to the Settlement (the "Settlement Website"). The address for the Settlement Website is set forth in the Notice, Claim Form and Summary Notice. The Settlement Website became operational on March 27, 2019, and is accessible 24 hours a day, 7 days a week. The Settlement Website lists the exclusion, objection, and claim submission deadlines, as well as the date and time of the Court's Settlement Hearing. In addition, the Settlement Website contains links to copies of the Stipulation, the Preliminary Approval Order, and the Notice Packet, all of which can be downloaded by potential Settlement Class Members. The Settlement Website also contains detailed instructions for entities who wish to submit claims electronically. KCC will continue operating, maintaining and, as appropriate, updating the Settlement Website until the conclusion of the administration.

**REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE**

11. The Notice informs potential Settlement Class Members that requests for exclusion from the Settlement Class must be addressed to Extreme Networks, Inc. Securities Litigation, EXCLUSIONS, c/o KCC Class Action Services, P.O Box 505026, Louisville, KY 40233, such that they are received no later than May 23, 2019. The Notice also sets forth the information that must be included in each request for exclusion. As of May 7, 2019, KCC can confirm that it has not received any exclusion requests. KCC will submit a supplemental declaration after the May 23, 2019 deadline for requesting exclusion, that will report on any exclusion requests received.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in New York, New York on May 8, 2019.

Lance Cavallo

# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| In re EXTREME NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | Master File No. 3:15-cv-04883-BLF<br><br>CLASS ACTION<br><br>**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES** |
|---|---|

**If you purchased or otherwise acquired publicly traded common stock and exchange-traded call options, and/or sold put options, of Extreme Networks, Inc. during the period from September 12, 2013 through April 9, 2015, inclusive (the "Class Period"), you may be entitled to a payment from a class action settlement.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- If approved by the Court, the proposed Settlement will create a $7,000,000 settlement fund, plus earned interest, for the benefit of eligible Settlement Class Members, less any attorneys' fees and expenses awarded by the Court, Notice and Administration Expenses, and Taxes.[1]
- The Settlement resolves claims by Arkansas Teacher Retirement System ("ATRS" or "Lead Plaintiff") that have been asserted on behalf of the proposed Settlement Class against Extreme Networks, Inc. ("Extreme" or the "Company") and Charles W. Berger, Kenneth B. Arola, and John T. Kurtzweil (collectively, the "Individual Defendants," and with the Company, "Defendants").

**Your legal rights are affected whether you act or do not act. Read this Notice carefully.**

| **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT** | |
|---|---|
| **SUBMIT A CLAIM FORM BY JUNE 6, 2019** | The *only* way to get a payment. |
| **EXCLUDE YOURSELF BY MAY 23, 2019** | Get no payment. This is the *only* option that allows you to ever bring or be part of any *other* lawsuit against Defendants and the other Released Defendant Parties about the Released Claims. |
| **OBJECT BY MAY 23, 2019** | Write to the Court about why you do not like the Settlement, the proposed Plan of Allocation, and/or the Fee and Expense Application. This will not exclude you from the Settlement Class. |
| **GO TO A HEARING ON JUNE 20, 2019** | Ask to speak in Court about the Settlement at the Settlement Hearing. |
| **DO NOTHING** | Get no payment. Give up rights. |

**Statement of the Settlement Class's Recovery**

1. Subject to Court approval, Lead Plaintiff, on behalf of the Settlement Class, has agreed to settle the Action in exchange for a payment of $7,000,000 (the "Settlement Amount"), which will be deposited into an interest-bearing Escrow Account (the "Settlement Fund"). The Net Settlement Fund (as defined below) will be distributed to Settlement Class Members according to the Court-approved plan of allocation (the "Plan of Allocation" or "Plan"). The proposed Plan of Allocation is set forth on pages 8-12 below.

**Estimate of Average Amount of Recovery Per Share**

2. Based on Lead Plaintiff's consulting damages expert's estimate of the number of shares of Extreme common stock eligible to participate in the Settlement, and assuming that all investors eligible to participate do so, Lead Plaintiff estimates that the average recovery would be approximately $0.05 per damaged share (before deduction of any Court-approved fees and expenses, such as attorneys' fees and expenses, Taxes, and Notice and Administration Expenses), and approximately $0.04 per damaged share after the deduction of the attorneys' fees and expenses discussed below.[2] **Please note, however, that these average recovery amounts are only estimates and Settlement Class**

[1] All capitalized terms not otherwise defined in this Notice shall have the meaning provided in the Stipulation and Agreement of Settlement, dated as of November 30, 2018 (the "Stipulation"), which can be viewed at www.ExtremeNetworksSecuritiesLitigation.com.

[2] An allegedly damaged share might have been traded, and potentially damaged, more than once during the Class Period, and the average recovery indicated above represents the estimated average recovery for each share that allegedly incurred damages.

**Members may recover more or less than these estimated amounts.** An individual Settlement Class Member's actual recovery will depend on numerous factors. These factors are fully explained in the Plan of Allocation beginning on page 8. Please refer to the Plan for information on the calculation of your Recognized Claim (defined below).

**Statement of Potential Outcome of Case**

3. The Parties disagree about both liability and damages and do not agree on the damages that would be recoverable if Lead Plaintiff were to prevail on each claim asserted against Defendants. The issues on which the Parties disagree include, for example: (i) whether Defendants made any statements or omitted any facts that were materially false or misleading, or otherwise actionable under the federal securities laws; (ii) whether any such allegedly materially false or misleading statements or omissions were made with the required level of intent or recklessness; (iii) the amounts by which the prices of Extreme common stock and call options were allegedly artificially inflated (or deflated in the case of put options), if at all, during the Class Period; and (iv) the extent to which factors such as general market, economic, and industry conditions, influenced the trading prices of Extreme common stock or exchange-traded options ("Extreme Securities") during the Class Period.

4. Defendants have denied and continue to deny any wrongdoing, deny that they have committed any act or omission giving rise to any liability or violation of law, and deny that Lead Plaintiff and the Settlement Class have suffered any loss attributable to Defendants' actions. While Lead Plaintiff believes it has meritorious claims, it recognizes that there are significant obstacles in the way to recovery.

**Statement of Attorneys' Fees and Expenses Sought**

5. Lead Counsel, on behalf of itself and Liaison Counsel Berman Tabacco ("Plaintiffs' Counsel"), will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Fund, which includes any accrued interest. Lead Counsel will also apply for payment of litigation expenses incurred by Plaintiffs' Counsel in prosecuting the Action in an amount not to exceed $230,000, plus accrued interest, which may include an application pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for the reasonable costs and expenses (including lost wages) of Lead Plaintiff directly related to its representation of the Settlement Class. If the Court approves Lead Counsel's Fee and Expense Application, the average amount of fees and expenses, assuming claims are filed for all shares eligible to participate in the Settlement, will be approximately $0.01 per allegedly damaged share of Extreme common stock.

**Reasons for the Settlement**

6. For Lead Plaintiff, the principal reason for the Settlement is the guaranteed cash benefit to the Settlement Class. This benefit must be compared to the uncertainty of being able to prove the allegations in the Amended Complaint; the risk that the Court may grant some or all of the anticipated motions to be filed by Defendants; the risks of litigation, especially in complex securities actions like this; as well as the difficulties and delays inherent in such litigation (including any trial and appeals). For Defendants, who deny all allegations of wrongdoing or liability whatsoever and deny that Settlement Class Members were damaged, the principal reasons for entering into the Settlement are to end the burden, expense, uncertainty, and risk of further litigation.

**Identification of Attorneys' Representatives**

7. Lead Plaintiff and the Settlement Class are represented by Lead Counsel, Carol C. Villegas, Esq., Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 219-6877, www.labaton.com, settlementquestions@labaton.com.

**Please Do Not Call the Court with Questions About the Settlement**

[END OF PSLRA COVER PAGE]

## BASIC INFORMATION

### 1. Why did I get this Notice?

8. You or someone in your family, or an investment account for which you serve as a custodian, may have purchased or otherwise acquired publicly traded Extreme common stock, exchange-traded call options, and/or sold publicly traded Extreme put options during the Class Period, and may be a Settlement Class Member. This Notice explains the Action, the Settlement, Settlement Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.

9. The Court directed that this Notice be sent to Settlement Class Members to inform them of the terms of the proposed Settlement and about all of their options, before the Court decides whether to approve the Settlement at the upcoming hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and Lead Counsel's Fee and Expense Application (the "Settlement Hearing").

10. The Court in charge of the Action is the United States District Court for the Northern District of California, and the case is known as *In re Extreme Networks, Inc. Securities Litigation*, Case No. 3:15-cv-04883-BLF. The Action is assigned to the Honorable Beth Labson Freeman.

### 2. What is this case about?

11. Extreme develops and sells network infrastructure equipment. Its main products include wired and wireless devices for accessing the Internet, as well as relevant software. The Action arises out of Defendants' allegedly false and misleading representations regarding the success of Extreme's post-acquisition integration with its former competitor, Enterasys Networks, Inc., as well as developments in Extreme's key partnership with Lenovo Group, Ltd. As a result of these alleged misrepresentations and omissions, Extreme's stock allegedly traded at artificially inflated prices during the Class Period.

12. Beginning in October 2015, two securities class action complaints were filed in the United States District Court for the Northern District of California on behalf of investors in Extreme. The actions were consolidated by an Order dated December 1, 2015. On June 28, 2016, the Court issued an Order appointing ATRS as Lead Plaintiff pursuant to the PSLRA. By the same Order, the Court approved Lead Plaintiff's selection of Labaton Sucharow LLP as Lead Counsel for the class and Berman Tabacco (f/k/a Berman DeValerio) as Liaison Counsel to represent the class.

13. On September 26, 2016, Lead Plaintiff filed a Consolidated Class Action Complaint for Violations of the Federal Securities Laws asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder. On November 10, 2016, Defendants filed a motion to dismiss the consolidated complaint, which Lead Plaintiff opposed on December 23, 2016. On April 27, 2017, the Court issued an Order granting Defendants' motion to dismiss with leave to amend.

14. On June 2, 2017, Lead Plaintiff filed the Amended Consolidated Class Action Complaint (the "Amended Complaint"). The Amended Complaint alleges violations under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. On July 10, 2017, Defendants filed a motion to dismiss the Amended Complaint, which Lead Plaintiff opposed on August 31, 2017. On March 21, 2018, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss. In particular, the Court found that falsity and scienter were adequately pled with respect to only certain allegations. The Court granted the motion to dismiss with respect to Defendant Kurtzweil on the Section 10(b) claim, finding that he was not alleged to have made any surviving statements. On June 21, 2018, Defendants answered the Amended Complaint, denying Lead Plaintiff's claims and asserting various affirmative defenses.

15. On July 18, 2018, counsel for the Parties met with Robert Meyer, Esq. ("Mr. Meyer"), a well-respected and highly experienced mediator, in an attempt to reach a settlement. The mediation involved an extended effort to settle the claims and was preceded by the exchange of mediation statements. The Parties were unable to reach an agreement at the July 18, 2018 mediation. Following the mediation, the Parties continued to engage in arm's-length efforts, under the auspices of Mr. Meyer, and accepted a mediator's proposal to settle the Action in August 2018 followed by execution of a Settlement Term Sheet on September 26, 2018. On November 30, 2018, the Parties executed the Stipulation, which sets forth the final terms and conditions of the Settlement.

16. Lead Plaintiff, through Lead Counsel, has conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process has included reviewing and analyzing: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Individual Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; (v) approximately 1,270 pages of documents produced in advance of mediation, including Board of Director minutes and presentations; and (vi) the applicable law governing the claims and potential defenses. Lead Counsel also contacted 148 former employees of Extreme and other persons with relevant knowledge, interviewed 24 of them (seven of whom were relied on in the Amended Complaint), and consulted with experts on damages issues.

**3. Why is this a class action?**

17. In a class action, one or more persons or entities (in this case, Lead Plaintiff), sue on behalf of people and entities that have similar claims. Together, these people and entities are a "class," and each is a "class member." Bringing a case, such as this one, as a class action allows the adjudication of many individuals' similar claims that might be too small to bring economically as separate actions. One court resolves the issues for all class members at the same time, except for those who exclude themselves, or "opt out," from the class.

**4. What are the reasons for the Settlement?**

18. The Court did not finally decide in favor of Lead Plaintiff or Defendants. Instead, both sides agreed to a settlement that will end the Action. Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit, however, Lead Plaintiff and Lead Counsel recognize the expense and length of continued proceedings necessary to pursue their claims through trial and appeals, as well as the difficulties in establishing liability and damages. In light of the Settlement and the guaranteed cash recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

19. Defendants have denied and continue to deny any allegations of wrongdoing contained in the Amended Complaint. The Settlement should not be seen as an admission or concession on the part of Defendants. Defendants have taken into account the burden, expense, uncertainty, distraction, and risks inherent in any litigation and have concluded that it is desirable to settle upon the terms and conditions set forth in the Stipulation.

**5. How do I know if I am part of the Settlement Class?**

20. The Court directed, for the purposes of the proposed Settlement, that everyone who fits the following description is a Settlement Class Member and subject to the Settlement unless they are an excluded person (*see* Question 6 below) or take steps to exclude themselves from the Settlement Class (*see* Question 11 below): ***all persons and entities that purchased or otherwise acquired the publicly traded common stock and exchange-traded call options, and/or sold put options, of Extreme during the period from September 12, 2013 through April 9, 2015, inclusive, and who were damaged thereby.***

21. Receipt of this Notice does not mean that you are a Settlement Class Member. The Parties do not have access to your transactions in Extreme Securities. Please check your records or contact your broker to see if you are a member of the Settlement Class. If one of your mutual funds purchased Extreme Securities during the Class Period, that alone does not make you a Settlement Class Member. You are a Settlement Class Member only if you individually purchased or otherwise acquired Extreme Securities during the Class Period.

**6. Are there exceptions to being included?**

22. Yes. There are some individuals and entities that are excluded from the Settlement Class by definition. Excluded from the Settlement Class are: (i) the Defendants; (ii) the officers and directors of the Company during the Class Period; (iii) the Company's subsidiaries and affiliates; (iv) the Company's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (v) members of the immediate families of the Individual Defendants and the officers and directors of the Company during the Class Period; (vi) any entity in which any Defendant has or had a controlling interest; and (vii) the legal representatives, heirs, successors, and assigns of any such excluded party. Also excluded from the Settlement Class will be any Person that timely and validly seeks exclusion from the Settlement Class in accordance with the procedures described in Question 11 below or whose request is otherwise allowed by the Court.

## THE SETTLEMENT BENEFITS

**7. What does the Settlement provide?**

23. In exchange for the Settlement and the release of the Released Claims against the Released Defendant Parties, Defendants have agreed to fund a $7 million cash fund, which will accrue interest, to be distributed, after deduction of Court-awarded attorneys' fees and litigation expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court (the "Net Settlement Fund"), among all Settlement Class Members who submit valid Claim Forms and are found to be eligible to receive a distribution from the Net Settlement Fund ("Authorized Claimants").

**8. How can I receive a payment?**

24. To qualify for a payment, you must submit a timely and valid Claim Form. A Claim Form is included with this Notice. You can also submit a Claim Form online or obtain a copy using the website dedicated to the Settlement: www.ExtremeNetworksSecuritiesLitigation.com, or obtain a copy from Lead Counsel's website, www.labaton.com. You can request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at (866) 526-6266. Please read the instructions contained in the Claim Form carefully, fill out the Claim Form, include all the documents the form requests, sign it, and mail or submit it to the Claims Administrator so that it is **postmarked or received no later than June 6, 2019.** A Claim Form will be deemed to be submitted when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions. In all other cases, the Claim Form will be deemed to have been submitted when actually received by the Claims Administrator.

25. Please note that if you have an eligible claim that calculates to a payment of less than $10.00, your payment will be sent to you through PayPal, using an account that you have established, rather than a paper check, given the costs associated with mailing checks. **If you do not provide the information required to process a payment through PayPal and/or you do not have an active PayPal account at the time of payment you will not receive a payment.** For instance, as noted above, if the average settlement recovery is $0.04 per damaged share and you purchased 200 damaged shares, your payment may be $8.00. If your payment is $8.00, you will be paid only through your PayPal account. If you purchased 500 shares your payment may be $20.00. If your payment is between $10.00 and $100.00, you may choose to receive payment through your PayPal account or check (please see the Claim Form for more information). If your payment is more than $100.00, you will receive a check. **However, please remember that the average recovery amount of $0.04 per damaged share is only an estimate and Settlement Class Members may recover more or less**. An individual Settlement Class Member's actual recovery will depend on numerous factors. These factors are fully explained in the Plan of Allocation beginning on page 8. Please refer to the Plan for information on the calculation of your Recognized Claim.

## 9. When will I receive my payment?

26. The Court will hold a Settlement Hearing on **June 20, 2019, at 1:30 p.m.**, to decide, among other things, whether to finally approve the Settlement. Even if the Court approves the Settlement, there may be appeals which can take time to resolve, perhaps more than a year. It also takes a long time for all of the Claim Forms to be accurately reviewed and processed. Please be patient.

## 10. What am I giving up to receive a payment or stay in the Settlement Class?

27. If you are a member of the Settlement Class, unless you exclude yourself, you will remain in the class, and that means that, upon the "Effective Date" of the Settlement, you will release all "Released Claims" against the "Released Defendant Parties."

(a) **"Released Claims"** means any and all claims and causes of action of every nature and description, including both known claims and Unknown Claims (defined below), whether arising under federal, state, common or foreign law, or any other law, whether class or individual in nature, that Lead Plaintiff or any other Settlement Class Member (i) asserted in the Action; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in any complaint in the Action and that relate to the purchase or acquisition of the Company's publicly traded common stock, and/or exchange-traded options on such common stock, during the Class Period. Notwithstanding the foregoing, Released Claims do not include (i) claims relating to the enforcement of the Settlement; or (ii) or any claims in the shareholder derivative action *Shaffer v. Kispert,* No. 16-cv-291726 (Super. Ct. of Cal., Santa Clara Cty., Feb. 2, 2016).

(b) **"Released Defendant Parties"** means Defendants, Defendants' Counsel, and each of their respective past, present, or future subsidiaries, parents, affiliates, principals, successors and predecessors, assigns, officers, directors, shareholders, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, auditors, insurers; the spouses, members of the immediate families, representatives, and heirs of the Individual Defendants, as well as any trust of which any Individual Defendant is the settlor or which is for the benefit of any of their immediate family members; any firm, trust, corporation, or entity in which any Defendant has a controlling interest; and any of the legal representatives, heirs, successors in interest or assigns of Defendants.

(c) "**Unknown Claims**" means any and all Released Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class. With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Defendants' Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

28. The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes Final and is not subject to appeal. If you remain a member of the Settlement Class, all of the Court's orders, whether favorable or unfavorable, will apply to you and legally bind you. Upon the Effective Date, Defendants will also provide a release of any claims against Lead Plaintiff and the Settlement Class arising out of or related to the institution, prosecution, or settlement of the claims in the Action.

**EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS**

29. If you do not want to be eligible to receive a payment from the Settlement but you want to keep any right you may have to sue or continue to sue the Released Defendant Parties on your own about the Released Claims, then you must take steps to remove yourself from the Settlement Class. This is called excluding yourself or "opting out." **Please note: if you bring your own claims, Defendants will have the right to seek their dismissal.**

**11. How do I exclude myself from the Settlement Class?**

30. To exclude yourself from the Settlement Class, you must mail a signed letter stating that you "request to be excluded from the Settlement Class in *In re Extreme Networks, Inc. Sec. Litig.,* No. 15-04883 (N.D. Cal.)." You cannot exclude yourself by telephone or e-mail. Each request for exclusion must also: (i) state the name, address, and telephone number of the person or entity requesting exclusion; (ii) state the date(s), price(s), and number(s) of shares of all purchases, acquisitions, and sales of Extreme Securities during the Class Period; and (iii) be signed by the person or entity requesting exclusion or an authorized representative. A request for exclusion must be mailed, so that it is **received no later than May 23, 2019,** to:

*Extreme Networks, Inc. Securities Litigation*
c/o KCC Class Action Services
P.O. Box 505026
Louisville, KY 40233-5026

**Your exclusion request must comply with these requirements in order to be valid.**

31. If you ask to be excluded, do not submit a Claim Form because you cannot receive any payment from the Net Settlement Fund. Also, you cannot object to the Settlement because you will not be a Settlement Class Member. However, if you submit a valid exclusion request, you will not be legally bound by anything that happens in the Action, and you may be able to sue (or continue to sue) Defendants and the other Released Defendant Parties in the future, assuming your claims are timely. If you have a pending lawsuit against any of the Released Defendant Parties, **please speak to your lawyer in the case immediately.**

**THE LAWYERS REPRESENTING YOU**

**12. Do I have a lawyer in this case?**

32. The Court appointed the law firm of Labaton Sucharow LLP to represent all Settlement Class Members. These lawyers are called "Lead Counsel." You will not be separately charged for these lawyers. The Court will determine the amount of Plaintiffs' Counsel's fees and expenses, which will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

**13. How will the lawyers be paid?**

33. Plaintiffs' Counsel have not received any payment for their services in pursuing the claims against Defendants on behalf of the Settlement Class, nor have they been reimbursed for their litigation expenses. Lead Counsel will ask the Court to award it, together with Liaison Counsel Berman Tabacco, attorneys' fees of no more than 25% of the Settlement Fund, which will include any accrued interest. No other attorneys will share in the fee awarded by the Court. Lead Counsel will also seek payment of litigation expenses incurred by Plaintiffs' Counsel in the prosecution of the Action of no more than $230,000, plus accrued interest, which may include an application in accordance with the PSLRA for the reasonable costs and expenses (including lost wages) of Lead Plaintiff directly related to its representation of the Settlement Class.

**OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, OR THE FEE AND EXPENSE APPLICATION**

**14. How do I tell the Court that I do not like something about the proposed Settlement?**

34. If you are a Settlement Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation, and/or the Fee and Expense Application. You can ask the Court not to approve the Settlement, however you cannot ask the Court to order a different settlement; the Court can only approve or deny this Settlement. If the Court denies approval of the Settlement, no payments will be made to Settlement Class Members and the Action will continue.

35. To object, you must send a signed letter stating that you object to the proposed Settlement, the proposed Plan of Allocation, and/or the Fee and Expense Application in "*In re Extreme Networks, Inc. Sec. Litig.,* No. 15-04883 (N.D. Cal.)". Your objection must state why you are objecting and whether your objection applies only to you, a subset of the Settlement Class, or the entire Settlement Class. The objection must also: (i) include the name, address, and telephone number of the person or entity objecting; (ii) contain a statement of the objection and the specific reasons for it, including any legal and evidentiary support (including witnesses) the Settlement Class Member wishes to bring to the Court's attention; and

(iii) identify the number of shares of Extreme Securities purchased, acquired, and/or sold during the Class Period, as well as the date, number of shares, and price per share of each such purchase, acquisition, and/or sale. Unless otherwise ordered by the Court, any Settlement Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will be forever foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, and/or Lead Counsel's Fee and Expense Application. Your objection must be submitted to the Court either by mailing it to the Clerk of the Court or filing it with the Court so that it is **postmarked or filed no later than May 23, 2019,** using this address: Clerk of the Court, United States District Court, Northern District of California, Robert F. Peckham Federal Building, United States Courthouse, 280 South 1st Street, San Jose, CA 95113.

**15. What is the difference between objecting and seeking exclusion?**

36. Objecting is telling the Court that you do not like something about the proposed Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application. You can still recover money from the Settlement. You can object *only* if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself from the Settlement Class, you have no basis to object because the Settlement and the Action no longer affect you.

## THE SETTLEMENT HEARING

**16. When and where will the Court decide whether to approve the proposed Settlement?**

37. The Court will hold the Settlement Hearing on **June 20, 2019 at 1:30 p.m.**, in Courtroom 3, 5th Floor of the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113. At this hearing, the Court will consider whether: (i) the Settlement is fair, reasonable, adequate, and should be finally approved; (ii) the Plan of Allocation is fair and reasonable, and should be approved; and (iii) Lead Counsel's Fee and Expense Application is reasonable and should be approved. The Court will take into consideration any written objections filed in accordance with the instructions in Question 14 above. We do not know how long it will take the Court to make these decisions.

38. You should be aware that the Court may change the date and time of the Settlement Hearing without another notice being sent to Settlement Class Members. If you want to attend the hearing, you should check with Lead Counsel beforehand to be sure that the date and/or time has not changed, periodically check the Court's website at https://www.cand.uscourts.gov/cm-ecf, or periodically check the settlement website at www.ExtremeNetworksSecuritiesLitigation.com to see if the Settlement Hearing stays as calendared or is changed. Subscribers to PACER, a fee-based service, can also view the Court's docket for the Action for updates about the Settlement Hearing through the Court's online Case Management/Electronic Case Files System at https://www.pacer.gov.

**17. Do I have to come to the Settlement Hearing?**

39. No. Lead Counsel will answer any questions the Court may have. But, you are welcome to attend at your own expense. If you submit a valid and timely objection, the Court will consider it and you do not have to come to Court to discuss it. You may have your own lawyer attend (at your own expense), but it is not required. If you do hire your own lawyer, he or she must file and serve a Notice of Appearance in the manner described in the answer to Question 18 below **no later than May 23, 2019**.

**18. May I speak at the Settlement Hearing?**

40. You may ask the Court for permission to speak at the Settlement Hearing. To do so, you must include with your objection (*see* Question 14), **no later than May 23, 2019,** a statement that you, or your attorney, intend to appear in "*In re Extreme Networks, Inc. Sec. Litig.,* No. 15-04883 (N.D. Cal.)." Persons who intend to present evidence at the Settlement Hearing must also include in their objections the identities of any witnesses they may wish to call to testify and any exhibits they intend to introduce into evidence at the hearing. You may not speak at the Settlement Hearing if you exclude yourself or if you have not provided written notice in accordance with the procedures described in this Question 18 and Question 14 above.

## IF YOU DO NOTHING

**19. What happens if I do nothing at all?**

41. If you do nothing and you are a member of the Settlement Class, you will receive no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Claims. To share in the Net Settlement Fund, you must submit a Claim Form (*see* Question 8 above).

## GETTING MORE INFORMATION

### 20. Are there more details about the Settlement?

42. This Notice summarizes the proposed Settlement. More details are in the Stipulation. Lead Counsel's motions in support of final approval of the Settlement, the request for attorneys' fees and litigation expenses, and approval of the proposed Plan of Allocation will be filed with the Court no later than May 9, 2019 and available from Lead Counsel, the Claims Administrator, or the Court, pursuant to the instructions below.

43. You may review the Stipulation or documents filed in the case at the Office of the Clerk of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113 on weekdays (other than court holidays) between 9:00 a.m. and 4:00 p.m. Subscribers to PACER can also view the papers filed publicly in the Action through the Court's online Case Management/Electronic Case Files System at https://www.pacer.gov.

44. You can also get a copy of the Stipulation and other case documents by calling the Claims Administrator toll free at (866) 526-6266; writing to the Claims Administrator at *Extreme Networks, Inc. Securities Litigation,* c/o KCC Class Action Services, P.O. Box 505026, Louisville, KY 40233-5026; or visiting the website dedicated to the Settlement, www.ExtremeNetworksSecuritiesLitigation.com or the website of Lead Counsel, www.labaton.com. **Please do not call the Court with questions about the Settlement.**

## PLAN OF ALLOCATION OF NET SETTLEMENT FUND

### 21. How will my claim be calculated?

45. As discussed above, the Settlement Amount and any interest it earns constitute the Settlement Fund. The Settlement Fund, after the deduction of Court-approved attorneys' fees and litigation expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the Net Settlement Fund. If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants – *i.e*., members of the Settlement Class who timely submit valid Claim Forms that are accepted for payment – in accordance with this proposed Plan of Allocation or such other plan of allocation as the Court may approve. Settlement Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund, but will otherwise be bound by the Settlement. The Court may approve this proposed Plan of Allocation, or modify it, without additional notice to the Settlement Class. Any order modifying the Plan of Allocation will be posted on the settlement website, www.ExtremeNetworksSecuritiesLitigation.com.

46. To design the Plan, Lead Counsel has conferred with Lead Plaintiff's damages expert. The objective of the Plan of Allocation is to distribute the Net Settlement Fund equitably among those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The Plan of Allocation is not intended to estimate, or be indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. Nor are the calculations intended to estimate the amounts that will be paid to Authorized Claimants. The Plan of Allocation measures the amount of loss that a Settlement Class Member can claim for purposes of making *pro rata* allocations of the Net Settlement Fund to Authorized Claimants.

47. For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the change in the price of the securities at issue. In this case, Lead Plaintiff alleged that Defendants issued false statements and omitted material facts during the Class Period that artificially inflated the price of Extreme common stock and call options (and artificially deflated the price of Extreme put options). It is alleged that corrective information released to the market on February 5, 2014 (prior to market open), May 6, 2014 (after market close), October 15, 2014 (prior to market open), and April 9, 2015 (after market close) impacted the market prices of Extreme Securities in a statistically significant manner and removed the alleged artificial inflation (deflation for put options) from the prices on February 5, 2014, May 7-8, 2014, October 16, 2014, and April 10, 2015. Accordingly, in order to have a compensable loss in this Settlement, the Extreme common stock and call options must have been purchased or otherwise acquired during the Class Period and held through at least one of the alleged corrective disclosures listed above and, with respect to put options, those options must have been sold (written) during the Class Period and not closed through at least one of the alleged corrective disclosures.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

48. A "Recognized Loss Amount" will be calculated as set forth herein for each purchase of Extreme common stock and call options and each sale of Extreme put options during the Class Period that is listed in the Claim Form and for which adequate documentation is provided. The sum of a claimant's Recognized Loss Amounts will be the claimant's "Recognized Claim." To the extent that the calculation of a claimant's Recognized Loss Amount results in a negative number, that number shall be set to zero.

**COMMON STOCK CALCULATIONS**

49. For each share of common stock purchased or otherwise acquired during the Class Period and sold before the close of trading on April 9, 2015, an "Out of Pocket Loss" will be calculated. Out of Pocket Loss is defined as the purchase price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

50. **For each share of Extreme common stock purchased or acquired from September 12, 2013 through and including April 9, 2015 and:**

A. Sold before the opening of trading on February 5, 2014, the Recognized Loss Amount for each such share shall be zero.

B. Sold after the opening of trading on February 5, 2014, and before the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below *minus* the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 1** below; or
2. the Out of Pocket Loss.

C. Sold after the close of trading on April 9, 2015, and before the close of trading on July 8, 2015, the Recognized Loss Amount for each such share shall be ***the least of***:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or
2. the actual purchase/acquisition price of each such share *minus* the average closing price from April 10, 2015, up to the date of sale as set forth in **Table 2**[3] (available at www. ExtremeNetworksSecuritiesLitigation.com); or
3. the Out of Pocket Loss.

D. Held as of the close of trading on July 8, 2015, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or
2. the actual purchase/acquisition price of each such share *minus* the average closing price of $2.63.

**TABLE 1**

**Extreme Networks Common Stock Artificial Inflation**
**For Purposes of Calculating Purchase and Sale Inflation**

| Transaction Date | Artificial Inflation Per Share |
|---|---|
| September 12, 2013 – February 4, 2014 | $3.50 |
| February 5, 2014 – May 6, 2014 | $3.28 |
| May 7, 2014 | $1.87 |
| May 8, 2014 – October 15, 2014 | $1.49 |
| October 16, 2014 – April 9, 2015 | $0.77 |

**CALL AND PUT OPTIONS CALCULATIONS**

51. Exchange-traded options are traded in units called "contracts," which entitle the holder to buy (in the case of a call option) or sell (in the case of a put option) 100 shares of the underlying security, which in this case is Extreme common stock. Throughout this Plan of Allocation, all price quotations are per share of the underlying security (*i.e.,* 1/100 of a contract).

52. Each option contract specifies a strike price and an expiration date. Contracts with the same strike price and expiration date are referred to as a "series" and each series represents a different security that trades in the market and has its own market price (and thus artificial inflation or deflation). Under the Plan of Allocation, the dollar artificial inflation per share (*i.e.,* 1/100 of a contract) for each series of Extreme call options and the dollar artificial deflation per share (*i.e.,* 1/100 of a contract) for each series of Extreme put options has been calculated by Lead Plaintiff's damages expert.

---

[3] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with this requirement, Recognized Loss Amounts are reduced by taking into account the closing prices of Extreme common stock during the "90-day look-back period," April 10, 2015 through July 8, 2015. The mean (average) closing price for Extreme common stock during this 90-day look-back period was $2.63.

53. Transactions in Extreme options that expired before February 5, 2014 have a Recognized Loss Amount of zero under the Plan of Allocation.

54. For each Extreme call option purchased or otherwise acquired during the Class Period and sold before the close of trading on April 9, 2015, and for each Extreme put option sold (written) during the Class Period and purchased before the close of trading on April 9, 2015, an "Out of Pocket Loss" will be calculated. For Extreme call options closed through sale, the Out of Pocket Loss is the purchase/acquisition price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). For Extreme call options closed through exercise or expiration, the Out of Pocket Loss is the purchase/acquisition price (excluding all fees, taxes, and commissions) *minus* the value per option on the date of exercise or expiration.[4] For Extreme put options closed through purchase, the Out of Pocket Loss is the purchase/acquisition price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). For Extreme put options closed through exercise or expiration, the Out of Pocket Loss is the value per option on the date of exercise or expiration[5] *minus* the sale price (excluding all fees, taxes, and commissions). To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

55. **For each Extreme call option purchased or otherwise acquired from September 12, 2013 through and including April 9, 2015, and:**

A. Closed (through sale, exercise, or expiration) before the opening of trading on February 5, 2014, the Recognized Loss Amount for each such share shall be zero.

B. Closed (through sale, exercise, or expiration) after the opening of trading on February 5, 2014, and before the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 3** *minus* the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 3** (available at www.ExtremeNetworksSecuritiesLitigation.com); or

2. the Out of Pocket Loss.

C. Open as of the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 3** (available at www.ExtremeNetworksSecuritiesLitigation.com); or

2. the actual purchase/acquisition price of each such share *minus* the closing price on April 10, 2015 (*i.e.,* the "Holding Price") as set forth in **Table 3** (available at www.ExtremeNetworksSecuritiesLitigation.com).

56. **For each Extreme put option sold (written) from September 12, 2013 through and including April 9, 2015, and:**

A. Closed (through purchase, exercise, or expiration) before the opening of trading on February 5, 2014, the Recognized Loss Amount for each such share shall be zero.

B. Closed (through purchase, exercise, or expiration) after the opening of trading on February 5, 2014, and before the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial deflation applicable to each such share on the date of sale (writing) as set forth in **Table 4** (available at www.ExtremeNetworksSecuritiesLitigation.com) *minus* the dollar artificial deflation applicable to each such share on the date of close as set forth in **Table 4** (available at www.ExtremeNetworksSecuritiesLitigation.com); or

2. the Out of Pocket Loss.

C. Open as of the close of trading on April 9, 2015, the Recognized Loss Amount for each such share shall be ***the lesser of***:

1. the dollar artificial deflation applicable to each such share on the date of sale (writing) as set forth in **Table 4** (available at www.ExtremeNetworksSecuritiesLitigation.com); or

2. the closing price on April 10, 2015 (*i.e.,* the "Holding Price") as set forth in **Table 4** (available at www.ExtremeNetworksSecuritiesLitigation.com) *minus* the sale (writing) price.

57. **Maximum Recovery for Options:** The Settlement proceeds available for Extreme call options purchased during the Class Period and Extreme put options sold (written) during the Class Period shall be limited to a total amount equal to 1% of the Net Settlement Fund.

[4] The "value" of the call option on the date of exercise or expiration shall be the closing price of Extreme common stock on the date of exercise or expiration minus the strike price of the option. If this number is less than zero, the value of the call option is zero.

[5] The "value" of the put option on the date of exercise or expiration shall be the strike price of the option minus the closing price of Extreme common stock on the date of exercise or expiration. If this number is less than zero, the value of the put option is zero.

**ADDITIONAL PROVISIONS OF THE PLAN OF ALLOCATION**

58. If a Settlement Class Member has more than one purchase/acquisition or sale of any eligible Extreme Security during the Class Period, all purchases/acquisitions and sales of the like security shall be matched on a FIFO basis. With respect to Extreme common stock and call options, Class Period sales will be matched first against any holdings at the beginning of the Class Period and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period. For Extreme put options, Class Period purchases will be matched first to close out positions open at the beginning of the Class Period, and then against put options sold (written) during the Class Period in chronological order.

59. Purchases/acquisitions and sales of Extreme Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Extreme Securities during the Class Period shall not be deemed a purchase, acquisition or sale of such securities for the calculation of an Authorized Claimant's Recognized Claim, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such security unless: (i) the donor or decedent purchased or otherwise acquired the security during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such security; and (iii) it is specifically so provided in the instrument of gift or assignment.

60. The Recognized Loss Amount on any portion of a purchase or acquisition that matches against (or "covers") a "short sale" is zero. The Recognized Loss Amount on a "short sale" that is not covered by a purchase or acquisition is also zero. In the event that a claimant has an opening short position in Extreme common stock at the start of the Class Period, the earliest Class Period purchases or acquisitions shall be matched against such opening short position in accordance with the FIFO matching described above and any portion of such purchase or acquisition that covers such short sales will not be entitled to recovery. In the event that a claimant newly establishes a short position during the Class Period, the earliest subsequent Class Period purchase or acquisition shall be matched against such short position on a FIFO basis and will not be entitled to a recovery.

61. If a Settlement Class Member has "written" call options, thereby having a short position in the call options, the date of covering such a written position is deemed to be the date of purchase or acquisition of the call option. The date on which the call option was written is deemed to be the date of sale of the call option. In accordance with the Plan of Allocation, the earliest Class Period purchases or acquisitions shall be matched against such short positions in accordance with the FIFO matching described above and any portion of such purchases or acquisitions that cover such short positions will not be entitled to recovery.

62. If a Settlement Class Member has purchased or acquired put options, thereby having a long position in the put options, the date of purchase/acquisition is deemed to be the date of purchase/acquisition of the put option. The date on which the put option was sold, exercised, or expired is deemed to be the date of sale of the put option. In accordance with the Plan of Allocation, the earliest sales or dispositions of like put options during the Class Period shall be matched against such long positions in accordance with the FIFO matching described above and any portion of the sales that cover such long positions shall not be entitled to a recovery.

63. Publicly traded Extreme common stock, Extreme call options, and Extreme put options are the only securities eligible for recovery under the Plan of Allocation. With respect to Extreme common stock purchased or sold through the exercise of an option, the purchase/sale date of the Extreme common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

64. An Authorized Claimant's Recognized Claim shall be the amount used to calculate the Authorized Claimant's share of the Net Settlement Fund. To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to his, her, or its Recognized Claim. If, however, the sum total of Recognized Claims of all Authorized Claimants is greater than the Net Settlement Fund, each Authorized Claimant shall receive the percentage of the Net Settlement Fund that his, her, or its Recognized Claim bears to the total Recognized Claims of all Authorized Claimants, *i.e.,* the Authorized Claimant's *pro rata* share.

65. The Net Settlement Fund will be allocated *pro rata* among all Authorized Claimants. If the prorated payment to any Authorized Claimant calculates to less than $10.00, the payment will be sent through the Authorized Claimant's PayPal account, rather than a paper check, given the costs associated with mailing checks. **If the claimant does not provide the information required to process a payment through PayPal and/or have an active PayPal account at the time of payment, the claimant will not receive a payment.** If the prorated payment to an Authorized Claimant calculates to between $10.00 and $100.00, the claimant may choose to receive a payment through a PayPal account or check. Payments for more than $100.00 will be by check.

66.     Distributions to eligible Authorized Claimants will be made after claims have been processed.  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion.  These redistributions shall be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute to Authorized Claimants.  Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expense, Taxes, and attorneys' fees and expenses, if any, shall be contributed to Consumer Federation of America.

67.     Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all claimants.  No person shall have any claim against Lead Plaintiff, Plaintiffs' Counsel, Lead Plaintiff's damages expert, Defendants, Defendants' Counsel, any of the other Released Plaintiffs Parties or Released Defendant Parties, or the Claims Administrator or other agent designated by Lead Counsel, arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or further orders of the Court. Lead Plaintiff, Defendants and their respective counsel, and all other Released Defendant Parties, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund; the Plan of Allocation; the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator; the payment or withholding of Taxes; or any losses incurred in connection therewith.

68.     The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the claim of any claimant. Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

## SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES

69.     If you purchased or otherwise acquired Extreme Securities during the Class Period for the beneficial interest of a person or entity other than yourself, the Court has directed that **WITHIN SEVEN (7) DAYS OF YOUR RECEIPT OF THIS NOTICE**, **YOU MUST EITHER**: (a) provide to the Claims Administrator the name and last known address of each such person or entity; or (b) request additional copies of this Notice and the Claim Form from the Claims Administrator, which will be provided to you free of charge, and **WITHIN SEVEN (7) DAYS** of receipt, mail the Notice and Claim Form directly to all such persons or entities.  If you choose to follow procedure (b), the Court has also directed that, upon making that mailing, **YOU MUST SEND A STATEMENT** to the Claims Administrator confirming that the mailing was made as directed and keep a record of the names and mailing addresses used.  Upon full and timely compliance with these directions, you may seek reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, upon request and submission of appropriate documentation.  All communications concerning the foregoing should be addressed to the Claims Administrator: *Extreme Networks, Inc. Securities Litigation*, Claims Administrator, c/o KCC Class Action Services, P.O. Box 505026, Louisville, KY 40233-5026, (866) 526-6266, nominees@ExtremeNetworksSecuritiesLitigation.com, www.ExtremeNetworksSecuritiesLitigation.com.

Dated: March 27, 2019                                    BY ORDER OF THE UNITED STATES DISTRICT COURT
                                                         FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| In re EXTREME NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | Master File No. 3:15-cv-04883-BLF<br><br>CLASS ACTION<br><br>**PROOF OF CLAIM AND RELEASE** |
|---|---|

## I. GENERAL INSTRUCTIONS

1. Capitalized terms not defined in this Proof of Claim and Release ("Claim Form") have the same meaning as set forth in the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice") that accompanies this Claim Form and the Stipulation and Agreement of Settlement, dated as of November 30, 2018 (the "Stipulation").

2. To be eligible to recover from the Net Settlement Fund in the action entitled *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883-BLF (N.D. Cal.) (the "Action"), you must complete and, on page 8, sign this Claim Form. If you fail to submit a properly completed and addressed Claim Form, your claim may be rejected and you may be precluded from any recovery from the Net Settlement Fund created in connection with the Settlement of the Action.

Submission of this Claim Form, however, does not assure that you will share in the Net Settlement Fund.

3. **YOU MUST MAIL OR SUBMIT YOUR COMPLETED AND SIGNED CLAIM FORM ONLINE SO THAT IT IS POSTMARKED OR RECEIVED NO LATER THAN JUNE 6, 2019, ADDRESSED AS FOLLOWS:**

Extreme Networks, Inc. Securities Litigation
c/o KCC Class Action Services
P.O. Box 505026
Louisville, KY 40233-5026
www.ExtremeNetworksSecuritiesLitigation.com

To be considered timely, your Claim Form must be postmarked or received by the deadline above. A Claim Form will be deemed to be submitted when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions above. In all other cases, the Claim Form will be deemed to have been submitted when actually received by the Claims Administrator.

4. Please note that if you have an eligible claim that calculates to a payment of less than $10.00, your payment will be sent to you through PayPal, using an account that you have established, rather than a paper check, given the costs associated with mailing checks. **If you do not provide the information required to process a payment through PayPal and/or you do not have an active PayPal account at the time of payment you will not receive a payment**. For instance, as noted in the Notice, if the average settlement recovery is $0.04 per damaged share and you purchased 200 damaged shares, your payment may be $8.00. If your payment is $8.00, you will be paid only through your PayPal account. If you purchased 500 shares your payment may be $20.00. **However, please remember that the average recovery amount of $0.04 per damaged share is only an estimate and Settlement Class Members may recover more or less**. An individual Settlement Class Member's actual recovery will depend on numerous factors. These factors are fully explained in the Plan of Allocation beginning on page 8 of the Notice. Please refer to the Plan for information on the calculation of your Recognized Claim.

5. If your payment is between $10.00 and $100.00, you may choose to receive a payment through a PayPal account that you have established or by check. *See* page 2, below. Payments for more than $100.00 will be by check.

6. If you are NOT a Settlement Class Member (as defined in the Notice), **DO NOT** submit a Claim Form. If you are a Settlement Class Member and have not requested exclusion, you will be bound by the terms of the Settlement and any judgment entered in this Action, **WHETHER OR NOT YOU SUBMIT A CLAIM FORM.**

7. NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the mandatory electronic filing requirements and file layout, you may visit the settlement website at www.ExtremeNetworksSecuritiesLitigation.com or you may email the Claims Administrator's electronic filing department at Nominees@ExtremeNetworksSecuritiesLitigation.com. Any file not in accordance with the required electronic filing format will be subject to rejection. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email after processing your file with your claim numbers and respective account information. Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at Nominees@ExtremeNetworksSecuritiesLitigation.com to inquire about your file and confirm it was received and acceptable.

Official Office Use Only

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

*In re Extreme Networks, Inc. Sec. Litig.*

Master File No. 3:15-cv-04883-BLF

**PROOF OF CLAIM AND RELEASE**

Please Type or Print in the Boxes Below
Do NOT use Red Ink, Pencil, or Staples

**Must Be Postmarked or Received No Later than JUNE 6, 2019**

# EXS

## PART I. CLAIMANT IDENTIFICATION

Last Name (Beneficial Owner) M.I. First Name (Beneficial Owner)

Last Name (Co-Beneficial Owner) M.I. First Name (Co-Beneficial Owner)

Company Name (Beneficial Owner - if Claimant is not an Individual or Custodian Name if an IRA)

Trustee/Asset Manager/Nominee/Record Owner's Name (If Different from Beneficial Owner Listed Above)

Account#/Fund# (Not Necessary for Individual Filers)

Last Four Digits of Social Security Number or Taxpayer Identification Number

Telephone Number (Primary Daytime) Telephone Number (Alternate)

Email address for communications (Email address is generally not required, but if you provide it, you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)

Email address for payment to PayPal account (Required in order to receive a settlement payment of less than $10.00 or, if your settlement payment is between $10.00 and $100.00, you elect an electronic payment below.)

If my (our) settlement payment is between $10.00 and $100.00, I (we) wish to receive payment from the Settlement ◯ by check or ◯ by credit to the PayPal account associated with the above email address. (Please note, you must have an active PayPal account associated with this email address at the time of payment. If you do not, you will receive a check.)

## MAILING INFORMATION

Address

Address

City State Zip Code

Foreign Province Foreign Postal Code Foreign Country Name/Abbreviation

| FOR CLAIMS PROCESSING ONLY | OB | CB | ◯ ATP ◯ KE ◯ ICI | ◯ BE ◯ DR ◯ EM | ◯ FL ◯ ME ◯ ND | ◯ OP ◯ RE ◯ SH | MM / DD / YYYY | FOR CLAIMS PROCESSING ONLY |
|---|---|---|---|---|---|---|---|---|



## PART II: TRANSACTIONS IN EXTREME PUBLICLY TRADED COMMON STOCK

1. **BEGINNING HOLDINGS** – State the total number of shares of common stock held as of the opening of trading on September 12, 2013. If none, write "0" or "Zero." (Must be documented.)

2. **PURCHASES/ACQUISITIONS DURING THE CLASS PERIOD** – Separately list each and every purchase/acquisition of common stock from after the opening of trading on September 12, 2013 through and including the close of trading on April 9, 2015. (Must be documented.)

PURCHASES

| | Date of Purchase (List Chronologically) M M / D D / Y Y | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price (excluding taxes, commissions and fees). Please round off to the nearest whole dollar |
|---|---|---|---|---|
| 1. | / / | | $ . | $ .00 |
| 2. | / / | | $ . | $ .00 |
| 3. | / / | | $ . | $ .00 |
| 4. | / / | | $ . | $ .00 |
| 5. | / / | | $ . | $ .00 |

3. **PURCHASES/ACQUISITIONS DURING 90-DAY LOOKBACK PERIOD** – State the total number of shares of common stock purchased/acquired from after the opening of trading on April 10, 2015 through and including the close of trading on July 8, 2015[1]. (Must be documented.)

4. **SALES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each and every sale/disposition of common stock from after the opening of trading on September 12, 2013 through and including the close of trading on July 8, 2015. (Must be documented.)

SALES

| | Date of Sale (List Chronologically) M M / D D / Y Y | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions and fees). Please round off to the nearest whole dollar |
|---|---|---|---|---|
| 1. | / / | | $ . | $ .00 |
| 2. | / / | | $ . | $ .00 |
| 3. | / / | | $ . | $ .00 |
| 4. | / / | | $ . | $ .00 |
| 5. | / / | | $ . | $ .00 |

5. **ENDING HOLDINGS** – State the total number of shares of common stock held as of the close of trading on July 8, 2015. If none, write "0" or "Zero." (Must be documented.)

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, PLEASE PHOTOCOPY THIS PAGE, WRITE YOUR NAME ON THE COPY AND FILL THIS CIRCLE: ○

IF YOU DO NOT FILL IN THIS CIRCLE THESE ADDITIONAL PAGES MAY NOT BE REVIEWED.

YOU MUST READ AND SIGN THE RELEASE ON PAGE 8. FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.

[1] Information requested in this Claim Form with respect to your transactions from the opening of trading on April 10, 2015 through and including the close of trading on July 8, 2015, is needed only in order to balance your claim. Purchases/acquisitions (sales of put options) during this period are not eligible to participate in the Settlement because they are outside the Class Period.



## PART III. TRANSACTIONS IN EXTREME EXCHANGE-TRADED CALL OPTIONS

1. **BEGINNING HOLDINGS** – State the total number of call option contracts held as of the opening of trading on September 12, 2013. If none, write "0" or "Zero." (Must be documented.)

| Strike Price of Call Option Contract | Number of Call Option Contracts Held | Expiration Date of Call Option Contract (MM/YY) |
|---|---|---|
| . | | |
| . | | |
| . | | |
| . | | |

2. **PURCHASES/ACQUISITIONS DURING THE CLASS PERIOD** – Separately list each and every purchase/acquisition of call option contracts from after the opening of trading on September 12, 2013 through and including the close of trading on April 9, 2015. (Must be documented.)

| Date of Purchase (List Chronologically) (MM/DD/YY) | Strike Price of Call Option Contract | Number of Call Option Contracts Purchased | Purchase Price Per Call Option Contract | Insert an "E" if Exercised or "X" if Expired | Exercise Date (MM/DD/YY) | Expiration Date of Call Option Contract (MM/YY) |
|---|---|---|---|---|---|---|
| | . | | . | | | |
| | . | | . | | | |
| | . | | . | | | |
| | . | | . | | | |
| | . | | . | | | |
| | . | | . | | | |
| | . | | . | | | |
| | . | | . | | | |

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, YOU MUST PHOTOCOPY THIS PAGE AND FILL THIS CIRCLE: ○



3. **SALES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD –** Separately list each and every sale/disposition of the call option contracts listed in #2 above from after the opening of trading on September 12, 2013 through and including the close of trading on July 8, 2015. (Must be documented.)

| Date of Sale (List Chronologically) (MM/DD/YY) | Strike Price of Call Option Contract | Number of Call Option Contracts Sold | Sale Price Per Call Option Contract | Insert "A" if Assigned. Insert "X" if Expired | Expiration Date of Call Option Contract (MM/YY) |
|---|---|---|---|---|---|
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |

4. **ENDING HOLDINGS** – State the total number of call option contracts open after the close of trading on July 8, 2015. If none, write "0" or "Zero." (Must be documented.)

| Strike Price of Call Option Contract | Number of Call Option Contracts Held | Expiration Date of Call Option Contract (MM/YY) |
|---|---|---|
| . | | |
| . | | |
| . | | |
| . | | |

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, YOU MUST PHOTOCOPY THIS PAGE AND FILL THIS CIRCLE: ○



## PART IV. TRANSACTIONS IN EXTREME EXCHANGE-TRADED PUT OPTIONS

1. **BEGINNING HOLDINGS** – State the total number of put option contracts held as of the opening of trading on September 12, 2013. If none, write "0" or "Zero." (Must be documented.)

| Strike Price of Put Option Contract | Number of Put Option Contracts Held | Expiration Date of Put Option Contract (MM/YY) |
|---|---|---|
| . | | |
| . | | |
| . | | |
| . | | |

2. **SALES (WRITING OF PUT OPTIONS) DURING THE CLASS PERIOD –** Separately list each and every sale (writing) of put option contracts from after the opening of trading on September 12, 2013 through and including the close of trading on April 9, 2015. (Must be documented.)

| Date of Sale (Writing) (List Chronologically) (MM/DD/YY) | Strike Price of Put Option Contract | Number of Put Option Contracts Sold (Written) | Sale Price Per Put Option Contract | Insert "E" if Exercised. Insert "X" if Expired | Expiration Date of Put Option Contract (MM/YY) |
|---|---|---|---|---|---|
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |
| | . | | . | | |

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, YOU MUST PHOTOCOPY THIS PAGE AND FILL THIS CIRCLE: ○



3. **RE-PURCHASES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each and every re-purchase of put option contracts listed in #2 above from after the opening of trading on September 12, 2013 through and including the close of trading on July 8, 2015. (Must be documented.)

| Date of Re-Purchase (List Chronologically) (MM/DD/YY) | Strike Price of Put Option Contract | Number of Put Option Contracts Purchased | Purchase Price Per Put Option Contract | Expiration Date of Put Option Contract (MM/YY) |
|---|---|---|---|---|
| | . | | . | |
| | . | | . | |
| | . | | . | |
| | . | | . | |
| | . | | . | |
| | . | | . | |
| | . | | . | |
| | . | | . | |

4. **ENDING HOLDINGS** – State the total number of put option contracts held as of the close of trading on July 8, 2015. If none, write "0" or "Zero." (Must be documented.)

| Strike Price of Put Option Contract | Number of Put Option Contracts Held | Expiration Date of Put Option Contract (MM/YY) |
|---|---|---|
| . | | |
| . | | |
| . | | |
| . | | |

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, YOU MUST PHOTOCOPY THIS PAGE AND FILL THIS CIRCLE: ○



## V. SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

By signing and submitting this Claim Form, the claimant(s) or the person(s) acting on behalf of the claimant(s) certify(ies) that: I (We) submit this Claim Form under the terms of the Plan of Allocation of Net Settlement Fund described in the accompanying Notice. I (We) also submit to the jurisdiction of the United States District Court for the Northern District of California (the "Court") with respect to my (our) claim as a Settlement Class Member(s) and for purposes of enforcing the releases set forth herein. I (We) further acknowledge that I (we) will be bound by the terms of any judgment entered in connection with the Settlement in the Action, including the releases set forth therein. I (We) agree to furnish additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in eligible Extreme Securities, if required to do so. I (We) have not submitted any other claim covering the same transactions in publicly traded Extreme Securities during the alleged Class Period and know of no other person having done so on my (our) behalf.

## VI. RELEASES, WARRANTIES, AND CERTIFICATION

1. I (We) hereby warrant and represent that I am (we are) a Settlement Class Member as defined in the Notice, that I am (we are) not excluded from the Settlement Class, that I am (we are) not one of the "Released Defendant Parties" as defined in the accompanying Notice.

2. As a Settlement Class Member, I (we) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever settle, release, and discharge with prejudice the Released Claims as to each and all of the Released Defendant Parties (as these terms are defined in the accompanying Notice). This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

3. I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

4. I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases, acquisitions and sales and other transactions in publicly traded Extreme Securities that occurred during the Class Period and the number of securities held by me (us), to the extent requested.

5. I (We) certify that I am (we are) NOT subject to backup tax withholding. (If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence.)

I (We) declare that all of the foregoing information supplied by the undersigned is true and correct.

Executed this ________________ day of ___________________________ in _____________________________________________
(Month/Year) (City/State/Country)

________________________________________
Signature of Claimant

________________________________________
(Type or print name of Claimant)

________________________________________
Signature of Joint Claimant, if any

________________________________________
(Type or print name of Joint Claimant, if any)

________________________________________
Signature of person signing on behalf of Claimant

________________________________________
(Type or print name of person signing on behalf of Claimant)

________________________________________
Capacity of person signing on behalf of Claimant, if other than an individual
(e.g., Administrator, Executor, Trustee, President, Custodian, Power of Attorney, etc.)

### REMINDER CHECKLIST:

1. Please sign this Claim Form.
2. DO NOT HIGHLIGHT THE CLAIM FORM OR YOUR SUPPORTING DOCUMENTATION.
3. Attach only copies of supporting documentation as these documents will not be returned to you.
4. Keep a copy of your Claim Form for your records.
5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days. **Your claim is not deemed submitted until you receive an acknowledgment postcard.** If you do not receive an acknowledgment postcard within 60 days, please call the Claims Administrator toll free at (866) 526-6266.
6. If you move after submitting this Claim Form, please notify the Claims Administrator of the change in your address, otherwise you may not receive additional notices or payment.



# Exhibit B

*[Mutual fund performance tables occupy the upper portion of the page. The tables list fund names with columns for "36 Mos IBD Fund Performance Rating", "2019 %Chg", "'12 Wk %Chg", "Net %Chg", and "After Asset Chg / Tax%Value". The dense numeric data is not legibly reproducible.]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

IN RE EXTREME NETWORKS, INC.
SECURITIES LITIGATION

Master File No. 3:15-cv-04883-BLF

CLASS ACTION

This Document Relates to:

All Actions.

SUMMARY NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES

TO: ALL PERSONS AND ENTITIES THAT PURCHASED OR OTHERWISE ACQUIRED THE PUBLICLY TRADED COMMON STOCK AND EXCHANGE-TRADED CALL OPTIONS, AND/OR SOLD PUT OPTIONS, OF EXTREME NETWORKS, INC., DURING THE PERIOD FROM SEPTEMBER 12, 2013 THROUGH APRIL 9, 2015.

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Northern District of California, that Lead Plaintiff Arkansas Teacher Retirement System, on behalf of itself and the proposed Settlement Class, and Extreme Networks, Inc. ("Extreme" or "the Company"), Charles W. Berger, Kenneth B. Arola, and John T. Kurtzweil (collectively, the "Individual Defendants," and with the Company, "Defendants"), have reached a settlement in the above-captioned action (the "Action") in the amount of $7,000,000 in cash (the "Settlement Amount") that, if approved by the Court, will resolve all claims in the Action.

A hearing will be held before the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California in Courtroom 3, 5th Floor, Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113 at 1:30 p.m. on June 20, 2019 to, among other things, determine whether (1) the Settlement should be approved by the Court as fair, reasonable, and adequate; (2) the Plan of Allocation for distribution of the Settlement Amount, and any interest thereon, less Court-awarded attorneys' fees, Notice and Administration Expenses, Taxes, and any other costs, fees, or expenses approved by the Court (the "Net Settlement Fund") should be approved as fair, reasonable, and adequate; and (3) to approve the application of Lead Counsel for an award of attorneys' fees of no more than 25% of the Settlement Fund (or up to $1,750,000) and payment of expenses of no more than $230,000 from the Settlement Fund, which may include the expenses of Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995. The Court may change the date of the Settlement Hearing without providing another notice; You do NOT need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND. If you have not yet received the full Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses (the "Notice") and a Proof of Claim and Release form ("Claim Form"), you may obtain copies of these documents by contacting the Claims Administrator or visiting its website: Extreme Networks, Inc. Securities Litigation, c/o KCC Class Action Services, P.O. Box 505026, Louisville, KY 40233-5026, (866) 526-6266, www.ExtremeNetworksSecuritiesLitigation.com. Inquiries may also be made to Lead Counsel: Labaton Sucharow LLP, Carol C. Villegas, Esq., 140 Broadway, New York, NY 10005, (888) 219-6877, www.labaton.com, settlementquestions@labaton.com.

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form postmarked or received no later than June 6, 2019. If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice such that it is received no later than May 23, 2019. If you are a Settlement Class Member and do not exclude yourself from the Settlement Class, you will be bound by any judgments or orders entered by the Court in the Action.

Any objections to the Settlement, Plan of Allocation, and/or Lead Counsel's Fee and Expense Application must be filed with the Court in accordance with the instructions set forth in the Notice such that they are postmarked or filed no later than May 23, 2019.

PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.

Dated: April 8, 2019

BY ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARKETSMITH BY INVESTOR'S BUSINESS DAILY

WEBINAR

BECOMING A MARKETSMITH

Serious investors use the full suite of analysis tools available. Let our product coaches answer your questions about our platform and the finer points of stock research.

Tuesday, April 9, 2019
9am PT / 12pm ET | investors.com/mswebinars

© 2019 Investor's Business Daily, Inc. Investor's Business Daily, IBD, CAN SLIM, Leaderboard and corresponding logos are registered trademarks owned by Investor's Business Daily, Inc. MarketSmith is a registered trademark of MarketSmith, Incorporated.



Three days of investing insights. Five tracks.

#MICUS

The full agenda for the Morningstar® Investment Conference is now available. This year you'll hear from keynote speakers including AQR founder Cliff Asness, PIMCO CEO Emmanuel Roman, Franklin Templeton CIO Sonal Desai, venture capitalist Morgan Housel, presidential historian Doris Kearns Goodwin, T. Rowe Price portfolio manager David Giroux, Hartford Healthcare Fund's Jean M. Hynes, Morningstar CEO Kunal Kapoor, Morningstar CIO Daniel Needham, and master life coach Boyd Varty. Please join us May 8–10 in Chicago.

Visit go.morningstar.com/IBD50 or call +1 866 839-9729 to learn more.
Register with promo code IBD50 to save $50.

#MICUS

MORNINGSTAR

©2019 Morningstar, Inc. All rights reserved. The Morningstar name and logo are trademarks of Morningstar, Inc.




**From:** sfhubs@prnewswire.com
**Subject:** PR Newswire: Press Release Distribution Confirmation for Labaton Sucharow LLP. ID#2417815-1-1
**Date:** Monday, April 8, 2019 8:00:11 AM

Hello

Your press release was successfully distributed at: 08-Apr-2019 08:00:00 AM ET

Release headline: Labaton Sucharow LLP Announces Proposed Settlement in the Extreme Networks Securities Litigation
Word Count: 804
Product Selections:
US1
Visibility Reports Email
Complimentary Press Release Optimization
PR Newswire ID: 2417815-1-1

View your release:* http://www.prnewswire.com/news-releases/labaton-sucharow-llp-announces-proposed-settlement-in-the-extreme-networks-securities-litigation-300820830.html?tc=eml_cleartime

Thank you for choosing PR Newswire!

Regards,

Your 24/7 Content Services Team
888-776-0942
PRNCS@prnewswire.com

Achieve your communications goals every time you distribute content, with these tips for crafting your next perfect press release: https://www.cision.com/us/resources/tip-sheets/easy-pr-sharing-guide/?sf=false

US Members, find audience, engagement and other key metrics for your release by accessing your complimentary Visibility Reports in the Online Member Center: https://portal.prnewswire.com/Login.aspx

* If the page link does not load immediately, please refresh and try again after a few minutes.



Resources
Blog
Journalists
Log In
Sign Up
GDPR
Send a Release
CISION
PR Newswire
News
Products
Contact
Search
News in Focus
Business & Money
Science & Tech
Lifestyle & Health
Policy & Public Interest
People & Culture

# Labaton Sucharow LLP Announces Proposed Settlement in the Extreme Networks Securities Litigation

NEWS PROVIDED BY
**Labaton Sucharow LLP →**
Apr 08, 2019, 08:00 ET

SHARE THIS ARTICLE

SAN FRANCISCO, April 8, 2019 /PRNewswire/ -- The following statement is being issued by Labaton Sucharow LLP regarding the Extreme Networks Securities Litigation:

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE EXTREME NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | Master File No. 3:15-cv-04883-BLF<br><br>CLASS ACTION<br><br>SUMMARY NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES |

**TO: ALL PERSONS AND ENTITIES THAT PURCHASED OR OTHERWISE ACQUIRED THE PUBLICLY TRADED COMMON STOCK AND EXCHANGE-TRADED CALL OPTIONS, AND/OR SOLD PUT OPTIONS, OF EXTREME NETWORKS, INC., DURING THE PERIOD FROM SEPTEMBER 12, 2013 THROUGH APRIL 9, 2015.**

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Northern District of California, that Lead Plaintiff Arkansas Teacher Retirement System, on behalf of itself and the proposed Settlement Class, and Extreme Networks, Inc. ("Extreme" or "the Company"), Charles W. Berger, Kenneth B. Arola, and John T. Kurtzweil (collectively, the "Individual Defendants," and with the Company, "Defendants"), have reached a settlement in the above-captioned action (the "Action") in the amount of $7,000,000 in cash (the "Settlement Amount") that, if approved by the Court, will resolve all claims in the Action.[1]

A hearing will be held before the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California in Courtroom 3, 5th Floor, Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113 at **1:30 p.m. on June 20, 2019** to, among other things, determine whether (1) the Settlement should be approved by the Court as fair, reasonable, and adequate; (2) the Plan of Allocation for distribution of the Settlement Amount, and any interest thereon, less Court-awarded attorneys' fees, Notice and Administration Expenses, Taxes, and any other costs, fees, or expenses approved by the Court (the "Net Settlement Fund") should be approved as fair, reasonable, and adequate; and (3) to approve the application of Lead Counsel for an award of attorneys' fees of no more than 25% of the Settlement Fund (or up to $1,750,000) and payment of expenses of no more than $230,000 from the Settlement Fund, which may include the expenses of Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995. The Court may change the date of the Settlement Hearing without providing another notice. You do NOT need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, **YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT** AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND. If you have not yet received the full Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses (the "Notice") and a Proof of Claim and Release form ("Claim Form"), you may obtain copies of these documents by contacting the Claims Administrator or visiting its website: *Extreme Networks, Inc. Securities Litigation*, c/o KCC Class Action Services, P.O. Box 505026, Louisville, KY 40233-5026, (866) 526-6266, www.ExtremeNetworksSecuritiesLitigation.com. Inquiries may also be made to Lead Counsel: Labaton Sucharow LLP, Carol C. Villegas, Esq., 140 Broadway, New York, NY 10005, (888) 219-6877, www.labaton.com, settlementquestions@labaton.com.

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form ***postmarked or received no later than June 6, 2019***. If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice such that it is ***received no later than May 23, 2019***. If you are a Settlement Class Member and do not exclude yourself from the Settlement Class, **you will be bound** by any judgments or orders entered by the Court in the Action.

Any objections to the Settlement, Plan of Allocation, and/or Lead Counsel's Fee and Expense Application must be filed with the Court in accordance with the instructions set forth in the Notice such that they are ***postmarked or filed no later than May 23, 2019***.

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS,**
**OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

Dated: April 8, 2019 BY ORDER OF THE UNITED STATES DISTRICT COURT FORTHE NORTHERN DISTRICT OF CALIFORNIA

[1] The complete terms of the Settlement are in the Stipulation and Agreement of Settlement, dated November 30, 2018,



which can be viewed at www.ExtremeNetworksSecuritiesLitigation.com.

SOURCE Labaton Sucharow LLP

## Also from this source

**Labaton Sucharow Whistleblower Awarded $13 Million for Reporting...**

**Labaton Sucharow LLP Announces a Notice of Pendency of Class...**

## Explore

More news releases in similar topics

All Financial Services

Mutual Funds

You just read:

# Labaton Sucharow LLP Announces Proposed Settlement in the Extreme Networks Securities Litigation

NEWS PROVIDED BY
**Labaton Sucharow LLP →**
Apr 08, 2019, 08:00 ET

SHARE THIS ARTICLE

https://www.prnewswire.com/news-releases/labaton-sucharow-llp-announces-proposed-settlement-in-the-extreme-n

Contact PR Newswire
888-776-0942
from 8 AM - 10 PM ET
Chat Online with an Expert
Contact Us

Products
Cision Communication Cloud®
For Marketers
For Public Relations
For IR & Compliance
For Agency
For Small Business
All Products

About
About PR Newswire
About Cision
Become a Publishing Partner
Become a Channel Partner
Careers
Global Sites

My Services
All New Releases
Online Member Center
ProfNet℠

Terms of Use | Privacy Policy | Information Security Policy | Site Map | RSS | Cookie Settings

Copyright © 2019 PR Newswire Association LLC. All Rights Reserved. A Cision company.