# Exhibit 4

**LABATON SUCHAROW LLP**
Carol C. Villegas (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: cvillegas@labaton.com
        acoquin@labaton.com

*Attorneys for Lead Plaintiff and Lead Counsel
for the Class*

**BERMAN TABACCO**
Nicole Lavallee (SBN 165755)
A. Chowning Poppler (SBN 272870)
44 Montgomery Street, Ste. 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        cpoppler@bermantabacco.com

*Liaison Counsel for the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re EXTREME NETWORKS, INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | Master File No. 5:15-cv-04883-BLF-SVK<br><br>**DECLARATION OF NICOLE LAVALLEE FILED ON BEHALF OF BERMAN TABACCO IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**<br><br>Date:   June 20, 2019  1:30 p.m.<br>Dept.:   Courtroom 4, 5th Floor<br>Judge:  Hon. Beth Labson Freeman |

I, NICOLE LAVALLEE, declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.      I am the managing partner of the San Francisco office of Berman Tabacco.  I submit this declaration in support of Lead Counsel's motion for an award of attorneys' fees and payment of expenses, on behalf of all Plaintiffs' Counsel who contributed to the prosecution of the claims in the above-captioned action (the "Action"), from inception through April 15, 2019 (the "Time Period").  I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.      My firm, which served as Liaison Counsel in the Action, advised Lead Counsel Labaton Sucharow LLP on various matters throughout the litigation, which are described in detail in the Declaration of Carol C. Villegas in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, submitted herewith.

3.      The information in this declaration regarding my firm's time and expenses is taken from time and expense reports and supporting documentation prepared and/or maintained by the firm in the ordinary course of business.  These reports were reviewed by me, in connection with the preparation of this declaration.   As a result of this review, reductions were made to time in the exercise of billing judgment.  As a result of this review and the adjustments made, I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as set forth in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.  In addition, I believe that the expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

4.      After the reductions referred to above, the schedule attached hereto as Exhibit A is a summary indicating the amount of time spent by the attorneys and professional support staff members of my firm who were involved in the prosecution of the Action and the lodestar calculation based on my firm's current rates.  For personnel who are no longer employed by my

firm, the lodestar calculation is based upon the rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.  Time expended in preparing this application for fees and payment of expenses has not been included in this request.

5.     The hourly rates for the attorneys and professional support staff of my firm included in Exhibit A are their usual and customary rates.

6.     The total number of hours expended on this litigation by my firm during the Time Period is 123.10 hours.  The total lodestar for my firm for those hours is $70,142.00.

7.     Attached as Exhibit B is a task-based summary of the work performed by the attorneys and professional staff members who performed services in this Action.

8.     My firm's lodestar figures are based upon the firm's hourly rates, which rates do not include charges for expense items.  Expense items are recorded separately and are not duplicated in my firm's hourly rates.

9.     As detailed in Exhibit C, my firm has incurred a total of $2,552.13 in expenses and charges in connection with the prosecution of the litigation.  These expenses and charges are summarized by category in Exhibit C.

10.    The following is additional information regarding certain of my firm's expenses:

(a)     Filing, Witness and Other Fees: $915.00.  These expenses have been paid to courts in connection with *pro hac vice* motions.

(b)     Work-Related Transportation, Hotels & Meals: $95.30.  In connection with the prosecution of this case, the firm has paid for work-related transportation expenses, meals and travel expenses related to, among other things, attending court conferences and hearings.

(c)     Court Hearing and Deposition Reporting: $276.25.  These expenses have been paid to court reporters in connection with transcripts of court hearings or to court reporting services, in connection with the depositions taken in the Action.

1         (d)    Online Legal and Factual Research: $47.41.  The firm conducted research

2    using databases maintained by vendors such as PACER, Bloomberg and Westlaw.  These

3    databases were used to obtain access to financial information, factual information, and to

4    conduct legal research.  This expense represents the expense incurred by my firm for use of these

5    services in connection with this litigation.  The charges for these vendors vary depending upon

6    the type of services requested.

7        11.    The expenses pertaining to the Action are reflected on the books and records of

8    my firm.  These books and records are prepared from expense vouchers, check records and other

9    source materials and are an accurate record of the expenses.

10       12.    With respect to the standing of my firm, attached hereto as Exhibit D is a

11   biography of my firm, as well as biographies of the firm's attorneys who worked on this

12   litigation and who are currently employed by the firm.

13       I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3rd

14   day of May, 2019, at San Francisco.

15

16

17                                       NICOLE LAVALLEE

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

**EXHIBIT A**

*IN RE EXTREME NETWORKS, INC. SEC. LITIG.*

**Berman Tabacco**

**Inception through April 15, 2019**

| *NAME* | | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|
| Beaulieu, Karen | FA | 1.00 | $395.00 | $395.00 |
| Becker, Kathy | PL | 20.70 | $370.00 | $7,659.00 |
| Giblin, Wendy (former) | OC | 14.30 | $615.00 | $8,794.50 |
| Lavallee, Nicole | P | 19.50 | $920.00 | $17,940.00 |
| Poppler, Chowning | A | 63.30 | $525.00 | $33,232.50 |
| Scarsciotti, Jeannine | FA | .80 | $505.00 | $404.00 |
| Soboleva, Yelena | PL | 2.20 | $225.00 | $495.00 |
| Tabacco, Joseph | P | 1.30 | $940.00 | $1,222.00 |
| **TOTAL** | | **123.10** | | **$70,142.00** |

| | | | |
|---|---|---|---|
| Partner | (P) | Financial Analyst | (FA) |
| Of Counsel | (OC) | Investigator | (I) |
| Associate | (A) | Paralegal | (PL) |

**Exhibit B**

**EXHIBIT B**

*IN RE EXTREME NETWORKS INC. SEC. LITIG.*

**Berman Tabacco**

**Inception through April 15, 2019**

Categories:
(1) Factual Investigation        (6) Court Appearances
(2) Pleadings                    (7) Experts/Consultants
(3) Discovery                    (8) Settlement
(4) Case Management              (9) Litigation Strategy/Analysis
(5) Motions and Legal Research

| Name | Status | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | Total Hours | Rate | Total Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beaulieu, Karen | FA | 1.00 | | | | | | | | | 1.00 | $395.00 | $395.00 |
| Becker, Kathy | PL | 1.80 | 18.30 | | | | | | 0.60 | | 20.70 | $370.00 | $7,659.00 |
| Giblin, Wendy | OC | 14.30 | | | | | | | | | 14.30 | $615.00 | $8,794.50 |
| Lavallee, Nicole | P | 1.90 | 4.10 | | | | 5.50 | | 6.50 | 1.50 | 19.50 | $920.00 | $17,940.00 |
| Poppler, Chowning | A | 0.10 | 26.70 | | | | 33.00 | | 1.50 | 2.00 | 63.30 | $525.00 | $33,232.50 |
| Scarsciotti, Jeannine | FA | 0.80 | | | | | | | | | 0.80 | $505.00 | $404.00 |
| Soboleva, Yelena | PL | 0.30 | 1.90 | | | | | | | | 2.20 | $225.00 | $495.00 |
| Tabacco, Joseph | P | | | | | | | | 1.30 | | 1.30 | $940.00 | $1,222.00 |
| **TOTAL:** | | 20.20 | 51.00 | 0.00 | 0.00 | 0.00 | 38.50 | 0.00 | 9.90 | 3.50 | 123.10 | | $70,142.00 |

Partner (P)            Financial Analyst (FA)
Of Counsel (OC)        Investigator (I)
Associate (A)          Paralegal (PL)

**Exhibit C**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT C**

*IN RE EXTREME NETWORKS, INC. SEC. LITIG.*

**Berman Tabacco**

**Inception through April 15, 2019**

| *CATEGORY* | *AMOUNT* |
|---|---|
| Filing, Witness and Other Fees | $915.00 |
| Work-Related Transportation, Hotels & Meals | $95.30 |
| Long-Distance Telephone, Facsimile and Conference Calling | $0.00 |
| Messenger, Overnight Delivery | $697.85 |
| Court Hearing and Deposition Reporting | $276.25 |
| Experts/Consultants | $0.00 |
| Duplicating | $520.32 |
| Online Legal and Factual Research | $47.41 |
| Litigation Support | $0.00 |
| Research Materials | $0.00 |
| *TOTAL* | $2,552.13 |

**Exhibit D**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT D**

*IN RE EXTREME NETWORKS, INC. SEC. LITIG.*

**Berman Tabacco**

FIRM RESUME



## THE FIRM

Berman Tabacco is a national law firm with 35 attorneys located in offices in Boston and San Francisco. Since its founding in 1982, the firm has devoted its practice to complex litigation, primarily representing plaintiffs seeking redress under U.S. federal and state securities and antitrust laws.

Over the past three-and-a-half decades, Berman Tabacco's attorneys have prosecuted hundreds of class actions, recovering billions of dollars on behalf of the firm's clients and the classes they represented.  In addition to financial recoveries, the firm has achieved significant changes in corporate governance and business practices of defendant companies.  Indeed, the firm appears as among the firms with the most settlements on the list of the top 100 largest securities class actions in SCAS' published report, *Top 100 U.S. Class Action Settlements of All Time (as of 12/31/2017)*.  According to ISS Securities Class Action Services' "Top 50 for 2015" report, Berman Tabacco was one of only six firms that recovered more than half-a-billion dollars for investors in 2015.[1]  SCAS similarly ranked the firm among the few that obtained over half-a-billion in settlements in 2004 and 2009, and ranked the firm 3rd in terms of settlement averages for class actions in 2009, 2010 and 4th in 2004 (SCAS ceased rankings according to settlement sizes in 2012). The firm currently holds leadership positions in securities and antitrust cases around the country.

Berman Tabacco is rated AV Preeminent® by *Martindale-Hubbell*®.  *Benchmark Litigation* ranked the firm as a "Top Ten Plaintiffs' Firm" for its work "on behalf of individuals and institutions who have suffered financial harm due to violations of securities or antitrust laws" in its 2017 10th Anniversary edition, as well as a "Top Plaintiffs" firm in its 2018 and 2019 editions (only seven firms were so named).  *Benchmark Litigation* also ranked the firm as "Highly Recommended" in 2019 – the eighth time the firm has received that distinction.[2]  *The Legal 500* also ranked the firm as "recommended" in securities litigation in its 2017 and 2018 U.S. editions (as well as ranking seven of the firm's attorneys in the same category each year). Additionally, *Chambers USA* nationwide edition recognized the firm in the Securities Litigation – Mainly Plaintiff category in 2017 and 2018.  In addition, the firm was recently recognized in litigation – antitrust by *U.S. News – Best Lawyers* in its *Best Law Firms* (2019 ed.).  Berman Tabacco's lawyers are frequently singled out for favorable comments by our clients, presiding judges and opposing counsel.  For examples, please see:

## SECURITIES PRACTICE

Berman Tabacco has more than 37 years of experience in securities litigation and has represented public pension funds and other institutional investors in this area since 1998.  As reported by Cornerstone Research, the firm has successfully prosecuted some of the most significant shareholder class action

---

[1] ISS's report "lists the top 50 plaintiffs' law firms ranked by the total dollar value of the final class action settlements occurring in 2015 in which the law firm served as lead or co-lead counsel."  ISS Securities Class Action Services, *Top 50 for 2015* (May 2016).

[2] *See* https://www.benchmarklitigation.com/firms/berman-tabacco/f-195.



lawsuits.[3]  Indeed, the firm appears as among the firms with the most settlements on the list of the top 100 largest securities class actions in SCAS' published report, *Top 100 U.S. Class Action Settlements of All Time (as of 12/31/2017)*.  According to the most recent ISS Securities Class Action Services "Top 50 for 2015" report, Berman Tabacco was one of only six firms that recovered more than half-a-billion dollars for investors in 2015.[4]  SCAS similarly ranked the firm among the few that obtained over half-a-billion in settlements in 2004 and 2009, and ranked the firm 3rd in terms of settlement averages for class actions in 2009, 2010 and 4th in 2004 (SCAS ceased rankings according to settlement sizes in 2012).

Specifically, the firm has been appointed lead or co-lead counsel in more than 100 actions, recovering billions of dollars on behalf of defrauded investors and the classes they represent under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The firm has an extremely rigorous case-evaluation process and highly experienced litigation attorneys.  Its dismissal rate for cases brought under the PSLRA is less than half the overall dismissal rate for such cases according to one authoritative study.[5]

Berman Tabacco serves as monitoring, evaluation and/or litigation counsel to nearly 100 institutional investors, including statewide public employee retirement systems in more than 17 states, 15 public funds with more than $50 billion in assets, six of the 10 largest public pension plans in the country and 12 of the largest 20.[6]  For many institutional investors, the firm's services include electronically monitoring the client's portfolio for losses due to securities fraud in U.S. securities cases.

The firm provides portfolio monitoring, case evaluation and litigation services to its institutional clients, including the litigation of class and individual claims pursuant to U.S. federal and state securities laws, as well as derivative cases pursuant to state law.  The firm also offers institutional investors legal services in other areas, including (a) representing institutional investors in general commercial litigation; (b) representing institutional investors in their capacity as defendants in constructive fraudulent transfer cases; (c) negotiating resolution of disputes with money managers and custodians; and (d) pursuing shareholder rights, such as books and records demands and merger and acquisition cases.

---

[3] Cornerstone Research, *Securities Class Action Filings: 2011 Year in Review* (2012), at p. 23, *available at http://securities.stanford.edu/research-reports/1996-2011/Cornerstone-Research-Securities-Class-Action-Filings-2011-YIR.pdf*.

[4] ISS's report "lists the top 50 plaintiffs' law firms ranked by the total dollar value of the final class action settlements occurring in 2015 in which the law firm served as lead or co-lead counsel."  ISS Securities Class Action Services, *Top 50 for 2015* (May 2, 2016).

[5]  Firm data reflects dismissal rates through present.  Overall dismissal rates come from *Securities Class Action Filings: 2017 Year in Review*, p. 15 (Cornerstone Research 2017), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2017-YIR.

[6] Based on an May 2018 query of the Standard & Poor's Money Market Directories, *www.mmdwebaccess.com*, whereby public pension funds were ranked according to defined benefit assets under management.  Actual valuation dates vary.



Firm Resume

## RESULTS

## SECURITIES SETTLEMENTS

Examples of the firm's settlements include:

*Carlson v. Xerox Corp.*, No. 00-cv-1621 (D. Conn.).  Representing the Louisiana State Employees' Retirement System as co-lead counsel, Berman Tabacco negotiated a $750 million settlement to resolve claims of securities fraud against Xerox, certain top officers and its auditor KPMG LLP.  When it received final court approval in January 2009, the recovery was the 10th largest securities class action settlement of all time.  The judge praised plaintiffs' counsel for obtaining "a very large settlement" despite vigorous opposition in a case complicated by an alleged fraud that "involved multiple accounting standards that touched on numerous aspects of a multinational corporation's business, implicated operating units around the world, and spanned five annual reporting periods. … [and] the rudiments of the accounting principles at issue in the case were complex, as were numerous other aspects of the case. … The class received high-quality legal representation and obtained a very large settlement in the face of vigorous opposition by highly experienced and skilled defense counsel."

*In re IndyMac Mortgage-Backed Litigation*, No. 09-cv-4583 (S.D.N.Y.).  Representing the Wyoming State Treasurer's Office and the Wyoming Retirement System as lead plaintiffs, Berman Tabacco achieved settlements totaling $346 million in a case regarding the securitization and sale of mortgage-backed securities ("MBS") by IndyMac Bank and related entities.  In February 2015, the court approved a $340 million settlement with six underwriters of IndyMac MBS offerings, adding to a previous $6 million partial settlement and making the total recovery one of the largest MBS class action settlements to date.  This settlement is extraordinary, not only because of its size but also because $340 million of the settlement amount was paid entirely by underwriters who had due diligence defenses.  In most other MBS cases, by contrast, plaintiffs were able to recover the settlement fund monies from the issuing entities, who are held to a strict liability standard for which there is no due diligence defense.  (The issuer in this action, IndyMac Bank, is no longer in existence.)

*In re Bristol-Myers Squibb Securities Litigation*, No. 02-cv-2251 (S.D.N.Y.).  Berman Tabacco represented the Fresno County Employees' Retirement Association and Louisiana State Employees' Retirement System as co-lead plaintiffs and negotiated a settlement of $300 million in July 2004.  At that time, the settlement was the largest by a drug company in a U.S. securities fraud case.

*In re The Bear Stearns Cos. Inc. Securities, Derivative and ERISA Litigation*, Master File No. 08-MDL No. 1963/08 Civ. 2793 (S.D.N.Y).  Berman Tabacco acted as co-lead counsel for court-appointed lead plaintiff the State of Michigan Retirement Systems in this case arising from investment losses suffered in the Bear Stearns Companies' 2008 collapse. The firm negotiated $294.9 million in settlements, comprised of $275 million from Bear Stearns and $19.9 million from auditor Deloitte & Touche LLP. The settlement received final approval November 9, 2012.  At the time, the settlement for $294.9 million represented one of the 40 largest securities class action settlements under the PSLRA.  This is particularly significant in light of the fact that no government entity had pursued actions or claims against Bear Stearns or its former officers and directors related to the same conduct complained of in the firm's action.



*In re El Paso Securities Litigation*, No. H-02-2717 (S.D. Tex.).  Representing the Oklahoma Firefighters Pension and Retirement System as co-lead plaintiff, Berman Tabacco helped negotiate a settlement totaling $285 million, including $12 million from auditors PricewaterhouseCoopers.  The court granted final approval of the settlement in March 2007.

*California Public Employees' Retirement System v. Moody's Corp.*, No. CGC-09-490241 (Cal. Super. Ct. San Francisco Cty.).  As lead counsel representing the California Public Employees' Retirement System (CalPERS), the firm negotiated a combined $255 million settlement with the credit rating agencies Moody's and Standard & Poor's to settle CalPERS' claim that "Aaa" ratings on three structured investment vehicles were negligent misrepresentations under California law.  In addition to obtaining a substantial recovery for investment losses, this case was groundbreaking in that (a) the settlements rank as the largest known recoveries from Moody's and S&P in a private lawsuit for civil damages, and (b) it resulted in a published appellate court opinion finding that rating agencies can, in certain circumstances, be liable for negligent misrepresentations under California law for their ratings of privately-placed securities.

*In re Centennial Technologies Securities Litigation*, No. 97-cv-10304 (D. Mass.).  Berman Tabacco served as sole lead counsel in a class action involving a massive accounting scandal that shot down the company's high-flying stock.  Berman Tabacco negotiated a settlement that permitted a turnaround of the company and provided a substantial recovery for class members.  The firm negotiated changes in corporate practice, including strengthening internal financial controls and obtaining 37% of the company's stock for the class. The firm also recovered $20 million from Coopers & Lybrand, Centennial's auditor at the time.  In addition, the firm recovered $2.1 million from defendants Jay Alix & Associates and Lawrence J. Ramaekers for a total recovery of more than $35 million for the class.  The firm subsequently obtained a $207 million judgment against former Centennial CEO Emanuel Pinez.

*In re Digital Lightwave Securities Litigation*, No. 98-152-cv-T-24C (M.D. Fla.).  As co-lead counsel, Berman Tabacco negotiated a settlement that included changing company management and strengthening the company's internal financial controls.  The class received 1.8 million shares of freely tradable common stock that traded at just below $4 per share when the court approved the settlement.  At the time the shares were distributed to the members of the class, the stock traded at approximately $100 per share and class members received more than 200% of their losses after the payment of attorneys' fees and expenses.  The total value of the settlement, at the time of distribution, was almost $200 million.

*In re Lernout & Hauspie Securities Litigation*, No. 00-11589 (D. Mass.), and *Quaak v. Dexia, S.A.*, No. 03-11566 (D. Mass.).  In December 2004, as co-lead counsel, Berman Tabacco negotiated what was then the third-largest settlement ever paid by accounting firms in a securities class action – a $115 million agreement with the U.S. and Belgian affiliates of KPMG International.  The case stemmed from KPMG's work for Lernout & Hauspie Speech Products, a software company driven into bankruptcy by a massive fraud.  In March 2005, the firm reached an additional settlement worth $5.27 million with certain of Lernout & Hauspie's former top officers and directors.  In the related *Quaak* case, the firm negotiated a $60 million settlement with Dexia Bank Belgium to settle claims stemming from the bank's alleged role in the fraudulent scheme at Lernout & Hauspie.  The court granted final approval of the Dexia settlement in June 2007, bringing the total settlement value to more than $180 million.



Firm Resume

*In re BP PLC Securities Litigation*, No. 10-md-2185 (S.D. Tex.).  The firm was co-lead counsel representing co-lead plaintiff Ohio Public Employees Retirement System.  Lead plaintiffs reached a $175 million settlement to resolve claims brought on behalf of a class of investors who purchased BP's American Depositary Shares ("ADS") between April 26, 2010 and May 28, 2010.  The action alleged that BP and two of its former officers made false and misleading statements regarding the severity of the Gulf of Mexico oil spill.  More specifically, plaintiffs alleged that BP misrepresented that its best estimate of the oil spill flow rate was from 1,000 to 5,000 barrels of oil per day, when internal BP estimates showed substantially higher potential flow rates.  On February 13, 2017, the court granted final approval of the settlement, ending more than six years of hard fought litigation that included extensive fact and expert discovery, multiple rounds of briefing on defendants' motions to dismiss, two rounds of briefing on class certification, a successful defense of BP's appeal of the district court's class certification decision and briefing on cross-motions for summary judgment.  This settlement reportedly represents one of only four mega securities class action settlements (settlements of $100 million or more) in 2017.  *See Securities Class Action Settlements—2017 Review and Analysis*, p. 4 (Cornerstone Research 2018), *https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis*.  It was also listed as the highest valued settlement during the first half of 2017 by ISS Securities Class Action Services.  *See ISS Securities Class Action Services, Top 100 U.S. Class Action Settlements of All Time as of Dec. 31, 2017* (2018), p. 2, *available at https://www.bermantabacco.com/wp-content/uploads/2018/03/SCAS-Top-100-Settlements-of-All-Time-2017-12-31.pdf*.

*In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-7831 (S.D.N.Y.). As co-lead counsel representing the Massachusetts Pension Reserves Investment Management Board, a co-lead plaintiff for the common stock class, Berman Tabacco helped negotiate a $170 million settlement with Fannie Mae.  To achieve the settlement, which was approved in March 2015, plaintiffs had to overcome the challenges posed by the federal government's placement of Fannie Mae into conservatorship and by the Second Circuit's upholding of dismissal of similar claims against Freddie Mac, Fannie Mae's sibling Government-Sponsored Enterprise.

*In re Symbol Technologies, Inc. Securities Litigation*, No. 2:02-cv-01383 (E.D.N.Y.).  Berman Tabacco represented the Louisiana Municipal Police Employees' Retirement System as co-lead plaintiff, obtaining a $139 million partial settlement in June 2004.  Subsequently, Symbol's former auditor, Deloitte & Touche LLP, agreed to pay $24 million, bringing the total settlement to $163 million.  The court granted final approval in September 2006.

*In re Prison Realty Securities Litigation*, No. 3:99-cv-0452 (M.D. Tenn.) (*In re Old CCA Securities Litigation*, No. 3:99-cv-0458).  The firm represented the former shareholders of Corrections Corporation of America, which merged with another company to form Prison Realty Trust, Inc. The action charged that the registration statement issued in connection with the merger contained untrue statements.  Overcoming arguments that the class' claims of securities fraud were released in prior litigation involving the merger, the firm successfully defeated the motions to dismiss.  It subsequently negotiated a global settlement of approximately $120 million in cash and stock for this case and other related litigation.

*Oracle Cases*, Coordination Proceeding, Special Title (Rule 1550(b)) No. 4180 (Cal. Super. Ct. San Mateo Cty.).  In this coordinated derivative action, Oracle Corporation shareholders alleged that the company's Chief Executive Officer, Lawrence J. Ellison, profited from illegal insider trading.  Acting as co-lead counsel, the firm reached a settlement, pursuant to which Mr. Ellison would personally make charitable donations of



$100 million over five years in Oracle's name to an institution or charity approved by the company and pay $22 million in attorneys' fees and expenses associated with the prosecution of the case.  The innovative agreement, approved by a judge in December 2005, benefited Oracle through increased goodwill and brand recognition, while minimizing concerns that would have been raised by a payment from Mr. Ellison to the company, given his significant ownership stake.  The lawsuit resulted in important changes to Oracle's internal trading policies that decrease the chances that an insider will be able to trade in possession of material, non-public information.

*In re International Rectifier Securities Litigation*, No. 07-cv-2544 (C.D. Cal.).  As co-lead counsel representing the Massachusetts Laborers' Pension Fund, the firm negotiated a $90 million settlement with International Rectifier Corporation and certain top officers and directors.  The case alleged that the company engaged in numerous accounting improprieties to inflate its financial results.  The court granted final approval of the settlement in February 2010.  At the settlement approval hearing, the Honorable John F. Walter, the presiding judge, praised counsel, stating:  "I think the work by the lawyers – all the lawyers in this case – was excellent. … In this case, the papers were excellent.  So it makes our job easier and, quite frankly, more interesting when I have lawyers with the skill of the lawyers that are present in the courtroom today who have worked on this case … the motion practice in this case was, quite frankly, very intellectually challenging and well done. … I've presided over this consolidated action since its commencement and have nothing but the highest respect for the professionalism of the attorneys involved in this case. … The fact that plaintiffs' counsel were able to successfully prosecute this action against such formidable opponents is an impressive feat."

*In re State Street Bank & Trust Co. ERISA Litigation*, No. 07-cv-8488 (S.D.N.Y.).  The firm acted as co-lead counsel in this consolidated class action case, which alleged that defendant State Street Bank and Trust Company and its affiliate, State Street Global Advisors, Inc., (collectively, "State Street") breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to prudently manage the assets of ERISA plans invested in State Street fixed income funds during 2007.  After well over a year of litigation, during which Berman Tabacco and its co-counsel reviewed approximately 13 million pages of documents and took more than 30 depositions, the parties negotiated an all-cash $89.75 million settlement, which received final approval in 2010.

*In re Philip Services Corp. Securities Litigation*, No. 98-cv-0835 (S.D.N.Y.  As co-lead counsel, Berman Tabacco negotiated settlements totaling $79.75 million with the bankrupt company's former auditors, top officers, directors and underwriters.  The case alleged that Philip Services and its top officers and directors made false and misleading statements regarding the company's publicly reported revenues, earnings, assets and liabilities. The district court initially dismissed the claims on grounds of *forum non conveniens*, but the firm successfully obtained a reversal by the United States Court of Appeals for the Second Circuit. The court granted final approval of the settlements in March 2007.

*In re Reliant Securities Litigation*, No. 02-cv-1810 (S.D. Tex.).  As lead counsel representing the Louisiana Municipal Police Employees' Retirement System, the firm negotiated a $75 million cash settlement from the company and Deloitte & Touche LLP.  The settlement received final approval in January 2006.

*In re KLA-Tencor Corp. Securities Litigation*, No. 06-cv-04065 (N.D. Cal.).  Representing co-lead plaintiff Louisiana Municipal Police Employees' Retirement System, Berman Tabacco negotiated a $65 million



agreement to settle claims that KLA-Tencor illegally backdated stock option grants, issued false and misleading statements regarding grants to key executives and inflated the company's financial results by understating expenses associated with the backdated options.  The court granted final approval of the settlement in 2008.  At the conclusion of the case, Judge Charles R. Breyer praised plaintiffs' counsel for "working very hard" in exchange for an "extraordinarily reasonable" fee, stating: "I appreciate the fact that you've done an outstanding job, and you've been entirely reasonable in what you've done.  Congratulations for working very hard on this."

*City of Brockton Retirement System v. Avon Products Inc.*, No. 11-cv-04665 (S.D.N.Y.).  As a member of the executive committee representing named plaintiffs City of Brockton Retirement System and Louisiana Municipal Police Employees' Retirement System, the firm negotiated a $62 million settlement.  The action alleged that Avon Products, Inc. violated federal securities laws by failing to disclose to investors the size and scope of the Company's violations of the Foreign Corrupt Practices Act of 1977 ("FCPA").  In response to Avon's piecemeal disclosures over the course of more than a year, which ultimately revealed the true extent of the FCPA violations, the company's stock lost nearly 20% of its pre-disclosure value.  This case was one of the very few successful securities cases premised on FCPA violations.

*Ehrenreich v. Witter*, No. 95-cv-6637 (S.D. Fla.).  The firm was co-lead counsel in this case involving Sensormatic Electronics Corp., which resulted in a settlement of $53.5 million.  When it as approved in 1998, the settlement was one of the largest class action settlements in the state of Florida.

*In re Thomas & Betts Securities Litigation*, No. 2:00-cv-2127 (W.D. Tenn.).  The firm served as co-lead counsel in this class action, which settled for more than $51 million in 2004.  Plaintiffs had accused the company and other defendants of issuing false and misleading financial statements for 1996, 1997, 1998, 1999 and the first two quarters of 2000.

*In re Enterasys Networks, Inc. Securities Litigation*, No. C-02-071-M (D.N.H.).  Berman Tabacco acted as sole lead counsel in a case against Enterasys Networks, Inc., in which the Los Angeles County Employees Retirement Association was lead plaintiff.  The company settled in October 2003 for $17 million in cash, stock valued at $33 million and major corporate governance improvements that opened the computer networking company to greater public scrutiny.  Changes included requiring the company to back a proposal to eliminate its staggered board of directors, allowing certain large shareholders to propose candidates to the board and expanding the company's annual proxy disclosures.  The settlement received final court approval in December 2003.

*Giarraputo v. UNUMProvident Corp.*, No. 2:99-cv-00301 (D. Me.).  As a member of the executive committee representing plaintiffs, Berman Tabacco secured a $45 million settlement in a lawsuit stemming from the 1999 merger that created UNUMProvident.  Shareholders of both predecessor companies accused the insurer of misleading the public about its business condition before the merger.  The settlement received final approval in June 2002.

*In re General Electric Co. Securities Litigation*, No. 09 Civ. 1951 (S.D.N.Y.).  The firm serves as Lead Counsel on behalf of the State Universities Retirement System of Illinois in a lawsuit against General Electric Co. and certain of its officers.  A settlement in the amount of $40 million was reached with all the parties.  The court approved the settlement on September 6, 2013.



*In re UCAR International, Inc. Securities Litigation*, No. 98-cv-0600 (D. Conn.).  The firm represented the Florida State Board of Administration as the lead plaintiff in a securities claim arising from an accounting restatement.  The case settled for $40 million cash and the requirement that UCAR appoint an independent director to its board of directors.  The settlement was approved in 2000.

*In re American Home Mortgage Securities Litigation*, No. 07-MD-1898 (E.D.N.Y.).  As co-lead counsel representing the Oklahoma Police Pension & Retirement System, the firm negotiated a $37.25 million settlement – including $4.75 million from auditors Deloitte & Touche and $8.5 million from underwriters – despite the difficulties American Home's bankruptcy posed to asset recovery.  The plaintiffs contended that American Home had failed to write down the value of certain loans in its portfolio, which declined substantially in value as the credit markets unraveled.  The settlement received final approval in 2010 and was distributed in 2011.

*In re Avant, Securities Litigation*, No. 96-cv-20132 (N.D. Cal.).  Avant!, a software company, was charged with securities fraud in connection with its alleged theft of a competitor's software code, which Avant! incorporated into its flagship software product.  Serving as lead counsel, the firm recovered $35 million for the class.  The recovery resulted in eligible class claimants receiving almost 50% of their losses after attorneys' fees and expenses.

*In re SmartForce PLC d/b/a SkillSoft Securities Litigation*, No. 02-cv-544 (D.N.H.).  Representing the Teachers' Retirement System of Louisiana as co-lead plaintiff, Berman Tabacco negotiated a $30.5 million partial settlement with SkillSoft.  Subsequently, the firm also negotiated an $8 million cash settlement with Ernst & Young Chartered Accountants and Ernst & Young LLP, SkillSoft's auditors at the time.  The settlements received final approval in September 2004 and November 2005, respectively.

*In re Sykes Enterprises, Inc. Securities Litigation*, No. 8:00-cv-212-T-26F (M.D. Fla.).  The firm represented the Florida State Board of Administration as co-lead plaintiff.  Sykes Enterprises was accused of using improper means to match the company's earnings with Wall Street's expectations.  The firm negotiated a $30 million settlement.

*In re Valence Securities Litigation*, No. 95-cv-20459 (N.D. Cal.).  Berman Tabacco served as co-lead counsel in this action against a Silicon Valley-based company for overstating its performance and the development of an allegedly revolutionary battery technology.  After the Ninth Circuit reversed the district court's decision to grant summary judgment in favor of defendants, the case settled for $30 million in Valence common stock.

*In re Sybase II, Securities Litigation*, No. 98-cv-0252-CAL (N.D. Cal.).  Sybase was charged with inflating its quarterly financial results by improperly recognizing revenue at its wholly owned subsidiary in Japan.  Acting as co-lead counsel, the firm obtained a $28.5 million settlement.

*In re Force Protection Inc. Securities Litigation*, No. 08-cv-845 (D.S.C.).  As co-lead counsel representing the Laborers' Annuity and Benefit System of Chicago, the firm negotiated a $24 million settlement in a securities class action against armored vehicle manufacturer Force Protection, Inc.  The settlement addressed the claims of shareholders who accused the company and its top officers of making false and



misleading statements regarding financial results, failing to maintain effective internal controls over financial reporting and failing to comply with government contracting standards.

*In re Zynga Inc. Securities Litigation*, No. 12-cv-04007 (N.D. Cal.).  As co-lead counsel, the firm negotiated a $23 million recovery to settle claims against the company and certain of its officers. The case alleged that the company and its highest-level officers falsely touted accelerated bookings and aggressive growth through 2012, while concealing crucial information that Zynga was experiencing significant declines in bookings for its games and upcoming Facebook platform changes that would negatively impact Zynga's bookings.  Then, while Zynga's stock was trading at near a class-period high, defendants obtained an early release from the IPO lock-up on their shares to enable them and a few other insiders to reap over $593 million in proceeds in a secondary offering of personally held shares.  The secondary offering was timed just three months before Zynga announced its dismal Q2 2012 earnings at the end of the class period, which caused Zynga's stock to plummet.  The court granted final approval of the settlement in February 2016.

*In re ICG Communications Inc. Securities Litigation*, No. 00-cv-1864 (D. Colo.).  As co-lead counsel representing the Strategic Marketing Analysis Fund, the firm negotiated an $18 million settlement with ICG Communications Inc.  The case alleged that ICG executives misled investors and misrepresented growth, revenues and network capabilities.  The court granted final approval of the settlement in January 2007.

*In re Critical Path, Inc. Securities Litigation*, No. 01-cv-0551 (N.D. Cal.).  The firm negotiated a $17.5 million recovery to settle claims of accounting improprieties at a California software development company.  Representing the Florida State Board of Administration, the firm was able to obtain this recovery despite difficulties arising from the fact that Critical Path teetered on the edge of bankruptcy.  The settlement was approved in June 2002.

*In re Sunrise Senior Living, Inc. Securities Litigation*, No. 07-cv-00102 (D.D.C.).  A federal judge granted final approval of a $13.5 million settlement between Oklahoma Firefighters Pension and Retirement System, represented by Berman Tabacco, and Sunrise Senior Living Inc.

*Hallet v. Li & Fung, Ltd.*, No. 95-cv-08917 (S.D.N.Y.).  Cyrk Inc. was charged with misrepresenting its financial results and failing to disclose that its largest customer was ending its relationship with the company.  In 1998, Berman Tabacco successfully recovered more than $13 million for defrauded investors.

*In re Warnaco Group, Inc. Securities Litigation*, No. 00-cv-6266 (S.D.N.Y.).  Representing the Fresno County Employees' Retirement Association as co-lead plaintiff, the firm negotiated a $12.85 million settlement with several current and former top officers of the company.

*Gelfer v. Pegasystems, Inc.*, No. 98-cv-12527 (D. Mass.).  As co-lead counsel, Berman Tabacco negotiated a settlement valued at $12.5 million, $4.5 million in cash and $7.5 million in shares of the company's stock or cash, at the company's option.

*Sand Point Partners, L.P. v. Pediatrix Medical Group, Inc.*, No. 99-cv-6181 (S.D. Fla.).  Berman Tabacco represented the Florida State Board of Administration, which was appointed co-lead plaintiff along with several other public pension funds.  The complaint accused Pediatrix of Medicaid billing fraud, claiming that



the company illegally increased revenue and profit margins by improperly coding treatment rendered.  The case settled for $12 million on the eve of trial in 2002.

*In re Molten Metal Technology Inc. Securities Litigation*, No. 1:97-cv-10325 (D. Mass.), and *Axler v. Scientific Ecology Group, Inc.*, No. 1:98-cv-10161 (D. Mass.).  As co-lead counsel, Berman Tabacco played a key role in settling the actions after Molten Metal and several affiliates filed a petition for bankruptcy reorganization in Massachusetts.  The individual defendants and the insurance carriers in Molten Metal agreed to settle for $11.91 million.  After the bankruptcy, a trustee objected to the use of insurance proceeds for the settlement.  The parties agreed to pay the trustee $1.325 million of the Molten Metal settlement.  The parties also agreed to settle claims against Scientific Ecology Group for $1.25 million, giving Molten Metal's investors $11.835 million.

*In re CHS Electronics, Inc. Securities Litigation*, No. 99-8186-CIV (S.D. Fla.).  The firm helped obtain an $11.5 million settlement for co-lead plaintiff Warburg, Dillon, Read, LLC (now UBS Warburg).

*In re Summit Technology Securities Litigation*, No. 96-cv-11589 (D. Mass.).  Berman Tabacco, as co-lead counsel, negotiated a $10 million settlement for the benefit of the class.

*In re Exide Corp. Securities Litigation*, No. 98-cv-60061 (E.D. Mich.).  Exide was charged with having altered its inventory accounting system to artificially inflate profits by reselling used, outdated or unsuitable batteries as new ones.  As co-lead counsel for the class, Berman Tabacco recovered more than $10 million in cash for class members.

*In re Fidelity/Micron Securities Litigation*, No. 95-cv-12676 (D. Mass.).  The firm recovered $10 million in cash for Micron investors after a Fidelity Fund manager touted Micron while secretly selling the stock.

*In re Par Pharmaceutical Securities Litigation*, No. 06-cv-03226 (D.N.J.).  As counsel for court-appointed plaintiff, the Louisiana Municipal Police Employees' Retirement System, Berman Tabacco obtained an $8.1 million settlement from the company and its former CEO and CFO, which the court approved in January 2013.  The case alleged that the company had misled investors about its accounting practices, including overstatement of revenues.

*In re Interspeed, Inc. Securities Litigation*, No. 00-cv-12090-EFH (D. Mass.).  Berman Tabacco served as co-lead counsel and negotiated a $7.5 million settlement on behalf of the class.  The settlement was reached in an early stage of the proceedings, largely as a result of the financial condition of Interspeed and the need to salvage a recovery from its available assets and insurance.

*In re Abercrombie & Fitch Co. Securities Litigation*, No. M21-83 (S.D.N.Y).  As a member of the executive committee in this case, the firm recovered more than $6 million on behalf of investors.  The case alleged that the clothing company misled investors with respect to declining sales, which affected the company's financial condition.  The court granted final approval of the settlement in January 2007.

*In re Digital Domain Media Group, Inc. Securities Litigation*, No. 12-14333-CIV (S.D. Fla.).  As co-lead counsel, Berman Tabacco obtained a $5.5 million settlement on behalf investors of Digital Domain Media



Group, Inc. that was approved by the both bankruptcy court and the Southern District of Florida. The lead plaintiffs alleged that DDMG, a digital production company that was forced to file for bankruptcy in September 2012, less than 10 months after its initial public offering ("IPO"), misled investors in documents filed with the U.S. Securities and Exchange Commission as part of the IPO and in other statements made throughout the class period. Among other things, the lawsuit alleged that the defendants misled the public about DDMG's ability to raise capital and fund its operations, falsely reassuring investors about the company's ability to meet operating expenses while it "burned" cash at a rate that threatened its viability. In fact, according to a September 18, 2012 article in the Palm Beach Post, DDMG had difficulties meeting payroll as far back as 2010. According to the same article, then-Chairman and CEO John C. Textor "himself predicted a 'train wreck' in an email to an investor in early 2010."

*In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.).  As counsel to court-appointed bondholder representatives, the County of Fresno, California and the Fresno County Employees' Retirement Association, Berman Tabacco helped a team of lawyers representing the lead plaintiff, the New York State Common Retirement Fund, obtain settlements worth more than $6.13 billion.

## ANTITRUST PRACTICE

Berman Tabacco has a national reputation for our work prosecuting antitrust class actions involving price-fixing, market allocation agreements, patent misuse, monopolization and group boycotts among other types of anticompetitive conduct.  Representing clients ranging from Fortune 500 companies and public pension funds to individual consumers, the experienced senior attorneys in our Antitrust Practice Group have engineered substantial settlements and changed business practices of defendant companies, recovering more than $1 billion for our clients overall.

Berman Tabacco has played a major role in the prosecution of numerous landmark antitrust cases.  For example, the firm was lead counsel in the Toys "R" Us litigation, which developed the antitrust laws with respect to "hub and spoke" conspiracies and resulted in a $56 million settlement.  Berman Tabacco brought the first action centered on so-called "reverse payments" between a brand name drug maker and a generic drug maker, resulting in an $80 million settlement from the drug makers, which had been accused of keeping a generic version of their blood pressure medication off the market.

The firm's victories for victims of antitrust violations have come at the trial court level and also through landmark appellate court victories, which have contributed to shaping private enforcement of antitrust law. For example, in the Cardizem CD case, Berman Tabacco was co-lead counsel representing health insurer Aetna in an antitrust class action and obtained a pioneering ruling in the federal court of appeals regarding the "reverse payment" by a generic drug manufacturer to the brand name drug manufacturer.  In a first of its kind ruling, the appellate court held that the brand name drug manufacturer's payment of $40 million per year to the generic company for the generic to delay bringing its competing drug to market was a *per se* unlawful market allocation agreement. Today that victory still shapes the ongoing antitrust battle over competition in the pharmaceutical market.

In the firm's case against diamond giant De Beers, the Third Circuit, sitting *en banc*, vacated an earlier panel decision and upheld the certification of a nationwide settlement class, removing the last obstacle to



final approval of a historic $295 million settlement.  The Third Circuit's important decision provides a roadmap for obtaining settlement class certification in complex, nationwide class actions involving laws of numerous states.

In 2016, the firm won reversal of a grant of summary judgment for defendant automakers in a group boycott-conspiracy case involving the export of new motor vehicles from Canada to the U.S.  The California Court of Appeal found that plaintiffs had presented evidence of "patently anticompetitive conduct" with evidence gathered in the pre-trial phase, which was powerful enough to go to a jury.  The ruling is a rare example of an appellate court analyzing and reversing a trial court's evidentiary rulings to find evidence of a conspiracy.

Today the firm currently represents clients in significant antitrust class actions around the country, including actively representing major public pension funds in prosecuting price-fixing in the financial derivatives and commodities markets in the Euribor, Yen LIBOR and Canadian Dollar Offered Rate actions and the Foreign Currency Exchange Rate action.

While the majority of antitrust cases settle, our attorneys have experience taking antitrust class actions to trial. Because we represent only plaintiffs in antitrust matters, we do not have the conflicts of interest of other national law firms that represent both plaintiffs and defendants. Our experience also allows us to counsel medium and larger-sized corporations considering whether to participate as a class member or opt-out and pursue an individual strategy.

## RESULTS

## ANTITRUST SETTLEMENTS

Over the past two-and-a-half decades, Berman Tabacco has actively prosecuted scores of complex antitrust cases that led to substantial settlements for its clients.  These include:

*In re NASDAQ Market-Makers Antitrust Litigation*, No. 94-cv-3996 (S.D.N.Y).  The firm played a significant role in one of the largest antitrust settlements on record in a case that involved alleged price-fixing by more than 30 NASDAQ Market-Makers on about 6,000 NASDAQ-listed stocks over a four-year period.  The settlement was valued at nearly $1 billion.

*In re Foreign Currency Conversion Fee Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.).  Berman Tabacco, as head of discovery against defendant Citigroup Inc., played a key role in reaching a $336 million settlement. The agreement settled claims that the defendants, which include the VISA, MasterCard and Diners Club networks and other leading bank members of the VISA and MasterCard networks, violated federal and state antitrust laws in connection with fees charged to U.S. cardholders for transactions effected in foreign currencies.

*In re DRAM Antitrust Litigation*, No. M:02-cv-01486 (N.D. Cal.).  As liaison counsel, the firm actively participated in this multidistrict litigation, which ultimately resulted in significant settlements with some of the world's leading manufacturers of Dynamic Random Access Memory (DRAM) chips.  The defendant chip-



makers allegedly conspired to fix prices of the DRAM memory chips sold in the United States during the class period.  The negotiated settlements totaled nearly $326 million.

*Sullivan v. DB Investments, Inc.*, No. 04-02819 (D.N.J.).  Berman Tabacco represented a class of diamond resellers, such as diamond jewelry stores, in this case alleging that the De Beers group of companies unlawfully monopolized the worldwide supply of diamonds in a scheme to overcharge resellers and consumers. In May 2008, a federal judge approved the settlement, which included a cash payment to class members of $295 million, an agreement by De Beers to submit to the jurisdiction of the United States court to enforce the terms of the settlement and a comprehensive injunction limiting De Beers' ability to restrict the worldwide supply of diamonds in the future. This case is significant not only because of the large cash recovery but also because previous efforts to obtain jurisdiction over De Beers in both private and government actions had failed.  On August 27, 2010, the United States Court of Appeals for the Third Circuit agreed to hear arguments over whether to uphold the district court's certification of the settlement class.  By agreeing to schedule an *en banc* appeal before the full court, the Third Circuit vacated a July 13, 2010 ruling by a three-judge panel of the appeals court that, in a 2-to-1 decision, had ordered a remand of the case back to the district court, which may have required substantial adjustments to the original settlement.  On February 23, 2011, the Third Circuit, sitting *en banc*, again heard oral argument from the parties.  On December 20, 2011, the *en banc* Third Circuit handed down its decision affirming the district court in all respects.

*In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-2420-YGR (N.D. Cal.).  As co-lead class counsel for Direct Purchaser Plaintiffs ("DPPs") in this this multidistrict antitrust litigation, the firm achieved settlements totaling $139.3 million.  The litigation arose from an alleged worldwide conspiracy to fix prices of lithium-ion rechargeable batteries ("LiBs").  LiBs are components of LiB camcorders, digital cameras, and laptop computers.  The alleged conspiracy involved some of the largest companies in the world—Sony, Samsung SDI, Panasonic, Sanyo, LG Chem, Toshiba, Hitachi Maxell, and NEC Corp.  The lawsuit alleges that defendants participated in a conspiracy to fix the prices of LiBs, which affected the prices paid for the batteries and certain products in which the batteries are used.  Plaintiffs successfully defeated multiple motions to dismiss involving complex issues of antitrust standing and the pleading of conspiracy allegations.  Berman Tabacco and the team negotiated multiple settlements totaling $139.3 million.  The court granted final approval on May 16, 2018.

*In re Sorbates Direct Purchaser Antitrust Litigation*, No. C 98-4886 CAL (N.D. Cal.).  The firm served as lead counsel alleging that six manufacturers of Sorbates, a food preservative, violated antitrust laws through participation in a worldwide conspiracy to fix prices and allocations to customers in the United States.  The firm negotiated a partial settlement of $82 million with four of the defendants in 2000.  Following intensive pretrial litigation, the firm achieved a further $14.5 million settlement with the two remaining defendants, Japanese manufacturers, in 2002.  The total settlement achieved for the class was $96.5 million.

*In re Disposable Contact Lens Antitrust Litigation*, MDL No. 1030 (M.D. Fla.).  The firm acted as co-lead counsel and chief trial counsel.  Representing both a national class and the State of Florida, the firm helped secure settlements from defendants Bausch & Lomb and the American Optometric Association before trial and from Johnson & Johnson after five weeks of trial.  The settlements were valued at more than $92 million and also included significant injunctive relief to make disposable contact lenses available at more discount outlets and more competitive prices.



*In re Cardizem CD Antitrust Litigation*, No. 99-01278 (E.D. Mich.).  In another case involving generic drug competition, Berman Tabacco, as co-lead counsel, helped secure an $80 million settlement from French-German drug maker Aventis Pharmaceuticals and the Andrx Corporation of Florida.  The payment to consumers, state agencies and insurance companies settled claims that the companies conspired to prevent the marketing of a less expensive generic version of the blood pressure medication Cardizem CD.  The state attorneys general of New York and Michigan joined the case in support of the class.  The firm achieved a significant appellate victory in a first of its kind ruling that the brand name drugmaker's payment of $40 million per year for the generic company to delay bringing its generic version of blood-pressure medication Cardizem CD to market constituted an agreement not to compete that is a *per se* violation of the antitrust laws.

*In re Toys "R" Us Antitrust Litigation*, MDL No. 1211 (E.D.N.Y.).  The California office negotiated a $56 million settlement to answer claims that the retailer violated laws by colluding to cut off or limit supplies of popular toys to stores that sold the products at lower prices.  The case developed the antitrust laws with respect to a "hub and spoke" conspiracy, where a downstream power seller coerces upstream manufacturers to the detriment of consumers.  One component of the settlement required Toys "R" Us to donate $36 million worth of toys to needy children throughout the United States over a three-year period.

*In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation*, MDL No. 05-1671 (C.D. Cal.).  Berman Tabacco, as co-lead counsel, negotiated a $48 million settlement with Union Oil Company and Unocal.  The agreement settled claims that the defendants manipulated the California gas market for summertime reformulated gasoline and increased prices for consumers.  The noteworthy settlement delivered to consumers a combination of clean air benefits and funding for alternative fuel research.

*In re Abbott Laboratories Norvir Antitrust Litigation*, Nos. 04-1511, 04-4203 (N.D. Cal.).  Berman Tabacco acted as co-lead counsel in a case on behalf of indirect purchasers alleging that the defendant pharmaceutical company engaged in an illegal leveraged monopoly in the sale of its AIDS boosting drug known as Norvir (or Ritanovir).  Plaintiffs were successful through summary judgment, including the invalidation of two key patents based on prior art, but were reversed on appeal in the Ninth Circuit as to the leveraged monopoly theory.  The case settled for $10 million, which was distributed net of fees and costs on a *cy pres* basis to 10 different AIDS research and charity organizations throughout the United States.

*Automotive Refinishing Paint Antitrust*, J.C.C.P. No. 4199 (Cal. Super. Ct.).  In this class action, indirect purchaser-plaintiffs brought suit in California State Court against five manufacturers of automotive refinishing coatings and chemicals alleging that they violated California law by unlawfully conspiring to fix paint prices.  Settlements were reached with all defendants totaling $9.4 million, 55% of which was allocated among an End-User Class consisting of consumers and distributed on a *cy pres*, or charitable, basis to thirty-nine court-approved organizations throughout California, and the remaining 45% of which was distributed directly to a Refinishing Class consisting principally of auto-body shops located throughout California.

## LEADERSHIP ROLES

The firm currently acts as lead or co-lead counsel in high-profile securities and antitrust class actions and also represents investors in individual actions, ERISA cases and derivative cases.

The following is a representative list of active class action cases in which the firm serves as lead or co-lead counsel or as executive committee member.

> *In re Aqua Metals, Inc. Securities Litigation*, No. 4:17-CV-07142-HSG (N.D. Cal.).  Co-lead counsel for court-appointed lead plaintiff Plymouth County Retirement Association.

> *In re Apple Processor Litigation*, No. 18-cv-00147-EJD (N.D. Cal.). Co-lead counsel for a proposed nationwide class of purchasers of Apple devices, such as iPhones, iPads, and Apple TVs.

> *Fire & Police Pension Assoc. of Colorado. v. Bank of Montreal, et al.*, No. 1:18-CV-00342 (S.D.N.Y.).  Member of two-firm Executive Committee.

> *In re Facebook, Inc. Shareholder Derivative Privacy Litigation*, No. 4:18-cv-01792-HSG (N.D. Cal.). Liaison Counsel for plaintiffs and member of Plaintiffs' Executive Committee.

> *Okla. Firefighters Pension & Ret. Sys. v. Chew, et al.*, No. 4:18-cv-04698-KAW (N.D. Cal.). Counsel for Oklahoma Firefighters Pension and Retirement System in derivative action against PG&E's Board of Director related to the catastrophic 2017 wildfires in Northern California.

> *In re EpiPen ERISA Litigation*, No. 17-CV-1884 (PAM/SER) (D. Minn.).  Co-lead counsel for class.

> *San Antonio Fire & Police Pension Fund v. AmerisourceBergen Corp.*, C.A. No. 2018-0551 (Del. Ch.).  Counsel for San Antonio Fire & Police Pension Fund in books and records action.

> *Solomon v. American Web Loan, Inc.*, et al., No. 4:17-CV-145 (E.D. VA.).  Co-Lead counsel for class.

> *Gingras v. Rosette*, No. 5:15-CV-00101-GWC (D. VT.), and *Gingras v. Victory Park Capital Advisors, LLC, et al.*, No. 5:17-CV-233 (D. VT.).  Co-lead counsel for plaintiffs.

> *Granger v. Great Plains Lending, LLC, et al.*, No. 1:18-cv-00112 (M.D.N.C.)  Co-lead counsel for plaintiffs.

> *In re UnitedHealth Section 220 Litigation*, C.A. No. 0681-TMR (Del. Ch.).  Co-lead counsel representing plaintiff Amalgamated Bank.

> *Massachusetts Laborers' Pension Fund v. Wells Fargo & Co., et al.*, C.A. No. 12997-VCG (Del. Ch. Ct.).  Counsel for Massachusetts Laborers' Pension Fund and the Employees' Retirement System of the City of Providence in action under Section 220 of the Delaware General Corporation Law in order to evaluate whether the facts support a derivative suit on behalf of Wells Fargo against its officers and directors for breaches of their fiduciary duties.

> *Ohio Public Employees Retirement System v. BP America, Inc.*, No. 12-cv-01837 (S.D. Tex.).



Counsel for plaintiffs in individual action.

> *Sullivan v. Barclays PLC*, No. 13-cv-2811 (S.D.N.Y.).  Counsel for plaintiffs and represents California State Teachers' Retirement System.

> *Laydon v. Mizuho Bank, Ltd.*, No. 1:12-cv-03419 (GBD) (S.D.N.Y.), and *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 1:15-cv-05844 (GBD) (S.D.N.Y.  Counsel for plaintiffs and represents California State Teachers' Retirement System and Oklahoma Police Pension and Retirement System.

> *Carlin v. DairyAmerica, Inc.*, No. 09-cv-00430 (E.D. Cal.).  Member of the Interim Executive Committee and Liaison Counsel.

## TRIAL EXPERIENCE

The firm has significant experience taking class actions to trial.  Over the years, Berman Tabacco's attorneys have tried cases against pharmaceutical companies in courtrooms in New York and Boston, a railroad conglomerate in Delaware, one of the nation's largest trustee banks in Philadelphia, a major food retailer in St. Louis and the top officers of a failed New England bank.

The firm has been involved in more trials than most of the firms in the plaintiffs' class action bar.  Our partners' trial experience includes:

> *MAZ Partners, LP v. Bruce A. Shear, et al.*, No. 1:11-cv-11049-PBS (D. Mass.).  After two-week trial in 2017 in this breach of fiduciary class action, jury verdict for plaintiffs but no damage award.  Following post-trial briefing, court exercised its equitable power and ordered $3 million award by defendant.

> *Conway v. Licata*, No. 13-12193 (D. Mass.).  2015 jury verdict for defendants (firm's client) after two-week trial on the vast majority of counts, awarding the plaintiffs a mere fraction of the damages sought.  Jury also returned a verdict for defendants on one of their counterclaims.

> *In re MetLife Demutualization Litigation*, No. 00-Civ-2258 (E.D.N.Y.).  This case settled for $50 million after the jury was empaneled.

> *White v. Heartland High-Yield Municipal Bond Fund*, No. 00-C-1388 (E.D. Wis.).  firm attorneys conducted three weeks of a jury trial against final defendant, PwC, before a settlement was reached for $8.25 million.  The total settlement amount was $23.25 million.

> *In re Disposable Contact Lens Antitrust Litigation*, MDL No. 1030 (M.D. Fla.).  Settled for $60 million with defendant Johnson & Johnson after five weeks of trial.

> *Gutman v. Howard Savings Bank*, No. 2:90-cv-02397 (D.N.J.).  Jury verdict for plaintiffs after three weeks of trial in individual action.  The firm also obtained a landmark opinion allowing investors to pursue common law fraud claims arising out of their decision to retain securities as opposed to purchasing new shares.  *See Gutman v. Howard Savings Bank*, 748 F. Supp. 254 (D.N.J. 1990).



> *Hurley v. Federal Deposit Insurance Corp.*, No. 88-cv-940 (D. Mass.).  Bench verdict for plaintiffs.

> *Levine v. Fenster*, No. 2-cv-895131 (D.N.J.).  Plaintiffs' verdict of $3 million following four-week trial.

> *In re Equitec Securities Litigation*, No. 90-cv-2064 (N.D. Cal.).  Parties reached a $35 million settlement at the close of evidence following five-month trial.

> *In re ICN/Viratek Securities Litigation*, No. 87-cv-4296 (S.D.N.Y.).  Hung jury with 8-1 vote in favor of plaintiffs; the case eventually settled for over $14.5 million.

> *In re Biogen Securities Litigation*, No. 94-cv-12177 (D. Mass.).  Verdict for defendants.

> *Upp v. Mellon*, No. 91-5219 (E.D. Pa.).  In this bench trial, tried through verdict in 1992, the court found for a class of trust beneficiaries in a suit against the trustee bank and ordered disgorgement of fees.  The Third Circuit later reversed based on lack of jurisdiction.



# OUR ATTORNEYS

## *Partners*

## NICOLE LAVALLEE

Nicole Lavallee, the managing partner of the firm's San Francisco office and member of the firm's executive committee, focuses her practice on securities and derivative litigation.  She is an integral member of the firm's New Case Investigations Team, which oversees the firm's portfolio monitoring program and investigates potential securities law violations to determine whether a case meets the firm's exacting standards.  She also advises clients on foreign litigation.

Since the enactment of the PSLRA, Ms. Lavallee has prosecuted numerous high-profile securities fraud cases for the firm.  Most recently, she was one of the lead attorneys overseeing the *IndyMac Mortgage-Backed Securities Litigation*, which settled for $346 million – one of the largest private MBS recoveries on record and the largest of any case where the issuer bank was in bankruptcy.  She was the lead partner handling the day-to-day prosecution of numerous other cases, where she handled or oversaw case investigation and factual development and briefing (including appeal briefing), conducted depositions, argued key motions (including motions to dismiss, motions for summary judgment and/or discovery motions), and participated in settlement negotiations.

Examples receiving favorable judicial commentary include: (i) *In re KLA-Tencor Corp. Securities Litigation*, No. C06-04065 (N.D. Cal.), an options-backdating class action, representing co-lead plaintiff the Louisiana Municipal Police Employees' Retirement System, which settled for $65 million; (ii) *In re International Rectifier Securities Litigation*, No. 07-cv-02544 (C.D. Cal.), on behalf of the co-lead plaintiff Massachusetts Laborers' Pension Fund, alleging manipulation of the company's financial results, which settled for $90 million in 2009; (iii) *Oracle Cases*, Coordination Proceeding, Special Title (Rule 1550(b)), No. JCCP 4180 (Cal. Super. Ct. San Mateo Cty.), a derivative case alleging that Lawrence Ellison engaged in illicit insider trading, and which settled weeks before trial when Mr. Ellison agreed to make $100 million in charitable donations in Oracle's name; and (iv) opt-out actions on behalf of State of Michigan Retirement System and Fresno County Employees' Retirement Association against Countrywide Financial Corp. (*State Treasurer of The State of Michigan v. Countrywide Financial Corp.*, No. CV-11-00809 (C.D. Cal.) and *Fresno County Employees Retirement Association v. Countrywide Financial Corp.*, No. CV-11-00811 (C.D. Cal.)).  She also played a key role in trial preparation for the *In re GenesisIntermedia, Inc. Securities Litigation*, No. CV 01-9024 (N.D. Cal.), class action.  She also acted as local counsel in a number of cases where she played a significant role such as *State of Oregon v. McKesson HBOC, Inc.*, Master File No. 307619 (Cal. Super. Ct. San Francisco Cty.), an individual opt out action brought on behalf of the retirement systems for Colorado, Utah and Minnesota, which settled very favorably.  Most recently, she oversaw the prosecution of *In re Zynga, Inc. Securities Litigation*, No. 12-cv-04007 (N.D. Cal.), which settled for $23 million in February 2016.

Currently, Ms. Lavallee is the lead partner at Berman Tabacco on *In re Aqua Metals, Inc. Securities Litigation*, No. 4:17-CV-07142-HSG (N.D. Cal.), in which the Firm is co-lead counsel representing court-appointed lead plaintiff Plymouth County Retirement Association.  The action alleges that defendants Aqua Metals, Inc. and company executives falsely misled investors about the status of its implementation of and



operations of its AquaRefining technology, which the company claimed had the potential to revolutionize lead recycling and make lead-acid batteries the only truly sustainable battery technology.  She also oversees *San Antonio Fire & Police Pension Fund v. AmerisourceBergen Corp.*, C.A. No. 2018-0551 (Del. Ch.), an action pursuant to 8 Del. C. § 220 on behalf of the San Antonio Fire & Police Pension Fund against AmerisourceBergen Corp. to compel the company to provide certain of its books and records. The primary purpose of this books and records request is to ascertain whether Amerisource's directors breached their fiduciary duties in connection with its subsidiary's alleged illegal scheme to produce and market unapproved prefilled syringes ("PFS") in violation of federal and state laws.  In 2017, Amerisource entered a guilty plea related to the alleged illegal PFS scheme and has paid more than $875 million in penalties and fines to settle related civil and criminal claims.  She is also a lead partner on *Oklahoma Firefighters Pension & Retirement System v. Chew, et al.*, No. 18-cv-04698 (N.D. Cal.), a derivative action alleging the officers and directors of PG&E Corporation abdicated their fiduciary duties to oversee the company's safety and risk functions and thereby failed to ensure that PG&E's electrical power and distribution lines complied with state regulations and other safety protocols designed to prevent power and distribution lines from sparking wildfires in California.  This lack of oversight allegedly caused a series of catastrophic wildfires that ravaged areas of Northern California beginning in October 2017.

Ms. Lavallee has an AV Preeminent® rating from *Martindale-Hubbell*® and was named a Super Lawyer in 2017 and 2018 by *Northern California Super Lawyers Magazine*.  She was also recognized as a *Recommended Attorney in Securities Litigation* by *The Legal 500* in 2017 and 2018.  She was also designated a *Local Litigation Star* by *Benchmark Litigation* in 2019.  She has authored numerous articles and lectured on securities litigation.  She was also included in *San Francisco Magazine's Top Women Attorneys in Northern California* in 2017-2018.  She is also co-chair for the 2016 Cross-Border Litigation Forum, a gathering of the most senior legal practitioners in U.S./Canada cross-border litigation (was also on the Steering Committee for the 2012 and 2014 forums).  Ms. Lavallee is admitted to practice in California (1993), all federal courts in the Ninth Circuit and the Ninth Circuit of the U.S. Courts of Appeals.

## JOSEPH J. TABACCO, JR.

Joseph J. Tabacco, Jr., the founding member of Berman Tabacco's San Francisco office, actively litigates antitrust, securities fraud, commercial high tech and intellectual property matters.

Prior to 1981, Mr. Tabacco served as senior trial attorney for the U.S. Department of Justice, Antitrust Division in both the Central District of California and the Southern District of New York.  In that capacity, he had major responsibility for several criminal and civil matters, including the antitrust trial of *United States v. IBM*.  Since entering private practice in the early 1980s, Mr. Tabacco has served as trial or lead counsel in numerous antitrust and securities cases and has been involved in all aspects of state and federal litigation. In private practice, Mr. Tabacco has also tried a number of securities cases, each of which resolved successfully at various points during or after trial, including *In re MetLife Demutualization Litigation* (settled after jury empaneled), *Gutman v. Howard Savings Bank* (plaintiffs' verdict after six-week trial), *In re Equitec Securities Litigation* (settled after six months of trial) and *In re Ramtek Securities Litigation*.

Mr. Tabacco was one of the firm's lead attorneys representing the Wyoming State Treasurer and Wyoming Retirement System in the *In re IndyMac Mortgage-Backed Securities Litigation* in which the firm achieved settlements totaling $346 million.  He also oversaw *California Public Employees' Retirement System v.*



*Moody's Corp.*, No. CGC-09-490241 (Cal. Super. Ct. San Francisco Cty.), the pioneering case that held credit rating agencies (Standard & Poor's and Moody's) financially responsible for their negligence in rating structured investment vehicles.  After settling with both McGraw Hill Companies and Moody's, California Public Employees' Retirement System' total recovery for the case was $255 million.  Over the decades, Mr. Tabacco has prosecuted numerous securities fraud and antitrust cases against both domestic and international companies.  In additional, he has engaged in depositions and discovery outside the U.S., including most recently in England in *CalPERS v. Moody's Corp.*

Mr. Tabacco recently oversaw *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-2420-YGR (N.D. Cal.), which achieved settlements in the total amount of $139.3 million for a class of direct purchasers of lithium-ion rechargeable batteries (final approval on the last three settlements was granted on May 16, 2018).  The lawsuit alleged that defendants, including LG, Panasonic, Sony, Hitachi, and Samsung, participated in a conspiracy to fix the prices of lithium ion rechargeable batteries, which affected the prices paid for the batteries and certain products in which the batteries are used and which the defendants sell.

Since 2008, Mr. Tabacco has served as an independent member of the Board of Directors of Overstock.com, a publicly-traded company internet retailer.  He is Chair of the Board's Corporate Governance Committee and also serves as a member of the Board's Audit and Compensation Committees. He also frequently lectures and authors articles on securities and antitrust law issues and is a member of the Advisory Board of the Institute for Consumer Antitrust Studies at Loyola University Chicago School of Law and the Advisory Board of the Center for Law, Economics & Finance at the George Washington School of Law.  Mr. Tabacco is also a former teaching fellow of the Attorney General's Advocacy Institute in Washington, D.C., and has served on the faculty of ALI-ABA on programs about U.S.-Canadian business litigation and trial of complex securities cases.

For 12 consecutive years, he has been among the top U.S. securities litigators ranked by *Chambers USA* and is also AV Preeminent® rated by *Martindale-Hubbell*®.  Mr. Tabacco has been featured by the *Daily Journal* as one of California's top 30 securities litigators, a group chosen from both the plaintiff and defense bars, and as one of the *Top Plaintiffs Lawyers in California in 2017.*  He was also recognized by *Who's Who Legal: Competition*, most recently in 2018 – a designation he has received for the past 5 years since the creation of the publication's Plaintiffs section.  Additionally, for 15 consecutive years, Mr. Tabacco has been named a Super Lawyer by *Northern California Super Lawyers Magazine*, which features the top 5% of attorneys in the region.  He was ranked as a *Recommended Attorney in Securities Litigation* by *The Legal 500* in 2017 and 2018 and was ranked by *Benchmark Litigation* as a Local Litigation Star in 2017 and 2018 and as a *Benchmark California Star* in 2019.  He was recognized by *Best Lawyers*® for Litigation-Antitrust (2018 and 2019) and for Litigation-Securities (2019).  Mr. Tabacco was also singled out by a top defense attorney for exemplifying "the finest tradition of the trial bar."  In 2018, *Chambers USA* hailed Mr. Tabacco as "a well-known plaintiff-side securities litigator with a very strong profile among peers [, who] achieves impressive results in class actions involving issues such as the securitization of mortgaged-backed securities and manipulation of exchange rates."  *Chambers* highlighted a client's praise for Joe: "'His legal knowledge and skills are at the highest level. His combined intelligence and experience results in well-reasoned and thoughtful arguments to further our case.'"

Mr. Tabacco has been admitted to practice law in the states of California, Massachusetts, New York and the District of Columbia (currently inactive).



<span style="float:right">*Firm Resume*</span>

*Associates*

## A. CHOWNING POPPLER

Chowning Poppler focuses her practice on antitrust and securities litigation.  Prior to joining the firm in 2015, she worked as a litigation associate at a San Francisco law firm where she represented plaintiffs in employment-related individual and class action matters in state and federal court.  Ms. Poppler started her legal career at a plaintiffs' firm in San Diego which specializes in securities and consumer class actions.

While in law school, Ms. Poppler interned at the Public Integrity Bureau of the State of New York Office of the Attorney General where she investigated alleged corruption and fraud in local governments.  Ms. Poppler served on her law school's Pro Bono Legal Advocates board where she oversaw and coordinated volunteers for the unlawful detainer law clinic.  She was also a member of the *San Diego International Law Journal*.

Northern California *Super Lawyers Magazine* named Ms. Poppler a "Rising Star" in 2017 and 2018.  She was also included in *San Francisco Magazine's Top Women Attorneys in Northern California* in 2017-2018.  She has served as an Executive Board Member on the ACLU – North Peninsula Chapter Board since 2012.  She is admitted to practice law in the State of California and the U.S. District Courts for the Northern, Central and Eastern Districts of California.

**OFFICES**

**MASSACHUSETTS**
One Liberty Square
Boston, MA 02109
Phone: (617) 542-8300
Fax: (617) 542-1194

**CALIFORNIA**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Phone: (415) 433-3200
Fax: (415) 433-6382

###